ALICE CHANG (SBN 239761)
alicechangjdmba@gmail.com
1301 Kenwood Road, Unit 159B
Seal Beach, CA 90740
Telephone: (714) 507-6161

ELIOT J. RUSHOVICH (SBN 252343)
eliot@riselawfirm.com
RISE LAW FIRM, PC
8383 Wilshire Boulevard, Suite 315
Beverly Hills, CA 90211
Telephone: (310) 728-6588

*Attorneys for Relator and Plaintiff-Relator*

```
FILED
CLERK, U.S. DISTRICT COURT
Dec. 29, 2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___kr___ DEPUTY
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **[UNDER SEAL]**,<br><br>Plaintiffs,<br><br>v.<br><br>**[UNDER SEAL]**,<br><br>Defendants. | CASE NO. CV 18-08311-ODW (AS)<br><br>*EX PARTE* APPLICATION FOR HEARING AND DISCLOSURES PRIOR TO UNSEALING<br><br>**[FILED UNDER SEAL PURSUANT TO THE FALSE CLAIMS ACT, 31 U.S.C. §§ 3730(b)(2)]**<br><br>[FILED/LODGED CONCURRENTLY UNDER SEAL: [PROPOSED] ORDER; DECLARATION OF ALICE CHANG WITH EXHIBITS] |

**[FILED IN CAMERA AND UNDER SEAL
PURSUANT TO 31 U.S.C. § 3730(b)(2)]**

1  ALICE CHANG (SBN 239761)
   alicechangjdmba@gmail.com
2  1301 Kenwood Road, Unit 159B
   Seal Beach, CA 90740
3  Telephone: (714) 507-6161

4  ELIOT J. RUSHOVICH (SBN 252343)
   eliot@riselawfirm.com
5  RISE LAW FIRM, PC
   8383 Wilshire Boulevard, Suite 315
6  Beverly Hills, CA 90211
   Telephone: (310) 728-6588
7
   *Attorneys for Relator and Plaintiff-Relator*
8
                    UNITED STATES DISTRICT COURT
9
                   CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. IONM LLC, a Delaware corporation and ex rel. JUSTIN CHEONGSIATMOY, M.D.; STATE OF CALIFORNIA ex rel. IONM LLC, a Delaware corporation and ex rel. JUSTIN CHEONGSIATMOY, M.D; LOS ANGELES COUNTY ex rel. IONM LLC, a Delaware corporation and ex rel. JUSTIN CHEONGSIATMOY, M.D.; and JUSTIN CHEONGSIATMOY, M.D., in his individual capacity,<br><br>Plaintiffs,<br><br>vs.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA, a California corporation;<br><br>and<br><br>USC CARE MEDICAL GROUP, INC., a California corporation,<br><br>Defendants. | CASE NO. CV 18-08311-ODW (AS)<br><br>*EX PARTE* APPLICATION FOR HEARING AND DISCLOSURES PRIOR TO UNSEALING<br><br>**[FILED UNDER SEAL PURSUANT TO THE FALSE CLAIMS ACT, 31 U.S.C. §§ 3730(b)(2)]**<br><br>[FILED/LODGED CONCURRENTLY UNDER SEAL: [PROPOSED] ORDER; DECLARATION OF ALICE CHANG WITH EXHIBITS] |

    Pursuant to 31 U.S. Code § 3729 *et seq.*, Central District Local Rule 7-19 and 7-19.1, and the Honorable Otis D. Wright, II's standing orders, Relator IONM LLC and

Plaintiff-Relator Justin Cheongsiatmoy, M.D. (collectively "Relator" or "Plaintiff-Relator" or "Dr. Cheongsiatmoy") hereby submits this *Ex Parte* Application for a Hearing and Disclosures Prior to Unsealing (the "Application"). The purpose of this application is to ensure that the actions taken, or to be taken, by the United States of America, State of California and Los Angeles County ("Government Parties") have not unduly prejudiced any parties of interest including Dr. Cheongsiatmoy with respect to his individual claims based on the same operative facts that underlie the *qui tam* claims.

A party seeking *ex parte* relief must establish why a motion cannot be calendared in a regular manner; that there will be irreparably prejudiced if the motion is heard in accord with regular procedures; and that the requesting party is without fault in creating the crisis that requires *ex parte* relief or that the crisis was due to excusable neglect." Mission Power Eng'g Co. v. Cont'l Cas. Co., 883 F. Supp. 488, 492 (C.D. Cal. 1995).

This application stems from knowledge first learned by Dr. Cheongsiatmoy outside the period during which a regularly scheduled motion could have been heard while the case remained sealed prior to December 30, 2021; despite multiple attempts to meet and confer with the Government parties to eliminate the necessity of a hearing on prejudice to the case before it unseals; the issues remain unresolved; thus, the reason for this *ex parte* application.

On December 6, 2021, Ms. Chang and Mr. Rushovich were informed for the first time from the United States of America that six weeks prior, on October 27, 2021, the United States had completed its investigation and disclosed to University of Southern California and USC Care Medical Group, Inc. (collectively "Defendant" or "USC") the operative Complaint without any exhibits containing Dr. Cheongsiatmoy's claims. The United States made these disclosures to the Defendant without notice to and without consent of either Relator IONM LLC or Plaintiff-Relator, Dr. Cheongsiatmoy.

The United States admitted that it had made these disclosures "in the interests of reviving negotiations" to settle the *qui tam* claims brought by Plaintiff-Relator on the

basis of USC's March 27, 2020 Non-Confidential Voluntary Self-Disclosure ("USC Disclosure") in order to further the "position of the United States that negotiations regarding employment-related claims should take place separately from (and subsequent to) negotiations regarding allegations arising under the False Claims Act."

While the False Claims Act seal process is intended to allow the Government time to investigate allegations filed by a *qui tam* relator to determine whether or not to intervene, it is *not* designed for the Government to give the Defendant an unfair advantage at the expense of the Plaintiff-Relator and his individual claims, especially since Dr. Cheongsiatmoy's claims are based on the same underlying facts. Dr. Cheongsiatmoy, therefore, seeks the Court's intervention to address the prejudice that has resulted from the Government Parties' use of the seal to run roughshod over a Plaintiff-Relator's individual claims. This motion is being filed *ex parte* because irreversible damage will occur if the Court allows the case to unseal without a hearing, particularly given that the seal is set to expire on December 30, 2021.

Plaintiff-Relator has made the required attempts to meet and confer with all parties, given notice to all parties of his intent to file this Application, and has otherwise complied with all rules with respect to this filing. Plaintiff-Relator has been advised that the United States of America and the State of California intend to oppose this Application. Los Angeles County and Wilbanks & Gouinlock have not indicated whether they intend to oppose this Application. This Application is based on this filing, the attached Memorandum of Points and Authorities and Exhibits thereto filed concurrently herewith, on all records on file in this case, and on such other evidence as may properly come before the Court at the time of any hearing of this Application.

Dated: December 28, 2021              ALICE CHANG

                                       /s/ Alice Chang_____

                                       Attorneys for Relator and Plaintiff-Relator

# MEMORANDUM OF POINTS AND AUTHORITIES

I.  **BACKGROUND**

  A. **Initial Complaint and Subsequent Amendments.**

  On or about September 26, 2018, Relator IONM LLC filed in camera and under seal its initial Complaint against Defendant asserting violations of the Federal False Claims Act, the California False Claims Act and the California Insurance Frauds Prevention Act.  On or about January 25, 2021, Relator filed in camera and under seal its First Amended Complaint.  On or about May 5, 2021, Relator filed in camera and under seal its Second Amended Complaint ("SAC"), identifying Plaintiff-Relator Justin Cheongsiatmoy, M.D. as a Co-Relator in his personal capacity and adding his related individual claims.  On or about June 25, 2021, Relators filed in camera and under seal their Third Amended Complaint ("TAC"). On or about September 20, 2021, Relators filed in camera and under seal their Fourth Amended Complaint ("4AC").  The 4AC is the operative complaint. This case remains under seal until December 30, 2021.

  B. **No Consent for Order Partially Lifting Seal and Extension(s) of Seal**

  The Court issued an June 23, 2020 Order Partially Lifting Seal to allow the United States, in its discretion, to "(A) disclose to Defendant…and its counsel the existence of this action, any of the allegations of the Complaint, and any subsequently-filed amended Complaint filed in the above-captioned action; and (B) provide USC with…any of the said Complaints, redacted or not (the "June 23, 2020 Order Partially Lifting Seal").

  The United States sought the June 23, 2020 Order Partially Lifting Seal based upon its representation that the partial lift of the seal "may help expedite the conclusion of the Government's investigation and the resolution of this *qui tam* action."  At the time the June 23, 2020 Order Partially Lifting Seal was entered, the operative Complaint contained only *qui tam* claims and not Dr. Cheongsiatmoy's individual claims.

  At the time the United States sought the June 23, 2020 Order Partially Lifting Seal, and at any time subsequent thereto, the United States had a duty, as an officer of the Court,

to truthfully inform the Court that there was no consent from Relator to partially lift the seal to disclose Relator's *qui tam* allegations to Defendant. The Court, therefore, should have been informed that the United States was aware that Relator IONM LLC did not consent to the partial unsealing of the Complaint based on the fraudulent nature of the USC Disclosure; the lack of consent from Relator IONM LLC for the June 23, 2020 Order Partially Lifting Seal was reiterated to the United States in writing on April 22, 2021. (Declaration of Alice Chang ("Chang Decl."), ¶ 7.)

As it relates to consent for extension(s) of the seal, the first time any Relator in this action was asked to provide consent for any seal extension was on December 17, 2020 when Cotchett, Pitre & McCarthy, LLP ("former counsel") gave notice of intent to withdraw following former counsel's refusal to file an amendment in this action to provide truthful evidence as to the extent of Defendant's fraud. (Chang Decl., ¶ 3.)

On December 17, 2020, Relator responded to the request for extension of the seal stating that Relator had never been requested to approve or consent to any action related to the seal in this case and needed further clarification as the reasons for the seal extension and ramifications to Relator; former counsel did answer Relator's request to explain the basis for the request to extend the seal. (Chang Decl., ¶ 3.)

On December 18, 2020, former counsel instructed the United States in writing to "file the [seal extension] application with the court and indicate Relator has not responded." (Chang Decl., ¶ 4.) To date, the United States has continued to refuse to confirm that the Court was truthfully informed that there was no consent from Relator to extend the seal per the written instructions from former counsel.

Further, Dr. Cheongsiatmoy only became a Co-Relator in his personal capacity with individual claims concurrent with the filing of the Second Amended Complaint in May 2021. However, the United States did not seek the consent Dr. Cheongsiatmoy prior to disclosing his claims to Defendant on October 27, 2021.

### C. The United States' Instruction(s) on the Seal

On June 21, 2021, employment counsel Eliot Rushovich and his firm, Rise Law Firm, PC entered an appearance in this case.

On July 9, 2021 Mr. Rushovich emailed all participating government entities Dr. Cheongsiatmoy's work product for the Third Amended Complaint (TAC) with the primary theory of false claims liability identified as services not rendered by USC surgeons and USC neurologists; AUSA Kortum then emailed all participating government entities "in response to [Mr. Rushovich's] 7/9 letter," stating that he had left Mr. Rushovich a voicemail requesting to speak with Dr. Cheongsiatmoy's counsel. (Chang Decl., ¶ 9.)

On a July 13, 2021 telephonic conference, Assistant United States Attorney Frank Kortum ("AUSA Kortum") expressly instructed Ms. Chang and Mr. Rushovich that, due to the seal order, they and their clients were not permitted to have any contact with the Defendant *at all* regarding this case -- whether with regard to Dr. Cheongsiatmoy's *qui tam* or with regard to Dr. Cheongsiatmoy's individual claims -- until AUSA Kortum officially notified Ms. Chang and Mr. Rushovich that the Government had completed its investigation and was ready to disclose to USC a copy of the Complaint containing Dr. Cheongsiatmoy's allegations. (Chang Decl., ¶ 10.)

On a September 30, 2021, Ms. Chang emailed all participating government entities Dr. Cheongsiatmoy's work product for the Fourth Amended Complaint (4AC) with the primary theory of false claims liability identified as services not rendered by USC surgeons and USC neurologists. (Chang Decl., ¶ 11.)

On October 1, 2021, AUSA Kortum requested Dr. Cheongsiatmoy personally attend a "Call with DOJ [Department of Justice]" wherein the United States expressly instructed Dr. Cheongsiatmoy and his counsel that they were not to communicate with participating government entity, Los Angeles County; when Ms. Chang asked AUSA Kortum to clarify if the United States was instructing Dr. Cheongsiatmoy's counsel not

to contact Los Angeles County about the investigation -- *or at all* -- AUSA Kortum answered definitively: "Do not contact the County about any aspect of this case." (Chang Decl., ¶ 12.)

### D. United States' Use of Seal to Give Defendant Unfair Advantage

On November 22, 2021, after repeated requests as to whether the Government Parties were communicating with the Defendant about Dr. Cheongsiatmoy's *qui tam* claims, AUSA Kortum informed Ms. Chang and Mr. Rushovich that the United States had provided a copy of the operative Fourth Amended; yet, the United States refused to address the "extent to which any of the complaints filed in this action were disclosed to U.S.C." (Chang Decl., ¶ 14.)

AUSA Kortum justified the United States' disclosure of the Complaint to USC on the basis of the Court's June 23, 2020 Order Partially Lifting Seal permitting the United States, in its discretion, to disclose allegations in the Complaint to the Defendant. (Chang Decl., ¶ 14.) AUSA Kortum further admitted in his November 22, 2021 email that "based on U.S.C.'s voluntary disclosure [Exhibit 89], the United States has deferred issuing Civil Investigative Demands or conducting witness interviews; if negotiations with U.S.C. are unsuccessful we'll revisit the issue of the extent to which further investigative activity is appropriate." (Chang Decl., ¶ 14.)

On December 6, 2021, on a telephonic conference call attended by all Government Parties, the United States finally admitted to Ms. Chang and Mr. Rushovich that: (a) No participating government entity conducted any witness interviews and no government entity requested and/or obtained from USC the witness interviews which formed the basis of USC's Disclosure. (b) The United States disclosed to USC a copy of the original Complaint without exhibits on November 23, 2020. (c) The United States disclosed to USC a copy of Exhibit 4 to the Complaint in response to USC counsel's statement that "As part of our audit and investigation, we have found no evidence that USC falsely certified to LA County on a claim using CPT Code 95940, or

that USC submitted any claim to the county." (d) The United States disclosed to USC a copy of the Fourth Amended Complaint without exhibits to defense counsel on October 27, 2021. (Chang Decl., ¶ 15.)

On December 15, 2021 and again December 16, 2021, Ms. Chang raised concerns that the United States sought to settle with Defendant despite the United States' admission that the United States had not disclosed the exhibits to the Complaint to Defendant. (Chang Decl., ¶ 16.).

Even worse, on December 17, 2021, the United States admitted that "the United States hasn't had an opportunity to conduct a complete review of [the exhibits to the Complaint]" even though Ms. Chang sent the unredacted version of the most of exhibits to the Complaint to all participating government entities in March 2021. (Chang Decl., ¶ 17.)

On December 20, 2021, AUSA Kortum stated that it was the United States' position that disclosure of the exhibits to the Complaint to USC "wouldn't advice [sic] the progress of this case in any meaningful way." (Chang Decl., ¶ 19.)

On December 21, 2021, in response to the United States' position that disclosure of the exhibits to USC "wouldn't advice [sic] the progress of this case in any meaningful way," Ms. Chang wrote all participating government entities reiterating that "the exhibits to the Complaint demonstrate that USC's disclosures were made in bad faith; therefore, the United States' ongoing refusal to disclose the exhibits to the Complaint to USC is preventing discussions with USC regarding the fraudulent nature of its Non-Confidential Voluntary Self-Disclosure. The United States' use of the seal is therefore preventing resolution of the case and causing significant prejudice to Dr. Cheongsiatmoy's ability to resolve his claims." (Chang Decl., ¶ 20.)

On December 23, 2021, the United States finally disclosed all 150 exhibits to the Complaint to USC, 7 days prior to the end of the seal period; yet as of December 28, 2021, just 2 days prior to the end of the seal period, AUSA Kortum still has not

responded to confirm Defendant's December 23, 2021 request to "confirm that relator has authorization under a Court order to share these exhibits and the complaint with Los Angeles County" to allow for good faith discussions. (Chang Decl., ¶ 28)

### E. State of California's Use of Seal to Give Defendant Unfair Advantage

The State of California issued the sole investigative subpoena in this case. (Chang Decl., ¶ 23.) This statement is also supported by USC's Disclosure that it "has not received any notice from any federal health care program or agency that Keck Medicine of USC is under investigation for IONM claims to any such program." Exhibit 89 at 4.

USC's Disclosure incorporates by reference the State of California's November 1, 2018 subpoena (Exhibit 89); yet for over 2 years, the State of California has refused to address the extent to which the State of California changed the "parameters of what USC agreed to produce" in light of USC's Disclosure which intentionally omitted any reference to the fraud USC committed at USC Keck Hospital and Los Angeles County+USC Medical Center. (Chang Decl., ¶ 23.)

Irreparable injury to current and future parties of interest caused by the State of California's deletion of evidence from Defendant's document production needs to be addressed before this case unseals. The State of California admitted that in November 2020, it instructed the deletion of 217 documents produced by USC when it ordered eDiscovery vendor Elevate to "remove entirely with no backup" these 217 documents including "document native, images, searchable text and all coding related [information]" from Elevate's server. (Chang Decl., ¶¶13, 24-25.)

The State of California's explanations for its deletion of evidence were outlined in Mr. Neumeister's November 8, 2021 email ("Due to CDI's expiring contract with Elevate Services, CDI had to remove and transfer documents being held and serviced by Elevate Services") and again in Mr. Neumeister's December 21, 2021 letter ("documents [were] deleted from an eDiscovery vendor, which was requested by me per a contractual and budgeting issue…"). (Chang Decl., ¶ 13.) However, Mr. Neumeister's

explanations are not consistent with the written communications between him and Elevate which show that Mr. Neumeister gave Elevate a completely different explanation for the deletion of the documents which the State of California ordered deleted "without backup" because "[the documents] have PHI on it." (Chang Decl., ¶ 25.)

The basis for Mr. Neumeister's explanation to Elevate (which again, is a completely different explanation from the one Mr. Neumeister provided to all participating Government entities on November 8, 2021 and December 21, 2021) is not warranted in light of the fact thousands of the remaining files in the database "had PHI on it." (Chang Decl., ¶ 25.) Yet, the State of California still "ask[ed] that Elevate transfer the remaining docs to [a non-government] entity" -- former Relator's counsel Cotchett, Pitre & McCarthy -- a transfer the State of California specifically ordered to occur only after hundreds of documents were deleted from the database USC produced in response the sole investigative subpoena issued in this case. (Chang Decl., ¶ 25.)

The transfer of Defendant's document production to Relator's counsel by the State of California in an ongoing matter should never have occurred absent a Court-approved resolution. The spoliation of evidence by the State of California and its order to transfer that spoliated evidence to a non-government entity, former Relator's counsel, should never have occurred under any circumstances.

### F. Los Angeles County's Use of Seal to Give Itself Unfair Advantage

Since the filing of the *qui tam* action, Los Angeles County has repeatedly ignored Relator's repeated requests to participate in the investigation and has refused to allow access to its records to investigate the false claims at Los Angeles County+USC Medical Center, the hospital Los Angeles County owns and operates. (Chang Decl., ¶5.)

Instead, after Los Angeles County was made aware through the unredacted exhibits to the original *qui tam* Complaint that surgeries at Los Angeles County+USC

11
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION
FOR HEARING AND DISCLOSURES PRIOR TO UNSEALING

Medical Center were not performed by USC teaching surgeons, Los Angeles County "…added new [USC] neurosurgical attending coverage" at Los Angeles County+USC Medical Center.  Exhibit 49 at 3.  The new [USC] neurosurgical attending coverage was ordered by the Los Angeles County Board of Supervisors pursuant to the Medical School Operating Agreement (MSOA)/Medical School Affiliation Agreement (MSAA)/Professional Services Agreement (PSA) contracts between Los Angeles County and USC as described in the Complaint.

On February 25, 2021, USC Counsel admitted to the United States: "we have found no evidence that USC falsely certified to LA County on a claim using CPT Code 95940, or that USC submitted any claim to the county." (Chang Decl., ¶ 6.) This written position of USC is directly contradicted by the evidence contained within the video lodged with the Court as Exhibit 150 – the same video that Relators gave to all participating government entities in April 2021.

On July 1, 2021, nearly 3 years after the *qui tam* was filed, Los Angeles County wrote: "Our documentation shows that [Los Angeles County] already declined to intervene in this action." (Chang Decl., ¶ 8.) Relator continues to be unaware of documentation to support Los Angeles County's statement of declination, and Los Angeles County has refused to provide this documentation, despite multiple requests from July 2, 2021 through December 24, 2021. (Chang Decl., ¶¶ 8, 29.)

### G. Statements of Opposition

On December 20, 2021, the United States advised that it intends to oppose any *ex parte* application and asked Ms. Chang to attach "Document2" informing the Court of the United States' opposition to the *ex parte* application. (Chang Decl., ¶ 19.)

On December 22, 2021, Ms. Chang informed all Government Parties that the "Document2" which the United States asked Ms. Chang to submit to the Court contains significant misrepresentations of communications which occurred between counsel. (Chang Decl., ¶ 26.)

After Ms. Chang compared the true and correct copy of the November 26, 2021 email against the forged version contained within AUSA Kortum's "Document2" which AUSA Kortum instructed Ms. Chang to submit to the Court, Ms. Chang informed all Government Parties that significant portions of the true and correct communications were deleted, including AUSA Kortum's deletion of "<u>conditions that Mr. Wilbanks set forth</u>" as the reason why the Government Parties had not responded to multiple requests from Ms. Chang and Mr. Rushovich to meet and confer. (Chang Decl., ¶ 26.) After Ms. Chang informed AUSA Kortum that the "Document2" he instructed her to submit to the Court contained misrepresentations, AUSA Kortum did not respond. (Chang Decl., ¶ 26.)

On December 21, 2021, the United States wrote that it further intended to oppose any *ex parte* application because it had received authorization to file with the Court a "Notice of Non-Decision" because "the United States won't have received enough evidence to make an informed decision regarding intervention." (Chang Decl., ¶ 21.)

The United States made this December 21, 2021 statement despite the admissions it made on its October 1, 2021 "Call with DOJ" wherein the United States told Dr. Cheongsiatmoy and his counsel that "[the DOJ has] not been asking [Los Angeles County] for documents and [the DOJ has] not asked to look at their files." (Chang Decl., ¶ 12.) These admissions directly contradict Relator's guidance outlined in the November 27, 2018 to the United States and the State of California wherein Relator advised the government of key subpoena categories. (Chang Decl., ¶ 2.) Finally, on the December 6, 2021 teleconference, all participating government entities confirmed that no participating government entity conducted any witness interviews and no government entity requested and/or obtained from USC the witness interviews which formed the basis of USC's Disclosure. (Chang Decl., ¶ 15.)

There are 150 exhibits to the Complaint and Relators provided over 270 documents containing Relator's guidance for the government investigation, including

13
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR HEARING AND DISCLOSURES PRIOR TO UNSEALING

schematics and details of the false claims totaling hundreds of millions of dollars at USC Keck Hospital and Los Angeles County+USC Medical Center combined. (Chang Decl., ¶ 30.)

On December 21, 2021, the State of California advised that it intends to oppose any *ex parte* application and asked Ms. Chang to attach its December 21, 2021 letter as the State of California's statement of opposition to the *ex parte* application. (Chang Decl., ¶ 22.)

The State of California has continued to refuse to disclose logs of evidence State of California instructed deleted and/or replaced from any datasets USC produced in this case. The State of California admitted to ordering the deletion of 217 documents produced by USC which were "remove[d] entirely with no backup" including "document native, images, searchable text and all coding related [information]" from the database of its eDiscovery vendor. (Chang Decl., ¶ 25.)

The State of California has also refused to provide information regarding any change in the parameters of the November 1, 2018 subpoena it issued in this case. After the State of California was advised that this would be included in the *ex parte* application, the State of California wrote in its December 21, 2021 response that it is "not sure what is meant by 'parameters' and [is] unable to fully respond." (Chang Decl., ¶ 23.)

On December 20, 2021 and again on December 24, 2021, Ms. Chang called Los Angeles County to notify it of Plaintiff-Relator's intent to file this *ex parte* application and the information contained herein. (Chang Decl., ¶¶ 18, 29.) Los Angeles County did not respond to any efforts to meet and confer and did not object to the filing of this *ex parte* application.

On December 22, 2021, Ms. Chang called and emailed Wilbanks & Gouinlock to notify it of Dr. Cheongsiatmoy's intent to file this *ex parte* application regarding Wilbanks & Gouinlock's continued failure to provide Dr. Cheongsiatmoy his client file

despite his instructions on November 26, 2021 and again on December 20, 2021 to email him all communications Wilbanks & Gouinlock received or submitted in this case; Wilbanks & Gouinlock has not indicated whether it intends to oppose this *ex parte* application. (Chang Decl., ¶ 27.)

On December 28, 2021, Ms. Chang and Mr. Rushovich attended a teleconference at the request of defense counsel, Mark Hardiman who admitted that USC made disclosures on or about August 2021 refunding $75,949 to Medicare, Medi-Cal or other government programs and $297,778 to commercial plans for CPT 95940 for Keck Hospital only (not Los Angeles+USC Medical Center); after defense counsel confirmed the December 6, 2021 attestations of the Government Parties that the disclosures were not made through the Government Parties (Chang Decl., ¶ 15.); Ms. Chang immediately called and emailed Mr. Wilbanks to inform him that it was urgent that he provide all communications his firm had with any party including USC counsel as Dr. Cheongsiatmoy was never informed of any disclosures from Defendant other than the March 27, 2020 USC Disclosure to the United States refunding $79,405 and $89,223 and the disclosure Defendant made to California Department of Insurance in August 2020 refunding $316,544; as a Plaintiff-Relator with his own individual claims, Dr. Cheongsiatmoy should have had the opportunity to review and rebut any disclosures at the time they were made by Defendant. (Chang Decl., ¶ 30)

## II. LEGAL STANDARD

"By providing for the seal provision, Congress intended to strike a balance between 'the purposes of *qui tam* actions [and] ... law enforcement needs [.]' The purpose of *qui tam* actions is to encourage more private false claims litigation. The other side of the balance recognizes the need to allow the Government an adequate opportunity to fully evaluate the private enforcement suit without tipping off the target to determine whether it is in the Government's interest to intervene and take over the civil action. The seal

provision provides an appropriate balance between these two purposes by allowing the *qui tam* relator to start the judicial wheels in motion and protect his litigative rights, while allowing the government the opportunity to study and evaluate the relator's information for possible intervention in the *qui tam* action or in relation to an overlapping criminal investigation." *U.S. ex. rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 245 (9th Cir. 1995).

The False Claims Act imposes on the government a duty to establish "good cause" in support of a request for extension of the seal period under 31 U.S.C. §3730(b)(3). Indeed, Courts have found that the Government's interest in communicating with Defendant regarding settlement does not constitute "good cause" to justify a False Claims Act seal and such settlement communications during the seal investigation period "directly undermine a primary reason for sealing *qui tam* actions generally. *See Id; U.S. ex rel. Martin v. Life Care Centers of America, Inc.*, 912 F.Supp. 2d 618, 624 (E.D. Tenn. 2012).

A party seeking *ex parte* relief must establish why a motion cannot be calendared in a regular manner; that they will be irreparably prejudiced if the motion is heard in accord with regular procedures; and that the requesting party is without fault in creating the crisis that requires *ex parte* relief or that the crisis was due to excusable neglect. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). "*Ex parte* applications are not intended to save the day for parties who have failed to present requests when they should have . . . ." In re Intermagnetics Am., Inc., 101 B.R. 191, 193 (C.D. Cal 1989).

### III. ARGUMENT

The purpose of the False Claims Act seal is to allow the Government an "adequate opportunity to fully evaluate" a Plaintiff-Relator's *qui tam* allegations – it is not to allow the Government to use the seal to give the Defendant an unfair advantage outside the purview of the Relators and with prejudice to the Plaintiff-Relator's individual claims

based on the same facts. *See U.S. ex. rel. Lujan*, 67 F.3d at 245; *U.S. ex rel. Martin*, 912 F.Supp. at 624.

The Court issued the June 23, 2020 Order Partially Lifting Seal which afforded the United States the right, in its discretion, to disclose allegations and Complaints (and amendments thereto) to Defendant. The reasoning behind such permitted disclosure was to "help expedite the conclusion of the Governments' investigation and the resolution of this *qui tam* action." Contrary to the purpose of the seal and contrary to the purpose of Court's partial unsealing order, the Government Parties used the June 23, 2020 Order Partially Lifting Seal to give the Defendant an unfair advantage at the expense of the whistleblower, Dr. Cheongsiatmoy. The Government's actions in this case has caused ongoing and substantial prejudice to Plaintiff-Relator both as a *qui tam* Plaintiff and also as a Plaintiff with his own individual employment claims that are based on the same nucleus of facts.

To the extent the Government Parties argue that Relator consented to any partial lift of the seal to disclose his allegations to the Defendant, all participating government entities were made aware in writing in April 2021 that Relator IONM did not consent to a partial unsealing of the Complaint based on the fraudulent nature of the USC Disclosure which intentionally omitted any reference to the significant fraud which occurred at the hospitals, namely USC Keck Hospital and Los Angeles County+USC Medical Center.

Further, at the time that the June 23, 2020 Order Partially Lifting Seal was issued, Relator's claims were limited to *qui tam* claims on behalf of the Government Parties. On May 5, 2021, the operative Complaint in this case was amended to add Plaintiff's individual employment claims. Once Dr. Cheongsiatmoy became a Plaintiff in his own right and a party of interest in this case, the United States had a duty to use its discretion in executing the June 23, 2020 Order Partially Lifting Seal to ensure that Dr. Cheongsiatmoy's individual claims were not subsumed by the Government Parties' interests.

It was not the Congressional intent for the Government to use the seal to give the Defendant an unfair advantage at the expense of the very Plaintiff who blew the whistle. The *qui tam* "seal" provision was added to the False Claims Act to encourage – not discourage -- more whistleblowers from reporting wrongdoing. It is against public policy for the Government Parties to use the seal to give the Defendant an unfair advantage at the expense of the whistleblower, Dr. Cheongsiatmoy; the prejudice caused by the Government Parties' actions during the seal period needs to be addressed in a hearing with the Court prior to any unsealing of this case.

### IV. CONCLUSION

For all of the foregoing reasons, Dr. Cheongsiatmoy respectfully requests that the Court order a hearing and the requested disclosures prior to unsealing the case.

Dated: December 28, 2021

ALICE CHANG
/s/ Alice Chang
Attorneys for Relator and Plaintiff-Relator