ALICE CHANG (SBN 239761)
alicechangjdmba@gmail.com
1301 Kenwood Road, Unit 159B
Seal Beach, CA 90740
Telephone: (714) 507-6161

ELIOT J. RUSHOVICH (SBN 252343)
eliot@riselawfirm.com
RISE LAW FIRM, PC
8383 Wilshire Boulevard, Suite 315
Beverly Hills, CA 90211
Telephone: (310) 728-6588

*Attorneys for Relator and Plaintiff-Relator*

```
                       FILED
               CLERK, U.S. DISTRICT COURT

                     1/5/22

               CENTRAL DISTRICT OF CALIFORNIA
               BY:        SE        DEPUTY
```

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **[UNDER SEAL]**, | CASE NO. CV 18-08311-ODW (AS) |
| | DECLARATION OF ALICE CHANG WITH EXHIBITS IN SUPPORT OF *EX PARTE* APPLICATION FOR HEARING AND DISCLOSURES PRIOR TO UNSEALING |
| Plaintiffs, | |
| v. | **[FILED UNDER SEAL PURSUANT TO THE FALSE CLAIMS ACT, 31 U.S.C. §§ 3730(b)(2)]** |
| **[UNDER SEAL]**, | [FILED/LODGED CONCURRENTLY UNDER SEAL: *EX PARTE* APPLICATION FOR HEARING AND DISCLOSURES PRIOR TO UNSEALING; [PROPOSED] ORDER] |
| Defendants. | |

**[FILED IN CAMERA AND UNDER SEAL
PURSUANT TO 31 U.S.C. § 3730(b)(2)]**

DECLARATION OF ALICE CHANG IN SUPPORT OF *EX PARTE* APPLICATION FOR HEARING
AND DISCLOSURES PRIOR TO UNSEALING

ALICE CHANG (SBN 239761)
alicechangjdmba@gmail.com
1301 Kenwood Road, Unit 159B
Seal Beach, CA 90740
Telephone: (714) 507-6161

ELIOT J. RUSHOVICH (SBN 252343)
eliot@riselawfirm.com
RISE LAW FIRM, PC
8383 Wilshire Boulevard, Suite 315
Beverly Hills, CA 90211
Telephone: (310) 728-6588

*Attorneys for Relator and Plaintiff-Relator*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. IONM LLC, a Delaware corporation and ex rel. JUSTIN CHEONGSIATMOY, M.D.; STATE OF CALIFORNIA ex rel. IONM LLC, a Delaware corporation and ex rel. JUSTIN CHEONGSIATMOY, M.D; LOS ANGELES COUNTY ex rel. IONM LLC, a Delaware corporation and ex rel. JUSTIN CHEONGSIATMOY, M.D.; and JUSTIN CHEONGSIATMOY, M.D., in his individual capacity, <br><br> Plaintiffs, <br><br> vs. <br><br> UNIVERSITY OF SOUTHERN CALIFORNIA, a California corporation; <br><br> and <br><br> USC CARE MEDICAL GROUP, INC., a California corporation, <br><br> Defendants. | CASE NO. CV 18-08311-ODW (AS) <br><br> DECLARATION OF ALICE CHANG WITH EXHIBITS IN SUPPORT OF *EX PARTE* APPLICATION FOR HEARING AND DISCLOSURES PRIOR TO UNSEALING <br><br> **[FILED UNDER SEAL PURSUANT TO THE FALSE CLAIMS ACT, 31 U.S.C. §§ 3730(b)(2)]** <br><br> [FILED/LODGED CONCURRENTLY UNDER SEAL: *EX PARTE* APPLICATION FOR HEARING AND DISCLOSURES PRIOR TO UNSEALING; [PROPOSED] ORDER] |

## __DECLARATION OF ALICE CHANG__

I, Alice Chang, declare as follows:

6

1.     I am an attorney duly licensed to practice before the Central District of California.  I am counsel of record for Relator IONM LLC and Plaintiff-Relator Dr. Justin Cheongsiatmoy in this action.  I submit this supplemental declaration in support of *Ex Parte* Application for a Hearing and Disclosures Prior to Unsealing.  I have personal knowledge of all matters set forth herein and, if called to testify thereto, could and would competently do so.

2.     On November 27, 2018, Relator provided written guidance of key subpoena categories to the United States and the State of California. A true and correct copy of these communications is attached hereto as Exhibit G at 95-100.

3.     On December 17, 2020, I was included in a communication wherein Relator responded to Cotchett, Pitre & McCarthy, LLP ("former counsel")'s intent to withdraw and request to consent to a seal extension by stating that Relator had never been requested to approve or consent to anything related to the seal in this case and Relator needed advice of counsel to understand the reasons for the seal extension and ramifications to Relator; former counsel did respond not respond the Relator's request for clarification.

4.     On December 18, 2020, former counsel instructed the United States in writing to "file the [seal extension] application with the court and indicate Relator has not responded." A true and correct copy of these communications is attached hereto as Exhibit F at 117.

5.     Since January 2021, Los Angeles County has repeatedly ignored Relator's repeated requests to participate in the investigation and has not allowed access to its records to investigate the false claims at Los Angeles County+USC Medical Center, the hospital Los Angeles County owns and operates.  A true and correct copy of these communications is attached hereto as Exhibit F at 10.

6.     On February 25, 2021, USC Counsel admitted in writing to the United States that: "we have found no evidence that USC falsely certified to LA County on a claim

DECLARATION OF ALICE CHANG IN SUPPORT OF *EX PARTE* APPLICATION FOR HEARING AND DISCLOSURES PRIOR TO UNSEALING

using CPT Code 95940, or that USC submitted any claim to the county." A true and correct copy of these communications is attached hereto as Exhibit D.

7.      On April 22, 2021, I emailed all participating government entities reiterating that Relator did not consent to the partial unsealing of the Complaint to disclose his allegations to the Defendant. A true and correct copy of these communications is attached hereto as Exhibit I at 4.

8.      On July 1, 2021, I received written notification that Los Angeles County had "documentation" showing that it "already declined to intervene in this action;" however, when I responded in writing on July 2, 2021 to request all participating government entities "send me any records you have related to this issue," I received no response.  A true and correct copy of these communications is attached hereto as Exhibits A and O.

9.      On July 9, 2021 I was copied on a letter Mr. Rushovich emailed to all participating government entities containing Dr. Cheongsiatmoy's work product for the Third Amended Complaint (TAC) with the primary theory of false claims liability identified as services not rendered by USC surgeons and USC neurologists; I was also copied on AUSA Kortum's email "in response to [Mr. Rushovich's] 7/9 letter," stating AUSA Kortum had left Mr. Rushovich a voicemail requesting to speak with Dr. Cheongsiatmoy's counsel.

10.      On a July 13, 2021 telephonic conference, AUSA Kortum expressly instructed Mr. Rushovich and me that, due to the seal order, we were not permitted to have any contact with the Defendant *at all* regarding this case -- whether with regard to Dr. Cheongsiatmoy's *qui tam* or with regard to Dr. Cheongsiatmoy's individual claims -- until AUSA Kortum officially notified Mr. Rushovich and me that the Government had completed its investigation and was ready to disclose to USC a copy of the Complaint containing Dr. Cheongsiatmoy's allegations.

11.      On a September 30, 2021, I emailed all participating government entities Dr. Cheongsiatmoy's work product for the Fourth Amended Complaint (4AC) with the

DECLARATION OF ALICE CHANG IN SUPPORT OF *EX PARTE* APPLICATION FOR HEARING AND DISCLOSURES PRIOR TO UNSEALING

primary theory of liability and damages arising from services not rendered by USC surgeons and USC neurologists.

12.    On the October 1, 2021 "Call with DOJ [Department of Justice]" AUSA Kortum requested Dr. Cheongsiatmoy personally attend, the United States expressly instructed Dr. Cheongsiatmoy and his counsel not to communicate with participating government entity, Los Angeles County; when I asked AUSA Kortum to clarify if the United States was instructing Dr. Cheongsiatmoy's counsel not to contact Los Angeles County about the investigation -- ***or at all*** -- AUSA Kortum answered definitively: "Do not contact the County about any aspect of this case."  The United States further told Dr. Cheongsiatmoy and his counsel that "[the DOJ has] not been asking [Los Angeles County] for documents and [the DOJ has] not asked to look at their files." A true and correct copy of these communications referencing this call is attached hereto as Exhibit F at 5, 9, 18-19, 22-24.

13.    On November 8, 2021, the State of California admitted that it deleted 217 documents from USC's document production in November 2020 with the explanation that "Due to CDI's expiring contract with Elevate Services, CDI had to remove and transfer documents being held and serviced by Elevate Services". A true and correct copy of these communications is attached hereto as Exhibit K at 4.

14.    On November 22, 2021, after repeated requests from Mr. Rushovich and me as to whether Government Parties were communicating with the Defendant about Dr. Cheongsiatmoy's *qui tam* claims, AUSA Kortum emailed that the United States had provided a copy of the operative Fourth Amended Complaint; however, the United States refused to address the "extent to which any of the complaints filed in this action were disclosed to U.S.C." and justified the United States' disclosure of the Complaint to USC on the basis of the Court's June 23, 2020 Order Partially Lifting Seal permitting the United States, in its discretion, to disclose allegations in the Complaint to the Defendant. In this email, AUSA Kortum further admitted in writing that, "based on U.S.C.'s

DECLARATION OF ALICE CHANG IN SUPPORT OF *EX PARTE* APPLICATION FOR HEARING AND DISCLOSURES PRIOR TO UNSEALING

voluntary disclosure [Exhibit 89], the United States has deferred issuing Civil Investigative Demands or conducting witness interviews; if negotiations with U.S.C. are unsuccessful we'll revisit the issue of the extent to which further investigative activity is appropriate." A true and correct copy of AUSA's November 22, 2021 email is attached hereto Exhibit F at 28-29.

15.    On December 6, 2021, on a telephonic conference call attended by the Government Parties, Mr. Rushovich and me, the Government admitted that:

(a)  No participating government entity conducted any witness interviews and no government entity requested and/or obtained from USC the witness interviews which formed the basis of USC's Disclosure. A true and correct copy of these communications is attached hereto as Exhibit B.

(b) The United States disclosed to USC a copy of the original Complaint without exhibits on November 23, 2020. A true and correct copy of these communications is attached hereto as Exhibit C.

(c) The United States disclosed to USC a copy of Exhibit 4 to the Complaint in response to USC counsel's statement that "As part of our audit and investigation, we have found no evidence that USC falsely certified to LA County on a claim using CPT Code 95940, or that USC submitted any claim to the county." A true and correct copy of these communications is attached hereto as Exhibit D.

(d) The United States disclosed to USC a copy of the Fourth Amended Complaint without exhibits to defense counsel on October 27, 2021. A true and correct copy of these communications is attached hereto as Exhibit E.

16.    On December 15, 2021 and again on December 16, 2021, I raised concerns that the United States sought to settle with Defendant despite the United States' admission that the United States had not disclosed the exhibits to the Complaint to Defendant.  A true and correct copy of these communications is attached hereto as Exhibit G.

DECLARATION OF ALICE CHANG IN SUPPORT OF *EX PARTE* APPLICATION FOR HEARING AND DISCLOSURES PRIOR TO UNSEALING

17.   On December 17, 2021, the United States admitted that "the United States hasn't had an opportunity to conduct a complete review of [the exhibits to the Complaint]." A true and correct copy of these communications is attached hereto as Exhibit G.

18.   On December 20, 2021, Mr. Rushovich and I called Los Angeles County to notify it of Dr. Cheongsatmoy's intent to file this *ex parte* application.  Los Angeles County did not respond to any efforts to meet and confer and did not indicate that it intends to oppose this *ex parte* application. A true and correct copy of these communications is attached hereto as Exhibit G.

19.   On December 20, 2021, the United States advised that it intends to oppose the *ex parte* application and asked Ms. Chang to attach "Document2" informing the Court of the United States' opposition to the *ex parte* application, further stating that it was the United States' position that disclosure of the exhibits to the Complaint to USC "wouldn't advice [sic] the progress of this case in any meaningful way." A true and correct copy of these communications is attached hereto as Exhibit H.

20.   On December 21, 2021, in response to the United States' position that disclosure of the exhibits to USC "wouldn't advice [sic] the progress of this case in any meaningful way," I wrote all participating government entities reiterating that "the exhibits to the Complaint demonstrate that USC's disclosures were made in bad faith; therefore, the United States' ongoing refusal to disclose the exhibits to the Complaint to USC is preventing discussions with USC regarding the fraudulent nature of its Non-Confidential Voluntary Self-Disclosure. The United States' use of the seal is therefore preventing resolution of the case and causing significant prejudice to Dr. Cheongsiatmoy's ability to resolve his claims." A true and correct copy of these communications is attached hereto as Exhibit I.

21.   On December 21, 2021, the United States wrote that it further intended to oppose any *ex parte* application on the ground that it had received authorization to file

DECLARATION OF ALICE CHANG IN SUPPORT OF *EX PARTE* APPLICATION FOR HEARING AND DISCLOSURES PRIOR TO UNSEALING

with the Court a "Notice of Non-Decision" because "the United States won't have received enough evidence to make an informed decision regarding intervention." A true and correct copy of these communications is attached hereto as Exhibit J.

22.   On December 21, 2021, the State of California advised that it intended to oppose any *ex parte* application and asked I attach its December 21, 2021 letter as the State of California's statement of opposition to the *ex parte* application.   A true and correct copy of these communications is attached hereto as Exhibit K.

23.   On December 21, 2021, the State of California through the Department of Insurance responded to Relator's repeated requests to clarify "parameters of what USC agreed to produce" in response "to the sole investigative subpoena issued by the State of California" stating that the State of California was "unable to fully respond" because it was "not sure what is meant by parameters." A true and correct copy of these communications is attached hereto as Exhibit K and Exhibit L at 2, 9.

24.   On December 21, 2021, the State of California again admitted that it deleted 217 documents from USC's document production in November 2020 with the explanation that "documents [were] deleted from an eDiscovery vendor [Elevate], which was requested by [the State of California] per a contractual and budgeting issue…"   A true and correct copy of these communications is attached hereto as Exhibit K.

25.   On December 21, 2021, I emailed all Government Parties with November 2020 email communications between the State of California and eDiscovery vendor Elevate wherein the State of California instructed the deletion of 217 documents produced by USC from its eDiscovery vendor Elevate to "remove entirely with no backup" these documents including "document native, images, searchable text and all coding related [information]" because "[the documents] have PHI on it." I further informed all Government Parties that my review of USC's document production which the State of California instructed transferred to a non-government entity -- former Relator's counsel,

DECLARATION OF ALICE CHANG IN SUPPORT OF *EX PARTE* APPLICATION FOR HEARING AND DISCLOSURES PRIOR TO UNSEALING

Cotchett, Pitre & McCarthy -- showed that thousands of documents "had PHI on it." A true and correct copy of these communications is attached hereto as Exhibit L.

26. On December 22, 2021, I informed all Government Parties that after I compared the true and correct copy of the November 26, 2021 email against the forged version contained within AUSA Kortum's "Document2" which AUSA Kortum instructed I submit to the Court, I noted significant misrepresentations of communications between counsel, including AUSA Kortum's deletion of "conditions that Mr. Wilbanks set forth" which AUSA Kortum cited as the reason the Government Parties had not responded to multiple requests from Mr. Rushovich and me to meet and confer. A true and correct copy of these communications is attached hereto as Exhibit M.

27. On December 22, 2021, I called and emailed Wilbanks & Gouinlock to notify it of Dr. Cheongsiatmoy's intent to file this *ex parte* application due to Wilbanks & Gouinlock's continued failure to provide Dr. Cheongsiatmoy his client file despite his instructions on November 26, 2021 and again on December 20, 2021 to email him all communications Wilbanks & Gouinlock received or submitted in this case; Wilbanks & Gouinlock did not indicate that it intends to oppose this *ex parte* application. A true and correct copy of these communications is attached hereto as Exhibit P, Q and R.

28. On December 23, 2021, the United States finally disclosed all 150 exhibits to the Complaint to Defendant, 7 days prior to the end of the current seal period and nearly 2 months after disclosing the Complaint without exhibits to Defendant; I immediately replied all to set up a meeting with USC counsel and Los Angeles County counsel to discuss the exhibits but instead received an email from Defendant asking AUSA Kortum to "confirm that relator has authorization under a Court order to share these exhibits and the complaint with Los Angeles County." To date, AUSA Kortum has not replied. A true and correct copy of these communications is attached hereto as Exhibit N.

29. On December 24, 2021, I called Los Angeles County again to reiterate Dr. Cheongsatmoy's intent to file this *ex parte* application. Los Angeles County did not

DECLARATION OF ALICE CHANG IN SUPPORT OF *EX PARTE* APPLICATION FOR HEARING AND DISCLOSURES PRIOR TO UNSEALING

respond to any efforts to meet and confer and did not indicate that it intends to oppose this *ex parte* application. A true and correct copy of these communications is attached hereto as Exhibit O.

30.    On December 28, 2021, Mr. Rushovich and I attended a telephone conference with defense counsel, Mr. Hardiman who admitted that USC made disclosures on or about August 2021 refunding $75,949 to Medicare, Medi-Cal or other government programs and $297,778 to commercial plans for CPT 95940 for Keck Hospital only (not Los Angeles+USC Medical Center) and confirmed the December 6, 2021 attestations of the Government Parties that the disclosures were not made through "Frank [Kortum], Mitch [Neumeister] or John [Fisher]."   I then immediately called and emailed Mr. Wilbanks to inform him that I urgently needed all communications his firm had with any party including USC counsel as Dr. Cheongsiatmoy was only informed of the March 27, 2020 the USC Disclosure to the United States refunding $79,405 and $89,223 and the disclosure Defendant made to California Department of Insurance in August 2020 refunding $316,544; it was not until December 28, 2021 that Dr. Cheongsiatmoy became aware for the first time of the additional disclosures Defendant made on or around August 2021 in the amounts of $75,949 the Medicare, Medi-Cal or other government programs and  $297,778 to commercial plans for which Dr. Cheongsiatmoy was never given any opportunity to review or rebut. A true and correct copy of these communications is attached hereto as Exhibit S.

31.    To date, I have sent over 270 documents to all participating government entities with Relator's guidance for the government investigation, including schematics and details of the false claims totaling hundreds of millions of dollars at USC Keck Hospital and Los Angeles County+USC Medical Center combined.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.  Executed this 28th Day of December, 2021 in Seal Beach, California.

DECLARATION OF ALICE CHANG IN SUPPORT OF *EX PARTE* APPLICATION FOR HEARING AND DISCLOSURES PRIOR TO UNSEALING

1

2

3                                                           /s/ Alice Chang

4                                                           ALICE CHANG

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ALICE CHANG IN SUPPORT OF *EX PARTE* APPLICATION FOR HEARING AND DISCLOSURES PRIOR TO UNSEALING

# Exhibit A

From: **Alice Chang JDMBA** <alicechangjdmba@gmail.com>
Date: Fri, Jul 2, 2021 at 2:45 PM
Subject: FW: Cheongsiatmoy case under seal
To: Susan Gouinlock <ssg@wilbanksgouinlock.com>
Cc: Steven Frankland <sgfrankl@da.lacounty.gov>, Kortum, Frank (USACAC) <frank.kortum@usdoj.gov>, Marlan Wilbanks <mbw@wilbanksgouinlock.com>, John Fisher <John.Fisher@doj.ca.gov>, Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>


Frank, Steve, John and Mitch,

I received an email below stating that Los Angeles County has documentation that it has already declined to intervene in the qui tam case against USC.

I represent both Relator and Plaintiff-Relator, Dr. Cheongsiatmoy and need to be on all communications regarding this case.

Since I have no records showing any declination by Los Angeles County, please send me any records you have related to this issue.

 Thanks,
Alice Chang, JD/MBA

On Thursday, July 1, 2021, Susan Gouinlock <ssg@wilbanksgouinlock.com> wrote:
?

Susan S. Gouinlock, Esq.
Partner
**Wilbanks and Gouinlock, LLP**
One Ameris center
3490 Piedmont rd., NE
Suite 1010
Atlanta, GA 30345
(404) 842-1075
www.Wilbanksgouinlock.com

From: Marcia Daniel <mdaniel@da.lacounty.gov>
Sent: Thursday, July 1, 2021 7:05 PM
To: Susan Gouinlock <ssg@wilbanksgouinlock.com>
Subject: RE: Cheongsiatmoy case under seal

Ms. Gouinlock,
Our documentation shows that we already declined to intervene in this action so I did not see any reason to participate in the meeting.  If I am missing something please let me know.
Thanks so much,
Marcia Daniel


MARCIA DANIEL
ASSISTANT HEAD DEPUTY
Healthcare Fraud Division
211 W. Temple Street, Suite 1000
Los Angeles, CA 90012
Office:  213-257-2377
Main:   213-257-2350
mdaniel@da.lacounty.gov

# Exhibit B

**DATE:**     December 6, 2021 (*Delivered Via Electronic Mail*)

**FROM:**     Alice Chang, Esq.

**TO:**       Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal (frank.kortum@usdoj.gov)

              Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
              Los Angeles County District Attorney's Office (mbeaart@da.lacounty.gov)

              Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
              Los Angeles County District Attorney's Office (sgfrankl@da.lacounty.gov)

              John Fisher, Deputy Attorney General, California Department of Justice
              Office of the Attorney General, Bureau of Medi-Cal Fraud (John.Fisher@doj.ca.gov)

              Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
              Fraud Liaison Bureau (mitch.neumeister@insurance.ca.gov)

**CC:**       Eliot Rushovich, Esq. (eliot@riselawfirm.com)

**RE:**       CV 18-08311-ODW [UNDER SEAL]; U.S. ex rel. IONM LLC and Justin Cheongsiatmoy, M.D., et al. v. USC

---

I write to summarize the status of the items I requested on behalf of Relators and Plaintiff Justin Cheongsiatmoy, M.D. during our teleconference today which was attended by Mr. Rushovich, all participating government entities (AUSA Frank Kortum, DAG John Fisher, Head Deputy Steve Frankland, CDI False Claims Attorney Mitch Neumeister), and me.

Dr. Cheongsiatmoy continues to reserve his right to have the Court address on an ex parte basis, any improper use of the seal and any action(s) which may have been taken by any government entity to taint, delay or otherwise prejudice the claims of any current or future parties of interests.

Below is the summary of responses I received from all participating government entities collectively during or shortly after our conference call.

Please respond in writing no later than 12PM (noon) on Tuesday, December 8, 2021 if the responses below do not correctly summarize the status of the requested items.

**IN RESPONSE TO REQUEST #1**:  All true and correct communications with associated enclosure(s) from the United States to any defendant, disclosing any of Dr. Cheongsiatmoy's allegations made in his capacity as IONM LLC and/or Justin Cheongsiatmoy, M.D.

Following the above-referenced conference call today wherein AUSA Kortum confirmed that the United States has only provided defendants with the original complaint and the Fourth Amended Complaint (and not the Second Amended Complaint and Third Amended Complaint), the United States sent all parties true and correct communications showing that the only disclosures the United States has made to any defendant regarding any of Dr. Cheongsiatmoy's allegations made in his capacity as IONM LLC and/or Justin Cheongsiatmoy, M.D. are as set forth below:

    (a) November 23, 2020 email from AUSA Kortum to USC counsel with enclosed Order Partially Lifting Seal and Original Complaint (no exhibits or evidence were provided to USC counsel as to the allegations contained the original complaint)

    (b) February 26, 2021 email from AUSA Kortum to USC counsel with enclosed Exhibit 4 in response to the position of counsel for USC that *"As part of [USC's] audit and investigation, [defendants] have found no evidence that USC falsely certified to LA County on a claim using CPT Code 95940, or that USC submitted any claim to the county.  Since the Complaint identifies USC billing records relating to services performed at LAC+USC, we would like to see these records to determine if we need to do any follow up investigation."* This email from USC counsel was brought to the attention of Los Angeles County in my continued requests

Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal
Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
John Fisher, Deputy Attorney General, California Department of Justice
Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
December 6, 2021
Page 2 of 2

that Los Angeles County provide access to their files since Los Angeles County is the owner and custodian of Los Angeles County+USC Medical Center records.

(c) October 27, 2021 email from AUSA Kortum to USC counsel with enclosed unredacted copy of the Fourth Amended Complaint (no exhibits or evidence were provided to USC counsel as to the allegations contained the 4AC). AUSA Kortum made this disclosure to USC at 5:00PM, subsequent to the phone calls Mr. Rushovich and I made earlier that same day requesting to meet and confer with each entity – for which we received no response -- to the various issues outlined in my memos including removing the Stark/Kickback allegations given the fact that Mr. Wilbanks had been retained to address these specific allegations and had indicated his intent to withdraw on October 8, 2021.

**IN RESPONSE TO REQUEST #2:** All disclosures from any party regarding any of Dr. Cheongsiatmoy's allegations made in his capacity as IONM LLC and/or as Justin Cheongsiatmoy, M.D.

The participating government entities indicated that USC has only produced 2 Disclosures during the 3-year period wherein the case remained sealed: (1) March 27, 2020 Voluntary Self-Disclosure to OIG HHS (Exhibit 89), and (2) August 7, 2020 Settlement communication to California Department of Insurance

**IN RESPONSE TO REQUEST #3**: All settlement communications from any party since the first time any defendant received any disclosure(s) from the United States as to any of Dr. Cheongsiatmoy's allegations made in his capacity as IONM LLC and/or as Justin Cheongsiatmoy, M.D.

The participating government entities confirmed that other than the 2 Disclosures by USC referenced above, there have been no other substantive settlement communications with any defendant.

**IN RESPONSE TO REQUEST #4**: All witness interviews by any government entity or by any defendant including but not limited to the interviews referenced in USC's Voluntary Self Disclosure Exhibit 89 at 15 (interviews of Drs Gonzalez, Shilian, Chui, Nuwer, Lyn Ch[ew], and Grace Barba)

The participating government entities confirmed that they have conducted no witness interviews on their own and no government entity has requested and/or obtained from USC the witness interviews which formed the basis of USC's Voluntary Self Disclosure in Exhibit 89 at 15 (interviews of Drs. Gonzalez, Shilian, Chui, and Nuwer, as well as Lyn Ch[ew], and Grace Barba)

# Exhibit C

From: **Kortum, Frank (USACAC)** <Frank.Kortum@usdoj.gov>
Date: Mon, Dec 6, 2021 at 11:11 AM
Subject: U.S. et al. ex rel. IONM LLC v. University of Southern California, CV 18-08311-
ODW(ASx) (forwarding copy of message sent to counsel for USC on 11/23/20 (as
discussed))

To: Alice Chang JDMBA <alicechangjdmba@gmail.com>
Cc: Eliot Rushovich <eliot@riselawfirm.com>, John Fisher <John.Fisher@doj.ca.gov>,
Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>, Steven Frankland
<sgfrankl@da.lacounty.gov>


Ms. Chang,

As discussed during our phone call this morning, I'm forwarding a copy of a message I
sent to counsel for USC on 11/23/20.

Frank Kortum (cell 213.393.5512)

**From:** Kortum, Frank (USACAC)
**Sent:** Monday, November 23, 2020 1:37 PM
**To:** 'Jonathan Radke' <jradke@nelsonhardiman.com>
**Subject:** Regarding the USC IONM investigation, as discussed during our phone
conversation this morning I've attached a copy of . . .

. . . (1) the *qui tam* complaint filed in this action; and (2) an Order authorizing the limited
disclosure of the complaint.   If you have any questions about this message or the terms
of the Order please give me a call.

Frank Kortum (cell 213.393.5512)

# Exhibit D

From: **Kortum, Frank (USACAC)** <Frank.Kortum@usdoj.gov>
Date: Mon, Dec 6, 2021 at 11:16 AM
Subject: U.S. et al. ex rel. IONM LLC v. University of Southern California, CV 18-08311-ODW(ASx) (forwarding copy of message sent to counsel for USC on 2/26/21 (as discussed))
To: Alice Chang JDMBA <alicechangjdmba@gmail.com>
Cc: Eliot Rushovich <eliot@riselawfirm.com>, John Fisher <John.Fisher@doj.ca.gov>, Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>, Steven Frankland <sgfrankl@da.lacounty.gov>


Ms. Chang,

As discussed during our phone call this morning, I'm forwarding a copy of a message I sent to counsel for USC on 2/26/21.

Frank Kortum (cell 213.393.5512)

**From:** Kortum, Frank (USACAC) <FKortum@usa.doj.gov>
**Sent:** Friday, February 26, 2021 2:16 PM
**To:** Jonathan Radke <jradke@nelsonhardiman.com>
**Cc:** Mark Hardiman <mhardiman@nelsonhardiman.com>
**Subject:** RE: USC IONM Investigation (Exhibit 4)

It's attached

**From:** Jonathan Radke <jradke@nelsonhardiman.com>
**Sent:** Thursday, February 25, 2021 12:50 PM
**To:** Kortum, Frank (USACAC) <FKortum@usa.doj.gov>
**Cc:** Mark Hardiman <mhardiman@nelsonhardiman.com>
**Subject:** USC IONM Investigation

Hi Frank,

In anticipation of our meeting, could you provide us with a copy of Exhibit 4 to the Complaint?  As part of our audit and investigation, we have found no evidence that USC falsely certified to LA County on a claim using CPT Code 95940, or that USC submitted any claim to the county.  Since the Complaint identifies USC billing records relating to services performed at LAC+USC, we would like to see these records to determine if we need to do any follow up investigation.

Best,

Jonathan

**Jonathan Radke** | Partner
T 310.203.2802 | F 310.203.2727
jradke@nelsonhardiman.com


1100 Glendon Ave, 14th Floor | Los Angeles, CA 90024
www.nelsonhardiman.com

This message contains information that may be confidential and privileged. Unless you are the addressee (or authorized to receive e-mails for the addressee), you may not use, copy, or disclose to anyone this message or any information contained in this message. If you have received this message in error, please advise the sender by reply e-mail to jradke@nelsonhardiman.com and delete the message. Thank you.

# Exhibit E

From: **Kortum, Frank (USACAC)** <Frank.Kortum@usdoj.gov>
Date: Mon, Dec 6, 2021 at 11:18 AM
Subject: U.S. ex rel. IONM LLC v. USC; Case No. CV 18-08311-ODW (AS) (forwarding message sent to counsel for USC on 10/27/21 (as discussed))
To: Alice Chang JDMBA <alicechangjdmba@gmail.com>
Cc: Eliot Rushovich <eliot@riselawfirm.com>, John Fisher <John.Fisher@doj.ca.gov>, Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>, Steven Frankland <sgfrankl@da.lacounty.gov>

Ms. Chang,

As discussed during our phone call this morning, I'm forwarding a copy of a message I sent to counsel for USC on 10/27/21.

Frank Kortum (cell 213.393.5512)

**From:** Kortum, Frank (USACAC)
**Sent:** Wednesday, October 27, 2021 5:00 PM
**To:** jradke@nelsonhardiman.com
**Cc:** mhardiman@nelsonhardiman.com
**Subject:** U.S. ex rel. IONM LLC v. USC; Case No. CV 18-08311-ODW (AS) (attaching copy of Fourth Amended Complaint)

Jonathan,

As discussed, I've attached a copy of the Fourth Amended Complaint that the relators have filed in this action.  The complaint is still under seal and its disclosure is pursuant to the terms of the Court's order.  When you've had a chance to review it please give me a call.

Frank Kortum (cell 213.393.5512)

# Exhibit F

**DATE:**    December 7, 2021 (*Delivered Via Electronic Mail*)

**FROM:**    Alice Chang, Esq.

**TO:**    Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal (frank.kortum@usdoj.gov)

Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Los Angeles County District Attorney's Office (mbeaart@da.lacounty.gov)

Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
Los Angeles County District Attorney's Office (sgfrankl@da.lacounty.gov)

John Fisher, Deputy Attorney General, California Department of Justice
Office of the Attorney General, Bureau of Medi-Cal Fraud (John.Fisher@doj.ca.gov)

Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
Fraud Liaison Bureau (mitch.neumeister@insurance.ca.gov)

**CC:**    Eliot Rushovich, Esq. (eliot@riselawfirm.com)

**RE:**    CV 18-08311-ODW [UNDER SEAL]; U.S. ex rel. IONM LLC and Justin Cheongsiatmoy, M.D., et al. v. USC

---

I write to respond to AUSA Kortum's request that Dr. Cheongsiatmoy provide his position "regarding the seal extension [by] the close of business on 12/7" and to further respond to the threat the United States made through AUSA Frank Kortum in his November 29, 2021 email that "if [Dr. Cheongsiatmoy] oppose[s] an extension of the current seal period and the Court as a result denies the extension," the United States [may] be "instructed to file a 'Statement of No Decision' which will have the practical effect of a declination."

At this important juncture in the case, Dr. Cheongsiatmoy still has not received most of the information he requested from the government and the government still has not allowed Dr. Cheongsiatmoy, the key witness and whistleblower, to participate in its investigation. Notwithstanding the fact that any decision made by Dr. Cheongsiatmoy in this matter is based on limited information, he has asked me to address the actions and inactions by each participating government entity including each party's use of the protection of the seal over the last 3 years encompassing 6 seal extensions.

On November 1, 2018, the State of California issued the first subpoena in this matter. The scope of the original subpoena included but was not limited to USC Care Medical Group (physician group), Keck Medical Center (USC-owned hospital), and LAC+USC Medical Center (Los Angeles County-owned hospital) for the relevant period of January 1, 2008 through the final response date. However, despite multiple requests, the State of California has continued to refuse to disclose any changes in parameters as it relates to the original subpoena or any subsequent subpoenas.

A review of all subpoenas issued in this case -- and any associated changes in parameters -- is necessary to address the reason USC intentionally omitted from its Voluntary Self-Disclosure (Exhibit 89) the blatant fraud USC committed at Los Angeles County+USC Medical Center as described in Dr. Cheongsiatmoy's qui tam allegations. Los Angeles County+USC Medical Center is the hospital wholly owned and operated by participating government entity, Los Angeles County, and the location where USC's fraud caused hundreds of millions of dollars of false claims violations. USC's Voluntary Self-Disclosure only contains disclosures from USC Care Medical Group (physician group) and does not address any of the substantial fraud committed by the hospitals -- USC Keck Hospital and Los Angeles County+USC Medical Center -- and this warranted independent investigation by all participating government entities. USC's Voluntary Self-Disclosure was rejected by OIG HHS on May 15, 2020. (Exhibit A-269 attached).

Moreover, as the participating government entity which issued the only subpoena referenced by USC in its Voluntary Self-Disclosure (4AC Exhibit 89), the State of California is inherently trusted by all current parties and all potential future parties of interest to be a reliable custodian of defendants' document production while the case is under seal. However, while the State of California repeatedly stipulated to investigating the allegations in the complaints and stipulated to multiple seal extensions, the evidence shows that the State of California instead used the protection of the seal to "remove entirely with no backup" 217 documents which were produced by USC. This deletion was instructed in writing by the

Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal
Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
John Fisher, Deputy Attorney General, California Department of Justice
Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
December 7, 2021
Page 2 of 9

State of California to Elevate, the third-party company hired by the State of California to store and host over 36,000 files produced by defendants as part of USC's initial document production.

As the communications below show, Elevate repeatedly warned the State of California and repeatedly made the State of California aware that deletion of the 217 documents would cause this evidence to be "removed entirely with no backup" and cause permanent deletion of all "document native, images, searchable text and all coding related [information]." Yet, despite Elevate's numerous warnings, the State of California instructed Elevate on November 19, 2021 in writing to delete hundreds of documents from the database USC produced as part of its initial document production in order for the State of California to "move this matter to co-counsel" just 4 days before the United States used its discretion granted by the Court to provide a copy of the original complaint to USC counsel for settlement purposes.

Should this case proceed to litigation, an investigation will be required to determine why the State of California ordered the permanent deletion of hundreds of documents from the dataset USC produced as evidence in this sealed case, and why this deletion of evidence was necessary to "move this matter to co-counsel." Further, a closer examination of the State of California's spoliation of evidence will be necessary to determine the extent of irreparable injury to all current and all future parties of interest. (Exhibit A-265 attached; Chang November 2, 2021 letter attached; Chang November 15, 2021 letter at 2 attached).

Below is a summary of the relevant timeline for which the attached Exhibit A-265 contains select excerpts:

- **11/19/2020:**  The State of California emails Lindsay Chastain, Director of Dispute and Investigations at Elevate, with orders that the State of California "need[s] to make sure that every document that has the "Civil-Reviewer" issue tagged with "MSN" [Mitch S. Neumeister] is removed from the data set" and instructs Elevate in writing to have the "docs pulled from the database before transfer…to prepare to move this matter to co-counsel."

- **11/19/2020:** Pamela Ringer-Britz, ediscovery Project Manager from Elevate, confirms the State of California's instruction to delete hundreds of files to be "removed with no backup" and asks the State of California again if "a backup should be made for these items?" advising that "a backup would be a full export of the document native, images, searchable text and all coding related [information]."

- **11/19/2020:**  Pamela Ringer-Britz, ediscovery Project Manager from Elevate responds to the State of California that it would cost less than $175 for a backup and Mr. Neumeister states he will call Elevate to further instruct on removing the 217 items from the database before transfer and to discuss the quote for the Engler matter ($2,975 Processing + $700 Tech Time + $468 per month to host the Engler case on Elevate).

- **11/20/2020:**  Pamela Ringer-Britz, ediscovery Project Manager from Elevate sends an email to the State of California, requesting confirmation to "proceed with deletion." Elevate Co-Founder and VP of Legal Services, Kunoor Chopra, is copied on this email.

- **11/23/2020:**  AUSA Kortum sends USC counsel the complaint for informal resolution (settlement).

- **11/24/2020:**  Pamela Ringer-Britz, ediscovery Project Manager from Elevate follows up with Mr. Neumeister who subsequently responds with written confirmation from the State of California to "proceed with deleting the 217 docs from the database."

- **11/24/2020:**  John Nguyen, Elevate Host Operations Manager, confirms in writing that Elevate will "proceed with deleting 217 documents tomorrow morning without a backup on [Elevate's] end…please let us know if you would like Elevate to keep a copy of the documents on the network."

As it relates to the role of Los Angeles County in this case, Los Angeles County has been recognized by the Court as a participating government entity, yet Los Angeles County did not attend the 2018 Relator interview for Relator IONM

Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal
Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
John Fisher, Deputy Attorney General, California Department of Justice
Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
December 7, 2021
Page 3 of 9

LLC. Indeed, Los Angeles County's lack of investigation into this matter predates the filing of the qui tam since Los Angeles County never interviewed Dr. Cheongsiatmoy after he reported in February 2018 the substantial fraud resulting in patient injuries and deaths at Los Angeles County+USC Medical Center to LAC+USC Chief of Neurology, Dr. Helena Chui, as described in the Complaint.

To say that Los Angeles County has done nothing in this case would also not be true. In fact, after Los Angeles County was made aware through evidence supporting Dr. Cheongsiatmoy's qui tam allegations that thousands of surgeries at Los Angeles County+USC Medical Center were not performed by USC teaching surgeons and had caused False Claims Acts violations averaging $50,000 per surgery in DRG charges alone (USC0046515 attached), Los Angeles County "…<u>added new [USC] neurosurgical attending coverage</u>" at Los Angeles County+USC Medical Center.

The new [USC] neurosurgical attending coverage was ordered by the Los Angeles County Board of Supervisors pursuant to the Medical School Operating Agreement (MSOA)/Medical School Affiliation Agreement (MSAA)/Professional Services Agreement (PSA) contracts between Los Angeles County and USC as described in the Complaint. After this measure was initially proposed and recommended by the Director of Department of Health Services, Dr. Christina Ghaly, the motion was approved by the Los Angeles County Board of Supervisors on July 23, 2019. (Exhibit A-230 attached; Exhibit A-231 attached; Exhibit A-232 attached; Exhibit A-228 attached).

Despite Los Angeles County's multiple stipulations to the amended complaints and its repeated stipulations to extend the seal over the last 3 years, Los Angeles County repeatedly denied Dr. Cheongsiatmoy's multiple requests to assist in the investigation and review its records. Should this case proceed to litigation, the decision by Los Angeles County to deny access to its records over the last 3 years will be addressed at the appropriate time.

Los Angeles County is the owner and custodian of the important records at Los Angeles County+USC Medical Center, the hospital Los Angeles County wholly owns and operates and the location where USC's actions led to hundreds of millions of dollars of false claims violations alleged by Dr. Cheongsiatmoy. Instead of welcoming Dr. Cheongsiatmoy -- the key witness and only whistleblower in this case -- as an asset to the government's investigation, Los Angeles County wrote on July 1, 2021, nearly 3 years after the qui tam was filed: "Our documentation shows that [Los Angeles County] already declined to intervene in this action." (Chang July 2, 2021 email attached).

As counsel of record in this case, I followed up on Los Angeles County's email and informed all participating government entities that I had "no records showing any declination by Los Angeles County" and subsequently requested all government entities to "please send…any records [any participating government has] related to this issue." (Chang July 2, 2021 email attached). No government entity, including Los Angeles County ever responded to me on this issue.

I also remain very concerned that my repeated requests to the participating government entities to provide me with document retention orders in this case, including any such orders for Los Angeles County+USC Medical Center, have been ignored. Again, should this case proceed to litigation, a diligent investigation into all document retention orders in this case will be necessary to determine if actions or inactions by each participating government entity in this case resulted in prejudice to any current or future parties of interest.

When I became Lead Counsel in this matter in January 2021, I immediately contacted all participating government entities including Los Angeles County Fraud & Corruption Prosecution, Bureau Director Marc Beaart, on January 5, 2021. During my teleconference with Bureau Director Beaart, I requested access to the records and Electronic Medical Record (EMR) system at Los Angeles County+USC Medical Center to allow Dr. Cheongsiatmoy the opportunity to participate in this action and assist the government since Dr. Cheongsiatmoy is not just any IONM physician – he is also the whistleblower and the source of the allegations in the Complaint. (Chang January 5, 2021 email attached).

During this January 5, 2021 telephonic meeting, Bureau Director Beaart agreed to grant Dr. Cheongsiatmoy access to Los Angeles County's records; however, Bureau Director Beaart never responded to my subsequent communications, and despite my multiple attempts to coordinate efforts with Bureau Director Beaart, Los Angeles County never granted access to any of the patient files at Los Angeles County+USC Medical Center for which Los Angeles County is the custodian.

Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal
Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
John Fisher, Deputy Attorney General, California Department of Justice
Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
December 7, 2021
Page 4 of 9

Ever since my January 5, 2021 phone call with Bureau Director Beaart, Los Angeles County has continued to ignore my repeated efforts to allow Dr. Cheongsiatmoy to participate in any investigation into the fraud that occurred at Los Angeles County+USC Medical Center, including my requests to discuss the video I emailed all participating government entities in April 2021 which has since become Exhibit 150. This video shows a USC neurophysiologist at Los Angeles County+USC Medical Center impersonating Dr. Cheongsiatmoy in real-time and submitting false claims of CPT 95940 through the EMR at Los Angeles County+USC Medical Center on July 26, 2018, several months after Dr. Cheongsiatmoy reported the fraud internally to Los Angeles County via LAC+USC Chief of Neurology, Dr. Chui.

The video, now lodged with the Court as Exhibit 150, is only one of many exemplars supporting Dr. Cheongsiatmoy's qui tam allegations that USC neurophysiologists committed false claims and criminal acts at Los Angeles County+USC Medical Center by monitoring and interpreting IONM data in the capacity of neurologists. This fraud was perpetrated through Los Angeles County's "standing order" protocol at Los Angeles County+USC Medical Center -- the same hospital protocol which facilitated thousands of false claims submissions through its EMR. (See also California H&S 1279.1; Exhibit A-225 attached; Exhibit A-226 attached; Exhibit A-229 attached; Exhibit A-239 attached).

The video contained within Exhibit 150 raises serious doubts about the integrity of USC's own investigation which served as the foundation of USC's Voluntary Self-Disclosure, especially since it contradicts USC's position communicated through its counsel, Jonathan Radke, in his February 25, 2021 email to AUSA Kortum wherein Mr. Radke wrote: "As part of our audit and investigation, we have found no evidence that USC falsely certified to LA County on a claim using CPT Code 95940, or that USC submitted any claim to the county." (Exhibit A-268 attached; Exhibit A-226 attached).

As described in the Complaint, at both Los Angeles County+USC Medical Center and USC Keck Hospital, intraoperative neurophysiological monitoring (IONM) is performed by a technologist, otherwise referred to as a neurophysiologist, who monitors a patient during surgery by interpreting IONM data in the capacity of a physician. The unauthorized practice of medicine by neurophysiologists/technologists at both hospitals forms the substantial basis for many of the False Claims Act violations and conduct described in the Complaint. At USC Keck Hospital, USC Hospital Policy #9-107 (Exhibit 34) was effective as of January 1, 2008 and instructed technologists (neurophysiologists) to practice medicine as physicians and this is confirmed in writing by USC Keck Hospital through its hospital patient consent form which states that "during the procedure, a neurophysiologist [technologist] tracks [interprets] electrical signals traveling through the…spinal cord." (USC0017504 attached).

Los Angeles County was well-aware that the fraudulent IONM scheme causing patient injuries and deaths at USC Keck Hospital was also occurring at its own Los Angeles County+USC Medical Center (USC0024821 attached). Dr. Giannotta, LAC+USC Chief of Neurosurgery, further admitted in writing on January 24, 2018 via an email titled "IOM County" sent to Dr. Cheongsiatmoy that there were quality control issues at LAC+USC Medical Center -- quality control issues that caused Dr. Giannotta to sever the nerve of his patient. Dr. Giannotta admitted he did not know of any involvement of neurologists providing IONM services at Los Angeles County+USC Medical Center. As a result, USC technologists were practicing medicine in the capacity of physicians and Dr. Giannotta was relying upon the USC technologists to monitor the IONM signals. "We must have better QC [quality control] over there [at Los Angeles County+USC Medical Center] or we can't do acoustic tumor [surgeries]. What can we do?" LAC+USC Chief of Neurosurgery, Dr. Giannotta asked. (Exhibit 77 attached).

This fraudulent scheme was ordered by the highest levels of Los Angeles County management and approved by the Los Angeles County Board of Supervisors who have repeatedly approved and re-approved Los Angeles County funds for technologists to practice medicine in the capacity of physicians, including but not limited to their November 13, 2012 approval for and instruction of an "IOM technician to monitor the functional integrity of certain neural functions of a patient during surgery [at Los Angeles County+USC Medical Center]." (Exhibit 48 attached; Exhibit A-233 attached).

In March 2021, I also made Los Angeles County Bureau Director Beaart aware of OIG's Semiannual Report to Congress which highlighted OIG's clear position that a "neurophysiologist is a technician who conducts diagnostic tests and is not considered a physician" and that OIG had successfully prosecuted and imprisoned neurophysiologists who had

Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal
Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
John Fisher, Deputy Attorney General, California Department of Justice
Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
December 7, 2021
Page 5 of 9

impersonated physicians and submitted false claims in schemes to defraud Medicare and Medi-Cal. (Chang September 30, 2021 letter attached; Exhibit A-240 attached; Chang October 8, 2021 letter attached; Exhibit A-224 attached).

I further explained that USC neurologists were being paid for physician services actually "performed" by USC technologists who were impersonating physicians at Los Angeles County+USC Medical Center and monitoring the functional integrity of nerves of LAC+USC patients during surgeries. These neurologists, like their teaching surgeon counterparts who received funding for surgeries not performed at Los Angeles County+USC Medical Center, also received payments through the MSOA/MSAA/PSA contracts between Los Angeles County and USC. To justify the money it received through its MSOA/MSAA/PSA contracts with Los Angeles County, USC submitted false claims to Los Angeles County in the form of fraudulent Provider Time Studies. The damages arising from the false claims associated with the MSOA/MSAA/PSA contracts are the responsibility of Los Angeles County under the California False Claims Act as alleged in the Complaint.

Over the last 3 years while this case has been under seal, all participating entities have repeatedly denied Dr. Cheongsiatmoy's offers to contribute his time, expertise, and knowledge which would negate any issues related to any party's "lack of resources." Throughout the last 3 years, all participating government entities have ignored Dr. Cheongsiatmoy's requests to review patient files (including but not limited to the request I made for LAC+USC files to Bureau Director Beaart in January 2021 and the patient files AUSA Kortum requested from USC in April 2021) in order to assist the government in its efforts to recover substantial damages from USC as described in the flowcharts and damage estimates provided by Dr. Cheongsiatmoy to all participating government entities. (Exhibit A-236 attached; Exhibit A-237 attached; Exhibit A-238 attached; Exhibit A-239 attached).

Despite his efforts, Dr. Cheongsiatmoy has not received or reviewed a single patient file from Los Angeles County+USC Medical Center in the 3 years since the qui tam was filed while the case has remained under seal. Dr. Cheongsiatmoy has also not received or reviewed a single patient file produced by USC Keck Hospital in the 3 years since the qui tam was filed, even despite multiple requests I made to AUSA Kortum for Dr. Cheongsiatmoy to review the patient files AUSA Kortum requested from USC on April 22, 2021 (Chang September 30, 2021 letter attached; Exhibit A-216U attached).

It has become increasingly clear that any investigation into the substantial fraud and resulting patient injury and deaths at Los Angeles County+USC Medical Center, either with the assistance of Dr. Cheongsiatmoy or by Los Angeles County itself, is not welcome. Los Angeles County's lack of investigation in this case over the last 3 years -- despite being a participating government entity which stipulated to multiple seal extensions -- was crystallized on the October 1, 2021 telephonic conference requested by the United States and attended by Dr. Cheongsiatmoy and his counsel including me and Mr. Rushovich.  On that October 1, 2021 "Call with DOJ," AUSA Kortum told Dr. Cheongsiatmoy, Mr. Rushovich, and me that "the County has done nothing to investigate the claims" and "[the DOJ has] not been asking [Los Angeles County] for documents and [the DOJ has] not asked to look at their files." AUSA Kortum further stated: "I want to emphasize that nobody representing the Relators should be reaching out to the County." AUSA Kortum further reiterated and instructed Mr. Rushovich and me when he stated: "Do not contact the County about any aspect of this case." (Cheongsiatmoy October 25, 2021 email attached; Chang November 15, 2021 letter attached; Rushovich November 17, 2021 letter attached).

On October 11, 2021, I received an email from AUSA Kortum who wrote: "Mr. Wilbanks and I had been working together regarding the Stark/AKS issue and I was looking forward to receiving additional information I'd requested from him regarding that issue." This email from AUSA Kortum was contained within an email thread started by Mr. Wilbanks (Wilbanks & Gouinlock) whereby Mr. Wilbanks informed AUSA Kortum on October 8, 2021 of his intent to withdraw from the case. On October 11, 2021, in response to AUSA Kortum's aforementioned email earlier that day, I responded to AUSA Kortum in writing: "Given that Mr. Wilbanks had earlier committed to working with you on the Stark/AKS issues, but apparently now indicates that he is contemplating potential withdrawal as counsel, Relators are prepared to move forward by amending the Complaint to remove those claims. I trust that will resolve your concerns." (Chang October 11, 2021 email attached).

Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal
Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
John Fisher, Deputy Attorney General, California Department of Justice
Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
December 7, 2021
Page 6 of 9

AUSA Kortum did not respond to my October 11, 2021 email, nor did AUSA Kortum inform me the United States had any further concerns about the Stark/AKS allegations.  In addition, AUSA Kortum did not notify me of any impending government request. Nevertheless, Mr. Rushovich and I reached out to all participating government entities on October 27, 2021 and requested to meet and confer regarding the status of the case. (Chang October 27, 2021 letter attached). Again, despite the diligent efforts by Mr. Rushovich and me, no participating government entity accepted our invitation to discuss the case or its status, and no entity emailed me regarding any request by the government for a seal extension.

Following the October 8, 2021 communication from Wilbanks & Gouinlock to all government parties of its intent to withdraw, I made multiple attempts to meet and confer with each participating government entity to discuss the ramifications of potentially removing the Stark/AKS claims represented by Wilbanks & Gouinlock, as is required by the motion practice to amend the complaint. Specifically, I informed each participating government in writing on October 25, 2021 (Chang October 25, 2021 letter attached) that I was requesting a meet and confer with each entity on either Tuesday, October 26, 2021 or Wednesday, October 27, 2021. Since no government entity agreed to meet and confer with me on the issues outlined in my October 25, 2021 correspondence, Mr. Rushovich and I called each government entity on October 27, 2021 but received no response (Chang October 27, 2021 letter attached).

In fact, AUSA Kortum just disclosed to Mr. Rushovich and me for the first time yesterday on the December 6, 2021 conference call (which is the first time that all participating government entities have spoken with Mr. Rushovich and me), that 6 weeks ago on October 27, 2021 -- just hours after all participating government entities failed to respond to the efforts Mr. Rushovich and I made to meet and confer about the case -- the United States gave USC a copy of the Fourth Amended Complaint on October 27, 2021 later that same day at 5PM.

As it relates to the statement I made regarding Relators' conditional intent to withdraw the Stark/AKS claims which AUSA Kortum cited as the impetus for the United States to disclose the Complaint to USC, I reiterated again on our December 6, 2021 conference call that Wilbanks & Gouinlock was retained to represent the Stark/AKS claims and the reason I had explicitly advised all parties including the United States that any case-related communications must be made to my attention is because Dr. Cheongsiatmoy has always made it very clear that the primary theory of liability in this case stems from the false claims which resulted from services not rendered by USC surgeons and USC neurologists.

In fact, on October 25, 2021, Dr. Cheongsiatmoy wrote AUSA Kortum directly and stated: "I want to make it very clear to all participating government entities that Relators have never authorized any of Relators' previous and current counsel to advise the Government to turn its investigative priorities away from the substantial fraud associated with USC Teaching Surgeons and USC Neurologists at Los Angeles County+USC Medical Center as outlined in the current and previous complaints supported by Exhibits A-238 and A-239 [attached]." (Cheongsiatmoy October 25, 2021 email)

As all participating government entities recall, since the case was filed in 2018, Dr. Cheongsiatmoy has always urged the government to focus its investigative priorities on the significant false claims damages under the "services not rendered" theory of liability.  This is the reason why Dr. Cheongsiatmoy provided continued guidance towards damages from services not rendered by USC surgeons and USC neurologists with updated references to the Third Amended Complaint which Mr. Rushovich sent all participating government entities on July 9, 2021 (just 14 days after the TAC was filed). I further sent all participating government entities Dr. Cheongsiatmoy's continued guidance towards damages from services not rendered by USC surgeons and USC neurologists with updated references to the Fourth Amended Complaint on September 30, 2021 (just 10 days after the 4AC was filed). There is no excuse for any participating government entity to claim that any time was wasted pursuing other theories of liabilities, especially since Mr. Fisher and Mr. Kortum admitted to me for the first time yesterday that they both knew the Stark/AKS claims had safe harbor exemptions.

It is important for me to summarize the events leading up to AUSA Kortum's December 6, 2021 disclosure to Mr. Rushovich and me, for the very first time, the true and correct communications United States made to USC when it gave a copy of the Fourth Amended Complaint to defendants 6 weeks ago, on October 27, 2021.  As each participating entity will recall, I wrote all participating government entities on November 15, 2021 and Mr. Rushovich wrote all participating government entities on November 17, 2021 asking, among other items, to be given the true and correct copies of the communications from the United States to USC disclosing any of Dr. Cheongsiatmoy's allegations in the complaint(s).

Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal
Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
John Fisher, Deputy Attorney General, California Department of Justice
Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
December 7, 2021
Page 7 of 9

In response, AUSA Kortum stated in his November 22, 2021 email to me, informing me for the very first time, that the
United States had indeed disclosed to counsel for USC "a copy of the Fourth Amended Complaint after [the United
States] learned of [Dr. Cheongsiatmoy's] intent to withdraw the Stark/AKS allegations." Addressing the multiple requests
by Mr. Rushovich and me to obtain the copies of the disclosures the United States provided USC, AUSA Kortum wrote:
"the United States respectfully declines to respond to your detailed questions about the extent to which any of the
complaints filed in this action were disclosed to U.S.C." (Chang November 15, 2021 letter attached; Rushovich November
17, 2021 letter attached; Kortum November 22, 2021 email attached).

As AUSA Kortum later admitted, the United States "gave a copy of the Complaint to USC, in the [United States']
interests of reviving [settlement] negotiations" in order to fulfill "the position of the United States that negotiations
regarding employment-related claims should take place...subsequent to...negotiations regarding allegations arising under
the False Claims Act." (Kortum November 22, 2021 email attached).

On May 5, 2021, the Court granted Dr. Cheongsiatmoy's motion allowing him to be added as a relator in his personal
capacity. Since Dr. Cheongsiatmoy is source of all the qui tam allegations in the Complaint, the Court allowed the
Complaint to be amended with his individual claims to enhance judicial efficiency and timely resolution of all claims
arising from the common set of operative facts.  Despite the fact that the United States has long known that Dr.
Cheongsiatmoy has individual claims that are factually intertwined with Dr. Cheongsiatmoy's qui tam claims (Exhibit A-
267 attached), the United States nonetheless instructed Mr. Rushovich and me on July 13, 2021 that Dr. Cheongsiatmoy's
counsel is not permitted to speak to USC counsel about his qui tam or employment claims until the government completed
its investigation and AUSA Kortum notified us that USC had received a copy of the Complaint.

As a Plaintiff in this action whose individual interests in this case were granted by the Court upon the filing of the Second
Amended Complaint, Dr. Cheongsiatmoy objects to the United States' use of the seal to facilitate the government's own
position that negotiations with USC regarding Dr. Cheongsiatmoy's claims should take place "subsequent to" the
government's negotiations with USC regarding FCA allegations. (Rushovich November 28, 2021 email attached).

On multiple occasions, the government has stated its intent to settle the qui tam claims on the "merits" of USC's
Voluntary Self-Disclosure. AUSA Kortum requested a partial seal lift on May 28, 2020 on the basis of "payment for
monitoring procedures that purportedly took place at the Division of Intraoperative Neurophysiological Monitoring
("IONM") at Keck's Department of Neurology," a request AUSA Kortum made just one day after AUSA Kortum
received USC's Voluntary Self-Disclosure (4AC Ex. 89) via email on May 27, 2020 from USC counsel (Ex. A-269).

On April 16, 2021, Mr. Kortum emailed USC counsel, and stated: "We'd like to expedite the process of attempting to
informally resolve this action on the merits." (Exhibit A-261 attached). In that same April 16, 2021 email, AUSA Kortum
clarified that "while USC has made significant admissions in its voluntary disclosure, the government is obligated as a
matter of due diligence to conduct its own investigation for the purposes of determining the extent to which violations of
the FCA may have occurred, as well as the duration of any such violations." (Exhibit A-261 attached). Yet, on November
22, 2021, AUSA Kortum admitted in writing to Mr. Rushovich and me that "based on U.S.C.'s voluntary disclosure, the
United States has deferred issuing Civil Investigative Demands or conducting witness interviews." (Kortum November
22, 2021 email attached).

Dr. Cheongsiatmoy remains very concerned that the United States did not issue Civil Investigative Demands and related
preservation orders or conduct any witness interviews of its own during the 20-month period encompassing 3 seal
extensions between the filing of the original complaint and receipt of USC's Voluntary Self-Disclosure despite the
detailed list of subpoena categories provided by Relator's counsel on November 27, 2018, shortly after the original qui
tam was filed. (Exhibit A-241 attached).

Even after the United States received USC's Voluntary Self-Disclosure over 18 months ago, and even after the Court
granted another 3 seal extensions following the government's receipt of USC's Voluntary Self-Disclosure for a total of 6
Seal Extensions to date, the United States admitted it has *still* not issued any Civil Investigative Demands or conducted

Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal
Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
John Fisher, Deputy Attorney General, California Department of Justice
Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
December 7, 2021
Page 8 of 9

any witness interviews. Any qui tam settlement of the government claims based upon USC's Voluntary Self-Disclosure would most certainly draw attention to any government investigation -- or lack thereof -- and warrant review of the government's investigation -- or lack thereof -- into the exhibits in support of the allegations in the complaints and the 270+ documents I incrementally provided all government entities over the past year on behalf of Dr. Cheongsiatmoy, including detailed documents showing that USC made its Voluntary Self-Disclosure (Exhibit 89) in bad faith.

The purpose of the FCA seal is to allow the government the ability to investigate without tipping off the target; the Congressional intent for the FCA seal is not to provide the government or the defendants an unfair advantage over the whistleblower. However, in this case, the United States -- for 6 weeks -- failed to provide Dr. Cheongsiatmoy and his counsel the same disclosures the United States preferentially gave defendants, despite multiple requests from Dr. Cheongsiatmoy's counsel.

Indeed, the United States used its discretion granted by the Court to give the government a 6-week "head-start" to speak with defendants about Dr. Cheongsiatmoy's allegations without representation by Dr. Cheongsiatmoy's counsel to protect his interests, while also giving the defendants a protected "head-start" in their preparation of any potential settlement with the government and in its preparation of defenses against Dr. Cheongsiatmoy's allegations. (Chang November 24, 2021 letter attached; Rushovich November 28, 2021 letter attached)

On November 22, 2021, AUSA Kortum emailed me and asked, for the first time, to provide Dr. Cheongsiatmoy's consent for a seal extension, stating: "Also, please be advised that because it's highly unlikely under the circumstances that we'll be able to <u>conclude</u> negotiations with U.S.C. prior to the current seal period's expiration date, we'll need to request an additional extension of the seal period in order to to [sic] have adequate time for negotiations (or to undertake investigative activities if negotiations are unsuccessful)." (Kortum November 22, 2021 email attached)

Dr. Cheongsiatmoy objects to the government's justification for a seal extension contingent upon the status of its negotiations with USC regarding the FCA claims. It is ironic that the United States references its own need for an extension of the seal presumably due to the challenges it faces to conclude its own negotiations with USC prior to the current seal deadline while (1) simultaneously preventing Dr. Cheongsiatmoy the same time and opportunity to negotiate his individual claims with USC, and (2) simultaneously asking Dr. Cheongsiatmoy to consent to an extension of the seal.

On November 24, 2021, just two days after AUSA Kortum requested Dr. Cheongsiatmoy consent to an extension of the seal, Deputy Attorney General John Fisher representing the State of California emailed me and stated: "In my opinion, your dissatisfaction that you and [Dr. Cheongsiatmoy] have not been provided details of our investigation; or copied on communications; or we have failed to meet and confer on something; assumes a duty the government owes to you; when none exists."

The government does have a duty to the Court, and the United States is responsible for providing the Court truthful declarations to support good cause in support of seal extensions and communicating with the Court at these critical junctures in the case. One important communication occurred on December 18, 2020 when counsel for Relator IONM LLC wrote AUSA Kortum and explicitly instructed AUSA Kortum to "file the [seal extension] application with the court and indicate Relator has not responded." (Exhibit A-271 attached). I trust AUSA Kortum truthfully informed the Court that there was no consent from Relator to extend the seal at that time. However, should this case proceed to litigation, I will ask the Court to unseal all Memoranda of Points and Authorities in Support of Stipulation Extending Seal and Declarations of Frank D. Kortum in Support Thereof to confirm the Court was truthfully informed throughout the 3 years this case has remained sealed to the public.

The government's justification for any potential untimely filings with the Court to extend the seal belies the fact that the only exigency in this situation was manufactured by the government which failed to meet and confer with me in advance of a well-known deadline, and this is not excusable neglect. Had the government accepted the multiple attempts Mr. Rushovich and I made to meet and confer or had the government taken the initiative to reach out to us at the appropriate time, the government would have had ample opportunities to discuss with Dr. Cheongsiatmoy's counsel any potential request by the government to extend the seal before theoretically filing a regularly scheduled motion with the Court. "A

Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal
Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
John Fisher, Deputy Attorney General, California Department of Justice
Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
December 7, 2021
Page 9 of 9

party seeking ex parte relief must establish why a motion cannot be calendared in a regular manner; that they will be irreparably prejudiced if the motion is heard in accord with regular procedures; and that the requesting party is without fault in creating the crisis that requires ex parte relief or that the crisis was due to excusable neglect." Mission Power Eng'g Co. v. Cont'l Cas. Co., 883 F. Supp. 488, 492 (C.D. Cal. 1995).

Notably, until the December 6, 2021 teleconference with all government parties, Mr. Rushovich and I were completely rebuffed in our continued attempts to meet and confer with each participating government entity including but not limited to our efforts on July 9, 2021 (all participating government entities); September 2, 2021 (Los Angeles County); September 3, 2021 (Los Angeles County); September 7, 2021 (Los Angeles County); October 25, 2021 (all participating government entities); October 27, 2021 (all participating government entities); October 29, 2021 (all participating government entities); November 2, 2021 (all participating government entities); November 15, 2021 (all participating government entities); November 17 2021 (all participating government entities). It is without question that the government had ample opportunities to meet and confer on any of the above-referenced dates which would have allowed a regularly calendared motion; the case law is clear that "ex parte applications are not intended to save the day for parties who have failed to present requests when they should have…" In re Intermagnetics Am., Inc., 101 B.R. 191, 193 (C.D. Cal 1989).

After a thoughtful review of the government's actions and inactions over the past 3 years while this case has been under seal, Dr. Cheongsiatmoy -- the whistleblower who reported fraud and misconduct to the highest levels of USC and Los Angeles County and whose subsequent termination occurred under the direct leadership of USC President Carol Folt (Exhibit 87), the whistleblower who risked his entire career to courageously come forward to shed light on the extensive fraud and resulting patient injuries and deaths at both USC Keck Hospital and Los Angeles County+USC Medical Center, the whistleblower who believed the government would fulfill its statutory obligations to diligently investigate his qui tam allegations and the overwhelming evidence he provided in support of those allegations, but who was instead repeatedly rebuffed by all government parties in his attempts to participate in investigating his qui tam claims -- finally realizes the government's purpose for the seal: to keep the allegations contained in the complaint(s) from the public and this is not in the public interest.

Over 3 years after Dr. Cheongsiatmoy filed the original complaint, AUSA Kortum asked Dr. Cheongsiatmoy to attend the October 1, 2021 "Call with DOJ" where the United States informed Dr. Cheongsiatmoy of the government's true intentions, stating in no uncertain terms that: "the County has done nothing to investigate the claims" and "[the DOJ has] not been asking [Los Angeles County] for documents and [the DOJ has] not asked to look at their files" and "[the DOJ] want[s] to emphasize that nobody representing the Relators should be reaching out to the County" and "Do not contact the County about any aspect of this case."

Throughout the last 3 years while the case has been [UNDER SEAL] to the public, the United States, the State of California and Los Angeles County had a statutory duty to "diligently investigate" all FCA claims involving federal, state and political subdivision funds. (31 U.S.C. §3730(a); Cal. Gov. Code § 12652(a)(1); Cal. Gov. Code § 12652(b)(1)). Therefore, the government's stated intent to "reach an informal resolution" with defendants "to resolve this action on the merits" on the basis USC's Voluntary Self-Disclosure raises serious questions about the integrity of the government's investigation, especially since USC's Voluntary Self-Disclosure was clearly made in bad faith when compared to the evidence in the Complaint which is supported by the exhibits and Dr. Cheongsiatmoy's guidance in this case.

For the foregoing reasons, Dr. Cheongsiatmoy has instructed I inform all participating government entities that, after careful consideration, he respectfully declines the government's request for an extension of the seal. The government is hereby on notice that Dr. Cheongsiatmoy will oppose any potential application by the government to extend the seal, and, if necessary, the Court will be so informed of his reasons as outlined in this correspondence and the attached enclosures.

Should the United States follow through on its November 29, 2021 threat that "if [Dr. Cheongsiatmoy] oppose[s] an extension of the current seal period…the United States [may]…"file a 'Statement of No Decision' which will have the practical effect of a declination," Dr. Cheongsiatmoy reserves his right to ask the Court to address, at the appropriate time, the issues raised herein.

From: **Alice Chang JDMBA** <alicechangjdmba@gmail.com>
Date: Tue, Jan 5, 2021 at 2:22 PM
Subject: Re: U.S. ex rel. IONM LLC v. USC; Case No. CV 18-08311-ODW(AS)
To: Marc Beaart <MBeaart@da.lacounty.gov>


Mr. Beaart:

Thank you for your time.  As discussed on the phone, to accommodate possible lack
of resources from your office, my relator is willing to do all the investigative work on this case once
we set up EMR access for the relator to investigate the numerous deaths and serious life-
altering  patient injuries as a result of the fraud.

The cost to LA County will be essentially zero so there is only upside to finding the truth and
obtaining justice for the patients who were injured at LAC.

I will check with the relator to get a couple of possible times so we can set up that meeting with
you, your Lieutenant and qui tam paralegal.

Thank you for allowing the opportunity for a thorough investigation before any decision is made by
LA County.

Alice Chang, JD/MBA


On Tue, Jan 5, 2021 at 1:29 PM Marc Beaart <MBeaart@da.lacounty.gov> wrote:
Perfect!

**From:** Alice Chang JDMBA [mailto:alicechangjdmba@gmail.com]
**Sent:** Tuesday, January 05, 2021 11:46 AM
**To:** Marc Beaart <MBeaart@da.lacounty.gov>
**Subject:** Re: U.S. ex rel. IONM LLC v. USC; Case No. CV 18-08311-ODW(AS)

Mr. Beaart:
Thanks for your email confirming your availability.  I will give you a call at the number listed below
around 2pm today.

Thanks,

Alice Chang, JD/MBA


On Tue, Jan 5, 2021 at 11:37 AM Marc Beaart <MBeaart@da.lacounty.gov> wrote:
Hello Ms. Chang, Esq.

I am available from 1:30 to 4:00 PM today for a telephone discussion on this matter. 661-645-3961

Marc Beaart
Head Deputy
Healthcare Fraud Division
Los Angeles District Attorney's Office
(213) 257-2379

From: **Alice Chang JDMBA** <alicechangjdmba@gmail.com>
Date: Fri, Jul 2, 2021 at 2:45 PM
Subject: FW: Cheongsiatmoy case under seal
To: Susan Gouinlock <ssg@wilbanksgouinlock.com>
Cc: Steven Frankland <sgfrankl@da.lacounty.gov>, Kortum, Frank (USACAC) <frank.kortum@usdoj.gov>, Marlan Wilbanks <mbw@wilbanksgouinlock.com>, John Fisher <John.Fisher@doj.ca.gov>, Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>


Frank, Steve, John and Mitch,

I received an email below stating that Los Angeles County has documentation that it has already declined to intervene in the qui tam case against USC.

I represent both Relator and Plaintiff-Relator, Dr. Cheongsiatmoy and need to be on all communications regarding this case.

Since I have no records showing any declination by Los Angeles County, please send me any records you have related to this issue.

 Thanks,
Alice Chang, JD/MBA

On Thursday, July 1, 2021, Susan Gouinlock <ssg@wilbanksgouinlock.com> wrote:
?

Susan S. Gouinlock, Esq.
Partner
**Wilbanks and Gouinlock, LLP**
One Ameris center
3490 Piedmont rd., NE
Suite 1010
Atlanta, GA 30345
(404) 842-1075
www.Wilbanksgouinlock.com

From: Marcia Daniel <mdaniel@da.lacounty.gov>
**Sent:** Thursday, July 1, 2021 7:05 PM
**To:** Susan Gouinlock <ssg@wilbanksgouinlock.com>
**Subject:** RE: Cheongsiatmoy case under seal

Ms. Gouinlock,

Our documentation shows that we already declined to intervene in this action so I did not see any reason to participate in the meeting.  If I am missing something please let me know.
Thanks so much,
Marcia Daniel


                    MARCIA DANIEL
                    ASSISTANT HEAD DEPUTY
                    Healthcare Fraud Division
                    211 W. Temple Street, Suite 1000
                    Los Angeles, CA 90012
                    Office:  213-257-2377
                    Main:   213-257-2350
                    mdaniel@da.lacounty.gov

**DATE:**     September 30, 2021 (*Delivered Via Electronic Mail*)

**FROM:**     Alice Chang, Esq.

**TO:**       Frank Kortum, AUSA, U.S. Attorney's Office C.D. Cal (frank.kortum@usdoj.gov)

Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution, L.A. District Attorney's Office (mbeaart@da.lacounty.gov)

Steve Frankland, Head Deputy of Healthcare Fraud, L.A. District Attorney's Office (sgfrankl@da.lacounty.gov)

John Fisher, DAG, California Attorney General Bureau of Medi-Cal Fraud (John.Fisher@doj.ca.gov)

Mitch Neumeister, California Department of Insurance Fraud Liaison Bureau (mitch.neumeister@insurance.ca.gov)

**CC:**       Marlan Wilbanks, Esq. (mbw@wilbanksgouinlock.com)
              Eliot Rushovich, Esq.  (eliot@riselawfirm.com)

**RE:**       CV 18-08311-ODW [UNDER SEAL]
              U.S. ex rel. IONM LLC and Justin Cheongsiatmoy, M.D., et al. v. USC

---

Counsel,

Relators have asked me to send you the confidential work product attached to this memo to help guide the government investigation as it relates to the operative Fourth Amended Complaint (4AC) including updated Exhibit A-216U with references to the 4AC for the same patient files AUSA Kortum previously requested from USC on April 22, 2021.  Relators continue to request the opportunity to participate in the government investigation in accordance with the intent of the various false claims statutes.

I would also to take this opportunity to remind all participating government entities of my prior written instructions to all government parties that I be included in all communications between and involving relators counsel and any government entity regarding this case since I am local counsel and the only counsel of record representing all relators and all claims in this case.

Best Regards,

Alice Chang, JD/MBA

Enclosures: Exhibits A-240, A-239, A-238, A-237, A-236, A-235, A-234, A-233, A-232, A-231, A-230, A-229, A-228, A-227, A-226, A-225, A-224, A-216U, A-206, USC0024821, USC0016319, USC0017504, USC0046515

**DATE:**   October 8, 2021 (*Delivered Via Electronic Mail*)

**FROM:**   Alice Chang, Esq.

**TO:**   Frank Kortum, AUSA, U.S. Attorney's Office C.D. Cal (frank.kortum@usdoj.gov)

Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution, L.A. District Attorney's Office (mbeaart@da.lacounty.gov)

Steve Frankland, Head Deputy of Healthcare Fraud, L.A. District Attorney's Office (sgfrankl@da.lacounty.gov)

John Fisher, DAG, California Attorney General Bureau of Medi-Cal Fraud (John.Fisher@doj.ca.gov)

Mitch Neumeister, California Department of Insurance Fraud Liaison Bureau (mitch.neumeister@insurance.ca.gov)

**CC:**   Marlan Wilbanks, Esq. (mbw@wilbanksgouinlock.com)
Eliot Rushovich, Esq. (eliot@riselawfirm.com)

**RE:**   U.S. ex rel. IONM LLC and Justin Cheongsiatmoy, M.D., et al. v. USC

---

I write to follow up on some of the relevant documents Relator requested the government obtain for Relator's review during the course of each participating government entity's investigation into false claims in the above-referenced case.  Please note that this memorandum does not address the Stark/AKS sections of the operative Fourth Amended Complaint (4AC pages 208-217) addressed separately by Wilbanks & Gouinlock.

Attached to this memorandum is Exhibit A-241 which is the November 27, 2018 letter to the government (including federal government) containing guidance on specific evidence Relator identified as "key for subpoena purposes." Relator remains unaware of any CID (Civil Investigative Demand) issued from the federal government to prevent further spoliation of evidence. Moreover, USC's March 27, 2020 Voluntary Self-Disclosure at 4 states "USC Care has not received any notice from any federal health care program or agency that Keck Medicine of USC is under investigation for IONM claims to any such program."  4AC Exhibit 89.

I respectfully request each of the four participating government entities (United States of America, Los Angeles County, California Attorney General and California Department of Insurance) respond to me directly in writing regarding which of the documents outlined in Relator's November 27, 2018 letter were requested, obtained and/or reviewed by each participating government entity and what, if any, document preservation orders were issued for the relevant evidence -- especially in light of Relator's repeated warnings to the government in 2018 that there was substantial spoliation of evidence at both USC Keck Hospital and Los Angeles County+USC Medical Center.

On December 6, 2018, Relator complied with AUSA Kortum's request to send him four copies of password protected DVDs containing additional documentary evidence of the false claims submissions and criminal acts for which AUSA Kortum said the United States of America would take responsibility for "redistributing these DVDs to the government entities involved in the case…" See attached Exhibit A-242. Contained within the DVDs that AUSA Kortum stated he would distribute to each of the participating government entities in December 2018 are additional exemplars showing neurophysiologists repeatedly using Los Angeles County's "No Cosign Required (Per Protocol)" standing order to submit false claims and commit crimes at Los Angeles County+USC Medical Center. One of the videos contained in the December 2018 DVDs is now lodged with the court as 4AC Exhibit 150. Notably, 4AC Exhibit 150 shows neurophysiologist Nancy Nguyen (whose salary was fully funded by Los Angeles County through its contracts with USC; See Exhibit A-115 previously provided to all four government entities on March 23, 2021 and reattached here for reference) in the act of using Los Angeles County's "No Cosign Required (Per

Frank Kortum, AUSA, U.S. Attorney's Office C.D. Cal
Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution, Los Angeles County District Attorney's Office
Steve Frankland, Head Deputy of Healthcare Fraud, Los Angeles County District Attorney's Office
John Fisher, DAG, California Attorney General Bureau of Medi-Cal Fraud
Mitch Neumeister, California Department of Insurance Fraud Liaison Bureau
October 8, 2021
Page 2 of 2

Protocol)" standing order to submit false claims at Los Angeles County+USC Medical Center; these acts also constitute criminal events under H&S 1297.1 and WIC 14107.  Relator had specifically requested an investigation into the role of the clinical leadership at LAC+USC MC in creating such a protocol.

On March 23, 2021, I sent all four participating government entities Exhibit A-206 with OIG HHS's citation of a relevant case. In the case cited by OIG HHS, "a neurophysiologist was sentenced to 13 months' imprisonment and ordered to pay restitution for his scheme to defraud Medicare and Medi-Cal, California's Medicaid program. Because the neurophysiologist is a technician who conducts diagnostic tests and is not considered a physician, he did not qualify for Medicare or Medi-Cal provider numbers. To gain access to provider numbers, the neurophysiologist entered into business relationships with physicians… it was determined that the neurophysiologist actually operated the practice and the doctor was paid a small salary for use of his [physician provider] number." Exhibit A-224.

On November 13, 2012, the Los Angeles County Board of Directors re-approved the neurophysiologists "to monitor the functional integrity of certain neural functions of a patient during surgery" at Los Angeles County+USC Medical Center. See attached 4AC Ex. 48 excerpts (previously Exhibit A-095): "The current Agreement with USC provides funding for an IOM technician (1.0 FTE) to monitor the functional integrity of certain neural functions of a patient during surgery. DHS is proposing to add two additional IOM technicians (2.0 FTE) at a total annual cost of $267,000 to meet the growing demands for such technicians [neurophysiologists] by LAC+USC MC." At Los Angeles County+USC Medical Center, the neurophysiologists operated the practice of IONM medicine and perpetrated the fraudulent scheme through Los Angeles County's "No Cosign Required (Per Protocol)" standing order and the MSOA/MSAA/PSA payments represent the "salary" paid by Los Angeles County to USC for use of the USC physicians' provider numbers.

I respectfully request each of the four participating government entities (United States of America, Los Angeles County, California Attorney General and California Department of Insurance) respond to me directly in writing regarding each entity's respective investigation into false claim submissions and crimes at Los Angeles County+USC Medical Center including but not limited to the videos capturing the false claims and crimes.

As it relates to the government's investigation into the damages associated with the false claims related to IONM neurophysiologists and neurologists only, Relator's November 16, 2018 estimate of damages indicated $35 million in single damages and nearly $200 million in treble damages with minimum civil monetary penalties (CMP).  AUSA Kortum also forwarded this estimate of damages to State of California and OIG HHS on November 19, 2018. See attached Exhibits A-243 and A-244. After the TAC and 4AC were filed, Relators updated the estimate to include damages from false claims submitted at Los Angeles County+USC Medical Center for surgeries performed without Teaching Surgeons. I respectfully request that each participating government entity email me to compare Exhibit A-237 (USC damages) and Exhibit A-239 (LAC+USC damages) with reimbursement records accessible to each of the participating government entities.

Finally, Los Angeles County is the owner and custodian of all records related to false claims submitted at Los Angeles County+USC Medical Center. It is therefore critical to address the importance of Los Angeles County's role as a participating government entity from the time the original qui tam complaint was filed in September 2018. See attached Exhibits A-245, A-246, A-247, A-248 and A-249. Since it has recently been confirmed that Los Angeles County is *still* a participating government entity and Los Angeles County is the custodian of key evidence in this investigation (see attached Exhibits A-250, A-251 and A-252), I respectfully request again that all participating parties including Los Angeles County provide Relators access to the evidence and witnesses per the requests Relators made in January 2021, February 2021, March 2021, April 2021, May 2021, July 2021, September 2021 and October 2021 to allow Relators to participate in the government's investigation. Relators reiterate the requests for access to the evidence and witnesses as outlined in Exhibits A-216U and A-240 to avoid further delays to the case.

From: **Alice Chang JDMBA** <alicechangjdmba@gmail.com>
Date: Mon, Oct 11, 2021 at 4:55 PM
Subject: U.S. ex rel. IONM LLC v. USC; Case No. CV 18-08311-ODW (AS) (responding to 10/8
message)
To: Kortum, Frank (USACAC) <Frank.Kortum@usdoj.gov>
Cc: Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>, John Fisher
<John.Fisher@doj.ca.gov>, Steven Frankland <sgfrankl@da.lacounty.gov>, Eliot Rushovich
<eliot@riselawfirm.com>, Marlan Wilbanks <mbw@wilbanksgouinlock.com>, Marsh, Maria
(USACAC) <Maria.R.Marsh@usdoj.gov>, Lam, Gabriel (USACAC) <Gabriel.Lam@usdoj.gov>, Marc
Beaart <mbeaart@da.lacounty.gov>

Mr. Kortum,

Given that Mr. Wilbanks had earlier committed to working with you on the Stark/AKS issues, but
apparently now indicates that he is contemplating potential withdrawal as counsel, Relators are
prepared to move forward by amending the Complaint to remove those claims.  I trust that will resolve
your concerns.

Thanks,
Alice Chang

From: **Kortum, Frank (USACAC)** <Frank.Kortum@usdoj.gov>
Date: Mon, Oct 11, 2021 at 11:05 PM
Subject: U.S. ex rel. IONM LLC v. USC; Case No. CV 18-08311-ODW (AS) (responding to 10/8
message)
To: Alice Chang JDMBA <alicechangjdmba@gmail.com>
Cc: Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>, John Fisher
<John.Fisher@doj.ca.gov>, Steven Frankland <sgfrankl@da.lacounty.gov>, Eliot Rushovich
<eliot@riselawfirm.com>, Marlan Wilbanks <mbw@wilbanksgouinlock.com>, Marsh, Maria
(USACAC) <Maria.R.Marsh@usdoj.gov>, Lam, Gabriel (USACAC) <Gabriel.Lam@usdoj.gov>

Ms. Chang,

I'm writing in response to some of the issues raised in your message of 10/8 (below), which was
received after the close of business on that date.

1. For the reasons stated in Mr. Fisher's 1/10 message (also below), we respectfully decline to
   provide you with the information you requested in the pdf attachment to your message.
2. The pdf attachment to your message states that Mr. Wilbanks' firm will address the "Stark/AKS
   sections of the operative Fourth Amended Complaint," but his message of 10/8—on
   which  you were copied (see attached "Document1")—indicates that he intends to withdraw as
   counsel.
3. As you know,

   A. Mr. Wilbanks and I had been working together regarding the Stark/AKS issue and I was
      looking forward to receiving additional information I'd requested from him regarding that
      issue; and
   B. During a 10/1 phone conversation with Mr. Wilbanks (in which you participated), I stressed
      the importance of our receiving that information as soon as possible.

   To say the least, it's now unclear (A) whether we can rely on your statement that Mr.
   Wilbanks' firm will be addressing the Stark/AKS issues; and (B) if or when we will receive the

information I requested from him.  I'm therefore requesting that you and/or Mr. Wilbanks clarify immediately (A) when we may expect to receive that information; and (B) who will be providing that information.

4. In the interests of time I've not addressed all of the issues raised in connection with the 10/8 messages from you and Mr. Wilbanks.  Those issues will be addressed at another time to the extent it becomes necessary to do so.

Frank Kortum  (cell 213.393.5512)

Document1

From: Marlan Wilbanks <mbw@wilbanksgouinlock.com>
Sent: Friday, October 8, 2021 6:54 PM
To: Kortum, Frank (USACAC) <FKortum@usa.doj.gov>
Cc: Alice Chang JDMBA <alicechangjdmba@gmail.com>; Justin Cheongsiatmoy <iomneurologist@gmail.com>; Hart Willoughby <thw@wilbanksgouinlock.com>; Susan Gouinlock <ssg@wilbanksgouinlock.com>
Subject: [EXTERNAL] Withdrawal intent

Please feel free to notify the other Government agency counsel and/or investigators, as you deem appropriate , of our stated intent Io withdraw from the case as per my last email. The same thing holds true with regard to providing notice that Mr. Withrow is also unwilling to go forward in his role as a legal expert in the case. Of course it goes without saying that our request to withdraw must be approved by the Court and we will be seeking permission to do so as soon as is appropriate.

Thank you Frank,
Marlan

Sent from my iPhone

-----Original Message-----
From: Marlan Wilbanks <mbw@wilbanksgouinlock.com>
Sent: Friday, October 8, 2021 6:44 PM
To: Kortum, Frank (USACAC) <FKortum@usa.doj.gov>
Cc: Justin Cheongsiatmoy <iomneurologist@gmail.com>; Alice Chang JDMBA <alicechangjdmba@gmail.com>; Susan Gouinlock <ssg@wilbanksgouinlock.com>; Hart Willoughby <thw@wilbanksgouinlock.com>
Subject: [EXTERNAL] Notice of Intent To Withdraw - USC matter

Frank, I am sorry to inform you that my firm plans to seek permission to withdraw as counsel as soon as possible in the USC et al case. We will fulfill any residual obligations existing in our representation agreement but will ask the court to release us from any responsibility to continue representation of Dr, Cheongsiatmoy . I wanted to give you this information as soon as possible as a professional courtesy and in recognition of the fact that the United States is the party in interest in the aforementioned FCA matter. In that same vein, Mr. Withrow has asked me to inform you that he will not continue his role as a consulting legal expert in this matter.

It has  been a pleasure working with you and I truly appreciate your effort exhibited in the investigation of this case. It is my hope that the client will retain competent  FCA counsel to replace my firm as soon as possible.

Best,
Marlan

Sent from my iPhone

**DATE:**     October 25, 2021 (*Delivered Via Electronic Mail*)

**FROM:**    Alice Chang, Esq.

**TO:**       Frank Kortum, AUSA, U.S. Attorney's Office C.D. Cal (frank.kortum@usdoj.gov)

           Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution, L.A.
District Attorney's Office (mbeaart@da.lacounty.gov)

           Steve Frankland, Head Deputy of Healthcare Fraud, L.A. District Attorney's Office
(sgfrankl@da.lacounty.gov)

           John Fisher, DAG, California Department of Justice, Office of the Attorney General,
Bureau of Medi-Cal Fraud
(John.Fisher@doj.ca.gov)

           Mitch Neumeister, California Department of Insurance Fraud Liaison Bureau
(mitch.neumeister@insurance.ca.gov)

**CC:**      Eliot Rushovich, Esq.  (eliot@riselawfirm.com)

**RE:**      CV 18-08311-ODW [UNDER SEAL] – Meet and Confer
U.S. ex rel. IONM LLC and Justin Cheongsiatmoy, M.D., et al. v. USC

---

I write to follow-up on the matters raised in my prior communications for which your office has not answered.  I reiterate the importance of the issues raised therein; note that despite multiple requests since January 2021, no such information has been provided to me despite Relators' repeated instructions that all communications involving Relators' counsel must include me since I am lead counsel, local counsel and the only counsel of record representing all of Dr. Cheongsiatmoy's claims in this case.

Please review attached Exhibits A-253, A-254 and A-255 wherein Dr. Cheongsiatmoy responded to AUSA Kortum regarding issues related to the investigation with the expectation that such communications would be conveyed to each of you directly as a participating government entity in this case.  I have also provided the above-referenced instructions to you in writing including but not limited to my July 2, 2021 and September 30, 2021 communications (re-attached here as Exhibits A-249 and A-256).

I ask to meet and confer with each participating government entity individually regarding the issues outlined my prior communications as noted above and your office's investigation into the policies and protocols directing technologists to practice medicine in the capacity of physicians; your office's investigation into the false claims associated with services not rendered by USC teaching surgeons and USC neurologists billed at Los Angeles County+USC Medical Center; document preservation orders; subpoenas; work product; white papers; witness interviews; depositions; disclosures and/or discovery produced by USC and/or Los Angeles County related to this case; claims data (aggregate, summary and line item by location of service; by physician, surgeon and neurologist and by DRG and CPT); chain of custody; spoilation of evidence and amendment to the Complaint to include removing the Stark/AKS claims and adding new causes of action i.e. 31 U.S.C. §3729(a)(1)(C)) and Cal. Gov. Code § 12651, subd. (a)(3)); conspiracy; concealment of facts necessary to investigate the false claims. See Exhibits A-257 and A-258 attached as reference to these issues.

As these matters remain unresolved, I request each participating government entity respond directly to Mr. Rushovich and me by close of business on Monday, October 25, 2021 with your availability to meet and confer with us one-on-one on either Tuesday, October 26, 2021 or Wednesday October 27, 2021.

From: Justin Cheongsiatmoy <iomneurologist@gmail.com>
Date: Mon, Oct 25, 2021 at 4:41 AM
Subject: Re: Call with DOJ
To: Frank Kortum <Frank.Kortum@usdoj.gov>
Cc: Alice Chang JDMBA <alicechangjdmba@gmail.com>, Eliot Rushovich <eliot@riselawfirm.com>

AUSA Kortum,

I was informed that you forwarded over email communications containing my personal email address
to all participating government entities; however, I note you left out my responses to you in which I
made the Government aware that any communications between the Government and Wilbanks &
Gouinlock including its associates such as Withrow, McQuade & Olsen (collectively defined as "W&G")
are not to be relied upon unless my counsel, Alice Chang, was present for the entire duration of the
communication.

Please inform the other participating government entities in the qui tam case (California Department
of Justice Attorney General Medi-Cal Fraud, California Department of Insurance, and Los Angeles
County) that W&G has never had any authorization to accept or submit communications on behalf of
Relators if my counsel, Alice Chang, was not present for the entire duration of the communication
involving Relators' counsel.

I want to take this opportunity to clarify the "Questions and Answers Explaining IONM-Related FCA
Schemes at USC Keck and LAC" work product which Mr. Wilbanks explained was specifically
requested by you as "joint work product with Frank." This work product which Mr. Wilbanks claimed
he created with you contains significant misrepresentations which undermines and directly
contradicts the facts and evidence contained in the Complaint. Ironically, this "joint work product with
Frank" also contains numerous false statements I warned the Government in 2018 would be used by
USC as potential defenses to the substantial fraud. I then instructed Ms. Chang to correct the
misrepresentations contained therein and she sent all participating government entities (including Los
Angeles County) a true and correct copy of Relators' Q&A as Exhibit A-240 on September 30, 2021,
just one day prior to the "Call with DOJ" you requested I personally attend with you.

Although I was initially unclear why the DOJ requested to speak to me personally via telephone, it
later became clear when on that October 1, 2021 "Call with DOJ," you told me and my counsel that
"the County has done nothing to investigate the claims" and "[the DOJ has] not been asking [Los
Angeles County] for documents and [the DOJ has] not asked to look at their files." You further
stated: "I want to emphasize that nobody representing the Relators should be reaching out to the
County." You further reiterated and instructed my counsel when you stated: "Do not contact the
County about any aspect of this case."

However, I would still like all participating government entities to know that I remain available to
review the evidence Ms. Chang has asked Los Angeles County to make available to her since January
5, 2021 and the evidence you directly requested from USC in your April 22, 2021 email. With this
evidence and my assistance, the Government will be able to prove the extent of the fraud USC
committed at Los Angeles County+USC Medical Center in a matter of weeks -- ultimately resolving
any potential issues related to "lack of resources" which may prevent the taxpayers from recovering
the substantial false claim damages outlined in the Complaint.

With respect to the DOJ's June 2021 request from your "superiors at DOJ" asking me to "re-toll" my employment claims prior to the filing of the TAC and your repeated requests in July 2021 and again in October 2021 that I "bifurcate" my employment claims to remove them from the Complaint, please note that since you instructed both Ms. Chang and Mr. Rushovich on July 13, 2021 that my employment counsel is not allowed to talk to USC about my employment claims, I have been prevented from having the opportunity to reach a resolution of my employment claims.

I reiterate that Ms. Chang is Lead Counsel and the only counsel of record who represents all my claims in this case, and I continue to inform all parties that any communications by W&G made outside the presence of Ms. Chang have never been authorized by me. The reason all parties need to be reminded of this material fact is to prevent any potential misrepresentations which may prejudice the case.

I want to make it very clear to all participating government entities that Relators have never authorized any of Relators' previous and current counsel to advise the Government to turn its investigative priorities away from the substantial fraud associated with USC Teaching Surgeons and USC Neurologists at Los Angeles County+USC Medical Center as outlined in the current and previous complaints supported by Exhibits A-238 and A-239 (LAC+USC Medical Center False Claims Damages) sent as work product by Ms. Chang to all participating government entities.

Finally, you indicated you have been awaiting W&G's commitments on the Stark/AKS claims and I expect Mr. Wilbanks will complete his obligations before he withdraws to prevent prejudice to the case. I have instructed W&G to send any communications or work product it wishes to deliver to the Government to Ms. Chang and she will be the one to further coordinate with the participating government entities.

Please remind all parties that Ms. Chang is Lead Counsel in this case so any and all communications with Relators' counsel must be directed to and made through Ms. Chang only (and not W&G). I have instructed Ms. Chang to meet and confer individually with each participating government entity without W&G to prevent further prejudice to the case.

Sincerely,
Justin Cheongsiatmoy, M.D.
Justin Cheongsiatmoy, M.D. on behalf of IONM LLC

**DATE:**    October 27, 2021 (*Delivered Via Electronic Mail*)

**FROM:**    Alice Chang, Esq.

**TO:**    Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal (frank.kortum@usdoj.gov)

Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution, Los Angeles County District Attorney's Office (mbeaart@da.lacounty.gov)

Steve Frankland, Head Deputy of Healthcare Fraud
Los Angeles County District Attorney's Office (sgfrankl@da.lacounty.gov)

John Fisher, Deputy Attorney General, California Department of Justice, Office of the Attorney General, Bureau of Medi-Cal Fraud (John.Fisher@doj.ca.gov)

Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance, Fraud Liaison Bureau
(mitch.neumeister@insurance.ca.gov)

**CC:**    Eliot Rushovich, Esq.  (eliot@riselawfirm.com)

**RE:**    CV 18-08311-ODW [UNDER SEAL] – Meet and Confer Follow-up
U.S. ex rel. IONM LLC and Justin Cheongsiatmoy, M.D., et al. v. USC

---

I write to follow up on the numerous, reasonable, good faith efforts I have made to meet and confer with each and every participating government entity, both in writing and orally on the telephone, as to the issues outlined in my communications for which each participating government entity has not responded since January 2021.

It is extremely critical we address the potentially irreparable injury and prejudice caused by substantial spoliation of evidence in the above-referenced matter, especially in light of the November 1, 2018 California Department of Insurance (CDI) subpoena which specifically ordered the production of evidence from Los Angeles County+USC Medical Center (Exhibit A of 4AC Exhibit 89) and USC's subsequent March 27, 2020 Voluntary Self-Disclosure (4AC Exhibit 89) which intentionally omitted any reference to the egregious fraud at Los Angeles County+USC Medical Center.

To follow up on my multiple requests that each and every participating government entity individually meet and confer one-on-one with me to reach a potential resolution which would eliminate the necessity for a hearing on such issues and to follow up on the continued explicit refusal by the United States of America and State of California and implicit refusal by Los Angeles County to do so (see attached Exhibits A-259 and A-260) -- please note that earlier today, Mr. Rushovich and I called counsel representing each and every participating government entity; given no response, I left voice messages asking each of you to meet and confer today regarding a potential motion; these voice messages were left on the office lines of Assistant United States Attorney Frank Kortum; Deputy Attorney General John Fisher; CDI False Claims Trial Attorney Mitch Neumeister; we also left messages via telephone with Ms. Wright, front reception for the Los Angeles County District Attorney's Office Healthcare Fraud Division for Steve Frankland, Head Deputy of Healthcare Fraud and for Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution.

Finally, the issues I have highlighted in my communications since January 2021 are of paramount importance given the threats against Relators made through the United States of America -- threats intended to prevent Relators from providing truthful testimony and evidence in the Government investigation.  See attached Exhibit A-261.  Relators have continually reiterated that any files obtained by Dr. Cheongsiatmoy were for the purposes of assisting the Government in its investigation into the substantial fraud and for the purposes of preventing further patient injuries and deaths.  Retaliatory actions that seek to punish whistleblowers for assisting the Government in its investigation and threats intended to intimidate whistleblowers from providing truthful testimony will set a dangerous precedent to deter others from becoming whistleblowers; continued failure to address such issues are not in the public interest.

**DATE:**     November 2, 2021 (*Delivered Via Electronic Mail*)

**FROM:**     Alice Chang, Esq.

**TO:**     Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal (frank.kortum@usdoj.gov)

Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Los Angeles County District Attorney's Office (mbeaart@da.lacounty.gov)

Steve Frankland, Head Deputy of Healthcare Fraud
Los Angeles County District Attorney's Office (sgfrankl@da.lacounty.gov)

John Fisher, Deputy Attorney General, California Department of Justice
Office of the Attorney General, Bureau of Medi-Cal Fraud (John.Fisher@doj.ca.gov)

Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
Fraud Liaison Bureau (mitch.neumeister@insurance.ca.gov)

**CC:**     Eliot Rushovich, Esq. (eliot@riselawfirm.com)

**RE:**     CV 18-08311-ODW [UNDER SEAL]; U.S. ex rel. IONM LLC and Justin Cheongsiatmoy, M.D., et al. v. USC

---

I write to follow-up on the matters raised in my prior communications for which each participating government entity has not answered. I reiterate the importance of the issues raised therein; note that despite multiple requests to meet and confer with each participating government entity on these issues since January 2021, no such information has been provided to me despite Relators' repeated explicit instructions to all participating government entities that any and all communication involving Relators' counsel must be made through me since I am lead counsel for Relators on the qui tam claims.

Given AUSA Kortum's statements during the October 1, 2021 telephonic conference the DOJ requested to be attended by Dr. Cheongsiatmoy wherein AUSA Kortum stated: "I have not been asking [Los Angeles County] for documents and I have not asked to look at [Los Angeles County's] files," and "the County has done nothing to investigate the claims" -- the "odd request[s]" from the State of California regarding the evidence in this case including but not limited to "Rev 002" and ""USC005" should be evaluated against the actions or inactions of both the Los Angeles County District Attorney's Office and United States Department of Justice (Main Justice - D.C. Office) regarding the false claims and significant patient harm resulting from the serious crimes which occurred at Los Angeles County+USC Medical Center (as captured on the multiple videos contained within the DVDs sent to the participating government entities and Main Justice; i.e. Exhibits A-242, A-263 and A-264 attached hereto).  See also Exhibit A-255 re-attached here for reference.

I further reiterate the potential prejudice and irreparable injury to all parties of interest caused by the substantial spoliation of evidence for which I have made multiple attempts to meet and confer since January 2021 – including but not limited to the irreparable spoliation of evidence as a result of the State of California's explicit, written orders to delete USC's production of evidence which was "removed entirely with no backup" including the "the document native, images, searchable text, and all coding related [information]."  See attached Exhibits A-265.

The State of California's explicit, written orders to "remove[] entirely with no backup…the document native, images, searchable text, and all coding related [information]" were made during this ongoing false claims investigation into FCA liability associated with thousands of patients for which defendants were unjustly enriched for patient services not rendered by USC surgeons and USC neurologists at USC Keck Hospital and Los Angeles County+USC Medical Center. The Government's written admission that "Dr. C[heongsiatmoy] is the relator in this case and should have the same access [to the evidence]"(see Exhibit A-266 attached) is consistent with the congressional intent of the false claims statutes requiring Relators to participate in the Government investigation to allow Relators the ability to make an informed decision as to whether any resolution of the false claims is "fair, adequate and reasonable under all the circumstances."

Keeping evidence necessary to investigate the fraud away from the taxpayers and retaliatory actions which seek to punish whistleblowers for bringing these issues to light continue to set a dangerous precedent to deter others from reporting wrongdoing and this is not in the public interest.

**DATE:**  November 15, 2021 (*Delivered Via Electronic Mail*)

**FROM:**  Alice Chang, Esq.

**TO:**  Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal (frank.kortum@usdoj.gov)

Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Los Angeles County District Attorney's Office (mbeaart@da.lacounty.gov)

Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
Los Angeles County District Attorney's Office (sgfrankl@da.lacounty.gov)

John Fisher, Deputy Attorney General, California Department of Justice
Office of the Attorney General, Bureau of Medi-Cal Fraud (John.Fisher@doj.ca.gov)

Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
Fraud Liaison Bureau (mitch.neumeister@insurance.ca.gov)

**CC:**  Eliot Rushovich, Esq. (eliot@riselawfirm.com)

**RE:**  CV 18-08311-ODW [UNDER SEAL]; U.S. ex rel. IONM LLC and Justin Cheongsiatmoy, M.D., et al. v. USC

---

Per Relators' explicit, written instructions to all parties that I am Lead Counsel in this case and all communications with Relators' counsel must be directed to and made through me and not W&G (Exhibit A-255), I request each participating government entity respond to me in writing with the status of its investigation and the [UNDER SEAL] status of the case.

I have documentation that AUSA Kortum requested a partial seal lift on May 28, 2020 on the basis of "payment for monitoring procedures that purportedly took place at the Division of Intraoperative Neurophysiological Monitoring ("IONM") at Keck's Department of Neurology," a request AUSA Kortum made just one day after AUSA Kortum received USC's Voluntary Self-Disclosure (4AC Ex. 89) via email on May 27, 2020 from Nelson Hardiman, counsel for USC (Ex. A-269). The Government then set out to "expedite the process of attempting to informally resolve this action on the merits" despite all participating government entities' actual knowledge that USC intentionally omitted any reference to the fraud committed at Los Angeles County+USC Medical Center in USC's March 27, 2020 Voluntary Self-Disclosure.

As outlined in Exhibits 133 and 134 of the Complaint, most of the underserved and indigent patients at Los Angeles County+USC Medical Center are insured by government payers such as Medicare and Medi-Cal. The U.S. Attorney's Office for C.D. Cal (represented by AUSA Kortum) is responsible for prosecuting fraud against Medicare, Medicaid (Medi-Cal), and other federal health insurance contracts and programs. See 4AC ¶39. The State of California represented by DAG John Fisher is also responsible for prosecuting fraud against Medi-Cal. Los Angeles County was also aware that DAG Fisher was "asking [his] investigator auditor to run the numbers to see what Medi-Cal reimbursed LA County Hospital." See Exhibit A-257 wherein LADA Bureau Director Marc Beaart was included in the above-referenced email.

Even after being made explicitly aware that the majority of the fraud in the Complaint occurred at Los Angeles County+USC Medical Center which is wholly owned and operated by Los Angeles County, Marc Beaart, Bureau Director for Los Angeles County Fraud & Corruption Prosecution, continued to sign multiple seal extensions despite Bureau Director Beaart's actual knowledge of the false claims Dr. Cheongsiatmoy reported internally to senior management at Los Angeles County prior to filing the qui tam and additional supporting evidence (i.e. videos of USC technologists committing false claims and crimes at LAC+USC Medical Center) provided to all participating government entities in 2018 proving false claims at Los Angeles County+ USC Medical Center for services not rendered by teaching surgeons and neurologists. Finally, Bureau Director Beaart was also fully aware that USC directly submitted false claims using CPT Code 95940 into the Los Angeles County EMR and that USC's direct false claims submissions to Los Angeles County via fraudulent Provider Time Studies (PTS) caused fraudulent MSOA/MSAA/PSA payments by Los Angeles County to USC. Los Angeles County therefore had actual knowledge that it had a duty to further investigate, especially in light of USC's February 25, 2021 email to AUSA Kortum stating that USC "found no evidence that USC falsely certified to LA County on a claim using CPT Code 95940, or that USC submitted any claim to the county." Ex.A-268 attached.

Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal
Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
John Fisher, Deputy Attorney General, California Department of Justice
Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
November 15, 2021
Page 2 of 3

For over 3 years now, despite Relators' repeated requests to participate in the investigation of false claims which occurred at Los Angeles County+USC Medical Center, Los Angeles County has refused to allow Relators access to its records to investigate the false claims at Los Angeles County+USC Medical Center; yet, Los Angeles County has continued to request that the case remain [UNDER SEAL] to the public despite the United States of America's admission on the October 1, 2021 "Call with DOJ" that "the County has done nothing to investigate the claims" and "[the DOJ has] not been asking [Los Angeles County] for documents and [the DOJ has] not asked to look at their files." Ex. A-255.

As it relates to the spoliation of evidence, AUSA Kortum provided a copy of the original complaint to Nelson Hardiman on November 23, 2020, just 4 days after the State of California ordered hundreds of files in evidence "removed entirely with no backup" (Exhibit A-265 reattached for reference) from USC's document production prior to transferring out the remaining tens of thousands of files, thereby causing irreparable damage to the "document native, images, searchable text and all coding related [information]" -- key evidence required to prosecute the case should USC not cover all the false claims conduct described in the Complaint or otherwise refuse to successfully settle Justin Cheongsiatmoy, M.D.'s individual claims. See also Exhibit A-267 attached containing the March 25, 2019 non-confidential letter from Relator's counsel to the United States of America and State of California notifying the government entities that their actions or inactions in this case would impact Justin Cheongsiatmoy, M.D.'s legal rights. Keeping evidence necessary to investigate the fraud away from the Relators and continuing to facilitate retaliatory actions to punish Dr. Cheongsiatmoy for bringing these issues to light sets a dangerous precedent to deter others from reporting wrongdoing; this is not in the public interest.

In January 2021, concurrent with my filing of the First Amended Complaint (FAC), I informed all participating government entities that I was to be included in all communications involving Relator's counsel in this case. In May 2021, concurrent with my filing of the Second Amended Complaint (SAC), Justin Cheongsiatmoy, M.D. became a Co-Relator and Plaintiff in his personal capacity with individual rights in this action, yet Relator IONM LLC and Plaintiff-Relator, Justin Cheongsiatmoy, M.D., have never been given the opportunity to provide consent for the Second Amended Complaint (SAC), Third Amended Complaint (TAC) and Fourth Amended Complaint (4AC) to be given to USC.

Despite actual knowledge that only Mr. Rushovich and I represent Justin Cheongsiatmoy, M.D. in his personal capacity as the Plaintiff-Relator in this case, AUSA Kortum has never notified Mr. Rushovich or me that any of the complaints containing Justin Cheongsiatmoy, M.D.'s individual claims (SAC, TAC, 4AC) have been given to USC; the Government has therefore prevented Justin Cheongsiatmoy, M.D. the opportunity to resolve his claims brought in his personal capacity as a Plaintiff-Relator in this action. All participating government entities have always been fully aware that Wilbanks & Gouinlock (W&G) has never represented Plaintiff-Relator Justin Cheongsiatmoy, M.D. in his individual capacity and therefore W&G has never had any authority to accept or submit any communication on Dr. Cheongsiatmoy's behalf. Relators have repeatedly made the Government fully aware that W&G has never been authorized to accept or submit any communications in this case outside my presence to prevent prejudice should the Government rely upon any such misrepresentations not authorized by Relators. See Exhibit A-255 (reattached for reference) containing Relators' explicit instructions in writing to "reiterate to all parties that Ms. Chang is Lead Counsel and the only counsel of record who represents all [Relators'] claims in this case, and [Relators] continue to inform all parties that any communications by W&G made outside the presence of Ms. Chang have never been authorized by [Relators]. The reason all parties need to be reminded of this material fact is to prevent any potential misrepresentations which may prejudice the case." All parties continue to be on notice that any communications made by or accepted by W&G outside my presence are not to be relied upon by the Government unless verified with me to prevent prejudice to all current and future parties of interest.

In July 2021, AUSA Kortum requested to meet with Mr. Rushovich and me regarding the individual claims of Plaintiff-Relator, Dr. Cheongsiatmoy since the United States of America knew that only Mr. Rushovich and I represented Dr. Cheongsiatmoy's individual interests as a Plaintiff-Relator in this action. On the July 13, 2021 telephonic conference attended only by AUSA Kortum, Mr. Rushovich, and me, the United States of America specifically instructed that Relators' counsel is not permitted to speak to USC about the case given the Government's interest in not disclosing the Complaint to USC until the Government has completed its investigation into the false claims as outlined in the operative Complaint. The conduct described in both the Third Amended Complaint (TAC) and Fourth Amended Complaint (4AC) includes but is not limited to the fraud Plaintiff-Relator, Dr. Cheongsiatmoy, reported to senior management at Los Angeles County and USC which resulted from policies set by USC Keck Hospital and Los Angeles County+USC Medical

Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal
Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
John Fisher, Deputy Attorney General, California Department of Justice
Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
November 15, 2021
Page 3 of 3

Center including standing protocols which caused services of resident surgeons and non-physician technologists to be billed under teaching surgeons and neurologists.  AUSA Kortum further emphasized on that July 13, 2021 telephonic conference call that there should not be any discussions with USC regarding Dr. Cheongsiatmoy's employment claims and no one representing Relators should be talking to USC until AUSA Kortum officially informs Mr. Rushovich and me that the Government has completed its investigation and AUSA Kortum informs Mr. Rushovich and me that USC has received the Complaint.

I expect that the United States of America would not unfairly prejudice Dr. Cheongsiatmoy's individual claims.  However, to date, the United States of America has not informed Mr. Rushovich and me that USC has a received a copy of any of the complaints containing Dr. Cheongsiatmoy's individual claims (SAC, TAC, 4AC).  In light of AUSA Kortum's instructions to Mr. Rushovich and me on July 13, 2021 that employment counsel is not to have contact with USC until the Government has completed its investigation and AUSA Kortum notifies Mr. Rushovich and me that the Complaint has been given to USC, Dr. Cheongsiatmoy has therefore been prevented the opportunity to resolve his individual claims.

Please review Exhibit A-249 (re-attached for reference) containing my explicit, written instructions on July 3, 2021 informing all participating government entities that only "I represent Relator and Plaintiff-Relator, Dr. Cheongsiatmoy and need to be on all communications regarding this case" -- written instructions I provided to all participating government entities in response to LADA's email to W&G stating that Los Angeles County had "already declined to intervene in this action" for which I did not receive any response from any participating government entity as to any documentation substantiating LADA's purported declination.  Relators further reiterated these instructions in Dr. Cheongsiatmoy's September 30, 2021 email to AUSA Kortum instructing that "any communications between and involving Relators' counsel and any government entity in this case include my local counsel, Alice Chang, since she is the only counsel of record who represents all my claims."  See Exhibit A-253 re-attached for reference.  Relators' instructions were again reiterated in Relators' written communication to AUSA Kortum on October 25, 2021 making the "Government aware that any communications between the Government and Wilbanks & Gouinlock including its associates such as Withrow, McQuade & Olsen (collectively defined as "W&G") are not to be relied upon unless my counsel, Alice Chang, was present for the entire duration of the communication."  Relators further reiterated in writing to AUSA Kortum: "Please remind all parties that Ms. Chang is Lead Counsel in this case so any and all communications with Relators' counsel must be directed to and made through Ms. Chang only (and not W&G).  Exhibit A-255 re-attached.

Since the court order for partial seal lift only allows the United States, "in its discretion provide USC with any of the Complaint(s) filed in this action, redacted or not," I write to request that each participating government entity respond via email to me (copying Mr. Rushovich) with written answers to the following questions below:

1. Was the Fourth Amended Complaint (4AC) given to USC?
2. What date was the Fourth Amended Complaint (4AC) given for the first time to USC?
3. Who gave a copy of the Fourth Amended Complaint (4AC) for the first time to USC?
4. Please provide a true and correct copy of the communication wherein USC was provided a redacted or unredacted copy of the Fourth Amended Complaint (4AC) for the first time.

5. Was the Third Amended Complaint (TAC) given to USC?
6. What date was the Third Amended Complaint (TAC) given for the first time to USC?
7. Who gave a copy of the Third Amended Complaint (TAC) for the first time to USC?
8. Please provide a true and correct copy of the communication wherein USC was provided a redacted or unredacted copy of the Third Amended Complaint (TAC) for the first time.

9. Was the Second Amended Complaint (SAC) given to USC?
10. What date was the Second Amended Complaint (SAC) given for the first time to USC?
11. Who gave a copy of the Second Amended Complaint (SAC) for the first time to USC?
12. Please provide a true and correct copy of the communication wherein USC was provided a redacted or unredacted copy of the Second Amended Complaint (SAC) for the first time.



November 17, 2021

To:    Frank Kortum, AUSA, U.S. Attorney's Office C.D. Cal (frank.kortum@usdoj.gov)
        Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
        L.A. District Attorney's Office (mbeaart@da.lacounty.gov)
        Steve Frankland, Head Deputy of Healthcare Fraud Division, L.A. District Attorney's Office
        (sgfrankl@da.lacounty.gov)
        John Fisher, DAG, California Attorney General Bureau of Medi-Cal Fraud
        (John.Fisher@doj.ca.gov)
        Mitch Neumeister, False Claims Attorney, California Department of Insurance Fraud
        (mitch.neumeister@insurance.ca.gov)

Cc:    Alice Chang, Esq., Counsel for Relators and Dr. Cheongsiatmoy in his individual capacity
        (AliceChangJDMBA@gmail.com)
        Lisa M. Watanabe-Peagler, Esq., Counsel for Dr. Cheongsiatmoy in his individual capacity
        (Lisa@riselawfirm.com)
        Elissa A. Waizman, Esq., Counsel for Dr. Cheongsiatmoy in his individual capacity
        (Elissa@riselawfirm.com)

**RE:   U.S. ex rel. IONM LLC and Justin Cheongsiatmoy, M.D., et al. v. USC; Case No. CV 18-08311-ODW [UNDER SEAL]**

    (*Delivered Via Electronic Mail*)

AUSA Kortum, Bureau Director Beaart, DDA Frankland, DAG Fisher, and Mr. Neumeister:

    As you are aware, my firm represents Justin Cheongsiatmoy, M.D. (Dr. Cheongsiatmoy) solely with regard to his employment claims as a Co-Plaintiff with the participating government entities in the above-referenced matter. To be clear, my firm and Ms. Chang are the only counsel representing Dr. Cheongsiatmoy with respect to his individual claims. Under no circumstances have my firm or Ms. Chang ever deferred representation of Dr. Cheongsiatmoy's individual claims to any other counsel in this case.

    On July 13, 2021, Ms. Chang and I attended a telephonic conference with Mr. Kortum wherein he specifically instructed Ms. Chang and me that we were not to have contact with USC regarding Dr. Cheongsiatmoy's employment claims until Mr. Kortum informed us that the United States had completed its investigation and officially notified Ms. Chang and me that USC had received a copy of the Complaint containing Dr. Cheongsiatmoy's individual claims.

    On October 1, 2021, I attended another telephonic conference that Mr. Kortum specifically requested Dr. Cheongsiatmoy attend.  During that call, when we asked about the extent of the United



States' and Los Angeles County's investigation into the false claims violations which occurred at Los Angeles County+USC Medical Center, it was clear to us that no substantial investigation had taken place.

Recognizing that the seal is set to expire at the end of next month, I want to remind the participating government entities that Dr. Cheongsiatmoy's individual claims arise from the same nucleus of operative facts as the government's claims, and therefore any and all settlement communications and discussions must include both Ms. Chang and me to prevent prejudice to Dr. Cheongsiatmoy's individual claims.

To the extent any settlement discussions are to occur, in order for Dr. Cheongsiatmoy to make an informed decision as to whether any potential resolution is fair, adequate, or reasonable under all the circumstances and whether it makes sense to settle out his individual claims, please note that we are requesting the items set forth below:

1) All Civil Investigative Demands (CID), Subpoenas (including any changes to parameters), etc.

2) All document preservation orders

3) All depositions and witness interviews including but not limited to interviews of USC President Carol Folt; CEO Thomas Jackiewicz who certified USC's Voluntary Self-Disclosure (4AC Ex. 89); Dean Laura Mosqueda; Drs. Christina Ghaly, Brad Spellberg, Helena Chui, Steven Giannotta, Andres Gonzalez and Parastou Shilian; and Neurophysiologists Michael Vesely, Pooja Parikh and Nancy Nguyen

4) Patient files AUSA Kortum requested from USC on April 22, 2021 (Exhibit A-216U)

5) Claims data (by location of service; by physician, surgeon, neurologist and by DRG and CPT)

6) All evidence obtained during the government's investigation into the false claims USC directly submitted to Los Angeles County through fraudulent Provider Time Studies (PTS) and the associated MSOA/MSAA/PSA payments from Los Angeles County to USC

7) All evidence obtained by OIG HHS in its investigation and recommended compliance programs to be implemented at USC Keck Hospital and Los Angeles County+USC Medical Center

8) A complete and detailed log of all evidence in this case which was "removed entirely without backup" by any government entity (Exhibit A-265)

9) All disclosures and/or discovery produced by USC and/or Los Angeles County related to this case



Separately, to date, Ms. Chang and I have not received any notification from Mr. Kortum that the United States has disclosed to USC any of the complaints containing Dr. Cheongsiatmoy's individual claims - Second Amended Complaint, Third Amended Complaint, and/or Fourth Amended Complaint. To the extent that the United States has disclosed copies of any of those complaints to USC, please confirm when any of such complaints were first disclosed (particularly given Mr. Kortum's instruction that Dr. Cheongsiatmoy's counsel is not permitted to communicate with USC) and provide Ms. Chang and me with true and correct copies of such communications.

Regards,


Eliot J. Rushovich

From: **Kortum, Frank (USACAC)** <Frank.Kortum@usdoj.gov>

Date: Mon, Nov 22, 2021 at 9:01 AM
Subject: U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW ((A) responding to your
11/15 message and Mr. Rushovich's 11/17 message; and (B) request for agreement to
seal extension (time sensitive))

To: Alice Chang JDMBA <alicechangjdmba@gmail.com>

Cc: Eliot Rushovich <eliot@riselawfirm.com>, Neumeister, Mitch
<mitch.neumeister@insurance.ca.gov>, John Fisher <John.Fisher@doj.ca.gov>, Marc
Beaart <mbeaart@da.lacounty.gov>, Steven Frankland <sgfrankl@da.lacounty.gov>,
Marlan Wilbanks <mbw@wilbanksgouinlock.com>


Ms. Chang,

I'm writing in response to portions of the memorandum attached to your 11/15 message
("11/15 Memorandum") as well as to the memorandum attached to Mr. Rushovich's
11/17 message ("11/17 Memorandum").

1. In a message sent to you on 11/8 (see attached "Document1"), Mr. Neumeister
   addressed the "spoliation" allegations that you raised in the memorandum
   attached to your 11/2 message—and again raise in the 11/15 Memorandum; I'm
   unaware of any facts that would suggest a basis for questioning the positions set
   forth in his message.
2. The 11/15 Memorandum acknowledges that the Court's partial unsealing order
   "allows the United States, 'in its discretion'" provide U.S.C. with a copy of any of
   the Complaints filed in this action.  As you may recall, the Court issued the partial
   unsealing order pursuant to a stipulation to which your client was (and is) a
   party.  Accordingly, to the extent the 11/15 Memorandum attempts to imply that
   your (or your clients') consent to disclosure was (or is) required prior to
   disclosure of any complaint (amended or otherwise) to U.S.C. (or that the order
   required prior notification of such disclosure), there's no basis for such an
   implication.  Furthermore, if the issue arises, I expect the Court to find that any
   decision to include employment-related claims in the amended complaints was
   made with knowledge that such claims could be disclosed to U.S.C. pursuant to
   the terms of the partial unsealing order.  Finally, the United States respectfully
   declines to respond to your detailed questions about the extent to which any of
   the complaints filed in this action were disclosed to U.S.C.  Nevertheless, please
   be advised (solely as a courtesy) that following the statement of your clients'
   intent to withdraw the Stark/AKS allegations in the Fourth Amended Complaint,
   the United States provided counsel for U.S.C. with a copy of that complaint in the
   interests of reviving negotiations regarding the remaining allegations therein
   (other than employment-related claims (which can be negotiated at the
   appropriate time without the participation of the United States)).

3.  Mr. Wilbanks hasn't yet received permission of the Court to withdraw as counsel of record. Until the Court permits him to withdraw, we'll continue to include him on case-related communications to ensure we're not excluding counsel of record.

4.  It's the position of the United States that negotiations regarding employment-related claims should take place separately from (and subsequent to) negotiations regarding allegations arising under the False Claims Act.  As a courtesy, I'm taking this opportunity to point out that counsel for U.S.C. has recently expressed an interest in resuming negotiations; if we're able to reach an informal resolution with U.S.C. regarding the FCA-related allegations, your clients will have an opportunity to review the terms of the settlement and to weigh in if you believe the settlement is inadequate under the circumstances.  In any event, based on a preliminary review of the list of the documents requested in the 11/17 Memorandum, it appears that with some possible minor exceptions, they've either already been provided to you (or to your former co-counsel), or else aren't in the possession of the United States.  I'm also taking this opportunity to point out that based on U.S.C.'s voluntary disclosure, the United States has deferred issuing Civil Investigative Demands or conducting witness interviews; if negotiations with U.S.C. are unsuccessful we'll revisit the issue of the extent to which further investigative activity is appropriate.


We've attempted to identify the issues in both the 11/15 and 11/17 Memoranda where an expedited response would be productive; to the extent it becomes necessary to respond to any additional issues that may have been raised in either the 11/15 Memorandum or the 11/17 Memorandum, we'll do so at another time.  Also, please be advised that because it's highly unlikely under the circumstances that we'll be able to conclude negotiations with U.S.C. prior to the current seal period's expiration date, we'll need to request an additional extension of the seal period in order to to have adequate time for negotiations (or to undertake investigative activities if negotiations are unsuccessful).

Please let me know by the close of business on 11/29/21 whether you'll consent to a six-month extension of the seal period (so that we can prepare a formal stipulation in the event I'm authorized to request an extension).  If we haven't received an e-mail setting forth your consent in principle to the extension by noon on 11/29/21, we'll conclude that you intend to withhold consent and will evaluate our options going forward accordingly.

Frank Kortum (cell 213.393.5512)

**DATE:** November 24, 2021 (*Delivered Via Electronic Mail*)

**FROM:** Alice Chang, Esq.

**TO:** Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal (frank.kortum@usdoj.gov)

Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Los Angeles County District Attorney's Office (mbeaart@da.lacounty.gov)

Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
Los Angeles County District Attorney's Office (sgfrankl@da.lacounty.gov)

John Fisher, Deputy Attorney General, California Department of Justice
Office of the Attorney General, Bureau of Medi-Cal Fraud (John.Fisher@doj.ca.gov)

Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
Fraud Liaison Bureau (mitch.neumeister@insurance.ca.gov)

**CC:** Eliot Rushovich, Esq. (eliot@riselawfirm.com)

**RE:** CV 18-08311-ODW [UNDER SEAL]; U.S. ex rel. IONM LLC and Justin Cheongsiatmoy, M.D., et al. v. USC

---

AUSA Kortum, Bureau Director Beaart, DDA Frankland, DAG Fisher, and Mr. Neumeister:

As you know, I am Lead Counsel in the above-referenced matter and the only counsel of record representing all Relators and Plaintiff Justin Cheongsiatmoy, M.D. in his individual capacity for which Dr. Cheongsiatmoy is a real party in interest.

Two days ago, on November 22, 2021, AUSA Kortum sent me an email underlining me for the very first time that "the United States provided counsel for U.S.C. with a copy of [the Fourth Amended Complaint] in the interests of reviving negotiations regarding the remaining allegations therein…" However, AUSA Kortum specifically stated that "the United States respectfully declines to respond to [my] detailed questions about the extent to which any of the complaints filed in this action were disclosed to U.S.C."

Despite multiple requests from both Mr. Rushovich and me, the United States has continued to refuse to provide Dr. Cheongsiatmoy with true and correct copies of communications containing the first time the United States disclosed to Defendants (1) Dr. Cheongsiatmoy's allegations of false claims violations, and (2) evidence and exhibits in support of Dr. Cheongsiatmoy's allegations.

It has now become increasingly clear that the United States has abused Court-ordered discretion to prevent the key witness and whistleblower, Dr. Cheongsiatmoy, the same time, opportunity, and freedom to discuss his allegations of false claims violations in order to give Defendants an unfair advantage in this case.  As I have consistently communicated to all participating government entities in my prior communications, retaliatory actions intended to punish whistleblowers for bringing allegations of false claims violations to light sets a dangerous precedent to deter others from reporting wrongdoing and this is not in the public interest.

Based on the information in AUSA Kortum's November 22, 2021 email, I reiterate the messages Mr. Rushovich and I left for each of you telephonically this morning (on your office numbers with the exception of the phone message for Bureau Director Beaart and DDA Frankland left with Los Angeles County District Attorney's Office Healthcare Fraud Division receptionist Martha) informing each of you that we intend to seek the Court's involvement via an ex parte application we plan to file as early as Monday, November 29, 2021.

In addition, we also intend to ask for Court orders to address the fact that Dr. Cheongsiatmoy has been prevented from participating in the case which has caused him to be unable to make any informed decisions. We further intend to ask the Court to address any prejudice resulting from the use of Court-ordered discretion to exclude Mr. Rushovich and me (and therefore Dr. Cheongsiatmoy) from case-related communications including but not limited to communications which may

Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal
Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
John Fisher, Deputy Attorney General, California Department of Justice
Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
November 24, 2021
Page 2 of 2

have taken place involving Defendants from the time any allegations from the complaint(s) containing Dr. Cheongsiatmoy's individual claims (SAC, TAC, 4AC) were disclosed by the United States to Defendants for the first time -- disclosures for which Dr. Cheongsiatmoy remains unaware, despite multiple attempts by Mr. Rushovich and me to obtain this information for him, and despite the fact that Dr. Cheongsiatmoy is the Plaintiff who made the false claims allegations as a real party in interest in this case.

Concurrent with the filing of the SAC, Dr. Cheongsiatmoy became a relator in his personal capacity and a real party of interest in this case, yet all participating government entities have continued to ignore the multiple attempts by Mr. Rushovich and me to meet and confer. To be very clear, no participating government entity has ever accepted our multiple requests to meet and confer with us as counsel for Dr. Cheongsiatmoy in his capacity as a real party in interest this case with individual claims which will be impacted by any decision made on the government claims.

Mr. Rushovich's firm and I are the only counsel of record who represent and who have ever represented Dr. Cheongsiatmoy in his personal capacity in this case, yet no participating government entity has ever invited Mr. Rushovich and me to meet and confer regarding any action that the government has filed, or the government is contemplating filing in this matter.

It is apparent that the United States is fully aware that any action by Dr. Cheongsiatmoy in this case must be made through me since I am Lead Counsel in this case and the only counsel of record who represents all of Dr. Cheongsiatmoy's claims in this case -- as noted in AUSA Kortum's November 22, 2021 email to me stating: "it's highly unlikely under the circumstances that we'll be able to conclude negotiations with U.S.C. prior to the current seal period's expiration date…let me know by the close of business on 11/29/21 whether you'll consent to a six-month extension of the seal period…If we haven't received an e-mail setting forth your consent in principle to the extension by noon on 11/29/21, we'll conclude that you intend to withhold consent and will evaluate our options going forward accordingly."

Dr. Cheongsiatmoy continues to be unable to make any informed decisions in this case until the issues noted herein are addressed by each participating government entity. As a follow-up to the phone calls Mr. Rushovich and I made to each participating government entity this morning, I respectfully request that each participating government entity respond to Mr. Rushovich and me in writing no later than 12:00PM (noon) on Monday, November 29, 2021 with each participating government entity's position on the ex parte application.

**From:** Eliot Rushovich <eliot@riselawfirm.com>
**Sent:** Sunday, November 28, 2021 4:44 PM
**To:** Kortum, Frank (USACAC) <FKortum@usa.doj.gov>
**Cc:** Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>; John Fisher
<John.Fisher@doj.ca.gov>; Marc Beaart <mbeaart@da.lacounty.gov>; Steven Frankland
<sgfrankl@da.lacounty.gov>; Alice Chang JDMBA <alicechangjdmba@gmail.com>
**Subject:** RE: U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW  ((A) responding to your 11/15
message and Mr. Rushovich's 11/17 message; and (B) request for agreement to seal extension (time
sensitive))

Mr. Kortum,

I'm writing in response to your November 22, 2021 email below and to attempt to meet and confer further on certain
issues I laid out in my November 17, 2021 letter.  Most importantly, I understand based on your below email that the
United States has shared the Fourth Amended Complaint (and possibly prior amendments thereto after the initial
Complaint) and has been engaging USC (defendants USC and USC Care Medical Group, Inc) regarding potential
settlement, in each case, without prior or contemporaneous notice to, or involvement of, Dr. Cheongsiatmoy or his
counsel.

While we understand that in 2020, the Court granted the United States the right, in its discretion, to disclose copies of
the Complaint (and amendments thereto) to USC to "help expedite the conclusion of the Government's investigation
and the resolution of this qui tam action", our position is that the partial unseal Order was not granted, and the
continuing FCA seal does not remain in place, for the purpose of giving the United States priority in communications
with USC at the potential expense of Dr. Cheongsiatmoy's individual employment claims.

The purpose of the seal is to allow the government time to decide whether it wants to intervene – it is not to allow the
government a "head start" potentially at the expense of Dr. Cheongsiatmoy's individual employment claims.  In fact, the
seal provision in the FCA was specifically added to encourage individuals to blow the whistle more, not less.

However, in a situation like this where the individual plaintiff has his own employment claims based on the same
operative facts as the Government, if the Government continues to take the position that only it can engage the
Defendant in settlement communications due to the seal, such position is not only contrary to the purpose of the seal
but also results in a serious risk that the plaintiff's individual claims get the short shrift – thus discouraging
whistleblowers like Dr. Cheongsiatmoy from coming forward in the first place.

It is for this reason that I respectfully reiterate my request that the United States provide Ms. Chang and me the items in
writing as set forth below, as soon as possible, but in any event by this coming Tuesday, November 30, 2021:

1.  All true and correct communications with associated enclosures from the United States to any defendant
    disclosing to any defendant any allegations from any complaint(s) containing the individual claims of Dr.
    Cheongsiatmoy as a Plaintiff in this case -- Second Amended Complaint (SAC), Third Amended Complaint (TAC),
    Fourth Amended Complaint (4AC)

2.  All communications and disclosures from any party related to any of my client's allegations since the first time
    any defendant received any disclosures from the United States as to any allegations from any complaint(s)
    containing Dr. Cheongsiatmoy's individual claims (SAC, TAC, 4AC)

3.  All communications from any defendant regarding potential settlement

Importantly, understanding what information has been provided to USC and when, along with what information USC has
communicated to the United States (or any of the other Government parties), in each case with regard to settlement,
has significant bearing on prospects for resolution of Dr. Cheongsiatmoy's individual employment claims.

You note in your below email that it is the position of the United States that Dr. Cheongsiatmoy's individual employment claims should be subject to settlement negotiations that are "subsequent" to the Government's qui tam settlement negotiations.  But please understand that if Dr. Cheongsiatmoy's individual employment claims are negotiated after the Government has already effectively settled the qui tam claims without his knowledge and input (even if he is afforded an opportunity to review the settlement after it has been made) – that could severely prejudice Dr. Cheongsiatmoy (e.g., it is very common for a defendant to take a different settlement posture based on budgeting if it has already allocated significant settlement money to another claim).

Our position is that Dr. Cheongsiatmoy and his counsel have the same right to engage USC regarding settlement as the Government.  And we believe the FCA caselaw supports this position and Judge Wright if faced with this issue would agree.  This is the primary basis for us communicating our intent to go in *ex parte* because every day that goes by in which the Government is engaging USC while Dr. Cheongsiatmoy is being sidelined is potentially creating more and more prejudice to his and our ability to resolve Dr. Cheongsiatmoy's individual employment claims with USC (to the extent they will be resolved as opposed to litigated and tried, which is always a real possibility if not likelihood).

It is for the foregoing reasons that I write you this email in the hopes that we can get on the same page and coordinate in a way that is fair to all parties.  You had specifically advised me and Ms. Chang previously that we were not permitted to speak to USC at all, whether with regard to Dr. Cheongsiatmoy's qui tam or employment claims.  Now that the Government is engaging USC on settlement, Dr. Cheongsiatmoy must be entitled to engage USC in discussions regarding the allegations in the Complaint.

Dr. Cheongsiatmoy is the source of the *qui tam* allegations set forth in the Complaint and as such, his individual claims are factually intertwined with the government claims; hence, any discussion of the common set of operative facts will inevitably impact his individual interests.

I know that you sent an email on Friday proposing a conference call with all Government Parties, and we welcome that call to ensure we are on the same page as to the qui tam claims.  However, it's also important that we get the above-referenced documents so we can get a better sense of where things are with USC vis-à-vis settlement generally as that has a huge impact on Dr. Cheongsiatmoy's individual employment claims.

Ms. Chang and I are available for a call by phone early this week to discuss any of this.  Most importantly, besides getting copies of the communications referenced above, I am hopeful that we can come to an agreement and understanding on the parties respective rights regarding communications with USC without the need to file an *ex parte* application, but I must reserve the right to do so if we can't get on the same page.

We look forward to your favorable response.

Sincerely,
Eliot

**ELIOT RUSHOVICH** | MANAGING PARTNER
Direct Phone: 310.728.6003 | Main Phone: 310.728.6588
Fax: 310.728.6560 | Web: riselawfirm.com
Address: 8383 Wilshire Blvd., Suite 315, Beverly Hills, CA 90211

*This message and any attached documents contain information from Rise Law Firm, PC that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

# Exhibit 48 (Excerpt)



**Health Services**
LOS ANGELES COUNTY

# ADOPTED

BOARD OF SUPERVISORS
COUNTY OF LOS ANGELES

18     November 13, 2012

*Sachi A. Hamai*
SACHI A. HAMAI
EXECUTIVE OFFICER

**Los Angeles County
Board of Supervisors**

**Gloria Molina**
First District

**Mark Ridley-Thomas**
Second District

**Zev Yaroslavsky**
Third District

**Don Knabe**
Fourth District

**Michael D. Antonovich**
Fifth District

**Mitchell H. Katz, M.D.**
Director

**Hal F. Yee, Jr., M.D., Ph.D.**
Chief Medical Officer

**Christina Ghaly, M.D.**
Deputy Director, Strategic Planning

313 N. Figueroa Street, Suite 912
Los Angeles, CA 90012

Tel: (213)240-8101
Fax: (213) 481-0503

www.dhs.lacounty.gov

To ensure access to high-quality,
patient-centered, cost-effective health
care to Los Angeles County residents
through direct services at DHS facilities
and through collaboration with
community and university partners.



November 13, 2012

The Honorable Board of Supervisors
County of Los Angeles
383 Kenneth Hahn Hall of Administration
500 West Temple Street
Los Angeles, California 90012

Dear Supervisors:

**AMENDMENT TO MEDICAL SCHOOL AFFILIATION AGREEMENT AND
ONSITE CUSTODIAL INMATE SPECIALTY CARE AGREEMENT BETWEEN
THE COUNTY OF LOS ANGELES AND THE UNIVERSITY OF SOUTHERN
CALIFORNIA
(1st SUPERVISORIAL DISTRICT)
(3 VOTES)**

## SUBJECT

Request approval to adjust staffing levels and increase the maximum cost through an amendment to the Medical School Affiliation Agreement with the University of Southern California, and request delegated authority to execute a new agreement, to provide onsite specialty care for inmates at certain Sheriff's Department facilities.

## IT IS RECOMMENDED THAT THE BOARD:

1.  Approve and instruct the Chairman to sign the attached Amendment No. 5 (Amendment) to the Medical School Affiliation Agreement No. 75853 (MSAA Agreement) with the University of Southern California (USC), effective upon Board approval, to: a) add staff for the clinical oversight of Health Information Technology (HIT) projects, b) add staff resulting from the implementation of the State's Public Safety Realignment Act, c) delete discontinued staff items and a one-time payment provision for a prior fiscal year,, and d) provide additional Intra-Operative Monitoring (IOM) technician services at LAC+USC Medical Center (LAC+USC MC) through June 30, 2013 resulting in a net increase to the annual maximum obligation from $126,583,896 to  $ 126,703,786.

The Honorable Board of Supervisors
11/13/2012
Page 2

2.  Delegate authority to the Director, or his designee, to amend the MSAA Agreement to further extend IOM technician services beyond June 30, 2013, and annually thereafter upon agreement by both parties subject to review and approval of County Counsel, and notification to the Board and the Chief Executive Office (CEO).

3.  Delegate authority to the Director, or his designee, to execute a new Onsite Custodial Inmate Specialty Care Agreement (Inmate Care Agreement) for USC to provide onsite specialty care to inmates at certain Sheriff's Department facilities under the terms set forth below for a period of one year effective upon execution with a one year automatic renewal for full services, or partial services upon agreement by the parties, and to execute amendments to adjust staffing levels and cost based on the Sheriff's Department's budget and future need for specialty care within the Sheriff's Department's approved budget as described below, subject to review and approval by County Counsel, with notice to the Board and the CEO.

## PURPOSE/JUSTIFICATION OF RECOMMENDED ACTION

Approval of first recommendation will adjust the staffing levels and costs based on service needs, as described below:

Additional Staffing

Chief Medical Information Officer.  DHS facilities are implementing HIT projects that are critical to the successful transformation of DHS' health care delivery system, which includes a new disease management registry to improve the quality of care provided to patients with chronic diseases, an e-consult system to improve continuity of care through electronic consultations between primary and specialty care physicians, and an Electronic Health Record system to be implemented enterprise-wide.  Each facility will have a Chief Medical Information Officer (CMIO) to serve as the clinical leader to assist in implementing the above projects at their respective facilities.  DHS is proposing to add a physician (0.5 Full Time Equivalent or "FTE") to perform this function at an annual cost of $123,524.

Public Safety Realignment Act (Assembly Bill 109).  Effective October 1, 2011, State law transferred responsibility from the California Department of Corrections and Rehabilitation to the County for the incarceration of individuals convicted of non-violent, non-serious, and non-sex offender, otherwise known as "N3," crimes, and the supervision of such individuals from State prisons.  As a result, DHS anticipates an increase in health care utilization at LAC+USC MC, and is requesting approval to add an Emergency Room Physician (1.0 FTE) at an annual cost of $258,720, and various specialists (1.0 FTE total) at an annual cost of $242,550.

Intra-Operative Monitoring.  The current Agreement with USC provides funding for an IOM technician (1.0 FTE) to monitor the functional integrity of certain neural functions of a patient during surgery. DHS is proposing to add two additional IOM technicians (2.0 FTE) at a total annual cost of $267,000  to meet the growing demands for such technicians by LAC+USC MC.  Such technicians are needed because the current County class specifications for an Electroencephalography (EEG) Technician do not meet the industry standards and certification requirements to perform the full array of IOM services required in the surgical room.  Meanwhile, DHS is developing an appropriate class specification to replace USC's IOM Technicians, and will start negotiations with USC no later than 9 months after the approval of this Amendment to determine the feasibility and appropriateness of continuing such services by USC.

# Exhibit 77

| | |
|---|---|
| **From:** | Gonzalez, Andres |
| **Sent:** | Wednesday, January 24, 2018 10:13 AM |
| **To:** | Michael Vesely |
| **Cc:** | Chen, Jonathan; Cheongsiatmoy, Justin; Shilian, Parastou |
| **Subject:** | Fwd: IOM County |

We need to talk about this case.
Can you get the smd file.


Begin forwarded message:

**From:** "Giannotta, Steven" ◄▨▨▨▨▨▨▨▨▨► 
**Subject: IOM County**
**Date:** January 24, 2018 at 9:57:31 AM PST
**To:** "Andres A Gonzalez, MD" ◄▨▨▨▨▨▨► 
**Cc:** "Lucas, Joshua" ◄▨▨▨▨▨▨► 

Andres:  Not sure of your involvement with overseeing county services.  We had a large acoustic in an 18
yr old yesterday.  I don't feel comfortable unless I can hear the facial nerve irritability trains while I am
working.  It was very unreliable and I was told the nerve was "quiet".  At the end of the case, another
tech came in the room and we were taking the last bit of tumor out with absolutely no evidence of
injury, verbally from the tech, or aurally.  We lost the nerve and had to repair it.  When I went to
stimulate the proximal stump, nothing happened.  The tech said "oh, wait a minute….OK now" and the
nerve stimulated.  We must have  better QC over there for this type of case or we can't do acoustic
tumors there.  What can we do?  Steve

Steven Giannotta, MD
Professor and Chair
Department of Neurological Surgery
Keck School of Medicine of USC

# Exhibit A-216U

Updated with 4AC References

To expedite the government's investigation into the significant fraud which resulted in serious patient harm at USC Keck Hospital and LAC+USC Medical Center, the criteria for requesting files from USC for the exemplar patients in the operative complaint is outlined below:

1. All charges and reimbursement associated with IONM Physician, IONM Technologist, Referring Surgeon, Teaching Surgeon, Operative Surgeon, DRG, facility fee, Medicare Part A and Part B
2. Hospital Consent Form for every patient who received surgeries and associated IONM services
3. Operative Reports from all Surgeons
4. IONM Data File (including electronic files such as .SMD, .IOMDATA, etc.)
5. IONM CHAT LOG and all other time stamped communications between Technologist and Physician
6. IONM Report
7. OR Records including OR LOG documenting all physical presence of medical staff entries/exits
8. Post-Operative Day 0 and Day 1 Notes
9. CT and MRI Imaging Reports
10. Most recent H&P (History & Physical) Report prior to DOS
11. Death Reports (Brief Death Notes, Summaries, Final Report)

| DOS | Last Name | First Name | MRN# | Surgeon | LOS/DRG | FAC¶ | SAC¶ | TAC¶ | 4AC¶ |
|---|---|---|---|---|---|---|---|---|---|
| 7/17/2018 | | | | maceri | USC | 118 | 118 | 245 | 245 |
| 6/12/2018 | | | | maceri | USC | 117 | 117 | 244 | 244 |
| 6/12/2018 | | | | maceri | USC | 119 | 119 | 246 | 246 |
| 4/27/2018 | | | | maceri | USC | 120 | 120 | 247 | 247 |
| 3/28/2018 | | | | LUCAS (resident) | LAC+USC | 138 | 178 | | |
| 3/28/2018 | | | | SINHA | LAC+USC | 141 | 181 | | |
| 3/5/2018 | | | | acosta | USC | 87 | 88 | 201 | 201 |
| 3/4/2018 | | | | hsieh | USC | 166 | 265 | 482 | 482 |
| 3/2/2018 | | | | LUCAS (resident) | LAC+USC | 132 | 173 | | |
| 3/2/2018 | | | | LUCAS (resident) | LAC+USC | 133 | 174 | | |
| 3/2/2018 | | | | MEHTA (resident) | LAC+USC | 140 | 180 | | |
| 2/12/2018 | | | | liu | USC | 108 | 110 | 230 | 230 |
| 1/31/2018 | | | | LUCAS (resident) | LAC+USC | 167 | 266 | 331 | 331 |
| 1/31/2018 | | | | CHAMBERS | LAC+USC | 167 | 266 | 331 | 331 |
| 1/31/2018 | | | | SWANSON | LAC+USC | 167 | 266 | 331 | 331 |
| 1/31/2018 | | | | chen | USC | 167 | 266 | 331 | 331 |
| 1/23/2018 | | | | GIANNOTTA | LAC+USC | 153 | 221 | 427-431 | 427-431 |
| 1/19/2018 | | | | liu | USC | 168 | 267 | 329 | 329 |
| 1/19/2018 | | | | CHAMBERS | LAC+USC | 168 | 267 | 329 | 329 |
| 1/19/2018 | | | | CHAMBERS | LAC+USC | 168 | 267 | 329 | 329 |
| 1/19/2018 | | | | giannotta | USC | 168 | 267 | 329 | 329 |
| 1/19/2018 | | | | liu | USC | 168 | 267 | 329 | 329 |
| 1/19/2018 | | | | giannotta | USC | 168 | 267 | 329 | 329 |
| 1/19/2018 | | | | SPOONAMORE | LAC+USC | 139/168 | 179/267 | 329 | 329 |
| 1/16/2018 | | | | LUCAS (resident) | LAC+USC | 169 | 268 | 483 | 483 |
| 1/16/2018 | | | | maceri | USC | 169 | 268 | 483 | 483 |
| 1/16/2018 | | | | RUSSIN | USC | 169 | 268 | 483 | 483 |
| 1/8/2018 | | | | wang | USC | 170 | 269 | 323/425 | 323/425 |
| 1/8/2018 | | | | MEHTA (resident) | LAC+USC | 170 | 269 | 323 | 323 |
| 1/8/2018 | | | | MACERI | LAC+USC | 170 | 269 | 323 | 323 |
| 1/8/2018 | | | | kokot | USC | 170 | 269 | 323 | 323 |
| 1/8/2018 | | | | liu | USC | 170 | 269 | 323 | 323 |
| 1/8/2018 | | | | hsieh | USC | 170 | 269 | 323 | 323 |
| 12/19/2017 | | | | han | USC | 171 | 270 | 324 | 324 |
| 12/19/2017 | | | | maceri | USC | 171 | 270 | 324 | 324 |
| 12/19/2017 | | | | maceri | USC | 171 | 270 | 324 | 324 |

| Date | | | | Name | Hospital | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 12/19/2017 | | | | KRAMER (resident) | LAC+USC | 135/171 | 176/270 | 324 | 324 |
| 12/7/2017 | | | | spoonamore | USC | 109 | 111 | 231 | 231 |
| 12/1/2017 | | | | SPOONAMORE | LAC+USC | 100 | 101 | 218 | 218 |
| 12/1/2017 | | | | LUCAS (resident) | LAC+USC | 100 | 101 | 218 | 218 |
| 12/1/2017 | | | | giannotta | USC | 100 | 101 | 218 | 218 |
| 12/1/2017 | | | | hsieh | USC | 102 | 103 | 218 | 218 |
| 12/1/2017 | | | | chen | USC | 102 | 103 | 218 | 218 |
| 11/10/2017 | | | | MEHTA (resident) | LAC+USC | 172 | 271 | 332 | 332 |
| 11/10/2017 | | | | hsieh | USC | 172 | 271 | 332 | 332 |
| 11/10/2017 | | | | liu, j | USC | 172 | 271 | 332 | 332 |
| 11/10/2017 | | | | kokot | USC | 172 | 271 | 332 | 332 |
| 11/10/2017 | | | | hsieh | USC | 172 | 271 | 332 | 332 |
| 10/16/2017 | | | | acosta | USC | 106/173 | 272 | 228/484 | 228/484 |
| 9/18/2017 | | | | kokot | USC | 116 | 117 | 243 | 243 |
| 9/11/2017 | | | | MEHTA (resident) | LAC+USC | 153 | | 333 | 333 |
| 8/28/2017 | | | | MEHTA (resident) | LAC+USC | 174 | 273 | 334 | 334 |
| 8/28/2017 | | | | GIANNOTTA | LAC+USC | 174 | 273 | 334 | 334 |
| 8/28/2017 | | | | wang | USC | 174 | 273 | 334 | 334 |
| 8/28/2017 | | | | hsieh | USC | 174 | 273 | 334 | 334 |
| 8/18/2017 | | | | SPOONAMORE | LAC+USC | 175 | 274 | 486 | 486 |
| 8/18/2017 | | | | LUCAS (resident) | LAC+USC | 175 | 274 | 486 | 486 |
| 8/18/2017 | | | | maceri | USC | 175 | 274 | 486 | 486 |
| 8/18/2017 | | | | Russin | USC | 175 | 274 | 486 | 486 |
| 8/18/2017 | | | | friedman | USC | 175 | 274 | 486 | 486 |
| 8/17/2017 | | | | MEHTA (resident) | LAC+USC | 153 | | 335 | 335 |
| 8/15/2017 | | | | liu | USC | 111 | 112 | 232 | 232 |
| 8/15/2017 | | | | RUSSIN | LAC+USC | 176 | 275 | 326 | 326 |
| 8/15/2017 | | | | friedman | USC | 176 | 275 | 326 | 326 |
| 8/15/2017 | | | | liu (838-1632) | USC | 176 | 275 | 326 | 326 |
| 8/15/2017 | | | | MEHTA (resident) | LAC+USC | 131/176 | 172/275 | 326 | 326 |
| 5/23/2017 | | | | PHAM (resident) | LAC+USC | 177 | 276 | 330 | 330 |
| 5/23/2017 | | | | hsieh | USC | 177 | 276 | 330 | 330 |
| 5/23/2017 | | | | maceri | USC | 177 | 276 | 330 | 330 |
| 5/22/2017 | | | | PHAM (resident) | LAC+USC | 178 | 277 | 336 | 336 |
| 5/22/2017 | | | | BROWN | LAC+USC | 178 | 277 | 336 | 336 |
| 5/22/2017 | | | | wang | USC | 178 | 277 | 336 | 336 |
| 5/22/2017 | | | | hsieh | USC | 178 | 277 | 336 | 336 |
| 5/22/2017 | | | | friedman | USC | 178 | 277 | 336 | 336 |
| 4/3/2017 | | | | hsieh | USC | 80 | 81 | 193 | 193 |
| 4/3/2017 | | | | MACERI | LAC+USC | 81 | 82 | 194 | 194 |
| 4/3/2017 | | | | MACERI | LAC+USC | 83 | 83 | 195 | 195 |
| 4/3/2017 | | | | GIANNOTTA | LAC+USC | 83 | 83 | 195 | 195 |
| 4/3/2017 | | | | PHAM (resident) | LAC+USC | 83 | 83 | 195 | 195 |
| 1/6/2017 | | | | PHAM (resident) | LAC+USC | 136 | 177 | 327 | 327 |
| 10/31/2016 | | | | PHAM (resident) | LAC+USC | 153 | | | |
| 10/28/2016 | | | | PHAM (resident) | LAC+USC | 179 | 278 | 337 | 337 |
| 10/28/2016 | | | | PHAM (resident) | LAC+USC | 179 | 278 | 337 | 337 |
| 10/28/2016 | | | | giannotta | USC | 179 | 278 | 337 | 337 |
| 10/28/2016 | | | | kokot | USC | 179 | 278 | 337 | 337 |
| 10/28/2016 | | | | giannotta | USC | 179 | 278 | 337 | 337 |
| 10/15/2016 | | | | mack | USC | 180 | 279 | 480 | 480 |
| 10/4/2016 | | | | RUSSIN | LAC+USC | 181 | 280 | 338 | 338 |
| 10/4/2016 | | | | PHAM (resident) | LAC+USC | 181 | 280 | 338 | 338 |
| 10/4/2016 | | | | Hsieh | USC | 181 | 280 | 338 | 338 |
| 10/3/2016 | | | | PHAM (resident) | LAC+USC | 182 | 281 | 485 | 485 |
| 10/3/2016 | | | | ATTENELLO | LAC+USC | 182 | 281 | 485 | 485 |
| 10/3/2016 | | | | Hsieh | USC | 182 | 281 | 485 | 485 |
| 10/3/2016 | | | | wang | USC | 182 | 281 | 485 | 485 |
| 10/3/2016 | | | | Han | USC | 182 | 281 | 485 | 485 |
| 9/21/2016 | | | | chen | USC | 183 | 282 | 481 | 481 |

| Date | | | | Name | Type | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 9/14/2016 | | | | REID (resident) | LAC+USC | 184 | 283 | 339 | 339 |
| 9/14/2016 | | | | acosta | USC | 184 | 283 | 339 | 339 |
| 7/7/2016 | | | | GIANNOTTA | LAC+USC | 142 | 182 | | |
| 6/22/2016 | | | | TUCHMAN (resident) | LAC+USC | 185 | 285 | 209 | 209 |
| 6/22/2016 | | | | mack | USC | 185 | 285 | 209 | 209 |
| 5/26/2016 | | | | ZADA | LAC+USC | 186 | 286 | 208 | 208 |
| 5/26/2016 | | | | Spoonamore | USC | 186 | 286 | 208 | 208 |
| 4/22/2016 | | | | liu | USC | 91/127 | 92 | 205 | 205 |
| 3/22/2016 | | | | AMAR | LAC+USC | 187 | 287 | 487 | 487 |
| 3/22/2016 | | | | KOKOT | LAC+USC | 187 | 287 | 487 | 487 |
| 3/22/2016 | | | | maceri | USC | 187 | 287 | 487 | 487 |
| 3/22/2016 | | | | maceri | USC | 187 | 287 | 487 | 487 |
| 3/22/2016 | | | | Spoonamore | USC | 187 | 287 | 487 | 487 |
| 1/20/2016 | | | | TUCHMAN (resident) | LAC+USC | 188 | 288 | 488 | 488 |
| 1/20/2016 | | | | chen | USC | 188 | 288 | 488 | 488 |
| 1/20/2016 | | | | acosta | USC | 188 | 288 | 488 | 488 |
| 1/20/2016 | | | | TUCHMAN (resident) | LAC+USC | 188 | 288 | 488 | 488 |
| 12/21/2015 | | | | MACERI | LAC+USC | 189 | 289 | 489 | 489 |
| 12/21/2015 | | | | GIANNOTTA | LAC+USC | 189 | 289 | 489 | 489 |
| 12/16/2015 | | | | MACK | LAC+USC | 190 | 290 | 490 | 490 |
| 12/16/2015 | | | | KOKOT | LAC+USC | 190 | 290 | 490 | 490 |
| 11/24/2015 | | | | AMAR | LAC+USC | 191 | 291 | 340 | 340 |
| 11/24/2015 | | | | TUCHMAN (resident) | LAC+USC | 191 | 291 | 340 | 340 |
| 11/23/2015 | | | | CHRISTIAN (resident) | LAC+USC | 192 | 292 | 341 | 341 |
| 11/23/2015 | | | | PAQUET (resident) | LAC+USC | 192 | 292 | 341 | 341 |
| 11/11/2015 | | | | RUSSIN | LAC+USC | 193 | 293 | 491 | 491 |
| 10/16/2015 | | | | GIANNOTTA | USC | 194 | 293 | 494 | 494 |
| 10/16/2015 | | | | SPOONAMORE | LAC+USC | 194 | 293 | 494 | 494 |
| 10/16/2015 | | | | BROWN | LAC+USC | 194 | 293 | 494 | 494 |
| 10/16/2015 | | | | TUCHMAN (resident) | LAC+USC | 194 | 293 | 494 | 494 |
| 8/4/2015 | | | | MACK | USC | 92 | 93 | 206 | 206 |
| 7/17/2015 | | | | TUCHMAN | LAC+USC | 137 | | 328 | 328 |
| 6/5/2015 | | | | LEE (resident) | LAC+USC | 134 | 175 | | |
| 4/6/2015 | | | | MARQUEZ (resident) | LAC+USC | 195 | 294 | 342 | 342 |
| 4/6/2015 | | | | MARQUEZ (resident) | LAC+USC | 195 | 294 | 342 | 342 |
| 4/6/2015 | | | | BROWN | LAC+USC | 195 | 294 | 342 | 342 |
| 3/24/2015 | | | | RUSSIN | LAC+USC | 196 | 295 | 493 | 493 |
| 3/11/2015 | | | | LEE (resident) | LAC+USC | 197 | 296 | 344 | 344 |
| 3/4/2015 | | | | liu | USC | 129 | 169 | 296 | 296 |
| 2/25/2015 | | | | MACK | USC | 128 | 168 | 295 | 295 |
| 12/29/2014 | | | | LEE (resident) | LAC+USC | 198 | 297 | 345 | 345 |
| 12/29/2014 | | | | WANG | USC | 198 | 297 | 345 | 345 |
| 12/29/2014 | | | | WANG | USC | 198 | 297 | 345 | 345 |
| 12/16/2014 | | | | GIANNOTTA | USC | 199 | 298 | 494 | 494 |
| 12/16/2014 | | | | FRIEDMAN | USC | 199 | 298 | 494 | 494 |
| 12/15/2014 | | | | MACERI | LAC+USC | 200 | 299 | 495 | 495 |
| 12/15/2014 | | | | RUSSIN | LAC+USC | 200 | 299 | 495 | 495 |
| 12/15/2014 | | | | ACOSTA | LAC+USC | 200 | 299 | 495 | 495 |
| 12/4/2014 | | | | LEE (resident) | LAC+USC | 201 | 300 | 346 | 346 |
| 12/4/2014 | | | | SPOONAMORE | USC | 201 | 300 | 346 | 346 |
| 12/4/2014 | | | | | USC | 201 | 300 | 346 | 346 |
| 11/25/2014 | | | | GIANNOTTA | LAC+USC | 202 | 301 | 496 | 496 |
| 11/25/2014 | | | | LIU | USC | 202 | 301 | 496 | 496 |
| 11/25/2014 | | | 3 | MACERI | USC | 202 | 301 | 496 | 496 |

| Date | Name | Type | | | | |
|---|---|---|---|---|---|---|
| 10/13/2014 | HSIEH | USC | 203 | 302 | 497 | 497 |
| 10/13/2014 | HSIEH | USC | 203 | 302 | 497 | 497 |
| 10/10/2014 | MARQUEZ (resident) | LAC+USC | 203 | 302 | 497 | 497 |
| 10/10/2014 | SPOONAMORE | LAC+USC | 203 | 302 | 497 | 497 |
| 10/10/2014 | HSIEH | USC | 203 | 302 | 497 | 497 |
| 10/10/2014 | GIANNOTTA | USC | 203 | 302 | 497 | 497 |
| 10/10/2014 | WANG | USC | 203 | 302 | 497 | 497 |
| 9/26/2014 | MARQUEZ (resident) | LAC+USC | 204 | 303 | 498 | 498 |
| 9/26/2014 | SPOONAMORE | LAC+USC | 204 | 303 | 498 | 498 |
| 9/26/2014 | MACK | USC | 204 | 303 | 498 | 498 |
| 9/26/2014 | WANG | USC | 204 | 303 | 498 | 498 |
| 9/26/2014 | GIANNOTTA | USC | 204 | 303 | 498 | 498 |
| 9/26/2014 | GIANNOTTA | USC | 204 | 303 | 498 | 498 |
| 9/25/2014 | LEE (resident) | LAC+USC | 205 | 304 | 343 | 343 |
| 9/25/2014 | PEPPER | LAC+USC | 205 | 304 | 343 | 343 |
| 9/25/2014 | RUSSIN | USC | 205 | 304 | 343 | 343 |
| 9/25/2014 | RUSSIN | USC | 205 | 304 | 343 | 343 |
| 9/25/2014 | MACK | USC | 205 | 304 | 343 | 343 |
| 9/22/2014 | LEE (resident) | LAC+USC | 206 | 305 | 499 | 499 |
| 9/22/2014 | BROWN | LAC+USC | 206 | 305 | 499 | 499 |
| 9/22/2014 | WANG | USC | 206 | 305 | 499 | 499 |
| 9/22/2014 | ACOSTA | USC | 206 | 305 | 499 | 499 |
| 9/22/2014 | HSIEH | USC | 206 | 305 | 499 | 499 |
| 9/22/2014 | FRIEDMAN | USC | 206 | 305 | 499 | 499 |
| 9/22/2014 | FREIDMAN | USC | 206 | 305 | 499 | 499 |
| 9/22/2014 | FREIDMAN | USC | 206 | 305 | 499 | 499 |
| 9/17/2014 | LEE (resident) | LAC+USC | 207 | 306 | 347 | 347 |
| 9/17/2014 | LIU | USC | 207 | 306 | 347 | 347 |
| 9/17/2014 | WANG | USC | 207 | 306 | 347 | 347 |
| 9/17/2014 | CHEN | USC | 207 | 306 | 347 | 347 |
| 9/17/2014 | MARKARIAN | USC | 207 | 306 | 347 | 347 |
| 9/4/2014 | SPOONAMORE | USC | 208 | 307 | 210 | 210 |
| 9/4/2014 | RUSSIN | USC | 208 | 307 | 210 | 210 |
| 8/14/2014 | SPOONAMORE | USC | 209 | 308 | 500 | 500 |
| 8/12/2014 | RUSSIN | LAC+USC | 210 | 309 | 501 | 501 |
| 8/12/2014 | HSIEH | USC | 210 | 309 | 501 | 501 |
| 8/12/2014 | HSIEH | USC | 210 | 309 | 501 | 501 |
| 8/12/2014 | SINHA | USC | 210 | 309 | 501 | 501 |
| 8/12/2014 | LIU | USC | 210 | 309 | 501 | 501 |
| 8/12/2014 | MACERI | USC | 210 | 309 | 501 | 501 |
| 8/12/2014 | MACERI | USC | 210 | 309 | 501 | 501 |
| 8/12/2014 | RUSSIN | USC | 210 | 309 | 501 | 501 |
| 8/12/2014 | SPOONAMORE | USC | 210 | 309 | 501 | 501 |
| 7/24/2014 | CHEN | USC | 211 | 310 | 502 | 502 |
| 7/10/2014 | PEPPER | LAC+USC | 212 | 311 | 503 | 503 |
| 7/10/2014 | RUSSIN | USC | 212 | 311 | 503 | 503 |
| 7/10/2014 | | USC | 212 | 311 | 503 | 503 |
| 7/2/2014 | WANG | USC | 213 | 312 | 211 | 211 |
| 7/2/2014 | ZADA | USC | 213 | 312 | 211 | 211 |
| 6/27/2014 | MARQUEZ (resident) | LAC+USC | 214 | 313 | 348 | 348 |
| 6/27/2014 | LEE (resident) | LAC+USC | 214 | 313 | 348 | 348 |
| 6/27/2014 | BROWN | LAC+USC | 214 | 313 | 348 | 348 |
| 6/27/2014 | HSIEH | USC | 214 | 313 | 348 | 348 |
| 6/12/2014 | ACOSTA | USC | 93 | 94 | 207 | 207 |
| 6/11/2014 | APUZZO | LAC+USC | 215 | 314 | 504 | 504 |
| 6/11/2014 | KOKOT | LAC+USC | 215 | 314 | 504 | 504 |
| 6/11/2014 | HSIEH | USC | 215 | 314 | 504 | 504 |
| 6/11/2014 | WANG | USC | 215 | 314 | 504 | 504 |
| 6/11/2014 | CHEN | USC | 215 | 314 | 504 | 504 |

| Date | | | | Name | Institution | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 6/11/2014 | | | | CHEN | | 215 | 314 | 504 | 504 |
| 6/3/2014 | | | | LIU | LAC+USC | 216 | 315 | 505 | 505 |
| 6/3/2014 | | | | AMAR | LAC+USC | 216 | 315 | 505 | 505 |
| 6/3/2014 | | | | SPOONAMORE | USC | 216 | 315 | 505 | 505 |
| 6/3/2014 | | | | HSIEH | USC | 216 | 315 | 505 | 505 |
| 6/3/2014 | | | | MACERI | USC | 216 | 315 | 505 | 505 |
| 5/2/2014 | | | | APUZZO | LAC+USC | 217 | 316 | 506 | 506 |
| 5/2/2014 | | | | SPOONAMORE | LAC+USC | 217 | 316 | 506 | 506 |
| 5/2/2014 | | | | HSIEH | USC | 217 | 316 | 506 | 506 |
| 5/2/2014 | | | | LIU | USC | 217 | 316 | 506 | 506 |
| 5/2/2014 | | | | LIU | USC | 217 | 316 | 506 | 506 |
| 4/7/2014 | | | | SPOONAMORE | LAC+USC | 218 | 317 | 507 | 507 |
| 4/7/2014 | | | | MACERI | LAC+USC | 218 | 317 | 507 | 507 |
| 4/7/2014 | | | | REDER (resident) | LAC+USC | 218 | 317 | 507 | 507 |
| 4/7/2014 | | | | ACOSTA | USC | 218 | 317 | 507 | 507 |
| 4/7/2014 | | | | WANG | USC | 218 | 317 | 507 | 507 |
| 4/7/2014 | | | | SPOONAMORE | USC | 218 | 317 | 507 | 507 |
| 4/7/2014 | | | | WANG | USC | 218 | 317 | 507 | 507 |
| 4/7/2014 | | | | KOKOT | USC | 218 | 317 | 507 | 507 |
| 3/31/2014 | | | | GIANNOTTA | LAC+USC | 219 | 318 | 349 | 349 |
| 3/31/2014 | | | | ROBISON (resident) | LAC+USC | 219 | 318 | 349 | 349 |
| 3/31/2014 | | | | ACOSTA | USC | 219 | 318 | 349 | 349 |
| 3/28/2014 | | | | GIANNOTTA | LAC+USC | 220 | 319 | 508 | 508 |
| 3/28/2014 | | | | SPOONAMORE | LAC+USC | 220 | 319 | 508 | 508 |
| 3/28/2014 | | | | LIU | USC | 220 | 319 | 508 | 508 |
| 3/26/2014 | | | | GIANNOTTA | LAC+USC | 221 | 320 | 509 | 509 |
| 3/26/2014 | | | | BROWN | LAC+USC | 221 | 320 | 509 | 509 |
| 3/26/2014 | | | | CHEN | USC | 221 | 320 | 509 | 509 |
| 3/13/2014 | | | | BROWN | LAC+USC | 222 | 321 | 350 | 350 |
| 3/13/2014 | | | | ROBISON (resident) | LAC+USC | 222 | 321 | 350 | 350 |
| 3/12/2014 | | | | ZADA | USC | 223 | 322 | 510 | 510 |
| 3/12/2014 | | | | MACK | USC | 223 | 322 | 510 | 510 |
| 3/10/2014 | | | | GIANNOTTA | LAC+USC | 224 | 323 | 511 | 511 |
| 3/10/2014 | | | | BROWN | LAC+USC | 224 | 323 | 511 | 511 |
| 3/10/2014 | | | | KOKOT | USC | 224 | 323 | 511 | 511 |
| 3/10/2014 | | | | KOKOT | USC | 224 | 323 | 511 | 511 |
| 3/10/2014 | | | | HSIEH | USC | 224 | 323 | 511 | 511 |
| 3/10/2014 | | | | WANG | USC | 224 | 323 | 511 | 511 |
| 3/3/2014 | | | | ROBISON (resident) | LAC+USC | 225 | 324 | 351 | 351 |
| 2/28/2014 | | | | ROBISON (resident) | LAC+USC | 226 | 325 | 352 | 352 |
| 2/28/2014 | | | | ROBISON (resident) | LAC+USC | 226 | 325 | 352 | 352 |
| 2/28/2014 | | | | LIU | USC | 226 | 325 | 352 | 352 |
| 1/16/2014 | | | | ROBISON (resident) | LAC+USC | 227 | 326 | 353 | 353 |
| 10/24/2013 | | | | LIU | USC | 228 | 327 | 353 | 353 |
| 10/24/2013 | | | | CHEN | USC | 228 | 327 | 353 | 353 |
| 10/24/2013 | | | | SPOONAMORE | USC | 228 | 327 | 353 | 353 |
| 10/23/2013 | | | | GIANNOTTA | USC | 229 | 328 | 513 | 513 |
| 10/23/2013 | | | | CHEN | USC | 229 | 328 | 513 | 513 |
| 10/7/2013 | | | | WINER (resident) | LAC+USC | 230 | 329 | 354 | 354 |
| 10/7/2013 | | | | ROBISON (resident) | LAC+USC | 230 | 329 | 354 | 354 |
| 10/7/2013 | | | | MACERI | LAC+USC | 230 | 329 | 354 | 354 |
| 10/7/2013 | | | | BROWN | LAC+USC | 230 | 329 | 354 | 354 |
| 10/7/2013 | | | | HSIEH | USC | 230 | 329 | 354 | 354 |
| 10/7/2013 | | | | KOKOT | USC | 230 | 329 | 354 | 354 |
| 9/12/2013 | | | | HSIEH | LAC+USC | 231 | 330 | 514 | 514 |
| 9/12/2013 | | | | SPOONAMORE | USC | 231 | 330 | 514 | 514 |
| 9/12/2013 | | | | CHEN | USC | 231 | 330 | 514 | 514 |

| Date | | | | Name | Type | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 8/29/2013 | | | | WINER (resident) | LAC+USC | 232 | 331 | 515 | 515 |
| 8/29/2013 | | | | CHEN | USC | 232 | 331 | 515 | 515 |
| 8/29/2013 | | | | ACOSTA | USC | 232 | 331 | 515 | 515 |
| 8/29/2013 | | | | SMITH | USC | 232 | 331 | 515 | 515 |
| 8/29/2013 | | | | LIU | USC | 232 | 331 | 515 | 515 |
| 8/8/2013 | | | | MARKARIAN | LAC+USC | 233 | 332 | 516 | 516 |
| 8/8/2013 | | | | WINER (resident) | LAC+USC | 233 | 332 | 516 | 516 |
| 8/8/2013 | | | | SMITH | USC | 233 | 332 | 516 | 516 |
| 8/8/2013 | | | | ACOSTA | USC | 233 | 332 | 516 | 516 |
| 7/23/2013 | | | | ROBISON (resident) | LAC+USC | 234 | 333 | 355 | 355 |
| 7/23/2013 | | | | MACERI | USC | 234 | 333 | 355 | 355 |
| 7/23/2013 | | | | SPOONAMORE | USC | 234 | 333 | 355 | 355 |
| 7/23/2013 | | | | SINHA | USC | 234 | 333 | 355 | 355 |
| 5/30/2013 | | | | AMAR | USC | 235 | 334 | 517 | 517 |
| 5/30/2013 | | | | CHEN | USC | 235 | 334 | 517 | 517 |
| 5/30/2013 | | | | SMITH | USC | 235 | 334 | 517 | 517 |
| 5/2/2013 | | | | SMITH | USC | 236 | 335 | 518 | 518 |
| 5/2/2013 | | | | CHEN | USC | 236 | 335 | 518 | 518 |
| 3/8/2013 | | | | GIANNOTTA | USC | 237 | 336 | 519 | 519 |
| 12/15/2012 | | | | ZADA | USC | 238 | 337 | 520 | 520 |
| 11/3/2012 | | | | LIU | USC | 146 | 200 | 376 | 376 |
| 11/3/2012 | | | | LIU | USC | 146 | 200 | 376 | 376 |
| 11/1/2012 | | | | SPOONAMORE | USC | 146 | 200 | 376 | 376 |
| 11/1/2012 | | | | LIU | USC | 146 | 200 | 376 | 376 |
| 10/30/2012 | | | | SPOONAMORE | USC | 146 | 200 | 376 | 376 |
| 10/29/2012 | | | | HSIEH | USC | 146 | 200 | 376 | 376 |
| 10/29/2012 | | | | HSIEH | USC | 146 | 200 | 376 | 376 |
| 2/23/2012 | | | | SPOONAMORE | USC | 239 | 338 | 521 | 521 |
| 2/23/2012 | | | | SMITH | USC | 239 | 338 | 521 | 521 |
| 2/23/2012 | | | | CHEN | USC | 239 | 338 | 521 | 521 |
| 2/23/2012 | | | | LIU | USC | 239 | 338 | 521 | 521 |
| 2/23/2012 | | | | AMAR | USC | 239 | 338 | 521 | 521 |
| 1/10/2012 | | | | HSIEH | USC | 240 | 339 | 522 | 522 |
| 1/10/2012 | | | | SPOONAMORE | USC | 240 | 339 | 522 | 522 |
| 1/10/2012 | | | | MACERI | USC | 240 | 339 | 522 | 522 |
| 1/10/2012 | | | | MACERI | USC | 240 | 339 | 522 | 522 |
| 11/15/2011 | | | | SPOONAMORE | USC | 241 | 340 | 523 | 523 |
| 11/15/2011 | | | | SPOONAMORE | USC | 241 | 340 | 523 | 523 |
| 11/15/2011 | | | | HSIEH | USC | 241 | 340 | 523 | 523 |
| 11/15/2011 | | | | MACERI | USC | 241 | 340 | 523 | 523 |
| 10/11/2011 | | | | SPOONAMORE | USC | 243 | 342 | 525 | 525 |
| 10/11/2011 | | | | HSIEH | USC | 243 | 342 | 525 | 525 |
| 10/11/2011 | | | | SPOONAMORE | USC | 243 | 342 | 525 | 525 |
| 10/11/2011 | | | | MACERI | USC | 243 | 342 | 525 | 525 |
| 10/11/2011 | | | | MACERI | USC | 243 | 342 | 525 | 525 |
| 10/11/2011 | | | | AMAR | USC | 243 | 342 | 525 | 525 |
| 10/10/2011 | | | | HSIEH | USC | 242 | 341 | 524 | 524 |
| 10/10/2011 | | | | MACERI | USC | 242 | 341 | 524 | 524 |
| 10/10/2011 | | | | MACERI | USC | 242 | 341 | 524 | 524 |
| 10/10/2011 | | | | MACERI | USC | 242 | 341 | 524 | 524 |
| 10/10/2011 | | | | KOKOT | USC | 242 | 341 | 524 | 524 |
| 9/22/2011 | | | | SPOONAMORE | USC | 244 | 343 | 526 | 526 |
| 9/22/2011 | | | | ZADA | USC | 244 | 343 | 526 | 526 |
| 9/22/2011 | | | | CHEN | USC | 244 | 343 | 526 | 526 |
| 4/20/2010 | | | | HSIEH | USC | 245 | 128 | 527 | 527 |
| 4/20/2010 | | | | GIANNOTTA | USC | 245 | 128 | 527 | 527 |
| 4/20/2010 | | | | MACERI | USC | 245 | 128 | 527 | 527 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 4/20/2010 | | | | MACERI | USC | 245 | 128 | 527 | 527 |
| 4/20/2010 | | | | MACERI | USC | 245 | 128 | 527 | 527 |
| 10/20/2009 | | | | HSIEH | USC | 246 | 345 | 528 | 528 |
| 10/20/2009 | | | | GIANNOTTA | USC | 246 | 345 | 528 | 528 |
| 10/20/2009 | | | | MACERI | USC | 246 | 345 | 528 | 528 |
| 10/20/2009 | | | | MACERI | USC | 246 | 345 | 528 | 528 |
| 1/27/2009 | | | | SPOONAMORE | USC | 247 | 346 | 529 | 529 |
| 1/27/2009 | | | | GIANNOTTA | USC | 247 | 346 | 529 | 529 |
| 1/27/2009 | | | | HSIEH | USC | 247 | 346 | 529 | 529 |
| 1/27/2009 | | | | SPOONAMORE | USC | 247 | 346 | 529 | 529 |
| 1/27/2009 | | | | MACERI | USC | 247 | 346 | 529 | 529 |
| 1/27/2009 | | | | MACERI | USC | 247 | 346 | 529 | 529 |
| 1/27/2009 | | | | MACERI | USC | 247 | 346 | 529 | 529 |
| 4/2/2008 | | | | CHEN | USC | 248 | 346 | 533 | 533 |
| 2/7/2008 | | | | CHEN | USC | 249 | 346 | 534 | 534 |

# Exhibit A-224

Department of Health and Human Services



# Semiannual

## Report to Congress

**October 1, 2006-March 31, 2007**

 Office of Inspector General

which have now closed, were held jointly and severally responsible for $820,000 of the restitution amount.  In a nationwide investigation, it was revealed that through his consulting business, the consultant informed chiropractors attending his billing seminars that he knew of a company that could help identify chiropractic services that were performed but had not been previously billed.  The consultant, who claimed to be "certified" by OIG, did not reveal that he owned the company with which chiropractors were encouraged to contract.  However, the contracted company reviewed only a small sampling of patient records, if any, but billed for additional services by using modifier codes for virtually every patient for every date of service during the prior 12-18 months.

### Nursing Homes

■ **Pennsylvania** – A nursing home and its owner/operator were sentenced for health care fraud and false statements.  The nursing home and its owner/operator were convicted after a 6-week trial in which evidence showed that employees were directed to falsify medical records to conceal the nursing home's deficiencies.  As a result of the scheme, the nursing home billed Medicare and Medicaid for services provided to residents, most of whom suffered from Alzheimer's disease, that were either not provided or were substandard.  The nursing home, which is now closed, was ordered to pay a $490,000 fine.  The owner/operator was sentenced to 5 years in jail and ordered to pay a $50,000 fine.  The investigation also revealed that although the nursing home claimed that it did not have the ability to pay food and pharmaceutical vendors, it donated $1 million to another nonprofit company which in turn paid the owner/operator an exorbitant salary.

### Laboratories

■ **California** – A neurophysiologist was sentenced to 13 months' imprisonment and ordered to pay $400,000 in restitution for his scheme to defraud Medicare and Medi-Cal, California's Medicaid program.  Because the neurophysiologist is a technician who conducts diagnostic tests and is not considered a physician, he did not qualify for Medicare or Medi-Cal provider numbers.  To gain access to provider numbers, the neurophysiologist entered into business relationships with physicians and other medical professionals.  Once he obtained the physicians' provider numbers, he improperly billed for ultrasounds, nerve conduction studies, and pulmonary function tests.  One of the improper business relationships involved a doctor who falsely indicated on his provider number application that he was running his own practice.  Through the course of the investigation, it was determined that the neurophysiologist actually operated the practice, and the doctor was paid a small salary for the use of his number.  In June 2006, the doctor was ordered to pay $50,000 in restitution for his part in the scheme.  The investigation also revealed that the neurophysiologist employed marketers who paid patients to undergo various unnecessary diagnostic tests and services.

## Medicaid Fraud Control Units

### Investigations

Currently, 49 States and the District of Columbia have MFCUs, which investigate and prosecute, or refer for prosecution, providers charged with defrauding the Medicaid

# Exhibit A-225

**No Co-Sign ( No Attestation of Teaching Surgeon and/or Neurologist) Required Per Protocol**

- EXEMPLAR below shows USC Technologist ordered CPT 95940 under a USC Teaching Surgeon not in OR/involved in surgery in any capacity shows the extent of the fraudulent scheme and clear violations of California H&S 1279.1



### Care Management Events

- Patient death or serious disability associated with a medication error
- Patient death or serious disability associated with a hemolytic transfusion reaction due to administration of ABO-incompatible blood or blood products
- Maternal death or serious disability associated with labor and delivery in a low-risk pregnancy (including events that occur within 42 days postdelivery)
- Patient death or serious disability directly related to hypoglycemia
- Death or serious disability, including kernicterus, associated with failure to identify and treat hyperbilirubinemia in neonates during the first 28 days of life
- Stage 3 or 4 ulcer, acquired after admission to the facility
- Patient death or serious disability due to spinal manipulative therapy

### Environmental Events

- Patient death or serious disability associated with an electric shock
- Any incident in which a line designated for oxygen or other gas to be delivered to a patient contains the wrong gas or is contaminated by a toxic substance
- Patient death or serious disability associated with a burn
- Patient death associated with a fall while being cared for in the facility
- Patient death or serious disability associated with the use of restraints or bedrails

### Criminal Events

- Any instance of care ordered or provided by someone impersonating a physician, nurse, pharmacist, or other licensed provider
- Abduction of a patient of any age
- Sexual assault on a patient
- Death or significant injury of a patient or staff member from a physical assault

An adverse event or series of adverse events that cause the death or serious disability of a patient, personnel or visitor

*See Section 1279.1 of the California Health and Safety Code for further details.*





# *APPENDIX III*

## CDPH-REPORTABLE ADVERSE EVENTS

The California Department of Public Health (CDPH) has adopted the following list of 28 adverse events that, should they occur in a general acute care hospital, require prompt reporting to the state.

These adverse events are felt to be unambiguous, serious, usually preventable, important for public credibility/accountability, and may be indicative of a problem in the hospital's safety systems.

We are required to report any of these adverse events (a) within five days after it has been detected or (b) within 24 hours after it has been detected if it is an ongoing urgent or emergent threat to the welfare, health, or safety of patients, personnel or visitors.

Surgical Events

- Surgery on the wrong body part
- Surgery on the wrong patient
- The wrong surgical procedure performed on the patient
- Unintentional retention of a foreign object
- Unexpected death within 24 hours of anesthesia

Product or Device Events

- Patient death or serious disability associated with a contaminated drug, device or biologic
- Patient death or serious disability associated with use or function of a device in which the device is used other than as intended
- Patient death or serious disability associated with intravascular air embolism

Patient Protection Events

- Infant discharged to the wrong person

- Patient death or serious disability associated with patient disappearance for more than four hours
- Patient suicide or attempted suicide resulting in serious disability due to actions after admission to the facility

|DHS Patient Safety Committee, Quality Improvement & Patient Safety Program, Los Angeles County Department of Health Services





Care Management Events

- Patient death or serious disability associated with a medication error
- Patient death or serious disability associated with a hemolytic transfusion reaction due to administration of ABO-incompatible blood or blood products
- Maternal death or serious disability associated with labor and delivery in a low-risk pregnancy (including events that occur within 42 days postdelivery)
- Patient death or serious disability directly related to hypoglycemia
- Death or serious disability, including kernicterus, associated with failure to identify and treat hyperbilirubinemia in neonates during the first 28 days of life
- Stage 3 or 4 ulcer, acquired after admission to the facility
- Patient death or serious disability due to spinal manipulative therapy

Environmental Events

- Patient death or serious disability associated with an electric shock
- Any incident in which a line designated for oxygen or other gas to be delivered to a patient contains the wrong gas or is contaminated by a toxic substance
- Patient death or serious disability associated with a burn
- Patient death associated with a fall while being cared for in the facility
- Patient death or serious disability associated with the use of restraints or bedrails

Criminal Events

- Any instance of care ordered or provided by someone impersonating a physician, nurse, pharmacist, or other licensed provider
- Abduction of a patient of any age
- Sexual assault on a patient
- Death or significant injury of a patient or staff member from a physical assault

An adverse event or series of adverse events that cause the death or serious disability of a patient, personnel or visitor

*See Section 1279.1 of the California Health and Safety Code for further details.*

# Exhibit A-226

## IONM Base Modalities and "Add On" Time Component Codes Billed at USC Keck and LAC+USC



# Exhibit A-228

**LAC+USC EMR Coding Summary: Thousands of False DRG Claims at LAC+USC**



2

# Exhibit A-229

### LAC+USC EMR Coding Summary: Thousands of False IONM Claims at LAC+USC per Los Angeles County's Standing Order "No Cosign Required (Per Protocol)"



2

# Exhibit A-230

**OR LOG:  Exemplar Hospital OR Log Shows No Teaching Surgeon and No Neurologist (4AC Ex. 42)**



**ACGME Resident Surgeons:**
- Martin Pham and Ki Chang

**USC Teaching Surgeon:**
- <u>Not Present</u>

**NO USC TEACHING SURGEON. THEREFORE, FALSE CLAIM FOR DRG.**

**USC IONM Technologist:**
- Michael Vesely

**USC Neurologist:**
- <u>Not Present</u>

**NO USC NEUROLOGIST. THEREFORE, FALSE CLAIM FOR SEPARATELY BILED IONM PC/TC**

# Exhibit A-231

**SURGEON'S OPERATIVE REPORT:  Exemplar Operative Report Shows No Teaching Surgeon (4AC Ex. 42)**

Operative Report
* Final Report *

The skin was sharply opened with a 10 blade and monopolar electrocautery was used to carry the dissection down to the skull. This was subsequently reflected forward. The prior craniotomy site was identified and the prior Stryker plating system was removed. The bone flap was then subsequent carefully removed from the prior dural scar and saved. The dural opening was subsequently identified and re-opened. What appeared to be the prior surgical corridor covered with arachnoid and encephalomalacic scar was identified. This was confirmed on the Stealth navigation system as the prior X corridor. With the use of the Stealth navigation system, this prior corridor was re-opened with bipolar forceps and suction. The metastasis was subsequently identified at the floor of the surgical corridor. A combination of bipolar forceps, bipolar electrocautery, and the CUSA was used to fully resect what could be seen of the metastasis. Motors were checked about roughly 80% of how we felt the resection was completed and at that time, the motors were normal as compared to preoperatively. Upon continued resection, there was noted to be significant decrease in motor signals with a decline of roughly 80% to 90%. At this point, it was felt that the surgery had progressed near enough to either the internal capsule or the projections of the motor cortex and so the decision was made to halt resection at that time in case there had been some iatrogenic injury to her motor function. Meticulous hemostasis and irrigation was subsequently achieved. A monolayer of Surgicel was placed within the resection cavity. The dura was then reapproximated with interrupted 4-0 Nurolon and the epidural space was again irrigated and meticulously hemostased. DuraGen was cut to size, laid over the durotomy. The bone was then plated back with a Stryker plating system. The field was again irrigated and meticulous hemostased. The galeal layers were then reapproximated using inverted interrupted 2-0 Vicryl sutures. The skin edges were then reapproximated with 4-0 Monocryl stitch. The incision was dressed with antibiotic ointment. Drapes were then taken down. The patient's head was removed from the Mayfield skull clamp. She was then extubated and taken to the intensive care unit for further monitoring and care. All sponge and needle counts were correct at the end of the procedure. Again, neurophysiologic monitoring using SSEP was stable, however, as noted within the intraoperative report. MEPs were significantly down on the left body, roughly 80% to 90% at the conclusion of the operation.
The patient's condition otherwise at the conclusion of the operation was stable.

Dictated By  Martin Hoy Pham

Gene V Sung, MD
MHP/MODL
JOB #: 812448/726806122

Signature Line
Electronically Signed on 04/17/17 14 20 PDT

Pham, Martin Hoy, MD

Electronically Signed on 02/07/17 06 40 PST

Sung, Gene V , MD

- Gene Sung is a Neurologist
- Gene Sung was NOT in the Operating Room during the surgery which caused significant paralysis
- <u>Gene Sung is NOT a Surgeon and falsely attested to providing services as a Teaching Surgeon a month after the surgery took place.</u>

**NO USC TEACHING SURGEON. THEREFORE, FALSE CLAIM FOR DRG.**



Gene Yong Sung

Assistant Professor of Clinical Neurology

Director of Neuro Critical Care

LAC+USC Medical Center Inpatient Chief

Neurology

GNH Clinic Tower A4E111

Off Campus

Los Angeles

2

# Exhibit A-232

**Los Angeles County and USC add Neurosurgery Oversight Attending after Qui Tam Filed (4AC Ex. 49 at 3)**

The Honorable Board of Supervisors
7/23/2019
Page 3

employees for physician services, and is more economical for non-physician services. The Department of Health Services (DHS) evaluation concludes that the Agreement's physician services are more feasible than the use of County employees, and therefore, recommends the Board's determination accordingly. With the exception of three full-time non-physician positions for a Pathologist and two Nephrology Physician Assistants, which service is cost-effective, DHS has determined that the use of all remaining non-physician services are not subject to Proposition A requirements as the services are performed on a part-time and/or intermittent basis, or lack a comparable County item to adequately perform such services.

Approval of the second recommendation will allow the Chair, or designee, to execute a successor Agreement, substantially similar to Exhibit I, with the University to replace the current agreement.

The recommended Agreement, under which the University will be providing 943,768 annual clinical hours to address all faculty physician staffing needs (as described below), and some very limited allied health and other non-physician health care staffing, for every medical specialty and subspecialty at LAC+USC MC not otherwise provided by the approximately sixty County-employed physicians. Additionally, the new contract includes 1,320 hours per week of additional clinical services, across critical needed inpatient areas, as well as 465 hours per week of on call coverage from home. The total value of these services is estimated to be approximately $13 million per year. Among the critical new services are a brand new pain service, funding of a toxicology service, expansion of palliative care for patients at end of life, hospitalists to care for sick inpatients on surgical services, new neurosurgical attending coverage due to changes in ACGME requirements, and improved access to critical services such as anesthesia, invasive procedures, among others. Finally, the recommended agreement significantly overhauls the current agreement to reflect the partnership of the County and the University within the shared workspace at LAC+USC MC and other participating County health facilities, with both County and University staff working as an integrated team.

Co-Management of Staff

Under the County/University integrated care delivery model, while the County provides almost all nursing and allied health care provider staff, University-employed faculty physicians, who provide patient care and teach physician trainees, comprise over ninety percent (90%) of the LAC+USC MC physician medical staff. Consistent with this model, most service chiefs, who are the physician leaders responsible for managing physician services in the different medical specialties and subspecialties within LAC+USC MC, are University employees. Whereas the current agreement does not reference these service chiefs, the recommended agreement will establish new lines of authority and accountability to the County and University reflecting the co-management of hospital staff. Service chiefs will be jointly selected by the County and University with final approval by the Chief Medical Officer (CMO) of LAC+USC MC. In addition, both the County and University will have the authority to remove any service chief. In managing the LAC+USC MC, all service chiefs will now be accountable to the CMO as well as the University.

Shared Responsibility for Employment Liability

Under the current agreement, liability arising from employment-related lawsuits fell under the responsibility of the County. However, this arrangement does not reflect the integrated delivery model with University-employed physicians working alongside County nursing and other staff in a shared workspace. Under the recommended agreement, in those cases where both University and County staff may have contributed to employment liability, the County and the University will share liability, either split equally (50/50), unless the parties have agreed to a different ratio of shared

2

# Exhibit A-233

# Department of Intra-Operative Neurophysiological Monitoring

# Neurophysiologist Roster 2018-2019

## Keck Hospital

| | | |
|---|---|---|
| **Chris Hansen:** | **Supervisor** | **310-422-9591** |
| Aaron Kim: | Full Time | 213-840-1005 |
| Diego Bautista: | Full Time | 714-322-9932 |
| Julie Blue: | Full Time | 213-321-5545 |
| Miriam Mayorga: | Full Time | 661-470-2207 |
| Jimmy Nguyen: | Per Diem | 714-386-0820 |
| Audra Goedemans: | Per Diem | 626-206-1531 |
| Carol Hoang: | Per Diem | 626-823-5131 |
| Shane Barrios: | Per Diem | 562-440-4682 |

## LAC-USC

| | | |
|---|---|---|
| **Mike Vesely:** | **Supervisor** | **949-584-1459** |
| Nancy Nguyen: | Full Time | 949-373-6353 |
| Pooya Parikh: | Full Time | 917-863-3645 |

# Exhibit A-236

## Payers: Medicare/Medi-Cal/Private

15. Tainted Part A/DRG/IONM TC      16. Tainted Part B/IONM PC

## USC Keck Hospital

4. Hospital and Surgeon proceed with the surgery with actual knowledge that charges from the worthless IONM services performed by the neurophysiologist are false claims and are criminal events under H&S 1279.1 (4AC Ex. 34 USC Policy #9-107; USC0024821; Exhibit A-225).

5. Neurophysiologist connects patient to machine (Cadwell for non-ENT; Medtronic NIM for ENT) in OR to obtain data for each IONM modality.  USC neurophysiologist independently creates Event Log during case which is stored in IONM data file.

6. Upon any remote connection, the Cadwell IONM machine automatically creates CHAT LOG which automatically records all remote interpretations by Neurologist and communication to Neurophysiologist.

7. The USC neurophysiologist acts in the capacity of physician per USC Policy #9-107 (4AC Ex. 34); the USC Neurologist does not continuously interpret the IONM data in real-time from the time baselines are set to end of surgery. The CHAT LOG will prove false claims associated with continuous monitoring.

8. USC neurologist is often not present in the operating room as required when CPT 95940 is billed.  If the neurologist is physically present in the OR during the surgery, this will be documented in BOTH the hospital OR LOG and the neurophysiologist's Event Log. The OR LOG demonstrating absence of neurologist will prove false claims associated with CPT 95940 charges.

9. After the surgery, USC neurophysiologist saves IONM data file (.smd, .iomdata) on USC hospital server (S-Drive), deletes Chat Log per USC policy (4AC Exs. 14, 15), pens the IONM Report for retroactive review by neurologist.

10. After the surgery, USC Surgeon's Operative Report attests to relying upon IONM as an integral part of the surgery

11. After the surgery, USC neurologist reviews the IONM data from hospital server (S-Drive), retroactively reviews IONM data, and signs IONM note penned by USC neurophysiologist to falsely attest to have monitored IONM in real-time

14. IONM TC billed through Hospital

13. Part A/DRG billed by Hospital under USC Surgeon

12. Part B: USC Neurologist bills for base modalities + "add-on" time professional components through USC Care Group

1.  USC Surgeon requests and USC Keck Hospital approves IONM services.

2.  Hospital and USC Surgeon require Patient sign Consent form for IONM as a medically necessary and integral part of the surgery wherein a "neurophysiologist* [technologist] tracks [interprets] electrical signals…" (USC0017504).

*Per OIG-HHS and CMS' definition: "the neurophysiologist is a technician who conducts diagnostic tests and is NOT considered a physician" (Exhibit A-224 at 23 and Exhibit A-206 at 13)

17. Physician Compensation Plan violates AKS/PSR: i.e. Income Guarantee and Clinical Z Faculty Incentive Bonuses to USC Surgeons and USC Neurologists (4AC Exs. 21, 22, 126, 128, 135, 136, 137, 140, 142)



3. OR LOG: for every surgery, records all Operating Room entries/exits of USC Surgeons and/or USC Neurologist

## USC Surgeon / USC Neurologist

# Exhibit A-237

# USC Keck Damages

| USC Keck Annual IONM Volume (USC0046515) | # of Cases |
|---|---|
| Total Keck Cases in 2016 | 1500 |
| ENT | 271 |
| Spine Surgery | 610 |
| Neurosurgery | 619 |

| Net Revenue to USC Keck Hospital (USC0046515) | # of Cases | Net Rev/Case | Annual Net Rev |
|---|---|---|---|
| ENT | 271 | $16,765 | $4,543,315 |
| Spine Surgery | 610 | $40,742 | $24,852,620 |
| Neurosurgery | 619 | $43,270 | $26,784,130 |
| **Annual Keck DRG Total** | 1500 | | **$56,180,065** |

| IONM PC  - Per Case for Sample Modalities and Time; 4AC ¶145 | |
|---|---|
| "ADD-ON" Time Component: 4 hours CPT 95941/G-0453/95940/95920 ($133.08/hr) | $532 |
| SEP: CPT 95938/95925/95926/95927-26 | $47 |
| MEP: CPT 95939/95928/95929-26 | $122 |
| EMG: CPT 95861/95867-26 | $85 |
| EEG: 95822-26 | $59 |
| Neuromuscular TOF: CPT 95937-26 | $35 |
| IONM PC Subtotal Per Case | $881 |
| **Annual Keck IONM Prof Comp (1500 cases)** | **$1,321,170** |

| IONM TC – Per Case for Sample Modalities; 4AC ¶145 | |
|---|---|
| SEP: CPT 95938/95925/95926/95927-TC | $297 |
| MEP: CPT 95939/95928/95929-TC | $384 |
| EMG: CPT 95861/95867-TC | $91 |
| EEG: 95822-TC | $317 |
| Neuromuscular TOF: CPT 95937-TC | $47 |
| IONM TC Subtotal Per Case | $1,136 |
| **Annual Keck IONM TC (1500 cases)** | **$1,703,265** |

| Annual Number of Keck False Claims Submissions | 1500 |
|---|---|
| Minimum CMP $11,803 per False Claim | $11,803 |
| **Annual Minimum CMP for Keck False Claims** | **$17,704,500** |

| Annual Keck Damages: DRG+PC+TC (Single) | $59,204,500 |
|---|---|
| Annual Keck Damages (Single+Minimum CMP) | $76,909,000 |
| **Annual Keck Damages (Treble+Minimum CMP)** | **$195,318,000** |

| Total Keck Damages 2008-2018 (Single+Mininum CMP) | $769,090,000 |
|---|---|
| **Total Keck Damages 2008-2018 (Treble+Mininum CMP)** | **$1,953,180,000** |

# Exhibit A-238

## Payers: Medicare/Medi-Cal/Private

14. Tainted Part A/DRG/IONM TC          15. Tainted Part B/IONM PC

## Los Angeles County+USC Medical Center

4. USC GME Surgery Resident performs worthless surgery without supervision from USC teaching surgeon which is required by patient safety and billing regulations.  After the qui tam was filed, Los Angeles Count and USC added new neurosurgical attending surgeon and removed USC funding to LAC+USC Chief Medical Officer Dr. Brad Spellberg. (4AC Exs. 49, 83)

5. USC neurophysiologist connects patient to machine (Cadwell for non-ENT; Medtronic NIM for ENT) in OR to obtain data for each IONM modality.  USC neurophysiologist independently create Event Log during case which is stored in IONM data file.

6. Upon any remote connection, the Cadwell IONM machine automatically creates Chat Log which automatically records all remote interpretations by neurologist and communication to neurophysiologist.

7. USC neurophysiologist acts in capacity of physician per USC Policy #9-107 (4AC Ex. 34); USC neurologist does not continually interpret the IONM data in real-time from the time baselines are set to end of surgery. The CHAT LOG and will prove false claims associated with continuous monitoring.

8. USC Neurologist is often not present in the operating room as required by CPT 95940 is billed.  If the neurologist is physically present in the OR during the surgery, this will be documented in BOTH the hospital OR LOG and the neurophysiologist's Event Log.  The OR LOG demonstrating the absence of neurologist will prove false claims associated with CPT 95940 charges.

9. After the surgery, USC neurophysiologist saves IONM data file (.smd, .iomdata) on LAC+USC hospital server, deletes Chat Log per USC policy (4AC Exs. 14, 15);  USC neurophysiologist signs IONM Report in patient's medical record/LAC+USC EMR which is the only attestation of IONM services (there is no involvement/attestation by USC neurologist)

10. After the surgery, USC Surgeon's Operative Report by USC GME Surgery Resident attests to relying upon IONM as an integral part of the surgery; Surgeon's Operative Report only contains attestations of USC Resident who performed the surgery without supervision from USC Teaching Surgeon in violation of all payer and patient safety regulations.

13. IONM TC billed through Hospital

12. Part A/DRG billed by Hospital under USC Surgeon

1. USC surgeon requests and LAC+USC Medical Center approves IONM services.

2. Hospital and USC surgeon require Patient sign Consent form for IONM as a medically necessary and integral part of the surgery.

11. Part B: USC neurophysiologist bills for base modalities + "add-on" time professional component under USC Neurologist via Los Angeles County's "no co-sign (per protocol)" Standing Order (4AC Ex. 150; Video Exhibit A-229)

16. False Claims via MSAA CONTRACT violates AKS/PSR Dr. Gonzalez/Dr. Shilian/USC Techs: $900,000/yr (4AC Ex. 52); Dr. Russin/Dr. Zada: $420,000/yr (4AC Ex. 45) TOTAL MSAA CONTRACT: $170,000,000/yr

3. OR LOG: for every surgery, records all Operating Room entries/exits of USC surgeons and/or USC neurologist



## USC Teaching Surgeon
## USC Neurologist

# Exhibit A-239

# LAC+USC Damages

| LAC+USC Medical Center Annual IONM Volume (Exhibit A-8) | # of Cases |
|---|---|
| Total LAC Cases in 2016 | 600 |
| ENT (1/3 of total) | 200 |
| Spine (1/3 of total) | 200 |
| Brain (1/3 of total) | 200 |

| Net Revenue to LAC+USC Medical Center | # of Cases | Net Rev/Case | Annual Net Rev |
|---|---|---|---|
| ENT | 200 | $16,765 | $3,353,000 |
| Spine Surgery | 200 | $40,742 | $8,148,400 |
| Neurosurgery | 200 | $43,270 | $8,654,000 |
| **Annual LAC+USC DRG Total** | **600** | | **$20,155,400** |

| IONM PC - Per Case for Sample Modalities and Time; 4AC ¶185 | |
|---|---|
| "ADD-ON" Time Component: | |
| 4 hours CPT 95940/95920 ($27.05/15 min) | $433 |
| SEP: CPT 95938/95925/95926/95927-26 | $268 |
| MEP: CPT 95939/95928/95929-26 | $416 |
| EMG: CPT 95861/95867-26 | $98 |
| EEG: 95822-26 | $65 |
| Neuromuscular TOF: CPT 95937-26 | $22 |
| IONM PC Subtotal Per Case | $1,302 |
| **Annual LAC+USC IONM Prof Comp (600 cases)** | **$781,026** |

| IONM TC - Per Case for Sample Modalities; 4AC ¶185 | |
|---|---|
| SEP: CPT 95938/95925/95926/95927-TC | $297 |
| MEP: CPT 95939/95928/95929-TC | $384 |
| EMG: CPT 95861/95867-TC | $91 |
| EEG: 95822-TC | $317 |
| Neuromuscular TOF: CPT 95937-TC | $47 |
| IONM TC Subtotal Per Case | $1,136 |
| **Annual LAC+USC IONM TC (600 cases)** | **$681,306** |

| Annual Number of LAC+USC False Claims Submissions | 600 |
|---|---|
| Minimum CMP $11,803 per False Claim | $11,803 |
| **Annual Minimum CMP for LAC+USC False Claims** | **$7,081,800** |

| Annual LAC+USC Damages: DRG+PC+TC (Single) | $21,617,732 |
|---|---|
| Annual LAC+USC Damages (Single+Minimum CMP) | $28,699,532 |
| **Annual DRG+PC+TC LAC+USC Damages (Treble+Mininum CMP)** | **$71,934,996** |

| Total LAC+USC Damages 2008-2018 (Single+Mininum CMP) | $286,995,320 |
|---|---|
| **Total LAC+USC Damages 2008-2018 (Treble+Mininum CMP)** | **$719,349,960** |

| IONM NEUROLOGY: Annual IONM MSOA/MSAA/PSA Damages (Ex. A-115) | |
|---|---|
| PSA Neurology | $321,584 |
| MSOA-Neurology IOM Addendum A-3 | $242,541 |
| MSOA-Neurology IOM Tech Support | $329,517 |
| **Annual Neurology MSOA/MSAA/PSA Damages** | **$893,642** |

| IONM NEUROSURGERY: Annual MSOA/MSAA/PSA Damages | |
|---|---|
| Dr. Russin: MSAA Addendum A-6.A.3 (4AC Ex. 45) | $251,261 |
| Dr. Zada: PSA Neurosurgery (4AC Ex. 45) | $167,720 |
| **Annual Neurosurgery MSOA/MSAA/PSA** | **$418,981** |

| **Total Annual Neuro+Neursurgery MSOA/MSAA/PSA** | **$1,312,623** |
|---|---|
| IONM MSOA/MSAA/PSA Damages 2008-2018 (Single) | $13,126,228 |
| **IONM MSOA/MSAA/PSA Damages 2008-2018 (Treble)** | **$39,378,685** |

| Annual LAC+USC MSAA Contract - 4AC Ex. 49 (Tainted) | $170,000,000 |
|---|---|
| **2008-2018 LAC+USC MSAA Contract - 4AC Ex. 49 (Tainted)** | **$1,700,000,000** |

Relators' continued guidance with updated reference to the Fourth Amended Complaint (4AC)       Page 76 of 117
Delivered via email to all four participating entities on September 30, 2021

# Exhibit A-240

**Relator Guidance for the Government Investigation into the False Claims associated with Surgeries and IONM Services at USC Keck Hospital and Los Angeles County+USC Medical Center**
**(Work Product for False Claims associated with Stark/AKS addressed separately)**

| Number | Issues | Explanation and Evidence in Support |
|---|---|---|
| 1 | What is IONM?<br><br>Why is it used?<br><br>What Surgical Departments at USC Keck hospital and Los Angeles County+USC Medical Center are included in the USC IONM Program? | IONM is a sub-specialty of neurology utilized to potentially prevent life-threatening patient harm such as paralysis and death during neurosurgical, orthopedic, peripheral nerve, cardio thoracic, ENT (ear nose and throat), and vascular surgeries where the nervous system is at risk. The goal of IONM is to immediately identify changes in brain, spinal cord, and peripheral nerve function during the surgery, prior to permanent patient injury. Medicare and its contractors including Noridian require IONM monitoring to be performed by a physician, typically a licensed and trained neurologist (the "oversight physician"). (4AC ¶¶s 10, 102, 225; 4AC Ex. 4).<br><br>IONM monitoring by the oversight physician can take place either in person in the Operating Room (OR) or remotely.  Regardless of the physical location where IONM monitoring occurs, the oversight physician must continuously monitor the IONM data in real-time and communicate the physician's real-time interpretations of the data to the surgeon. Without such continuous and real-time physician oversight, IONM services are virtually worthless and any associated charges are false claims.<br><br>The USC IONM Program includes the USC Departments of Neurology, Neurosurgery, Orthopedic Surgery and Otolaryngology (ENT – "Ear Nose and Throat") Surgery which all operate under the Keck School of Medicine. The Keck School of Medicine is part of the University of Southern California. (4AC ¶7). Each of these departments refers surgical procedures to USC Keck hospital and/or Los Angeles County+USC Medical Center that include surgeons' requests to the hospitals for the use of IONM services. |

Relators' continued guidance with updated reference to the Fourth Amended Complaint (4AC)
Delivered via email to all four participating entities on September 30, 2021

Page 78 of 117

| 2 | Are USC Keck hospital, Los Angeles County+USC Medical Center, and USC surgeons aware that neurophysiologists act in the capacity of physicians by interpreting IONM data? | Yes.  (1) USC Keck hospital, (2) Los Angeles County+USC Medical Center, and (3) USC surgeons are aware that technologists act in the capacity of physicians by interpreting the IONM data.

At both USC Keck hospital and Los Angeles County+USC Medical Center, technologists are referred to as "neurophysiologists." (Ex. A-233).  In fact, USC Keck Hospital's Patient Consent form for surgery with IONM states that "during the procedure, a neurophysiologist [technologist] tracks [interprets] electrical signals traveling through the… spinal cord."  (4AC Ex. A-234)

USC's definition of neurophysiologists follows OIG-HHS and CMS' official definition which states: "the neurophysiologist is a technician who conducts diagnostic tests and is not considered a physician." (Ex. A-224)

Los Angeles County is aware that the Los Angeles County+USC Medical Center OR LOGs in the hospital's EMR show that the neurologist is not in the OR during surgeries which directly contradicts the "in-operating room" CPT 95940 charges submitted through the Los Angeles County+USC Medical Center EMR.  Los Angeles County is also aware that the USC-employed neurophysiologists who work at Los Angeles County+USC Medical Center are the ones who submit these charges for patient care under the USC neurologist through the "no cosign required (per protocol)" standing order established by Los Angeles County. Relator urges the government to investigate the standing order protocol at Los Angeles County+USC Medical Center that enabled USC to commit this significant fraud. (Ex. A-229)

USC Surgeons are aware that when surgeons request IONM services, it will be performed by a neurophysiologist (technologist) who is not a physician. USC technologists acting in the capacity of IONM physicians. (4AC Ex. 77, USC0024821) |

Page 2 of 18

Relators' continued guidance with updated reference to the Fourth Amended Complaint (4AC)
Delivered via email to all four participating entities on September 30, 2021

| 3 | How are charges for surgeries and associated IONM services reimbursed by government and private payers?<br><br>What are some examples of charges and reimbursements associated with surgeries and associated IONM services? | IONM:  Reimbursement for IONM services includes both a professional component and a technical component. (*See* 4AC ¶¶ 132-148; Ex. A-226)<br><br>DRG: Reimbursement to the hospitals for surgeries include but are not limited to Medicare Part A, facility fees and DRG. (See 4AC ¶ 132; Exs. A-238 and A-239)<br><br>CONTRACTS:  Reimbursements from government for surgeries and associated IONM services include (1) payments from Los Angeles County to USC through MSAA/MSOA/PSA contract payments and (2) direct payments from Los Angeles County to USC physicians who are Los Angeles County paid employees such as Dr. Giannotta (LAC+USC Chief of Neurosurgery). See 4AC¶¶ 356-398.<br><br>IONM tests (also known as "base codes" or "modalities") are used to represent the modalities that were provided for monitoring during the surgery. A comprehensive list of base codes billed by USC is located in 4AC ¶ 139.  For each base code utilized in a surgery, a separate charge is billed.   For all CPT codes, the "-26 modifier" is used to bill the Professional Component and the "-TC modifier" is used to bill the Technical Component.<br><br>A sample but not inclusive list of associated CPT codes is listed below.<br><br>IONM BASE CODES (the following is a sample; a complete list is outlined in 4AC ¶ 139):<br>• EMGs - Electromyography<br>   o CPT 95861; 95867<br>   o A needle is placed into the patient's muscles by the neurophysiologist and the attached wires are connected to the IONM machine; the oversight physician must interpret and communicate analysis of the baseline EMG data to the surgeon, continuously interpret the EMG data generated in real time throughout the surgery, and report the physician's interpretations of the EMG data to the surgeon in real-time, regardless of whether the signals are unchanged or changed compared to baseline.<br>• EEGs – Electroencephalography<br>   o CPT 95822. |

Relators' continued guidance with updated reference to the Fourth Amended Complaint (4AC)
Delivered via email to all four participating entities on September 30, 2021

Page 80 of 117

|  |  |  |
|--|--|--|
|  |  | ○ Electrodes connected to the patient's scalp by the neurophysiologist and the attached wires are connected to the IONM machine;  the oversight physician must interpret and communicate analysis of the baseline EEG data to the surgeon, continuously interpret the EEG data generated in real time throughout the surgery, and report the physician's interpretations of the EEG data to the surgeon in real-time, regardless of whether the signals are unchanged or changed compared to baseline.<br>● MEPs - Motor Evoked Potentials<br>  ○ CPT 95939; 95928; 95929.<br>  ○ The neurophysiologist places stimulation electrodes to the patient's scalp and recording needles in the patient's muscles, connecting the attached wires to the IONM machine;  the oversight physician must interpret and communicate analysis of the baseline MEP data to the surgeon, continuously interpret the MEP data generated in real time throughout the surgery, and report the physician's interpretations of the MEP data to the surgeon in real-time, regardless of whether the signals are unchanged or changed compared to baseline.<br>● SSEPs - Somatosensory Evoked Potentials<br>  ○ CPT 95938; 95925; 95926; 95927.<br>  ○ The neurophysiologist places stimulation electrodes into the patient's peripheral nerves and recording electrodes on the patient's body, connecting the attached wires to the IONM machine;  the oversight physician must interpret and communicate analysis of the baseline SSEP data to the surgeon, continuously interpret the SSEP data generated in real time throughout the surgery, and report the physician's interpretations of the SSEP data to the surgeon in real-time, regardless of whether the signals are unchanged or changed compared to baseline.<br>● Neuromuscular Junction Test (TOF)<br>  ○ CPT 95937<br>  ○ The neurophysiologist connects the patient to the IONM machine to monitor the patient's neuromuscular function;  the oversight physician must interpret and communicate analysis of the baseline TOF data to the surgeon, continuously interpret the TOF data generated in real time throughout the surgery, and report the physician's interpretations of the |

Relators' continued guidance with updated reference to the Fourth Amended Complaint (4AC)
Delivered via email to all four participating entities on September 30, 2021

Page 81 of 117

| | | |
|---|---|---|
| | | TOF[2] data to the surgeon in real-time, regardless of whether the signals are unchanged or changed compared to baseline. |
| | | ADD-ON TIME CODES: These codes are billed as an "add-on" to all utilized base codes for the procedure methodology. (4AC Ex. 2; Ex. A-226)<ul><li>CPT 95920 (Prior to 2013)</li><li>HCPCS G-0453: Continuous exclusive (no other cases may be monitored at the same time) intraoperative neurophysiology monitoring from outside the operating room, per patient, each 15 minutes (billed separately in addition to base code)</li><li>CPT 95940: Continuous exclusive (no other cases may be monitored at the same time) intraoperatively neurophysiology monitoring in the operating room, one on one monitoring requiring personal attendance, each 15 minutes (billed separately in addition to base code)</li><li>CPT 95941: Continuous intraoperatively neurophysiology monitoring from outside the operating room, one on one monitoring requiring personal attendance, each 15 minutes (billed separately in addition to base code)</li></ul>Regardless of whether the oversight neurologist's physical presence is inside the operating room or outside the operating room, his/her duty is the same: to continuously monitor and interpret the IONM data generated during the course of the procedure. USC's failure to continuously monitor the surgery led to false claims for charges of the professional component and technical component of the base codes and "add-on" time codes at both USC Keck and Los Angeles County+USC Medical Center. |
| 4 | Can base code modalities ever be billed for IONM services if there was no baseline assessment communicated in real-time by the oversight physician to the surgeon performing the surgery? | No.<br><br>In surgeries involving IONM, an oversight physician's "baseline" assessment of the patient's nervous system in real-time is required before incision. To establish the patient's baseline, the neurophysiologist prepares the patient with the physical tools required for each of the IONM tests as described above. The oversight physician (typically a trained and |

Relators' continued guidance with updated reference to the Fourth Amended Complaint (4AC)
Delivered via email to all four participating entities on September 30, 2021

| | What is the patient's IONM "baseline?" | licensed neurologist) must track the baseline IONM data related to each modality and communicate the baseline results in real-time to the surgeon before incision. The baseline interpretation by the oversight physician establishes a frame of reference against which the physician evaluates the subsequent IONM interpretations in real-time (either in-OR or via Chat Log) throughout the entire surgical procedure. Without interpretation of the baseline data and communication of this data to the surgeon, all charges associated with the base codes are false claims. |
|---|---|---|
| 5 | What fraudulent IONM add-on time codes have been billed at both USC Keck and Los Angeles County+USC Medical Center since January 1, 2008? | IONM at Los Angeles County+USC Medical Center: <br><br>• From January 1, 2008 - January 1, 2013: Reimbursements associated with add-on code CPT 95920 (requiring continuous, real-time monitoring by the IONM physician) in addition to associated base codes for surgeries involving IONM services not rendered.  The OR LOG or CHAT LOG from LAC+USC will prove false claims associated with CPT 95920. <br>• From January 1, 2013 to the present: Reimbursements associated with add-on code CPT 95940 in addition to base codes (requiring continuous in person in OR monitoring by the IONM physician) for surgeries involving IONM services not rendered.  The OR LOG from Los Angeles County+USC Medical Center will prove false claims associated with CPT 95940. <br>• At Los Angeles County+USC Medical Center, no oversight physician (neurologist) is in the LAC operating room monitoring the IONM tests in real time. Instead, the neurophysiologist impersonates/acts in the capacity of the oversight physician. Los Angeles County requires all medical staff working at Los Angeles County hospitals including LAC+USC Medical Center to acknowledge that "any instance of patient care ordered or provided by someone impersonating a physician" is Criminal Event in violation of California H&S 1279.1 (4AC Ex.150 Video; Ex. A-225) <br>• Because the USC-employed IONM neurophysiologists are not licensed or permitted to independently analyze the IONM data without physician oversight, the neurophysiologists are not capable of interpreting critical IONM changes and this has led to significant patient harm and patient deaths at Los Angeles County+USC Medical Center. <br>• Evidence in support: |

Relators' continued guidance with updated reference to the Fourth Amended Complaint (4AC)
Delivered via email to all four participating entities on September 30, 2021

| | | |
|---|---|---|
| | | o See 4AC ¶323, describing an IONM surgical procedure in which the neurophysiologist interprets the IONM data incorrectly and the patient dies. |
| | | o See 4AC¶¶ 324-355, describing numerous surgeries involving serious patient injuries in which false claims were submitted through LAC+USC hospital by USC for IONM services and 4AC ¶ 427 for which Relator again calls Los Angeles County employee, LAC+USC Chief of Neurosurgery, Dr. Steven Giannotta as a witness in this qui tam action and would like to participate in the government's interview of Dr. Giannotta. |

IONM at USC Keck:
- From January 1, 2008 – January 1, 2013: USC exclusively billed government and private payers using the add-on code CPT 95920 (requiring continuous, real-time monitoring by the IONM physician) in addition to associated base codes for surgeries involving IONM services not rendered.
- From January 1, 2013 to the present: USC billed government and private payers the add-on codes HCPCS G-0453, CPT 95940 or CPT 95941 (requiring continuous, real-time monitoring by the IONM physician) in addition to associated base codes for surgeries involving IONM services not rendered.
- Contrary to USC's March 27, 2020 Self-Disclosure, USC was reimbursed for thousands of "in-room" CPT 95940 codes annually, including over 1,900 units of CPT 95940 from July 2015 – February 2016 and over 2,200 units of CPT 95940 alone at USC Keck hospital from March 2016 – July 2016 (USC0075170; 4AC Ex. 23). The OR LOG from USC Keck Hospital will prove false claims associated with CPT 95940.
  - o Relator again calls former USC CEO Thomas Jackiewicz (now President of University of Chicago Medical Center) as a witness in this qui tam action and would like to participate in the government's interview of Mr. Jackiewicz.
- IONM procedures are also billed using CPT 95941 and HCPCS G0453. Both codes require real-time, continuous monitoring of the patient's IONM data by an oversight physician.
- At USC Keck hospital, the oversight physician does not provide continuous, real-time interpretation of the IONM data. Because the USC-employed IONM

Relators' continued guidance with updated reference to the Fourth Amended Complaint (4AC)
Delivered via email to all four participating entities on September 30, 2021

| | | |
|---|---|---|
| | | neurophysiologists working at USC Keck hospital are not licensed or permitted to independently analyze the IONM data without physician oversight, the USC neurophysiologists are not capable of interpreting critical IONM changes and this has led to significant patient harm and patient deaths at USC Keck hospital.<br>• For the thousands of "in-room" CPT 95940 code and associated base codes that USC bills annually, the OR LOG proves false claims associated with IONM services because the neurologist is not present in the operating room.  For the "remote" CPT 95941 and HCPCS G-0453 codes and associated base codes USC bills, the CHAT LOG will prove the neurologist is not providing continuous, real-time monitoring as required.  To hide the fraud, USC instructed the deletion of the CHAT LOGs.<br>• Evidence in support:<br>   o CHAT LOGs demonstrate oversight physicians were not monitoring IONM surgeries continuously in real-time.<br>   o USC Document Production of CHAT LOGs in response to CDI Subpoena issued on November 1, 2018.  In December 2019, when the CHAT LOGs produced by USC in response to the CDI subpoena were compared to the CHAT LOGs produced by Relator, it was shown that there was substantial spoilation of evidence wherein the majority of the CHAT LOGs contained in 4AC ¶¶253-296 were not produced by USC.<br>   o USC Policy 9-107 instructing neurophysiologists to practice medicine in the capacity of the interpreting physician (4AC Exs 34, 40). |
| 6 | What records should the government obtain during the course of its investigation into the fraud associated with USC surgeons and neurologists?<br><br>Who is the custodian of such records from which the government should obtain these patient files? | For all the records referenced below, Los Angeles County is the custodian for patient files for medical services purportedly performed at Los Angeles County+USC Medical Center and USC is the custodian for patient files for medical services purportedly performed at USC Keck Hospital.<br><br>*BEFORE THE PROCEDURE*<br><br>The Surgeon's Referral/Order:<br>• The surgeon's referral/order requesting the IONM procedure triggers the need for a neurologist to monitor and interpret the IONM data. |

Relators' continued guidance with updated reference to the Fourth Amended Complaint (4AC)
Delivered via email to all four participating entities on September 30, 2021

The Surgical Booking Slip:
- This is a scheduling event with the hospital whereby the surgeon requests the use of IONM services in conjunction with the surgeon's request to the hospital for an OR time slot for the surgery. Functionally, the surgical booking slip can also serve as the surgeon's order for surgery and other services such as IONM.

The Public Surgery Schedule:
- After the hospital accepts the surgeon's request to perform a surgery using IONM and schedules the surgery in an OR time slot, the Public Surgery Schedule displays to the inpatient hospital staff the timing of the surgery and relevant resources needed including IONM ordered by the surgeon. (Ex. A-227)

Patient Consent Form
- The Hospital and Surgeon require that the patient signs hospital consent form acknowledging IONM is medically necessary and integral part of the surgery.  (*See* Ex.A-235; USC0017504)

*DURING THE PROCEDURE*

CHAT LOG:
- The CHAT LOG is the typewritten, time-stamped electronic record automatically created at the beginning of a remote connection and records the real-time written communications between a remote physician and neurophysiologist during a surgery. These CHAT LOGs thus document whether the oversight physician continuously monitored the surgery as required and contains the physician's real-time interpretation and communication of both baseline signals and subsequent data acquired throughout the entire course of the surgery. After the physician conveys analysis of the data to the neurophysiologist in real-time via the CHAT LOG, the neurophysiologist relays the physician's interpretation of the data to the surgeon in the operating room. The CHAT LOG is a part of the patient's medical record and is accessible through the hospital computer server which stores all the IONM data. (Ex. USC0016319).

Relators' continued guidance with updated reference to the Fourth Amended Complaint (4AC)      Page 86 of 117
Delivered via email to all four participating entities on September 30, 2021

| | | |
|---|---|---|
| | | OR LOG: |

OR LOG:
- The OR LOG is created by the hospital employee (typically the OR nurse) in charge of recording personnel physically present in the operating room during the surgery. Any error by any hospital employee entering surgery data into the OR LOG would create significant medicolegal liability for the hospital. Among other information relevant to the surgery, the OR LOG reflects all entries and exits of medical staff to and from the OR, and therefore documents the presence (or absence) of the neurologists and surgeons. The OR LOG is a part of the patient's medical record and accessible through the hospital's EMR system. (Ex.A-230; 4AC Ex.42)

*AFTER THE PROCEDURE*

Surgeon's Operative Report
- The surgeon's Operative Report is the surgeon's summary of the operation. This report documents the communications to the surgeon with respect to changes or absence of changes in the IONM signals during the surgery. The Surgeon's Operative Report is a part of the patient's medical record and accessible through the hospital's EMR system. The surgeon's Operative Reports for thousands of surgeries that took place at Los Angeles County+USC Medical Center will show no involvement of any Teaching Surgeon which is consistent with the Los Angeles County+USC Medical Center OR LOG which is another way for the government to prove there was no Teaching surgeon present for critical and key portions of the surgery. See Ex. A-231.

IONM Report
- The IONM Report is a part of the patient's medical record and accessible through the hospital's EMR system.
- At Los Angeles County+USC Medical Center, the IONM reports were signed only by the neurophysiologist, not by the neurologist under whom the IONM services were billed. (4AC Ex.27; 4AC Ex. 28)
- At USC Keck, as a result of USC's group billing and other fraudulent schemes, none of the neurologists knew which surgery each would later attest to have

Relators' continued guidance with updated reference to the Fourth Amended Complaint (4AC)
Delivered via email to all four participating entities on September 30, 2021

| | | |
|---|---|---|
| | | monitored until all the surgeries were completed. After the IONM bills were assigned to each physician days or weeks after the actual surgery date, that physician would retroactively review the IONM data file prior to signing the IONM note and falsely attesting in the medical record that the surgery was monitored in real-time when in fact there had been no continuous real-time monitoring by that physician at all.<br><br>Los Angeles County+USC Medical Center Coding Summary:<br>• This summary within the Los Angeles County+USC Medical Center EMR system displays the charges submitted through LAC+USC to payers for surgeries and associated IONM services at Los Angeles County+USC Medical Center.  The DRG codes billed by the hospital for the surgeries are displayed here, in addition to the CPT codes which were billed by the USC-employed neurophysiologists impersonating oversight physicians. (Ex. A-228).  Actual knowledge that such surgeries were not overseen by Teaching Surgeons and IONM services performed by oversight physician is evidenced in the Los Angeles County+USC Medical Center OR LOG. (Ex. A-230).<br><br>USC Keck Hospital Charges Summary:<br>• This summary within the USC Keck hospital EMR system displays the charges submitted through LAC+USC to payers for surgeries and associated IONM services at USC Keck hospital.  The DRG and other IONM and surgery related codes billed by the hospital for the surgeries are displayed here. (4AC Ex. 30) |
| 7 | In addition to laws against false claim submissions, are there other laws that make it illegal for neurophysiologists to order or provide patient by care impersonating a physician?<br><br>Which government entity is responsible for enforcing such laws? | All healthcare providers who provide patient care at Los Angeles County hospitals (including the USC IONM neurophysiologists who were impersonating physicians) are required to acknowledge that "any instance of care ordered or provided by someone impersonating a physician" is a criminal event per H&S 1279.1. (4AC Ex. 150 Video; Ex. A-225)<br><br>The Los Angeles County District Attorney's Office is responsible for investigating and prosecuting both healthcare fraud, false claims under the California False Claims Act and crimes occurring within the political subdivision. |

Relators' continued guidance with updated reference to the Fourth Amended Complaint (4AC)
Delivered via email to all four participating entities on September 30, 2021

| | | |
|---|---|---|
| | | The USC neurophysiologists who committed such crimes at Los Angeles County+USC Medical Center are still working at Los Angeles County+USC Medical Center.  Relator again calls the  Los Angeles County+USC Medical Center neurophysiologists Michael Vesely, Pooja Parikh and Nancy Nguyen as witnesses in this qui tam action and would like to participate in the government's interview of these witnesses per the witness briefs relator submitted to the government parties in 2018. |
| 8 | How did USC use the work product of its USC employed neurophysiologists in its fraudulent scheme? | The IONM "data file" contains the IONM waveforms obtained during the surgery and the Event Log which was created solely by USC neurophysiologists.  The Event Log contains only the work product of the neurophysiologist and should never be misconstrued as the work product of the oversight neurologist.  At USC Keck hospital and Los Angeles County+USC Medical Center, the USC neurophysiologists create the Event Logs despite the lack of neurologist oversight.  For surgeries performed at USC Keck, the neurologists retroactively review the IONM data files to fabricate attestations for USC to submit false claims for continuous real-time monitoring.  For surgeries performed at Los Angeles County+USC Medical Center, the neurologists do not review the IONM data files because the neurophysiologists impersonate the physician to provide and order patient care in violation of H&S 1279.1.

The EVENT LOG is generated solely by the Neurophysiologist and stored in the IONM data file. There were several instances where insurers questioned USC on the physician's involvement in IONM services and specifically requested the Chat Log which USC had permanently deleted and were unable to retrieve as part of the patient's medical records. Instead, USC's billing and compliance team attempted to submit the Event Log to falsify physician involvement; this proves USC had knowledge of the fraud several years ago yet continued to knowingly deceive insurers by using the Event Log to give the false impression that the physician interpreted the data and communicated the interpretation of that data in real-time to the surgeon, when in fact USC knew the physician was not overseeing the surgery. (4AC ¶204) |
| 9 | What was the post-surgery IONM workflow at USC Keck and Los Angeles County+USC Medical Center? | Post-surgery IONM workflow at USC Keck Hospital:
- The Hospital IONM Billing Slip/Physician IONM Billing Slip: Initially the Hospital IONM Billing Slips are filled out by neurophysiologists who subsequently provide |

Relators' continued guidance with updated reference to the Fourth Amended Complaint (4AC)
Delivered via email to all four participating entities on September 30, 2021

| | | |
|---|---|---|
| | | them to Dr. Chui's assistant, Angelique Matthews. Angelique Matthews then completes the Physician IONM Billing Slip using the Hospital IONM Billing Slip. (4AC Ex. 17).  Neurologists are then ordered to use the Physician IONM Billing Slip to retroactive review the IONM data file so USC can submit false claims as if IONM was monitored in real-time.<br><br>• Relator again calls Angelique Matthews (now Angelique Amsbary) as a witness in this qui tam action and would like to participate in the government's interview of her.  She is no longer employed by USC<br><br>Post-surgery IONM workflow at Los Angeles County+USC Medical Center:<br>• At Los Angeles County+USC Medical Center, the USC-employed neurophysiologist drafts and signs the IONM note without attestation by of services by any neurologist.<br>• The USC-employed neurophysiologist working at Los Angeles County+USC Medical Center provides and orders patient care to submit individual charges to insurers for each base code in addition to the "add-on" time code CPT 95940 through Los Angeles County+USC Medical Center's EMR billing system after 2013, or the "add-on" time code CPT 95920 prior to 2013. (See 4AC Video Ex.150)<br>• For surgeries at Los Angeles County+USC Medical Center in which the IONM technical component is separately billed, Los Angeles County+USC Medical Center bills for the IONM technical component<br>• EMR Coding Summary: This document reflects the billable charges, including IONM services, provided during the procedure. (Ex. A-229) |
| 10 | Can a neurophysiologist perform physician interpretation of IONM data? | No. The neurophysiologist can never perform the professional component functions of the IONM procedure. The neurophysiologists are not licensed physicians and therefore cannot provide physician interpretation of IONM data which is required for the billing of the professional component of IONM services.<br><br>In fact, Los Angeles County requires all medical staff working at Los Angeles County hospitals including Los Angeles County+USC Medical Center to acknowledge that "any |

Relators' continued guidance with updated reference to the Fourth Amended Complaint (4AC)
Delivered via email to all four participating entities on September 30, 2021

Page 90 of 117

| | | |
|---|---|---|
| | | instance of patient care ordered or provided by someone impersonating a physician" is Criminal Event in violation of California H&S 1279.1. |
| 11 | Can a hospital bill for services performed by an ACGME resident surgeon without the presence of the Teaching Surgeon during critical and key portions of the surgery? | No. In order to receive reimbursement for surgical, high-risk, or other complex procedures, the teaching physician must be present during all critical or key portions of the procedure and be immediately available to furnish services during the entire procedure i.e. he/she cannot be performing another procedure. (4AC ¶¶ 125-128).  If the Teaching Surgeon does not fulfill these responsibilities, all associated charges by the hospital related to the surgery including Part A, Facility fees, and DRG are false claims. The OR LOG will prove these false claims, including at Los Angeles County+USC Medical Center. |
| 12 | What IONM equipment was used at USC Keck hospital and Los Angeles County+USC Medical Center? | Non-ENT Cases:<br>• Non-ENT IONM cases are performed with Cadwell IONM Machines. Cadwell machines are ordered and purchased by both the USC Keck hospital and Los Angeles County+USC Medical Center. The Cadwell IONM machine automatically creates the IONM Chat Log upon any remote connection. The chat logs are stored on USC Keck hospital and Los Angeles County+USC Medical Center servers unless deleted by the USC neurophysiologists as ordered by USC. The Cadwell machine is used to perform IONM in non-ENT surgeries (neurosurgery, orthopedic, and vascular surgeries, for example).<br><br>ENT Cases:<br>• IONM services for ENT surgeries at USC Keck hospital and Los Angeles County+USC Medical Center are performed with the NIM Machine. The NIM machine is ordered and purchased by USC Keck hospital and Los Angeles County+USC Medical Center.<br>• In nearly all Ear, Nose and Throat ("ENT") surgeries at both USC Keck hospital and Los Angeles County+USC Medical Center since the year 2008, IONM has been performed using the NIM machine which does not allow for remote monitoring. Therefore, the monitoring physician must be present in the operating room; otherwise, monitoring did not occur. Despite the fact that physicians did not provide monitoring for these cases which are evidenced by the OR LOG showing the physician was not in the operating room for these cases, USC submitted and |

Relators' continued guidance with updated reference to the Fourth Amended Complaint (4AC)
Delivered via email to all four participating entities on September 30, 2021

| | | caused the submission of thousands of false claims for surgical services in ENT surgeries with tainted global fees at both USC Keck hospital and Los Angeles County+USC Medical Center. (4AC ¶238) |
|---|---|---|
| 13 | Why can't the surgeon bill for the Professional Component or the Technical Component related to the IONM services to be ordered? | National Correct Coding Initiative Policy Manual for Medicare Services, Chapter IV Surgery: Musculoskeletal System at 9: <br>• "Intraoperative neurophysiology testing (HCPCS/CPT Codes 9590, 95941/G0453) shall not be reported by the physician performing an operative procedure since it is included in the global package. However, when performed by a different physician during the procedure, it is separately reportable by the second physician. The physician performing an operative procedure shall not bill other 9XXX neurophysiology testing codes for intraoperative neurophysiology testing (e.g., CPT Codes 92585, 95822, 95861, 95867, 95868, 95870, 95907-95913, 95925-95937) since they are also included in the global package." |
| 14 | What are the damages from false claims associated with surgeries and associated IONM services at USC Keck Hospital? <br><br> What are the damages from false claims associated with surgeries and associated IONM services at Los Angeles County+USC Medical Center? | DAMAGES: <br>• See Ex. A-239 page 2 for damages associated with false claims for surgical and IONM services billed through Los Angeles County+USC Medical Center <br>• See Ex. A-237 for damages associated with false claims for surgical and IONM services at USC Keck Hospital <br><br> In addition to Medicare Part A and facility fee charges/reimbursements, the DRG Medicare Net Revenue paid to the hospitals include but are not limited to $43,270 for each neurosurgery, $40,742 for each orthopedic surgery, and $16,765 for each ENT surgery (USC0046515).  These damages would apply for surgeries performed without a Teaching Surgeon and for IONM services with Tainted Technical Component as part of the DRG. <br><br> If separately billed, the hospitals (both USC Keck and Los Angeles County+USC Medical Center) receive approximately $1,136 in Technical Component reimbursement for each surgery that includes IONM services. These technical component costs are comprised of the costs of the IONM modalities ordered by the surgeon (for example, SEP, MEP, EMG, and EEG, TOF). (4AC ¶145; 4AC¶185) |

Relators' continued guidance with updated reference to the Fourth Amended Complaint (4AC)
Delivered via email to all four participating entities on September 30, 2021

| 15 | How does USC Care Group and its surgeons and neurologists financially benefit from surgeries not rendered and surgical and associated IONM services not rendered at both USC Keck hospital and Los Angeles County+USC Medical Center? | USC Care Group and its surgeons benefit from surgeries not rendered at USC Keck Hospital through their faculty incentive plans which include but are not limited faculty guarantee and clinical incentives. . (4AC ¶¶549-563) |
| --- | --- | --- |
| | | USC Care Group and its surgeons benefit from surgeries not rendered at Los Angeles County+USC Medical Center through their faculty incentive plans which include but are not limited to money from government payers such as Los Angeles County in the form of MSOA/MSAA/PSA payments. (4AC Ex. 45) |
| | | USC Care Group and its neurologists benefit from surgeries not rendered at USC Keck Hospital through their faculty incentive plans which include but are not limited faculty guarantee and clinical incentives. (4AC ¶¶ 536-548) |
| | | USC Care Group and its neurologists benefit from surgeries not rendered at Los Angeles County+USC Medical Center through their faculty incentive plans which include but are not limited to money from government payers such as Los Angeles County in the form of MSOA/MSAA/PSA payments. (4AC Ex. 52) |
| 16 | What actions were taken by USC and Los Angeles County in response to Dr. Cheongsiatmoy's internal reporting to both entities in early 2018 that surgeries at Los Angeles County+USC Medical Center were being performed by resident surgeons without the presence of a Teaching Surgeon? | After Dr. Cheongsiatmoy reported internally to high-ranking officials at both USC and Los Angeles County in early 2018 that Teaching Surgeons were not present during critical and key portions of surgeries performed at Los Angeles County+USC Medical Center and after Dr. Cheongsiatmoy reported this fraud again to Los Angeles County when the qui tam was filed in September 2018, Los Angeles County and USC changed their local ACGME neurosurgery rules to address "critical needed inpatient areas...[to add] new neurosurgical attending coverage" (4AC ¶305; 4AC Ex. 49 at 3). |
| | | Relator urges the government to interview Los Angeles County employee, Christina Ghaly, M.D., Director for Los Angeles County Department of Health Services, as to the investigation into Dr. Cheongsiatmoy's reporting of false claims and patient harm related resident surgeons performing surgeries without Teaching Surgeons at Los Angeles County+USC Medical Center including the process leading up to Dr. Christina Ghaly's July |

Relators' continued guidance with updated reference to the Fourth Amended Complaint (4AC)
Delivered via email to all four participating entities on September 30, 2021

| | | |
|---|---|---|
| | | 23, 2019 recommendation to the Los Angeles County Board of Supervisors to add "new neurosurgical attending coverage" at Los Angeles County+USC Medical Center. (4AC Ex. 49 at 3; Ex. A-232) |
| 17 | What are key documents the government should obtain to show that USC Keck hospital and Los Angeles County+USC Medical Center KNEW that each false claim submitted at its location of service associated with surgeons and neurologists' IONM services were outright acts of fraud?<br><br>Since there has been substantial spoilation of evidence related to the false claims occurring at USC Keck, are there other ways in which the government can quickly and efficiently prove the fraud? | The documentation described in the document will prove the false claims were outright acts of fraud.<br><br>When IONM monitoring does not occur on a continuous basis by a trained physician, the service is rendered worthless and neither the PC nor the TC are eligible for reimbursement. USC knew and its documentation reflects that continuous IONM monitoring consistently did not occur for procedures involving IONM services at both LAC+USC and USC Keck.<br><br>For charges associated with the billing of remote IONM monitoring codes, the CHAT LOGS demonstrate that untrained neurophysiologists were interpreting IONM data in the absence of oversight physicians and therefore prove false claims .<br><br>For charges associated with the billing of in-person IONM monitoring codes, the OR LOGs at USC Keck and Los Angeles County+USC Medical Center demonstrate that oversight physicians were not in the operating room at the time of the procedure and therefore prove false claims.<br><br>For Part A/Facility Fee/DRG charges by USC Keck Hospital and Los Angeles County+USC Medical Center for surgeries in which the Teaching Surgeon is not present during all critical portions of the surgery as required by billing rules, the OR LOG and Surgeon's Operative Report will prove false claims.<br><br>Relator notified the government of potential and substantial spoilation of evidence by USC (over 12,000 IONM data files related to surgeries at USC Keck alone) on December 5, 2019, prior to any partial seal lift and again on January 26, 2021 after the United States of America gave defendant a copy of the complaint.<br><br>Los Angeles County is one of the "four participating government entities" in this action and is the custodian of all patient files for surgeries performed at Los Angeles County+USC Medical Center. |

Relators' continued guidance with updated reference to the Fourth Amended Complaint (4AC)
Delivered via email to all four participating entities on September 30, 2021

|  |  | Once Relator is given access to patient files requested by the government while investigating the false claims, Relator can quickly and efficiently analyze these Top 4 documents below in a matter of weeks to show the specific intent to defraud, the extent of the conspiracy in the orchestration to commit these crimes and false claims: |
|---|---|---|

(1) The **OR LOG** at Los Angeles County+USC Medical Center will prove there was no teaching surgeon or neurologist in the Operating Room for thousands of surgeries dating back to the year 2008 and associated charges for the surgeries and IONM services were outright fraud. Once the government obtains this information, the defendants' KNOWLEDGE of the fraud will be clear. The OR Log at both both USC Keck and Los Angeles County+USC Medical Center will prove false claims related to CPT 95940.

(2) The **CHAT LOG** at both USC Keck and Los Angeles County+USC Medical Center will prove the defendants' KNOWLEDGE of that the PC and TC services related to IONM billings were outright fraud.

(3) The **SURGEON'S OPERATIVE REPORT** when compared with OR LOG at Los Angeles County+USC Medical Center and CHAT LOGS at USC Keck and Los Angeles County+USC Medical Center will prove defendants' knowledge of the fraud related to both surgeons and neurologists.

(4) **HOPSITAL PATIENT CONSENT FORM** at both USC Keck and Los Angeles County+USC Medical Center will prove the extent of the conspiracy, and the specific intent to defraud payers and commit crimes against the patient.

Relator reiterates his request to participate in the government investigation to diligently and expeditiously review these documents to enable the government investigate the significant patient harm and substantial damages to the taxpayers. See Ex. A-237 for damages associated with false claims at USC Keck Hospital and Ex. A-239 for damages associated with false claims associated with false claims at Los Angeles County+USC Medical Center.

# Exhibit A-241

LAW OFFICES

## COTCHETT, PITRE & McCARTHY, LLP

LOS ANGELES

SAN FRANCISCO AIRPORT OFFICE CENTER
840 MALCOLM ROAD
BURLINGAME, CALIFORNIA 94010
TELEPHONE (650) 697-6000
FAX (650) 697-0577
www.cpmlegal.com

NEW YORK

November 27, 2018

**VIA ELECTRONIC MAIL**

Frank Kortum
Maria Marsh
Gabriel Lam
frank.kortum@usdoj.gov
maria.r.marsh@usdoj.gov
gabriel.lam@usdoj.gov

Mitch Neumeister
Summer Volkmer
mitch.neumeister@insurance.ca.gov
summer.volkmer@insurance.ca.gov

Adelina Berumen
adelina.berumen@doj.ca.gov

Kelly Berwanger
kelly.berwanger@oig.hhs.gov

Re:    ***United States ex rel. IONM LLC v. University of Southern California;
United States Central District of California Case No. CV 18-08311-PA***
**Subpoena Categories**

Dear All:

In follow-up to our discussion, below is a list of items we believe are key for subpoena purposes. The list is organized by the broader subpoena category, with reference to the specific items we believe exist and are relevant.

1.    Data contained in all electronic devices, including iPads, laptops, personal computers, Macbooks, used by the physicians for all IONM (or referred to as IOM) work, work-related tasks and scheduling at Los Angeles County Hospital (LAC) and USC-Keck (USC Keck School of Medicine) from 2008-present.

2.    All Physician, faculty, and management correspondence, notes and other records, including emails, phone and text records relating to IONM work, work-related tasks and scheduling at LAC and USC-Keck from 2008-present.
    a.    Dr. Gonzalez text messages and phone call logs
    b.    Dr. Shilian text messages and phone call logs
    c.    Dr. Helena Chui (Chair of Neurology) communications: text, phone call logs, and emails. Dr. Cheongsiatmoy communicated concerns regarding the ENT surgeries and LAC funds via email with Dr. Chui. Dr. Chui also confers via text messaging with Drs. Gonzalez and Shilian regarding IOMN decisions (i.e. how time is spent performing work for LAC patients).

3.    All files and documents, including training materials and policies relating to the IONM Department from the period 2008 to the present, for both USC Keck and LAC.

LAW OFFICES
COTCHETT, PITRE & McCARTHY, LLP

4.      All billing records to private insurers as well as to Medicare, MediCal or Medicaid for IONM technical and professional services through both the IONM division serving USC Keck and LAC from 2008-2018.

      a.      All billing submitted on behalf of Dr. Gonzalez and Dr. Shilian during the relevant time period, including for IONM professional components and any other charges for clinical work

          i.      The professional component modifier –26 (i.e. 95941-26)

          ii.      The technical component modifier is –tc (i.e 95941-tc)

          iii.      Common CPT codes for IONM physician monitoring time:

             1)      95940 (monitoring performed in-operating room)

                  • NOTE: It may be worthwhile to compare the amount of charges billed by Drs. Gonzalez and Shilian for this code compared to the standard amount for IONM physicians nationwide.  Other IONM physicians who have high numbers of in-room billing 95940 probably do not have as many charges for 95941 because it is illegal to bill both 95940 and 95941 simultaneously (as Drs. Gonzalez and Shilian have often done for LAC and Keck combined)

             2)      95941 (remote monitoring for commercial insurers and MediCal)

             3)      G-0453 (remote monitoring for Medicare, United Healthcare, Worker's Compensation, Sr. HMO plans)

             4)      95920 (this was the universal monitoring code prior to 2013)

          iv.      Common CPT codes for IONM modalities monitored – check both "-26" and "-tc"

             1)      95938 (somatosensory evoked potentials)

             2)      95939 (motor evoked potentials)

              3)      95861 (electromyography)

             4)      95937 (neuromuscular junction testing)

             5)      95822 (electroencephalography)

             6)      92585

             7)      95867

             8)      95868

      b.      Any and all insurance reimbursement, including from private insurers, Medicare, MediCal, and Medicaid related to IONM services at USC Keck and LAC for the relevant time period.

          i.      Reimbursement by insurance companies for technical component

          ii.      Reimbursement by insurance companies for the professional component

5.      Any and all electronically or otherwise stored data, including server data, related to the IONM department at USC, for services provided at both USC Keck and LAC for the relevant time period.

      a.      All electronic and paper records relating to the IONM division

          i.      Electronic IONM Data File (SMD or IOMAX File) for Cadwell Cases

          ii.      IT forensics for documenting login to KeckPortal, the Citrix server, Cadwell Classic software program

          iii.      Hand-written Event Logs for all ENT Cases using the NIM Machine

          iv.      Electronic Chat Logs for all cases

LAW OFFICES
COTCHETT, PITRE & McCARTHY, LLP

     v.   All Operating Room (OR) log sheets
    vi.   Remote Server IONM Files (drive at USC Keck (may be the "S" drive),
         drive at LAC)

6.      Any and all records, including electronically stored data, relating to the IONM division patient information, vendor-related information, physician and technologist schedules for the relevant time period.

7.      Any and all records memorializing IONM policies and procedures, including related to research and billing for the relevant time period.

8.      Any and all records memorializing USC policies and procedures related to billing and ethical standards at the School of Medicine and/or any physician services provided through the program (USC Keck and LAC, and all other hospitals) for the relevant time period.

9.      Any and all records, electronically stored or otherwise, reflecting IONM Department meeting minutes and IONM management meeting minutes for the relevant time period.

10.     Any and all records, including internal memoranda or notes by management and faculty, relating to IONM policies, training and Department goals for the relevant time period.

11.     Any and all Electronic Medical Record data (EMR) for all patients who received IONM services at USC Keck or LAC, including billed and unbilled patient services for the relevant time period.
     a.     IONM Notes
     b.     Billing Charges
     c.     Insurance status
     d.     Surgical Reports
     e.     Operating Room Log Attendance Sheet
     f.     All other IONM physician and surgeon notes

12.     Any and all Provider Time Studies for the Department of Neurology, including but not limited to the IONM division, relating to LAC services for the relevant time period.

13.     Any and all financial records, including electronically stored data, relating to the Department of Neurology IONM Department, including but not limited to management documents in the possession of Dr. Chui, Elvia Arreola, and Rick Hagy.

14.     Any and all documents relating to or memorializing agreements or contracts, including but not limited to, MSOA and MSAA documents and physician service agreements, between LAC and the Keck Department of Neurology during the relevant time period.

15.     Any and all documents relating to the LAC IONM technologists (outside vendor contractors or employees of USC), including but not limited to, technologists Michael Vesley, Nancy Nguyen, and Pooja Parikh.

16.     Any and all electronically stored data and documents relating to billing, contracts, and internal notes by vendor IONM technologists at USC Keck and LAC for the relevant time period.

17.     Any and all documents, including electronically stored data, relating to physician billing sheets (reflecting billing for the physician component of IONM) during the relevant time period.

LAW OFFICES
COTCHETT, PITRE & McCARTHY, LLP

18.     Any and all documents, including electronically stored data, relating to technologist billing sheets (reflecting billing for the technical component)

19.     Any and all notes and logs (including event logs) prepared by IONM technologists billing for ENT services during the relevant time period.

20.     Any and all data stored on computers and other electronic devices at Room 3108 of USC Keck Hospital, located at 1500 San Pablo St., Los Angeles, CA 90033 during the relevant time period.
        a.      All 7 desktop computers in Room 3108
        b.      All other physical evidence

21.     Any and all data stored on computers and other electronic devices at Room 4131 of USC Keck Hospital, located at, 1500 San Pablo St., Los Angeles, CA 90033 during the relevant time period.
        a.      1 desktop computer in Room 4131
        b.      All other physical evidence

22.     Any and all IONM related data, including electronically stored data, located at the Office of Dr. Chui,  and Rick Hagy located at 1540 Alcazar, Suite 210J and CHP215, Los Angeles, CA 90089 during the relevant time period.
        a.      Emails, Computers, Financials

23.     Any and all documents, including electronically stored data such as emails, relating to IONM Department policies, goals, billing, faculty and staff maintained by Vice Dean Judy Garner of Faculty Affairs during the relevant time period.
        a.      Emails, any electronic and paper documentation

24.     Any and all documents, including electronically stored data relating to IONM services located at Technologist Office: located at Room B108A (basement level) of USC Keck Hospital, 1500 San Pablo St., Los Angeles, CA 90033, during the relevant time period.

25.     Any and all data relating to the Cadwell Machines, including the NIM machines, which are utilized with IONM services, during the relevant time period.
        a.      NIM machines – these may also be located at other places in the hospital like the OR, OR storage areas, etc.
        b.      Multiple desktop computers in Room B108A
        c.      All other physical evidence from Room 3108

LAC PHYSICAL OFFICE:

26.     Any and all data relating to IONM services during the relevant time period located at LAC Technologist Office: 2051 Marengo St., Los Angeles, CA 90033, Room C4F102
        a.      All physical office computers which contain a great amount of IONM patient and clinical data
        b.      All Cadwell Machines (with hard drives containing IONM data) – these may also be located at other places in the hospital like the OR, OR storage areas, etc.
        c.      NIM machines – these may also be located at other places in the hospital like the OR, OR storage areas, etc.
        d.      All other electronic and physical IONM documents (SMD/IOMAX data files, billing sheets, master database of IONM cases, etc)

LAW OFFICES
COTCHETT, PITRE & McCARTHY, LLP

    27.    Any and all documents, including emails or internal memoranda relating to IONM investigations by USC management, including, Judy Garner.

    28.    Any and all documents, including electronically stored data, relating to communications between USC Keck/USC-LAC employees, including contractors and Cadwell and Medtronic representatives.

    Please let me know if you have any questions or concerns.

                       Sincerely,

                       SARVENAZ J. FAHIMI
                       *Attorney for Relators*

# Exhibit A-261

**From:** Kortum, Frank (USACAC) <Frank.Kortum@usdoj.gov>
**Sent:** Friday, April 16, 2021 2:21 PM
**To:** Jonathan Radke <jradke@nelsonhardiman.com>
**Subject:** RE: USC IONM Investigation

Mr. Radke,

I just tried calling you; we seem to be trading phone calls so I'm sending this response to your 4/9 message, which acknowledges that a relator must provide the government with material evidence but goes on to assert that the relator here has taken confidential information from USC outside of what is "reasonably necessary to pursue his FCA claims."  We disagree with that assertion, for the following reasons:

- The scope of information that is "reasonably necessary" within the meaning of *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1062 (9th Cir. 2011) (cited in your message) should be evaluated in light of the fact that although USC has made significant admissions in its voluntary disclosure, the government is obligated as a matter of due diligence to conduct its own investigation for the purpose of determining the extent to which violations of the FCA may have occurred, as well as the duration of any such violations.  Conspicuously absent from your message is any specific information supporting your assertion that, under these circumstances, the information the relator acquired from USC is irrelevant to that investigation.  *See generally Erhart v. Bofl Holding*, *Inc.*, 2017 WL 588390 at *12 (S.D. Cal. Feb. 14, 2017) (analyzing *Cafasso* and finding that "many [documents] appear[ed] to be related to . . . allegations of believed wrongdoing.").

- Your message ignores the fact that HIPAA's privacy rules permit a relator to obtain information from an employer and disclose it to an attorney for the purpose of pursuing an FCA claim.  45 C.F.R. § 164.502(j)(1); *see generally United States v. Boston Scientific Neuromodulation Corp.*, 2013 WL 2404816 at *8 (D. N.J. May 31, 2013).

I'm taking this opportunity to remind you that you chose to raise the issues in your 4/9 message after requesting that the government provide you with medical records underlying the relator's complaint here.  We'd like to expedite the process of attempting to informally resolve this action on the merits, but we're disinclined to respond positively to your request until the issues raised in your 4/9 message are satisfactorily resolved (particularly given the risk that providing the records to you at this time will open up an irrelevant collateral issue).  Finally, in the interests of providing a prompt response to your message we're responding to what appear to be the primary assertions you've raised; we'll respond to any remaining assertions at another time to the extent it becomes necessary to do so.  When you've had a chance to review this message please give me a call.

Frank Kortum (cell 213.393.5512)

**From:** Jonathan Radke <jradke@nelsonhardiman.com>
**Sent:** Friday, April 9, 2021 2:55 PM
**To:** Kortum, Frank (USACAC) <FKortum@usa.doj.gov>
**Cc:** Mark Hardiman <mhardiman@nelsonhardiman.com>
**Subject:** USC IONM Investigation

Frank:

I am circling back regarding the medical records.  Do you anticipate that we will receive any additional identifying information to help us track and confirm the relevant patient records?

In addition, I wanted to address our concerns as it relates to privacy and the records in relator's position.  Our review of the First Amended Complaint leads us to believe that relator copied a significant amount of confidential and private patient information.  Although we understand that a whistleblower is required to provide the government with a written disclosure, including material evidence, we believe that relator in this case has taken confidential information outside of what is reasonably necessary to pursue his FCA claims.  *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011) ("vast and indiscriminate appropriation of files" not reasonably necessary to pursue FCA claim).  USC's concerns are heightened by the fact that the records at issue consist of confidential medical records of patients, many of which relator presumably did not treat or monitor as part of the IONM program at USC.  Medical records are protected by various statutory and common law privileges, including the Health Insurance Portability and Accountability Act, California's Confidentiality of Medical Information Act, and California's constitutional right to privacy.  Even with the existence of a competing interest or applicable exception, each of these rules at the very least require that any disclosure be limited to the minimum necessary.  Although we do not know the extent of information taken by relator, we are concerned that Relator indiscriminately copied files that is beyond the minimum reasonably necessary for his disclosure.

Best,

Jonathan

**Jonathan Radke** | Partner
T 310.203.2802 | F 310.203.2727
jradke@nelsonhardiman.com

# Exhibit A-265

**From:** Pamela Ringer-Britz <pamela.ringer-britz@elevateservices.com>
**Sent:** Thursday, November 19, 2020 4:55:37 PM
**To:** Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>
**Cc:** Lindsay Chastain <lindsay.chastain@elevateservices.com>; Relativity <relativity@elevateservices.com>
**Subject:** RE: California Department of Insurance - USC Matter

Hi Mitch,

There are 217 items (including family members) that are tagged "**MSN**" in the "**Civil - Reviewer**" field. If I understand correctly, these should be removed entirely with no backup? Or should we have a backup made for these items?

Link to search: USC 2018-46 - 20201119 Remove - https://elevate-us.relativity.one/Relativity/go?id=7910194-1384236

Thanks!
Pamela


**Pamela Ringer-Britz**
eDiscovery Project Manager
+1 4155780286
+1 4155780286


**Elevate** | elevateservices.com |

Due to the global nature of our business, you may be receiving this email during your personal time. Please feel free to respond during your work time.





Notice: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.


**From:** Pamela Ringer-Britz <pamela.ringer-britz@elevateservices.com>
**Sent:** Thursday, November 19, 2020 4:58:08 PM
**To:** Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>
**Cc:** Relativity <relativity@elevateservices.com>
**Subject:** RE: California Department of Insurance - USC Matter

Hi Mitch,

A backup would be a full export of the document native, images, searchable text, and all coding related. Do let us know if this would be required or necessary?

Thanks!
Pamela

**Pamela Ringer-Britz**
eDiscovery Project Manager
+1 4155780286
+1 4155780286

**Elevate** | elevateservices.com |

Due to the global nature of our business, you may be receiving this email during your personal time. Please feel free to respond during your work time.





Notice: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

**From:** Pamela Ringer-Britz <pamela.ringer-britz@elevateservices.com>
**Sent:** Friday, November 20, 2020 1:38 PM
**To:** Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>
**Cc:** Relativity <relativity@elevateservices.com>; Kunoor Chopra <kunoor.chopra@elevateservices.com>
**Subject:** RE: California Department of Insurance - USC Matter

Hi Mitch,

Thanks again for the call. Attached are the PI items marked MSN (and their families) – a cross-reference of fielded information (coding and metadata).

Saved search to these items below. Can you confirm we can proceed with deletion? Also, should we delete the MSN tag?

**SEARCH:** USC 2018-46\20201119 Remove https://elevate-us.relativity.one/Relativity/go?id=7910194-1384236

**COUNT:** 217 docs

Best,
Pamela

**From:** Pamela Ringer-Britz <pamela.ringer-britz@elevateservices.com>
**Sent:** Tuesday, November 24, 2020 2:38 PM
**To:** Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>
**Cc:** Relativity <relativity@elevateservices.com>
**Subject:** RE: California Department of Insurance - USC Matter

Hi Mitch,

Quick follow up on this one.

Best,
Pamela

**Pamela Ringer-Britz**
eDiscovery Project Manager
+1 4155780286
+1 4155780286

**Elevate** | elevateservices.com |

Due to the global nature of our business, you may be receiving this email during your personal time. Please feel free to respond during your work time.



Notice: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

**From:** Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>
**Sent:** Tuesday, November 24, 2020 2:48 PM
**To:** Pamela Ringer-Britz <pamela.ringer-britz@elevateservices.com>
**Cc:** Relativity <relativity@elevateservices.com>
**Subject:** RE: California Department of Insurance - USC Matter

Sorry. But yes, please proceed with deleting the 217 docs from the database. Please keep the MSN tag though for future use.

**From:** John Nguyen <john.nguyen@elevateservices.com>
**Sent:** Tuesday, November 24, 2020 2:56 PM
**To:** Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>; Pamela Ringer-Britz <pamela.ringer-britz@elevateservices.com>
**Cc:** Relativity <relativity@elevateservices.com>
**Subject:** RE: California Department of Insurance - USC Matter

Hi Mitch,

We'll proceed with deleting the 217 documents tomorrow morning without a backup on our end (understanding you have PDF versions of the documents already). Please let us know if you would like Elevate to keep a copy of the documents on the network.

Thanks,

John

**John Nguyen**
Host Operations Manager
(971) 348-9579

**Elevate** | elevateservices.com |

Due to the global nature of our business, you may be receiving this email during your personal time. Please feel free to respond during your work time.



Notice: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

**From:** John Nguyen <john.nguyen@elevateservices.com>
**Sent:** Tuesday, November 24, 2020 3:08 PM
**To:** Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>; Pamela Ringer-Britz <pamela.ringer-britz@elevateservices.com>
**Cc:** Relativity <relativity@elevateservices.com>
**Subject:** RE: California Department of Insurance - USC Matter

Thanks for confirming. We'll proceed with the deletion in the morning. I'll also double check internally regarding the transfer and will follow up with any questions.

Thanks,

John

**John Nguyen**
Host Operations Manager
(971) 348-9579

**Elevate** | elevateservices.com |

# Exhibit A-267

LAW OFFICES

# COTCHETT, PITRE & McCARTHY, LLP

LOS ANGELES

SAN FRANCISCO AIRPORT OFFICE CENTER
840 MALCOLM ROAD
BURLINGAME, CALIFORNIA 94010
TELEPHONE (650) 697-6000
FAX (650) 697-0577
www.cpmlegal.com

NEW YORK

March 25, 2019

**VIA MAIL AND E-MAIL**
Frank D. Kortum
Assistant United States Attorney
300 North Los Angeles Street
Room 7516, Federal Building
Los Angeles, CA 90012
frank.kortum@usdoj.gov

Mitch Neumeister
Fraud Liaison Bureau
California Department of Insurance
300 Capital Mall, Suite 1700
Sacramento, CA 95184
mitch.neumeister@insurance.ca.gov

> **Re:** **_United States ex rel. IONM LLC v. University of Southern California_**
> **[UNDER SEAL]**
> **USDC Central District of California; Case No. LA-CV-18-08311-PA-ASX**

Dear Frank and Mitch:

As you may recall, at the time of the Relator interview, Dr. Cheongsiatmoy's employment situation at USC had become tenuous and tension-filled. Unfortunately, shortly thereafter, it got much worse—and has remained so. I write to both update you on the situation, and request your assistance in ending what I believe is a serious case of retaliation against a relator.

On November 16, 2019, following the Relator interview, I wrote to USC's General Counsel on Dr. Cheongsiatmoy's behalf, expressing concern with USC's retaliatory behavior, and inviting discussion of a potential resolution—primarily involving his departure from USC. (I of course did not mention or hint at the _qui tam_ filing.) At the time, Dr. Cheongsiatmoy had received interest from a new and highly-prestigious prospective employer—the Mayo Clinic. I asked for USC's cooperation in helping him secure that new position; a solution that I thought would be mutually beneficial.

LAW OFFICES

COTCHETT, PITRE & McCARTHY, LLP

Frank Kortum
**Mitch Neumeister**
**March 25, 2019**
**Page 2**

On November 19, as I understand from Mitch, after some initial contact with USC and its then-counsel, Carlson & Jayakumar LLP, he transmitted an official subpoena on behalf of the Department of Insurance.

<u>Two days after transmission of the subpoena</u>, on November 21, I received a letter from Keith Carlson (of Carlson & Jayakumar LLP), on behalf of USC, officially placing Dr. Cheongsiatmoy on a "paid leave of absence," with no further explanation.

Since that time, I have had multiple communications with Keith Carlson, in hopes of negotiating Dr. Cheongsiatmoy's exit from USC, to no avail. In the meantime, Dr. Cheongsiatmoy continued pursuing the Mayo Clinic position, and on January 31, 2019, received an official offer from Mayo. The Mayo position is a "dream job" for Dr. Cheongsiatmoy. It includes a generous compensation package, and an academic appointment. Positions such as that are extremely rare, and highly competitive, in the small IONM field.

The Mayo offer came with one explicit condition: That the Mayo Neurology chair have an opportunity to speak with Dr. Cheongsiatmoy's current chair at USC, Dr. Chang Chui. Unfortunately, despite multiple pleas, USC has refused to fulfill this condition. Dr. Chui has not responded to multiple calls and e-mails from the Mayo chair, and USC's only response to Mayo was to confirm Dr. Cheongsiatmoy's dates of employment. As a result, Mayo has indicated that it is on the verge of revoking the offer to Dr. Cheongsiatmoy.

USC is thus essentially blackballing Dr. Cheongsiatmoy, and holding him hostage, in retaliation for raising these issues of fraud. He remains employed by USC, but has been stripped of all his job duties, is not allowed on campus, and cannot gain new employment. Despite my multiple requests, USC's counsel have not provided information as to exactly why it has placed Dr. Cheongsiatmoy on leave, or what its plans for him are.[1]

Last Friday, March 22, Dr. Cheongsiatmoy had a phone conference with the Mayo chair, during which she specifically and repeatedly asked him for more details on his current situation at USC. Because of the pending *qui tam*, Dr. Cheongsiatmoy felt very limited in what he could disclose, and the Mayo chair expressed dissatisfaction with that lack of transparency.

Dr. Cheongsiatmoy is thus in a very tight bind: Because he cannot discuss the *qui tam*, he cannot satisfy the reasonable requests for transparency from the Mayo chair.[2] And USC will not permit him to continue working; nor will it let him leave.

---

[1] Notably, USC is in significant and material breach of its employment agreement with Dr. Cheongsiatmoy, which incorporates by reference the USC Faculty Handbook. The Handbook contains specific, detailed policies and procedures pertaining to administrative leave that have not been followed by USC with respect to Dr. Cheongsiatmoy.

[2] Mayo is not an outlier in this regard; any prospective employer is going to request information regarding the current status of employment.

LAW OFFICES
COTCHETT, PITRE & McCARTHY, LLP

**Frank Kortum**
**Mitch Neumeister**
**March 25, 2019**
**Page 3**

I believe the only hope Dr. Cheongsiatmoy has to preserve the Mayo opportunity would be correspondence from one of you indicating that: (1) your office is "investigating claims of fraud that Dr. Cheongsiatmoy has disclosed"; and (2) that "Dr. Cheongsiatmoy is under strict instructions not to discuss certain aspects of the situation." We obviously do not want to say anything that would jeopardize the seal, but I believe that general statements along the lines of the foregoing would not do so.

An opportunity such as this is obviously rare, and Mayo's patience is wearing thin. I anticipate that if Mayo does not receive a satisfactory response within the next week, it will revoke its offer. And if Dr. Cheongsiatmoy loses the Mayo opportunity due to USC's retaliation, the situation is only going to grow more difficult to resolve.

I look forward to hearing from you, and would be happy to discuss by phone or in person if easier.

Yours truly,

JUSTIN T. BERGER

# Exhibit A-268

**From:** Jonathan Radke <jradke@nelsonhardiman.com>
**Sent:** Thursday, February 25, 2021 12:50 PM
**To:** Kortum, Frank (USACAC) <FKortum@usa.doj.gov>
**Cc:** Mark Hardiman <mhardiman@nelsonhardiman.com>
**Subject:** USC IONM Investigation

Hi Frank,

In anticipation of our meeting, could you provide us with a copy of Exhibit 4 to the Complaint?  As part of our audit and investigation, we have found no evidence that USC falsely certified to LA County on a claim using CPT Code 95940, or that USC submitted any claim to the county.  Since the Complaint identifies USC billing records relating to services performed at LAC+USC, we would like to see these records to determine if we need to do any follow up investigation.

Best,

Jonathan

**Jonathan Radke** | Partner
T 310.203.2802 | F 310.203.2727
jradke@nelsonhardiman.com


1100 Glendon Ave, 14th Floor | Los Angeles, CA 90024
www.nelsonhardiman.com

This message contains information that may be confidential and privileged. Unless you are the addressee (or authorized to receive e-mails for the addressee), you may not use, copy, or disclose to anyone this message or any information contained in this message. If you have received this message in error, please advise the sender by reply e-mail to jradke@nelsonhardiman.com and delete the message. Thank you.

# Exhibit A-269

From: **John Fisher** <John.Fisher@doj.ca.gov>
Date: Wed, Jan 6, 2021 at 10:06 AM
Subject: FW: U.S. ex rel. IONM v. USC; Case No. CV 18-08311-PA (self-disclosure documents and stipulation to partially unseal attached (as discussed))
To: Alice Chang JDMBA <alicechangjdmba@gmail.com>

**From:** Kortum, Frank (USACAC) <Frank.Kortum@usdoj.gov>
**Sent:** Thursday, May 28, 2020 9:13 AM
**To:** John Fisher <John.Fisher@doj.ca.gov>
**Subject:** [Not Virus Scanned] [Not Virus Scanned] U.S. ex rel. IONM v. USC; Case No. CV 18-08311-PA (self-disclosure documents and stipulation to partially unseal attached (as discussed))

As discussed, I'm forwarding a message I received from counsel for USC; the message attaches a copy of its self-disclosure request to HHS.  I've also attached a stipulation to partially unseal the complaint ("IONM Revisions" (stipulation and proposed order)).   If the stipulation looks OK please insert an electronic facsimile of your signature (as previously discussed with reference to the Chao/Medtronic case) and scan it back to me at your early convenience.

Frank Kortum  (cell 213.393.5512)

PS :  As indicated in the message from counsel for USC, the password for the spreadsheets is usccare.

**From:** Mark Hardiman <mhardiman@nelsonhardiman.com>
**Sent:** Wednesday, May 27, 2020 12:19 PM
**To:** Kortum, Frank (USACAC) <FKortum@usa.doj.gov>
**Cc:** Jonathan Radke <jradke@nelsonhardiman.com>; Mitch.Neumeister@insurance.ca.gov; Mark Hardiman <mhardiman@nelsonhardiman.com>
**Subject:** [Not Virus Scanned] [Not Virus Scanned] USC IONM Investigation

Dear AUSA Kortum:

Thank you for taking our call today.

Enclosed as a settlement communication is USC Care Medical Group, Inc.'s ("USC Care") March 28, 2020 online request for acceptance into the Office of Inspector General's ("OIG") Provider Self-Disclosure Program regarding its federal healthcare program claims for Intraoperative Neurophysiological Monitoring professional physician services. The password for the request exhibits is **usccare.**  OIG denied the request by email on May 15, 2020.

Should you have any questions, please email me at mhardiman@nelsonhardiman.com or text me at 310-721-4571 (mobile).

**Mark Hardiman** | Partner
t 310.203.2721 | f 310.203.2727

1100 Glendon Ave, 14th Floor | Los Angeles, CA 90024
www.nelsonhardiman.com

# Exhibit A-271

**From:**       Sarvenaz Fahimi
**Sent:**       Friday, December 18, 2020 10:30 AM
**To:**         Kortum, Frank (USACAC)
**Cc:**         Justin Berger
**Subject:**    Seal extension

Hi Frank,

We have not received a response from the relator, so you will need to go ahead and file the application and indicate that relator has not responded.

Thanks,

Sarvenaz (Nazy) Fahimi
Attorney
**COTCHETT PITRE & McCARTHY LLP**
A LITIGATION LAW FIRM – SAN FRANCISCO, LOS ANGELES, NEW YORK
840 Malcolm Road, Suite 200 | Burlingame, CA 94010
Tel: (650) 697-6000 | Fax: (650) 697-0577 | Email: sfahimi@cpmlegal.com
CONFIDENTIALITY NOTICE: This email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This email and any documents accompanying this email contain legally privileged and confidential information belonging to the sender.  The information is intended only for the use of the individual or entity named above.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this email communication is strictly prohibited.  If you have received this email in error, please notify us immediately by telephone or email and permanently delete the email, any attachments, and all copies thereof from any networks, drives, cloud, or other storage media and please destroy any printed copies of the email or attachments.  Neither this email nor the contents thereof are intended to nor shall create an attorney-client relationship between Cotchett, Pitre & McCarthy, LLP and the recipient(s), and no such attorney-client relationship shall be created unless established in a separate, written retainer agreement or by court order.

# Exhibit G

**DATE:**    December 20, 2021 (*Delivered Via Electronic Mail*)

**FROM:**    Alice Chang, Esq.

**TO:**    Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal (frank.kortum@usdoj.gov)

        Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Los Angeles County District Attorney's Office (mbeaart@da.lacounty.gov)

        Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
Los Angeles County District Attorney's Office (sgfrankl@da.lacounty.gov)

        John Fisher, Deputy Attorney General, California Department of Justice
Office of the Attorney General, Bureau of Medi-Cal Fraud (John.Fisher@doj.ca.gov)

        Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
Fraud Liaison Bureau (mitch.neumeister@insurance.ca.gov)

**CC:**    Eliot Rushovich, Esq. (eliot@riselawfirm.com)

**RE:**    CV 18-08311-ODW [UNDER SEAL]; U.S. ex rel. IONM LLC and Justin Cheongsiatmoy, M.D., et al. v. USC

---

I write to follow-up on the issues outlined in my December 6, 2021 and December 7, 2021 memoranda wherein I specifically informed all participating government entities in writing that "Dr. Cheongsiatmoy continues to reserve his right to have the Court address on an ex parte basis, any improper use of the seal and any action(s) which may have been taken by any government entity to taint, delay or otherwise prejudice the claims of any current or future parties of interest."

As you know, this above-referenced case is set to unseal in 10 days and the issues outlined in prior communications and again herein remain unresolved. In order to eliminate the necessity for a hearing on such issues -- this morning, Mr. Rushovich and I called each participating government entity to meet and confer individually on issues unique to each of the parties as outlined in this communication.

If all below-requested items are not received by Mr. Rushovich and me by 12PM (noon) on Tuesday, December 21, 2021, Dr. Cheongsiatmoy reserves his right to file an ex parte application thereafter as early as December 21, 2021 to ask the Court to address the issues on an ex parte basis.

To review the procedural history of the exhibits to the complaints containing Dr. Cheongsiatmoy's individual claims:

- **March 2021 (Unredacted Exhibits):** All participating government entities received the unredacted version of nearly all the exhibits contained in the operative Fourth Amended Complaint.
- **May 2021 (SAC):** The Court granted the motion allowing Dr. Cheongsiatmoy to be added as a Plaintiff-Relator with individual claims in the Second Amended Complaint which incorporated by reference the exhibits.
- **June 2021 (TAC):** Every participating government entity stipulated to the filing of the Third Amended Complaint which incorporated by reference the exhibits.
- **September 2021 (4AC):** Every participating government entity stipulated to the filing of the Fourth Amended Complaint which incorporated by reference the exhibits.

On December 6, 2021, AUSA Kortum informed me, for the first time, that the United States disclosed an unredacted copy of the Fourth Amended Complaint to USC on October 27, 2021, 6 weeks prior. The United States made this disclosure to USC despite the following:

(1) When the United States and the State of California were informed on May 14, 2020 that Relator IONM LLC did not consent to a partial seal lift in light of USC's Non-Confidential Voluntary Self-Disclosure made pursuant to OIG's Provider Self-Disclosure Protocol (see attached) wherein USC intentionally omitted all references to the fraud USC committed at Los Angeles County+USC Medical Center (Ex. 89), AUSA Kortum and Mr. Neumeister

Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal
Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
John Fisher, Deputy Attorney General, California Department of Justice
Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
December 20, 2021
Page 2 of 3

responded that they did not need additional information regarding the deficiencies in USC's Non-Confidential
Voluntary Self-Disclosure.

(2) OIG denied USC's Non-Confidential Voluntary Self-Disclosure by email on May 15, 2020 and all participating
    government entities were each obligated as a matter of due diligence to conduct its own investigation for the
    purposes of determining the extent to which violations of the FCA occurred.  31 U.S.C. §3730(a); Cal. Gov. Code
    §12652(a)(1) and Cal. Gov. Code §12652(b)(1).

(3) The United States' representation of its intent to settle "on the merits" of USC's Non-Confidential Voluntary Self-
    Disclosure, is contrary to public policy since USC's disclosure was made in bad faith in "an attempt to circumvent
    [an] ongoing inquiry" to avoid "integrity agreement obligations" at both USC Keck Hospital and Los Angeles
    County+USC Medical Center.

(4) After Dr. Cheongsiatmoy became a Co-Relator in his personal capacity with individual claims on May 5, 2021,
    the Unites States did not obtain consent from Dr. Cheongsiatmoy to disclose his claims to USC.

Instead, Dr. Cheongsiatmoy was only informed for the first time on December 6, 2021, that the United States had used its
discretion granted by the Court to disclose the Complaint and give itself an unfair advantage -- namely a 6 week "head
start" -- to further the United States' written position that settlement negotiations of Dr. Cheongsiatmoy's claims should
occur "subsequent" to the settlement negotiations of the Government's qui tam claims.

Moreover, the State of California's statement that the government owes no duty to Dr. Cheongsiatmoy is contrary to the
Congressional intent of the FCA statutes; Dr. Cheongsiatmoy is the source of the qui tam allegations set forth in the
Complaint and as such, his individual claims are factually intertwined with the government claims; hence, any discussion
of the common set of operative facts inevitably impacts his individual interests.

In response to my December 15, 2021 and December 16, 2021 emails (see attached), the United States emailed me on
December 17, 2021 and informed me for the first time that "the United States hasn't had an opportunity to conduct a
complete review of [Exhibits 45, 63, 64, 65, 66, 67, 68, 69, 70, 71, 76, 77 and 150 which I] requested be disclosed to
counsel for USC."

It has been 9 months since the government received the unredacted versions of nearly all the exhibits to the Complaint; all
participating government entities were statutorily required to diligently investigate Dr. Cheongsiatmoy's allegations,
which as a matter of due diligence, included review of the exhibits incorporated by reference as part of the Complaint.

Nearly all the exhibits to the Second Amended Complaint are the same exhibits to the Third Amended Complaint and
Fourth Amended Complaint. Therefore, as a matter of law under 31 U.S.C. §3730(a); Cal. Gov. Code §12652(a)(1) and
Cal. Gov. Code §12652(b)(1), due diligence by all participating government entities of all the exhibits contained therein
should have been completed prior to the United States' disclosure to USC an unredacted copy of Fourth Amended
Complaint which incorporated by reference the 150 exhibits to the Complaint.

Since the United States already disclosed the Fourth Amended Complaint to USC nearly 2 months ago, Dr.
Cheongsiatmoy objects to the United States' continued abuse of the discretion granted by the Court to delay disclosing to
USC all the exhibits to the Fourth Amended Complaint.  Again, unredacted versions of all the exhibits were provided to
all participating government entities prior to inclusion into any complaint and as such, the government has had 9 months
to investigate the exhibits prior to deeming its investigation complete and disclosing to USC a copy of the Complaint on
October 27, 2021. The United States' use of the seal in this regard continues to further delay resolution of the case and
continues to prejudice Dr. Cheongsiatmoy's ability to resolve his claims.

I respectfully reiterate my request that the United States disclose to Mr. Hardiman (USC counsel) via email all 150
exhibits to the Fourth Amended Complaint and copy counsel for all parties (Bureau Director Beaart, Head Deputy

Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal
Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
John Fisher, Deputy Attorney General, California Department of Justice
Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
December 20, 2021
Page 3 of 3

Frankland, DAG Fisher, Mr. Neumeister, Mr. Rushovich and me), as soon as possible, but in any event, by 12PM on
December 21, 2021.

I further respectfully reiterate my request that the United States provide Mr. Rushovich and me the items set forth below,
as soon as possible, but in any event, by 12PM on December 21, 2021:

- All Memoranda of Points and Authorities in Support of Stipulation Extending Seal and Declaration of Frank D.
  Kortum in Support Thereof filed in this case to confirm the Court was truthfully informed throughout the 3 years
  this case has remained sealed to the public.  This includes but is not limited to my request that the United States
  confirm it truthfully informed the Court there was no consent from Relator for the seal extension per the written
  instructions from Relator's counsel on December 18, 2020 (see Exhibit A-271 reattached here for reference).

I respectfully reiterate my request that the State of California provide Mr. Rushovich and me the items set forth below, as
soon as possible, but in any event, by 12PM on December 21, 2021:

- All true and correct copies of all subpoenas issued by the State of California in this case with documentation of
  any and all changes in parameters. Despite multiple requests, the State of California has continued to refuse to
  disclose any changes in parameters as it relates to any subpoenas. A review of all subpoenas issued in this case --
  and any associated changes in parameters -- is necessary to address the reason USC intentionally omitted any
  references to the fraud committed by USC at the hospitals in its Non-Confidential Voluntary Self-Disclosure
  which incorporates, by reference, a subpoena for files from both USC Keck Hospital and Los Angeles
  County+USC Medical Center (Exhibit 89). USC's Non-Confidential Voluntary Self-Disclosure only contains
  disclosures from USC Care Medical Group (physician group) and does not address any of the substantial fraud
  and compliance failures associated with the hospitals -- USC Keck Hospital and Los Angeles County+USC
  Medical Center.  In light of Dr. Cheongsiatmoy's qui tam allegations, independent investigation by each of the
  participating government entities was required under the FCA statutes. 31 U.S.C. §3730(a); Cal. Gov. Code
  §12652(a)(1) and Cal. Gov. Code §12652(b)(1).

- Detailed logs of all evidence produced by any defendant in this case which the State of California instructed
  deleted and/or replaced from any datasets. This evidence includes but is not limited to the 217 documents
  produced by USC that the State of California instructed Elevate to "remove entirely with no backup" including
  "document native, images, searchable text and all coding related [information]" from Elevate's server, because
  the State of California was "prepar[ing] to move this matter to co-counsel [non-government entity]." The State of
  California made the request to delete evidence just 4 days before AUSA Kortum disclosed to USC counsel the
  complaint to settle on the basis of USC's Non-Confidential Voluntary Self-Disclosure (Ex.89) which again, was
  made in bad faith in "an attempt to circumvent [an] ongoing inquiry" to avoid "integrity agreement obligations" at
  both USC Keck Hospital and Los Angeles County+USC Medical Center.

I respectfully reiterate my request that Los Angeles County provide Mr. Rushovich and me the items set forth below, as
soon as possible, but in any event, by 12PM on December 21, 2021:

- All true and correct copies of all document preservation orders issued by Los Angeles County after Dr.
  Cheongsiatmoy reported directly to senior management at Los Angeles County+USC Medical Center in February
  2018 that its standing protocols were causing false claims, crimes and serious patient harm from services not
  rendered by USC Surgeons and USC Neurologists. This includes but is not limited to all OR LOGs (verified
  operating room records which contain legers of all entries and exits to and from the Los Angeles County+USC
  Medical Center operating rooms during all surgeries) and all Provider Time Studies for all USC contractors
  (physicians and technologists/neurophysiologists) pursuant to the MSOA/MSAA/PSA agreements. Los Angeles
  County+USC Medical Center is the hospital wholly owned and operated by participating government entity, Los
  Angeles County, and the location where USC technologists/neurophysiologists caused hundreds of millions of
  dollars of false claims violations. See Exhibit 150 to the operative Fourth Amended Complaint.

From: **Alice Chang JDMBA** <alicechangjdmba@gmail.com>
Date: Thu, Dec 16, 2021 at 6:46 PM
Subject: Re: U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW (I've only received 3 of the 13 emails you've attempted to send)
To: Kortum, Frank (USACAC) <Frank.Kortum@usdoj.gov>, John Fisher <John.Fisher@doj.ca.gov>, Steven Frankland <sgfrankl@da.lacounty.gov>, Marc Beaart <mbeaart@da.lacounty.gov>, Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>
Cc: Eliot Rushovich <eliot@riselawfirm.com>

AUSA Kortum,

In the interest of expediting the United States' disclosure of select exhibits to USC for a discussion I would like to have with Mr. Hardiman and counsel for Los Angeles County -- per my December 15, 2021 email below, I requested that Bureau Director Beaart, Head Deputy Frankland, Mr. Rushovich and I be copied on the United States' disclosure of Exhibits 45, 63, 64, 65, 66, 67, 68, 69, 70, 71, 76, 77 and 150 to Mr. Hardiman.

The above-referenced exhibits were contained in the 3 "re-forwarded for reference" emails you confirmed you received today.  In response to your email below that you "expect that counsel for the State of California and the County of Los Angeles will need to weigh in at some point during the process," I sent all participating government entities the 3 emails below requesting that any objections by any participating government entity be made to my attention by 5PM tomorrow.

If I am not informed of any objections to the United States' disclosure of Exhibits 45, 63, 64, 65, 66, 67, 68, 69, 70, 71, 76, 77 and 150, then I expect the United States will disclose these exhibits to Mr. Hardiman by end of day tomorrow (copying Bureau Director Beaart, Head Deputy Frankland, Mr. Rushovich and me) as I would like to schedule a meeting with Mr. Hardiman and counsel for Los Angeles County to discuss the above-referenced exhibits early next week.  I will also invite you and counsel for the State of California (DAG Fisher and Mr. Neumeister) to the meeting.

All participating government entities were served all 150 exhibits to the Fourth Amended Complaint on September 7, 2021.

Thanks,
Alice Chang

From: Alice Chang JDMBA <alicechangjdmba@gmail.com>
Date: Thu, Dec 16, 2021 at 3:34 PM
Subject: Fwd: [UNDER SEAL] CV 18-08311-ODW(AS) – Email #13 of 13 (4AC Exhibit 150); Notice of Lodging of Non-Paper Exhibit (Audio-Video) **(re-forwarded for reference)**
To: Kortum, Frank (USACAC) <frank.kortum@usdoj.gov>, Marc Beaart <mbeaart@da.lacounty.gov>, Steven Frankland <sgfrankl@da.lacounty.gov>, John Fisher <John.Fisher@doj.ca.gov>, Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>

Cc: Eliot Rushovich <eliot@riselawfirm.com>

**AUSA Kortum,**

In response to your December 16, 2021 email, I am re-forwarding service copies of Exhibit 150 as part of this email.

Your response below notes that you expect the State of California and County of Los Angeles to weigh in on whether the United States' decision to disclose the above-referenced exhibit is appropriate.  However, I note for the record that the United States did not extend Dr. Cheongsiatmoy the same courtesy prior to the United States' disclosure of the Fourth Amended Complaint (without exhibits) to USC on October 27, 2021 at 5PM -- just 2 days after I requested to meet and confer with each participating government entity and just hours after Mr. Rushovich and I called each participating government entity to follow-up and received no response.

**Bureau Director Beaart, Head Deputy Frankland, DAG Fisher, and Mr. Neumeister,**

If you have any objections to the United States' disclosure of the above-referenced exhibit to USC, please reply all with the basis for your objection by Friday, December 17, 2021 at 5PM.

Delaying disclosure of exhibits supporting Dr. Cheongsiatmoy's allegations in the Fourth Amended Complaint will delay resolution of the case.

Thanks,
Alice Chang

From: Alice Chang JDMBA <alicechangjdmba@gmail.com>
Date: Thu, Dec 16, 2021 at 3:33 PM
Subject: Fwd: [UNDER SEAL] CV 18-08311-ODW(AS) – Email #8 of 13 (4AC Exhibits 55-89) **(re-forwarded for reference)**
To: Kortum, Frank (USACAC) <frank.kortum@usdoj.gov>, Marc Beaart <mbeaart@da.lacounty.gov>, Steven Frankland <sgfrankl@da.lacounty.gov>, John Fisher <John.Fisher@doj.ca.gov>, Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>

Cc: Eliot Rushovich <eliot@riselawfirm.com>

**AUSA Kortum,**

In response to your December 16, 2021 email, I am re-forwarding service copies of Exhibits 63, 64, 65, 66, 67, 68, 69, 70, 71, 76, 77 as part of this email.

Your response below notes that you expect the State of California and County of Los Angeles to weigh in on whether the United States' decision to disclose the above-referenced exhibits is appropriate.  However, I note for the record that the United States did not extend Dr. Cheongsiatmoy the same courtesy prior to the United States' disclosure of the Fourth Amended Complaint (without exhibits) to USC on October 27, 2021 at 5PM -- just 2 days after I requested to meet and confer with each participating government entity and just hours after Mr. Rushovich and I called each participating government entity to follow-up and received no response.

**Bureau Director Beaart, Head Deputy Frankland, DAG Fisher, and Mr. Neumeister,**

If you have any objections to the United States' disclosure of the above-referenced exhibits to USC, please reply all with the basis for your objection by Friday, December 17, 2021 at 5PM.

Delaying disclosure of exhibits supporting Dr. Cheongsiatmoy's allegations in the Fourth Amended Complaint will delay resolution of the case.

Thanks,
Alice Chang

From: Alice Chang JDMBA <alicechangjdmba@gmail.com>
Date: Thu, Dec 16, 2021 at 3:32 PM
Subject: Fwd: [UNDER SEAL] CV 18-08311-ODW(AS) – Email #5 of 13 (4AC Exhibits 43-48) **(re-forwarded for reference)**
To: Kortum, Frank (USACAC) <frank.kortum@usdoj.gov>, Marc Beaart <mbeaart@da.lacounty.gov>, Steven Frankland <sgfrankl@da.lacounty.gov>, John Fisher <John.Fisher@doj.ca.gov>, Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>

Cc: Eliot Rushovich <eliot@riselawfirm.com>

**AUSA Kortum,**

In response to your December 16, 2021 email, I am re-forwarding service copies of Exhibit 45 as part of this email.

Your response below notes that you expect the State of California and County of Los Angeles to weigh in on whether the United States' decision to disclose the above-referenced exhibit is appropriate.  However, I note for the record that the United States did not extend Dr. Cheongsiatmoy the same courtesy prior to the United States' disclosure of the Fourth Amended Complaint (without exhibits) to USC on October 27, 2021 at 5PM -- just 2 days after I requested to meet and confer with each participating government entity and just hours after Mr. Rushovich and I called each participating government entity to follow-up and received no response.

**Bureau Director Beaart, Head Deputy Frankland, DAG Fisher, and Mr. Neumeister,**

If you have any objections to the United States' disclosure of the above-referenced exhibit to USC, please reply all with the basis for your objection by Friday, December 17, 2021 at 5PM.

Delaying disclosure of exhibits supporting Dr. Cheongsiatmoy's allegations in the Fourth Amended Complaint will delay resolution of the case.

Thanks,
Alice Chang


**From:** Kortum, Frank (USACAC)
**Sent:** Thursday, December 16, 2021 1:52 PM
**To:** Alice Chang JDMBA <alicechangjdmba@gmail.com>; John Fisher <John.Fisher@doj.ca.gov>; Steven Frankland <sgfrankl@da.lacounty.gov>; Marc Beaart <mbeaart@da.lacounty.gov>; Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>
**Cc:** Eliot Rushovich <eliot@riselawfirm.com>
**Subject:** Re: U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW (responding to 12/15 message)

Ms. Chang,

In response to your 12/15 request for disclosure to counsel for USC of exhibits to the complaint, we'll need to assemble and review those exhibits in order to make sure that disclosure is appropriate; I'd also expect that counsel for the State of California and the County of Los Angeles will need to weigh in at some point during the process.   Because of the upcoming holidays the time available for completing the tasks of assembly and review is limited; if you'd like to expedite the process please send the exhibits directly to me (with copies to counsel copied on this message) so that they can then be reviewed.  If you have any questions regarding this message please contact me by e-mail.

Frank Kortum (cell 213.393.5512)

**From:** Alice Chang JDMBA <alicechangjdmba@gmail.com>
**Sent:** Wednesday, December 15, 2021 2:35 PM
**To:** John Fisher <John.Fisher@doj.ca.gov>; Kortum, Frank (USACAC) <FKortum@usa.doj.gov>; Steven Frankland <sgfrankl@da.lacounty.gov>; Marc Beaart <mbeaart@da.lacounty.gov>; Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>
**Cc:** Eliot Rushovich <eliot@riselawfirm.com>
**Subject:**  Re: U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW

AUSA Kortum,

I am following up on our call last week when you informed me, for the first time, on December 6, 2021 that the United States disclosed to USC counsel, for the first time, the Fourth Amended Complaint at 5PM on October, 27, 2021.  You confirmed that the United States did not disclose the Second Amended Complaint (SAC) or Third Amended Complaint (TAC) to USC counsel and you further confirmed that the United States has not disclosed to USC counsel any of the exhibits from the Fourth Amended Complaint (4AC).

Per the Court's Order Partially Lifting Seal, the United States is the only party permitted to disclose to Defendant USC "any of the allegations of the Complaint" which includes the exhibits.

I would like to have the opportunity to speak with USC counsel about Dr. Cheongsiatmoy's allegations and USC's written position on February 25, 2021 wherein USC counsel wrote: "As part of our audit and investigation, we have found no evidence that USC falsely certified to LA County on a claim using CPT Code 95940, or that USC submitted any claim to the county." See Exhibit A-268 reattached for reference.

To allow the opportunity to have substantive discussions with USC counsel regarding Dr. Cheongsiatmoy's allegations as it relates to false claims from services not rendered by USC surgeons and USC neurologists at Los Angeles County+USC Medical Center, please send an email to Mr. Hardiman disclosing Exhibits 45, 63, 64, 65, 66, 67, 68, 69, 70, 71, 76, 77 and 150.  When you email the above-referenced exhibits to Mr. Hardiman, please copy counsel for Los Angeles County (Bureau Director Beaart and Head Deputy Frankland), Mr. Rushovich, and me.

Thanks,
Alice Chang, JD/MBA

# Exhibit A-268

**From:** Jonathan Radke <jradke@nelsonhardiman.com>
**Sent:** Thursday, February 25, 2021 12:50 PM
**To:** Kortum, Frank (USACAC) <FKortum@usa.doj.gov>
**Cc:** Mark Hardiman <mhardiman@nelsonhardiman.com>
**Subject:** USC IONM Investigation

Hi Frank,

In anticipation of our meeting, could you provide us with a copy of Exhibit 4 to the Complaint?  As part of our audit and investigation, we have found no evidence that USC falsely certified to LA County on a claim using CPT Code 95940, or that USC submitted any claim to the county.  Since the Complaint identifies USC billing records relating to services performed at LAC+USC, we would like to see these records to determine if we need to do any follow up investigation.

Best,

Jonathan

**Jonathan Radke** | Partner
T 310.203.2802 | F 310.203.2727
jradke@nelsonhardiman.com


1100 Glendon Ave, 14th Floor | Los Angeles, CA 90024
www.nelsonhardiman.com

This message contains information that may be confidential and privileged. Unless you are the addressee (or authorized to receive e-mails for the addressee), you may not use, copy, or disclose to anyone this message or any information contained in this message. If you have received this message in error, please advise the sender by reply e-mail to jradke@nelsonhardiman.com and delete the message. Thank you.

# Exhibit A-271

**From:**    Sarvenaz Fahimi
**Sent:**    Friday, December 18, 2020 10:30 AM
**To:**      Kortum, Frank (USACAC)
**Cc:**      Justin Berger
**Subject:** Seal extension

Hi Frank,

We have not received a response from the relator, so you will need to go ahead and file the application and indicate that relator has not responded.

Thanks,

Sarvenaz (Nazy) Fahimi
Attorney
**COTCHETT PITRE & McCARTHY LLP**
A LITIGATION LAW FIRM – SAN FRANCISCO, LOS ANGELES, NEW YORK
840 Malcolm Road, Suite 200 | Burlingame, CA 94010
Tel: (650) 697-6000 | Fax: (650) 697-0577 | Email: sfahimi@cpmlegal.com
CONFIDENTIALITY NOTICE:  This email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521.  This email and any documents accompanying this email contain legally privileged and confidential information belonging to the sender.   The information is intended only for the use of the individual or entity named above.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this email communication is strictly prohibited.  If you have received this email in error, please notify us immediately by telephone or email and permanently delete the email, any attachments, and all copies thereof from any networks, drives, cloud, or other storage media and please destroy any printed copies of the email or attachments.  Neither this email nor the contents thereof are intended to nor shall create an attorney-client relationship between Cotchett, Pitre & McCarthy, LLP and the recipient(s), and no such attorney-client relationship shall be created unless established in a separate, written retainer agreement or by court order.

# UPDATED

# OIG's Provider Self-Disclosure Protocol

Note: This notice, issued on April 17, 2013, updates the Provider Self-Disclosure Protocol.



**U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES**
**OFFICE OF INSPECTOR GENERAL**

# Updated OIG's Provider Self-Disclosure Protocol

**SUMMARY:**   This notice, issued on April 17, 2013, updates the Provider Self-Disclosure Protocol.

**FOR FURTHER INFORMATION CONTACT:**   Patrice S. Drew, Department of Health and Human Services, Office of Inspector General, Congressional and Regulatory Affairs, at (202) 619-1368.

## I.   Background

In 1998, the Office of Inspector General (OIG) of the United States Department of Health and Human Services (HHS) published the Provider Self-Disclosure Protocol (the SDP) at 63 Fed Reg. 58399 (October 30, 1998) to establish a process for health care providers to voluntarily identify, disclose, and resolve instances of potential fraud involving the Federal health care programs (as defined in section 1128B(f) of the Social Security Act (the Act), 42 U.S.C. 1320a–7b(f)).  The SDP provides guidance on how to investigate this conduct, quantify damages, and report the conduct to OIG to resolve the provider's liability under OIG's civil monetary penalty (CMP) authorities.  Over the past 15 years, we have resolved over 800 disclosures, resulting in recoveries of more than $280 million to the Federal health care programs.

Since the original publication, we identified areas where additional guidance would be beneficial to the health care community and would improve the efficient resolution of SDP matters.  To that end, we issued three Open Letters to Health Care Providers in 2006, 2008, and 2009.  Since the last Open Letter, we continued to evaluate our SDP process.  We also solicited comments about the SDP on June 18, 2012, and we received numerous helpful comments from the public.  On the basis of our experience and the comments we received, we have decided to revise the SDP in its entirety at this time.  This revised SDP supersedes and replaces the 1998 *Federal Register* Notice and the Open Letters, as described below.

### A.   Why Disclosure Is Important

For many years, OIG has emphasized the importance of dealing with the Federal health care programs with integrity.  All members of the health care industry have a legal and ethical duty to do so.  This duty includes an obligation to take measures to detect and prevent fraudulent and abusive activities, including implementing specific procedures and mechanisms to investigate and resolve instances of potential fraud involving the Federal health care programs.  Whether as a result of voluntary self-assessment or in response to external forces, participants in the health care industry must be prepared

to investigate such instances, assess the potential losses suffered by the Federal health care programs, and make full disclosure to the appropriate authorities.

## B.    Benefits of Disclosure

We recognize that whether to disclose potential fraud to OIG is a significant decision. However, there are significant benefits to disclosing potential fraud to OIG that should make that decision easier.

First, we believe that good faith disclosure of potential fraud and cooperation with OIG's review and resolution process are typically indications of a robust and effective compliance program.  As a result, we have instituted a presumption against requiring integrity agreement obligations in exchange for a release of OIG's permissive exclusion authorities in resolving an SDP matter.  Since 2008, we have resolved 235 SDP cases through settlements.  In all but one of these cases, we have released the disclosing parties from permissive exclusion without requiring any integrity measures.

Second, we believe that individuals or entities that use the SDP and cooperate with OIG during the SDP process deserve to pay a lower multiplier on single damages than would normally be required in resolving a Government-initiated investigation.  The specific multiplier that we accept may vary depending on the facts of each case.  OIG's general practice in CMP settlements of SDP matters is to require a minimum multiplier of 1.5 times the single damages, although we determine in each individual case whether a higher multiplier may be warranted.

Third, we believe that using the SDP may mitigate potential exposure under section 1128J(d) of the Act, 42 U.S.C. 1320a-7k(d).  Section 1128J(d)(2) of the Act requires that a Medicare or Medicaid overpayment be reported and returned by the later of (1) the date that is 60 days after the date on which the overpayment was identified or (2) the date any corresponding cost report is due, if applicable.  Any overpayment retained by a "person," as defined in section 1128J(d)(4)(C) of the Act after this deadline may create liability under the Civil Monetary Penalties Law (CMPL), section 1128A of the Act, and the False Claims Act (FCA), 31 U.S.C. 3729.  In its Notice of Proposed Rulemaking, 77 Fed. Reg. 9179-9187 (February 16, 2012), the Centers for Medicare & Medicaid Services (CMS) proposes to suspend the obligation to report overpayments under section 1128J(d) of the Act when OIG acknowledges receipt of a submission to the SDP so long as the submission is timely made.  CMS also proposes to suspend the obligation to return overpayments until a settlement agreement is entered into, or the provider or supplier withdraws or is removed from the SDP.  As necessary, we will provide additional guidance on OIG's web site concerning section 1128J of the Act and the SDP after CMS issues its final rule.

Finally, we commit to working with individuals and entities that use the SDP in good faith and cooperate with OIG's review and resolution process.  OIG created the SDP to provide a specific and detailed process that can be relied upon by all participants in the

2

health care industry as one that OIG will consistently follow.  As part of this
commitment, we streamlined our internal process to reduce the average time a case is
pending with OIG to less than 12 months from acceptance into the SDP.  To further
facilitate timely resolutions of SDP matters, we are changing the timeframe to submit
the findings of the completed internal investigation and damages calculation from 90
days from acceptance into the SDP to 90 days from the date of the initial submission.

## II.    Eligibility Criteria and Guidance

This section explains the eligibility criteria for the SDP, including who may use the SDP
and what conduct is and is not eligible for acceptance into the SDP.

### A.    Who May Use the SDP

All health care providers, suppliers, or other individuals or entities who are subject to
OIG's CMP authorities found at 42 C.F.R. Part 1003 are eligible to use the SDP.  The
SDP is not limited to any particular industry, medical specialty, or type of service.  For
example, a pharmaceutical or medical device manufacturer may use the SDP to disclose
potential violations of the Federal anti-kickback statute (AKS), section 1128B(b) of the
Act, because such violations trigger CMP liability under section 1128A(a)(7) of the Act,
a provision of the CMPL.  For purposes of the SDP, we refer to all individuals or entities
that make a submission to the SDP as "disclosing parties." The disclosing party should
disclose conduct for which it may be liable, including potential successor liability based
on its purchase of another entity.  For example, a disclosing party could have liabilities
as the result of a merger or an acquisition.  However, disclosing parties should not use
the SDP to disclose conduct of another, unrelated party.  OIG's hotline should be used
to report potential misconduct of other parties (1-800-OIG-TIPS or
https://oig.hhs.gov/fraud/report-fraud/index.asp).

Disclosing parties already subject to a Government inquiry (including investigations,
audits, or other oversight activities) are not automatically precluded from using the
SDP.  The disclosure, however, must be made in good faith and must not be an attempt
to circumvent any ongoing inquiry.  Disclosing parties under Corporate Integrity
Agreements (CIA) with OIG may also use the SDP in addition to making any reports
required in the CIA.

### B.    Conduct Eligible for the SDP

The SDP is available to facilitate the resolution of matters that, in the disclosing party's
reasonable assessment, potentially violate Federal criminal, civil, or administrative laws
for which CMPs are authorized.  In making a disclosure, a disclosing party must
acknowledge that the conduct is a potential violation.  Disclosing parties must explicitly
identify the laws that were potentially violated and should not refer broadly to, for
example, "Federal laws, rules, and regulations" or "the Social Security Act."  OIG has

found that disclosing parties who avoid acknowledging that there is a potential violation are more likely to have unclear or incomplete submissions or unrealistic expectations about resolutions, which result in a lengthier review and resolution process.  In addition, statements such as "the Government may think there is a violation, but we disagree" raise questions about whether the matter is appropriate for the SDP.  The resulting back-and-forth over these issues can create unnecessary delays in reaching a resolution and may result in the disclosing party's removal from the SDP.

## C.      Conduct Ineligible for the SDP

First, the SDP is not available for a matter that does not involve potential violations of Federal criminal, civil, or administrative law for which CMPs are authorized, such as one exclusively involving overpayments or errors.  In this situation, the matter should be disclosed directly to the appropriate CMS or other responsible contractor under the payor's voluntary refund process.

Second, the SDP is not available to request an opinion from OIG regarding whether an actual or potential violation has occurred.  For example, a disclosure that broadly describes a business arrangement and requests a determination from OIG regarding whether the arrangement violates the AKS is not appropriate for the SDP.  The Advisory Opinion process is the only vehicle to obtain an OIG opinion, as described at https://oig.hhs.gov/compliance/advisory-opinions/index.asp.

Third, the SDP is not available for disclosure of an arrangement that involves only liability under the physician self-referral law, section 1877 of the Act (the Stark Law), without accompanying potential liability under the AKS for the same arrangement. Disclosing parties must analyze each arrangement involving a physician to determine whether it raises potential liability under the AKS, the Stark Law, or both laws.  Stark-only conduct should be disclosed to CMS through its Self-Referral Disclosure Protocol (SRDP), which can be found at:  http://www.cms.gov/PhysicianSelfReferral/.  OIG reserves the right to determine whether an arrangement is appropriate for resolution in the SDP.

## D.          Tolling the Statute of Limitations

As described above, one of the benefits of disclosure is that CMS has proposed that the time for repayment of an identified overpayment under section 1128J(d) of the Act will be tolled for the disclosing party.  To preserve the rights of the parties while the matter is being resolved through the SDP, OIG expects disclosing parties to disclose with a good faith willingness to resolve all liability within the CMPL's six year statute of limitations as described in section 1128A(c)(1) of the Act.  Accordingly, the disclosing party agrees, as a condition precedent to the OIG's acceptance into the SDP, to waive and not to plead statute of limitations, laches, or any similar defenses to any administrative action filed by OIG relating to the disclosed conduct, except to the extent

4

that such defenses would have been available to the disclosing party had an
administrative action been filed on the date of submission.

### E.        Corrective Action

Prior to disclosure, the disclosing party should ensure that the conduct has ended or, at
least, in the case of an improper kickback arrangement, that corrective action will be
taken and the improper arrangement will be terminated within 90 days of submission to
the SDP.  Additionally, all other necessary corrective action should be complete and
effective at the time of disclosure.

## III.        Submission Content

To be considered for admission into the SDP, the disclosing party must include the
following information in its submission:

### A.        Requirements for All Disclosures

The disclosing party is expected to conduct an internal investigation and report its
findings to OIG in its submission.  If the disclosing party is unable to complete its
internal investigation before sending its submission, the disclosing party must certify in
its submission that it will complete the internal investigation within 90 days of the date
of its initial submission.

Disclosures may be submitted through OIG's Web site at
https://oig.hhs.gov/compliance/self-disclosure-info/index.asp.   Disclosures may also
be submitted by mail to the Chief of the Administrative and Civil Remedies Branch,
Office of Counsel to the Inspector General, Office of Inspector General, Department of
Health and Human Services, 330 Independence Avenue, SW, Cohen Building, Room
5527, Washington, DC 20201.  Submissions by facsimile or other means will not be
accepted.  The narrative submission must include:

1.    The name, address, type of health care provider, provider identification
      number(s), and tax identification number(s) of the disclosing party and
      the Government payors (including Medicare contractors) to which the
      disclosing party submits claims or a statement that the disclosing party
      does not submit claims.

2.    If the disclosing party is an entity that is owned or controlled by or is
      otherwise part of a system or network, an organizational chart, a
      description or diagram describing the pertinent relationships; the names
      and addresses of any related entities; and any affected corporate
      divisions, departments, or branches.

3. The name, street address, phone number, and email address of the disclosing party's designated representative for purposes of the voluntary disclosure.

4. A concise statement of all details relevant to the conduct disclosed, including, at minimum, the types of claims, transactions, or other conduct giving rise to the matter; the period during which the conduct occurred; and the names of entities and individuals believed to be implicated, including an explanation of their roles in the matter.

5. A statement of the Federal criminal, civil, or administrative laws that are potentially violated by the disclosed conduct.

6. The Federal health care programs affected by the disclosed conduct.

7. An estimate of the damages, as described in the applicable section below, to each Federal health care program relevant to the disclosed conduct, or a certification that the estimate will be completed and submitted to OIG within 90 days of the date of submission.  When a disclosing party can determine the amount of actual damages to Federal health care programs, the actual damages amount must be provided instead of an estimate.

8. A description of the disclosing party's corrective action upon discovery of the conduct.

9. A statement of whether the disclosing party has knowledge that the matter is under current inquiry by a Government agency or contractor.  If the disclosing party has knowledge of a pending inquiry, it must identify any involved Government entity and its individual representatives.  The disclosing party must also disclose whether it is under investigation or other inquiry for any other matters relating to a Federal health care program and provide similar information relating to those other matters.

10. The name of an individual authorized to enter into a settlement agreement on behalf of the disclosing party.

11. A certification by the disclosing party, or, in the case of an entity, an authorized representative on behalf of the disclosing party, stating that to the best of the individual's knowledge, the submission contains truthful information and is based on a good faith effort to bring the matter to the Government's attention for the purpose of resolving potential liability to the Government and to assist OIG in its resolution of the disclosed matter.

## B.      Requirements for Conduct Involving False Billing

When a disclosure involves the submission of improper claims to Federal health care programs, the disclosing party must conduct a review to estimate the improper amount paid by the Federal health care programs (referred to as "damages") and prepare a report of its findings that follows the requirements in this section.  OIG will verify a disclosing party's calculation of damages.

The disclosing party's estimation of damages must consist of a review of either:  (1) all the claims affected by the disclosed matter or (2) a statistically valid random sample of the claims that can be projected to the population of claims affected by the matter.  A disclosing party may not extend the time to resubmit claims to Federal health care programs through the SDP; therefore, the damages estimation must not include a reduction, or "netting" for any underpayments discovered in the review.

When using a sample to estimate damages, the disclosing party must use a sample of at least 100 items and use the mean point estimate to calculate damages.  If a probe sample was used, those claims may be included in the 100-item sample if statistically appropriate.  To avoid unreasonably large sample sizes, the SDP does not require a minimum precision level for the review of claims.  As a result, the disclosing party may select an appropriate sample size to estimate damages as long as the sample size is at least 100 items.  As a general rule, smaller sample sizes (closer to 100) will suffice where the population has a high level of homogeneity, and larger sample sizes will be necessary where the population contains a more diverse mixture of claim types.  The disclosing party should keep in mind that a careful and complete definition of the population will assist in making accurate findings.

The disclosing party's report must include, at a minimum, the following information:

1.      Review Objective:  A statement clearly articulating the objective of the review.

2.      Population:  A description of the group of claims about which information is needed, an explanation of the methodology used to develop the population, and the basis for this determination.

3.      Sources of Data:  A full description of the source of the data reviewed and the information upon which the review was based, including the sources of payment data, and the documents that were relied upon.

4.      Personnel Qualifications:  The names and titles of the individuals who conducted the review.  The review should be conducted by qualified individuals, e.g., statisticians, accountants, auditors,

consultants, and medical reviewers, and the review report should describe their qualifications.

5.  Characteristics Measured:  The review report should identify the characteristics used for testing each item. For example, in a review designed to estimate the value of overpayments due to duplicate payments, the characteristics used are those that must exist for an item to be a duplicate.  The amount of the duplicate payment is the measurement of the overpayment. The report must also explain the method for determining whether an item entirely or partially meets the criterion for having the characteristics measured.

If the financial review was based upon a sample, the review report must also include the Sampling Plan that was followed.  At a minimum, this includes:

1.  Sampling Unit: Any of the designated elements that constitute the population of interest.

2.  Sampling Frame: The totality of the sampling units from which the sample was selected and the way in which the audit population differs from the sampling frame (and the effect this difference has on conclusions reached as a result of the audit).

3.  Sample Size: The size of the sample reviewed to reach the estimate of the damages.  The sample size must be at least 100 claims.

4.  Source of Random Numbers: The sample must be selected through random numbers.  The source of the random numbers used must be shown in the report. We strongly recommend the use of OIG's Statistical Sampling Software, also known as ''RAT-STATS,'' which is currently available free of charge at https://oig.hhs.gov/compliance/rat-stats/index.asp.

5.  Method of Selecting Sampling Units: The method for selecting the sample units.

6.  Sample Design: Unless the disclosing party demonstrates the need to use a different sample design, the review should use simple random sampling. If necessary, the disclosing party may use stratified or multistage sampling.  Details about the strata, stages, and clusters should be included in the review report.

7.  Missing Sample Items and Other Evidence: If the review was based on a sample, missing sample items should be treated as errors, pursuant to Federal health care program rules requiring the retention of supporting information for submitted claims.  Missing sample items should be noted

8

in the report.  The report must also describe any evidence, other than the
sample results, that was considered in arriving at the review results.

8. <u>Estimation Methodology</u>: If the review was based on a sample, because
the general purpose of the review is to estimate the monetary losses to
the Federal health care programs, the methodology to be used must be
variables sampling (treating each individual item in the population as a
sampling unit) using the difference estimator (estimates of the total errors
in the population are made from the sample differences by multiplying the
average audited difference by the number of units in the population).

## C.     Requirements for Conduct Involving Excluded Persons

Many SDP submissions disclose the employment of, or contracting with, individuals who
appear on OIG's List of Excluded Individuals and Entities (LEIE) (available online at
https://exclusions.oig.hhs.gov ).  We are providing additional guidance here to help
disclosing parties gather the necessary information for a complete disclosure.

<u>Specific Information</u>

In addition to providing the general information required by section III.A, the disclosure
must provide the following information:

1. The identity of the excluded individual and any provider identification
number.

2. The job duties performed by that individual.

3. The dates of the individual's employment or contractual relationship.

4. A description of any background checks that the disclosing party
completed before and/or during the individual's employment or contract.

5. A description of the disclosing party's screening process (including any
policy or procedure that was in place) and any flaw or breakdown in that
process that led to the hiring or contracting with the excluded individual.

6. A description of how the conduct was discovered.

7. A description of any corrective action (including a copy of any revised
policy or procedure) implemented to prevent future hiring of excluded
individuals.

In addition, before disclosing the employment of an excluded individual, a disclosing
party must screen all current employees and contractors against the LEIE.  Once this
has been done, the disclosing party should disclose all excluded persons in one
submission.

## Calculating Damages

Federal health care programs may not pay, directly or indirectly, for items or services
furnished, ordered, or prescribed by excluded individuals or entities.  If a disclosing
party employed or contracted with an excluded person who was a direct provider, such
as a physician or a pharmacist, and the items or services furnished, ordered, or
prescribed by that person were separately billed to Federal health care programs, the
disclosure must include the total amounts claimed and paid by the Federal health care
programs for those items or services.

We understand that when an excluded individual provided items or services that are not
billed separately to Federal health care programs, such as many items or services
furnished by nurses, respiratory therapists, and billing and other administrative
personnel, the damages amounts can be difficult to quantify.  For purposes of resolving
SDP matters involving such non-separately-billable items or services, we use the
disclosing party's total costs of employment or contracting during the exclusion to
estimate the value of the items and services provided by that excluded individual.  The
costs of employment or contracting include, but are not limited to, all salary and
benefits and other money or items of value, health insurance, life insurance, disability
insurance, and employer taxes paid related to employment of the individual (e.g.,
employer's share of FICA and Medicare taxes).  This total amount should be multiplied
by the disclosing party's revenue-based Federal health care program payor mix for the
relevant time period.  (If a disclosing party can measure the Federal payor mix for the
department or unit in which the excluded person worked, it is appropriate to apply that
payor mix.  If the departmental payor mix cannot reasonably be measured, the
disclosing party must apply the payor mix for the whole entity.)  The resulting amount
will be used, for purposes of compromising OIG's CMP authorities in a settlement, as a
proxy for the amount paid and the single damages to the Federal health care programs
resulting from the employment of the excluded individual.  When the disclosing party is
using a Federal payor mix, the disclosure must include a separate calculation for each
Federal health care program.  For example, if the disclosing party's Federal payor mix is
60 percent, the disclosure should break down how the Federal health care programs
make up that 60 percent, such as 40 percent Medicare, 10 percent Medicaid State A, 5
percent Medicaid State B, and 5 percent TRICARE.

### D.     Requirements for Conduct Involving the Anti-Kickback
Statute and Physician Self-Referral Law

Another large category of SDP submissions relates to potential violations of the AKS
(including conduct that violates both the AKS and the Stark Law).  This section provides
further guidance to help disclosing parties gather the necessary information for
complete disclosure.

## Specific Information

In this section, we provide additional guidance on submitting the information described in section III.A.  Any disclosure must clearly acknowledge that in the disclosing party's reasonable assessment of the information available at the time of the disclosure, the subject arrangement(s) constitute potential violations of the AKS and, if applicable, the Stark Law.  In the past, some disclosing parties have failed to include this acknowledgment in their submissions to the SDP while others have phrased their acknowledgments as suggestions that OIG could view the disclosed conduct as potential violations.  OIG will not accept any disclosing party into the SDP that fails to acknowledge clearly that the disclosed arrangement constitutes a potential violation of the AKS and, if applicable, the Stark Law.

As with other self-disclosed conduct, OIG needs to understand the precise nature of the disclosed conduct that creates potential AKS liability or both AKS and Stark Law liability.  Therefore, the disclosing party must include in its narrative submission (not by reference to attachments or other documents) a concise statement of all details directly relevant to the disclosed conduct and a specific analysis of why each disclosed arrangement potentially violates the AKS and Stark Laws.  The description should include the participants' identities, their relationship to one another to the extent that the relationship affects their potential liability (e.g., hospital-landlord, referring physician-tenant); the payment arrangements; and the dates during which each suspect arrangement occurred.  Further, the disclosure should explain the relevant context and the features of the arrangement that raise potential AKS or both AKS and Stark Law liability.

Below are several examples of the type of information OIG finds helpful in assessing and resolving disclosed conduct involving potential AKS and, if applicable,  Stark Law violations.  These illustrations are by no means comprehensive or exclusive; rather, they reflect some common issues that have arisen in SDP submissions.   For example:

1.   How fair market value was determined and why it is now in question.

2.   Why required payments from referral sources, under leases or other contracts, were not timely made or collected or did not conform to the negotiated agreement and how long such lapses existed.

3.   Why the arrangement was arguably not commercially reasonable (e.g., lacked a reasonable business purpose).

4.   Whether payments were made for services not performed or documented and, if so, why.

5.   Whether referring physicians received payments from Designated Health Service entities that varied with, or took into account, the volume or value

11

of referrals without complying with a Stark Law exception. Finally, the submission must describe the corrective action taken to remedy the suspect arrangement(s), as well as any safeguards implemented by the disclosing party to prevent the conduct from reoccurring.

## Calculating Damages

AKS compliance is a condition of payment of the Federal health care programs. Under section 1128B(g) of the Act, claims that include items or services resulting from an AKS violation constitute false or fraudulent claims for purposes of the FCA. Stark Law compliance is also a condition of payment under section 1877 of the Act. Thus, a disclosing party must submit an estimate of the amount paid by Federal health care programs for the items or services associated with potential violations of the AKS and, if applicable, the Stark Law. A disclosing party may use the methodology in section III.B to calculate the estimate. Alternatively, a disclosing party may identify another reliable methodology to calculate this claims-based estimate and explain that methodology in its submission.

Consistent with OIG's CMPL authorities, a disclosing party must include the total amount of remuneration involved in each arrangement without regard to whether the disclosing party believes a portion of the total remuneration was offered, paid, solicited, or received for a lawful purpose. A disclosing party may also explain what it believes is the value of the financial benefit conferred under the arrangement and whether it believes any portion of the total remuneration should not be considered by OIG in determining an appropriate settlement of OIG's CMP authorities. Given the various legal authorities at issue, OIG has broad discretion in determining an appropriate resolution in these cases. For purposes of resolving SDP matters, we generally exercise this discretion by compromising our CMP authorities for an amount based upon a multiplier of the remuneration conferred by the referral recipient to the individual or entity making the referral. While this is our general approach, OIG's determination of the appropriate settlement amount depends on the facts and circumstances of each matter. We generally use this remuneration-based methodology in the SDP as an incentive to encourage disclosure of potential AKS violations. OIG's use of a remuneration-based methodology in the SDP settlement context does not govern OIG's position in other situations, such as Government-initiated investigations, in which the Government may use any legally supportable measure of damages, multipliers, and penalties.

## IV.    Resolution

Resolution of a matter in the SDP depends on cooperation, realistic expectations, and clear communication between OIG and the disclosing party. This section provides some basic information about successful resolution of SDP matters.

12

## A.     Cooperation Is Essential

The benefits of self-disclosure, such as a speedy resolution, lower multiplier, and an exclusion release without integrity agreement obligations, depend on the disclosing party's willingness to work cooperatively with OIG throughout the process. Cooperation includes, for example, conducting a thorough investigation, submitting all necessary information, communicating through a consistent point of contact, being responsive to OIG requests for additional information, and being willing to pay a penalty or multiplier of damages for self-disclosed conduct.  Disclosing parties who fail to cooperate with OIG in good faith will be removed from the SDP.

## B.     OIG Coordination With DOJ on Civil Matters

OIG will coordinate with the Department of Justice (DOJ) on in resolving SDP matters. If OIG is the sole agency representing the Federal Government, the matter will be settled under OIG's applicable CMP authorities.  In some cases, disclosing parties may request release under the FCA, and in other cases, DOJ may choose to participate in the settlement of the matters.  If DOJ participates in the settlement, the matter will be resolved as DOJ determines is appropriate consistent with its resolution of FCA cases, which could include a calculation of damages resulting from violations of the AKS based on paid claims.  OIG will advocate that the disclosing party receive a benefit from disclosure under the SDP and the matter be resolved consistent with OIG's approach in similar cases.  However, DOJ determines the approach in cases in which it is involved.

## C.     OIG Coordination With DOJ on Criminal Matters

OIG encourages disclosing parties to disclose potential criminal conduct though the SDP process.  OIG's Office of Investigations investigates criminal matters, and any disclosure of criminal conduct through the SDP will be referred to DOJ for resolution. As in civil cases referred to DOJ, OIG will advocate that the disclosing parties receive a benefit from disclosure under the SDP.

## D.     OIG Coordination With the SRDP

Disclosing parties need to decide whether OIG's SDP or CMS's SRDP is the appropriate protocol to disclose potential Stark Law violations.  Both protocols should not be used for the same arrangement.  As stated above, disclosing parties must analyze each arrangement to determine whether the arrangement raises potential violations of the AKS, the Stark Law, or both.  If the arrangement raises a potential violation of only the AKS or of both the AKS and the Stark Law, the arrangement should be disclosed to OIG under the SDP.  If the arrangement raises a potential violation of only the Stark Law, the arrangement should be disclosed to CMS under the SRDP. OIG coordinates with

CMS on the review and resolution of matters disclosed to either agency as appropriate. However, OIG does not participate in SRDP settlements.

### E.    Minimum Settlement Amounts

While OIG does not demand an admission of liability in settlement agreements, disclosing parties should expect to pay above single damages for disclosed conduct that potentially violates Federal law.  OIG's general practice is to require a minimum multiplier of 1.5 times the single damages, although in each case, we determine whether a higher multiplier is appropriate.  As a general practice, for purposes of settlement in the SDP, OIG applies this multiplier to the amount paid by Federal health care programs, not the amount claimed.

To better allocate disclosing party and OIG resources in resolving matters through the SDP and to promote transparency and realistic expectations in the SDP process, we require minimum settlement amounts for self-disclosed matters.  For kickback-related submissions accepted into the SDP, OIG will require a minimum $50,000 settlement amount to resolve the matter.  This minimum amount is consistent with OIG's statutory authority to impose a penalty of up to $50,000 for each such transaction and an assessment of up to three times the total remuneration.  See section 1128A(a)(7) of the Act.  For all other matters accepted into the SDP, OIG will require a minimum $10,000 settlement amount to resolve the matter.  This minimum amount is consistent with OIG's statutory authority to impose a penalty of at least up to $10,000 for each improper claim submitted as described in the CMPL, section 1128A(a) of the Act.  These minimum amounts account for Federal health care program damages and any relevant multiplier.

In the unusual instance when OIG determines that no potential fraud liability exists for conduct disclosed under the SDP, OIG will refer the matter to the appropriate payor for acceptance of the overpayment and no CMP release will be provided.

### F.    Financial Inability To Pay

In some situations, disclosing parties may be unable to pay otherwise appropriate settlement amounts.  In preparing the disclosure, disclosing parties should determine whether an inability to pay may be an issue.  If a disclosing party asserts that it cannot pay a proposed settlement amount (i.e., damages plus a multiplier or penalty amount), OIG will require extensive financial information, including audited financial statements, tax returns, and asset records.  Disclosing parties must certify to the truthfulness and completeness of the financial disclosure.  In addition to submitting the financial forms, disclosing parties should include an assessment of how much they believe they can afford to pay.

Disclosing parties should raise potential inability-to-pay issues at the earliest possible time, preferably in the SDP submission.  Doing so enables OIG to promptly send the disclosing party the financial disclosure forms and consider that information in determining an appropriate resolution.

## G.        Overpayment Reconciliation

If, prior to resolving an SDP matter, a disclosing party refunds an overpayment related to the same conduct disclosed under the SDP, OIG will credit the amount paid toward the ultimate settlement amount.  However, OIG is not bound by any amount that is repaid outside the SDP process.  OIG may question the methodology of the overpayment calculation, particularly if the disclosing party estimated the overpayment amount by some method other than as described in the SDP.   If OIG disputes the methodology used to calculate the overpayment, OIG may require the disclosing party to redo the review or conduct an independent damages review, which may result in a damages or overpayment amount that is higher than the disclosing party's estimate.  Moreover, even if OIG agrees with the methodology used to calculate the overpayment, the disclosing party should expect to pay a multiplier on the damages under the SDP.

## H.   FOIA Implications of Disclosure

Disclosing parties should clearly identify any portion of their submissions that they believe are trade secrets or are commercial, financial, privileged, or confidential and therefore potentially exempt from disclosure under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.   Information identified as exempt must meet the criteria for exemption from disclosure under FOIA as determined by an OIG FOIA officer.  Consistent with the Department of Health and Human Services' FOIA procedures, set forth in 45 C.F.R. Part 5, OIG will make a reasonable effort to notify a disclosing party prior to any release by OIG of information submitted by a disclosing party and identified upon submission by a disclosing party as trade secrets or as commercial, financial, privileged, or confidential under the FOIA rules.  With respect to such releases, a disclosing party will have the rights set forth at 45 C.F.R. § 5.65(d).

# Exhibit H

From: **Kortum, Frank (USACAC)** <Frank.Kortum@usdoj.gov>
Date: Mon, Dec 20, 2021 at 5:49 PM
Subject: Re: U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW
To: Alice Chang JDMBA <alicechangjdmba@gmail.com>
Cc: Eliot Rushovich <eliot@riselawfirm.com>, John Fisher <John.Fisher@doj.ca.gov>, Steven Frankland <sgfrankl@da.lacounty.gov>, Marc Beaart <mbeaart@da.lacounty.gov>, Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>

Ms. Chang,

 I'm writing in response to portions of your 12/20 message, in which you proposed filing an *ex parte* application regarding the issues identified in the message.  Please be advised that we intend to oppose any such application.  The reasons for our position are set forth below; if you file an *ex parte* application (instead of cooperating in our efforts to resolve the issues informally), please inform the Court of our position (as required by Local Rule 7-19) by attaching a copy of this message (including the attached "Document2") to your application.

1. The issues identified in your message are ill-suited for resolution on an *ex parte* basis.  As explained in my 11/29 message to Mr. Rushovich (see "Document2"), Judge Wright's Requirements Page makes it clear that *ex parte* applications are appropriate where "extraordinary relief" is sought.  https://www.cacd.uscourts.gov/honorable-otis-d-wright-ii (Requirements Page  ¶VII.C).  The Requirements Page also cites *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F.Supp. 488 (C.D. Cal. 1995); "[a]lthough *Mission Power* is a district court case, it is widely-cited in this district for clearly explaining the mechanics of *ex parte* applications, the repercussions for all involved when a party files one, and the attendant heavy burden the movant must satisfy in order to justify burdening opposing counsel and the Court with an emergency filing."  *Hoist Fitness Systems, Inc. v. TuffStuff Fitness International, Inc.*,  2018 WL 8222261 at *3 (C.D. Cal. December 20, 2018).

2. There is no emergency here that justifies *ex parte* relief under the standards set forth above.  Specifically, even if we were to immediately disclose the exhibits you identify in your message, it is highly unlikely that counsel for USC would review the documents during the current holiday period, much less be prepared to meet with you on the expedited schedule you suggest in your 12/16 message; under the circumstances we should use the next few weeks to attempt an informal resolution that is mutually agreeable—as we've previously suggested.  More importantly, your 12/16 message requested that the we identify any objections to disclosing the exhibits; in my 12/17 message (included in the attached "Document2") I identified some significant preliminary objections to disclosing the exhibits, and we may well identify additional objections as our review continues (as well as objections to the additional documents you request in your message today).  Your message today (A) fails to address those objections we've raised thus far; (B) fails to respond to our suggestion that we attempt to resolve those objections informally; and (C) fails to address Mr. Fisher's reasonable request for additional time to review the documents (which—as explained in my 12/17 message--the United States needs as well).

3. Any *ex parte* application "must explain why the underlying motion cannot be heard on the usual briefing schedule, but must instead be heard on an expedited basis."  *Hoist Fitness*, 2018 WL 8222261 at *1 (*citing Mission Power*).  "To establish this, the movant must show that it will be irreparably harmed if the usual schedule is adhered to . . . ."  *Id.* Your message today fails to explain why your clients will be irreparably harmed if we attempt an informal resolution pursuant to Local Rule 7-3, followed by a noticed motion if we cannot resolve the issues.  Indeed, it "reflects no awareness of *Mission Power* or its message" (*see id.* at 3), and your proposed *ex parte* application will result in burdening the Court and counsel with an unjustified emergency filing during a holiday period.  *See id.*

4. We're providing an expedited response to what appear to be the main issues raised in your message.  To the extent it becomes necessary to address other issues raised in your message we will do so at another time.  In the meantime, we remain available for further discussion of the issues you've raised if that's your desire, notwithstanding the current holiday period.  Your cooperation in such efforts would be particularly appropriate given that, as explained above, the *ex parte* relief you seek wouldn't advice the progress of this case in any meaningful way, especially during the next few holiday weeks.

Frank Kortum (cell 213.393.5512)

**From:** Alice Chang JDMBA <alicechangjdmba@gmail.com>
**Sent:** Monday, December 20, 2021 9:27 AM
**To:** John Fisher <John.Fisher@doj.ca.gov>; Kortum, Frank (USACAC) <FKortum@usa.doj.gov>; Steven Frankland <sgfrankl@da.lacounty.gov>; Marc Beaart <mbeaart@da.lacounty.gov>; Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>
**Cc:** Eliot Rushovich <eliot@riselawfirm.com>
**Subject:** [EXTERNAL] Re: U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW

Counsel,

Please review the attached correspondence to follow-up on calls Eliot and I made to each of you this morning.  We also left a message this morning with Erika Buzas, front reception for the Los Angeles County Healthcare Fraud Division.

Thanks,
Alice

# Document2

**From:** Kortum, Frank (USACAC)
**Sent:** Friday, December 17, 2021 1:56 PM
**To:** Alice Chang JDMBA <alicechangjdmba@gmail.com>
**Cc:** Eliot Rushovich <eliot@riselawfirm.com>; John Fisher <John.Fisher@doj.ca.gov>; Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>; Marc Beaart <mbeaart@da.lacounty.gov>; Steven Frankland <sgfrankl@da.lacounty.gov>
**Subject:** RE: U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW (further response to your 12/16 messages)

Ms. Chang,

In response to the messages you sent on 12/16, the United States hasn't had an opportunity to conduct a complete review of the documents that you've requested be disclosed to counsel for USC.  (I note that Mr. Fisher has also requested more time to review the documents (see message below) and I believe that the Court would expect you to agree with his request pursuant to the applicable civility guidelines, which are available at https://www.cacd.uscourts.gov/attorneys/admissions/civility-and-professionalism-guidelines#Scheduling.)

Although our own review is continuing, it will not be completed by the close of business today.  I'm nevertheless taking this opportunity to inform you that our examination of the documents thus far has resulted in a determination that your inclusion of USC's voluntary disclosure—which the United States disclosed to relators through their former counsel—as an exhibit to the Fourth Amended Complaint (Exh. 89) could violate our common-interest agreement, which provides that the United States may seek dismissal in the event "Government disclosed information [is used] to add new claims or defendants to the action [or to] pursue any other False Claims Act action, or to assist anyone else to file or pursue a False Claims Act action."  At this point we'll need additional time to determine the extent (if any) to which the inclusion of the voluntary disclosure in the Fourth Amended Complaint constitutes a use of Government Disclosed Information to "add new claims or defendants."  We're also concerned that including the voluntary disclosure in your complaint could be counterproductive in terms of encouraging cooperation from USC in the future.  It would probably be helpful if you could explain in writing why you found it necessary to include this document in the complaint in light of these concerns.

With respect to the remaining exhibits, it's my understanding that the California Department of Insurance disclosed to your former counsel—also pursuant to a common-interest agreement—documents received from USC pursuant to a subpoena.  It would facilitate the review process if you could identify any subpoenaed documents that you're now requesting be disclosed to USC, and explain in writing why you believe you're entitled to include those documents in the complaint, or to use them in negotiations with USC.

Finally, it seems unlikely under the present circumstances that we'll be able to resolve these issues by the deadline that you set.  I'm accordingly suggesting that for the time being the most appropriate course of action would be for you to withdraw your objection to an extension of the seal period so that we can continue with our attempts to resolve this matter informally.  We're available for further discussion of the issues identified above and would be happy to explore a mutually agreeable resolution.

Frank Kortum (cell 213.393.5512)

**From:** John Fisher <John.Fisher@doj.ca.gov>
**Sent:** Friday, December 17, 2021 8:51 AM
**To:** Alice Chang JDMBA <alicechangjdmba@gmail.com>; Kortum, Frank (USACAC) <FKortum@usa.doj.gov>; Steven Frankland <sgfrankl@da.lacounty.gov>; Marc Beaart <mbeaart@da.lacounty.gov>; Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>
**Cc:** Eliot Rushovich <eliot@riselawfirm.com>
**Subject:** [EXTERNAL] Re: U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW (I've only received 3 of the 13 emails you've attempted to send)

Ms. Chang:

Thank you for your email.  I note the unilateral deadline you imposed on the parties to review the Exhibits in question and lodge any objections by close of business today. I would like the opportunity, and have a duty,  to review those Exhibits in question before being released.

However, I cannot meet the deadline you created with minimal notice. My son tested positive for Covid this week and is having issues. As such, all my attention is focused on his health and well-being at this time and getting him the care he needs. I inform you of this rather personal issue to explain why your deadline cannot be met and I will review the Exhibits and discuss any concerns in due course within a reasonable time given my circumstances.  I will trust you will understand this and that I can rely on everyone's professional courtesy as my family works its way through this situation.

Thank you.

John P. Fisher| Deputy Attorney General
California Department of Justice | Office of the Attorney General
Division of Medi-Cal Fraud and Elder Abuse
1615 Murray Canyon Road| Suite 700 | San Diego, CA  92108
Direct: (619) 358-1004
john.fisher@doj.ca.gov

---

**From:** Alice Chang JDMBA <alicechangjdmba@gmail.com>
**Sent:** Thursday, December 16, 2021 6:46:04 PM
**To:** Kortum, Frank (USACAC); John Fisher; Steven Frankland; Marc Beaart; Neumeister, Mitch
**Cc:** Eliot Rushovich
**Subject:** Re: U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW (I've only received 3 of the 13 emails you've attempted to send)

**EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

AUSA Kortum,

In the interest of expediting the United States' disclosure of select exhibits to USC for a discussion I would like to have with Mr. Hardiman and counsel for Los Angeles County -- per my December 15, 2021 email below, I requested that Bureau Director Beaart, Head Deputy Frankland, Mr. Rushovich and I be copied on the United States' disclosure of Exhibits 45, 63, 64, 65, 66, 67, 68, 69, 70, 71, 76, 77 and 150 to Mr. Hardiman.

The above-referenced exhibits were contained in the 3 "re-forwarded for reference" emails you confirmed you received today.  In response to your email below that you "expect that counsel for the State of California and the County of Los Angeles will need to weigh in at some point during the process," I sent all participating government entities the 3 emails below requesting that any objections by any participating government entity be made to my attention by 5PM tomorrow.

If I am not informed of any objections to the United States' disclosure of Exhibits 45, 63, 64, 65, 66, 67, 68, 69, 70, 71, 76, 77 and 150, then I expect the United States will disclose these exhibits to Mr. Hardiman by end of day tomorrow (copying Bureau Director Beaart, Head Deputy Frankland, Mr. Rushovich and me) as I would like to schedule a meeting with Mr. Hardiman and counsel for Los Angeles County to discuss the above-referenced exhibits early next week.  I will also invite you and counsel for the State of California (DAG Fisher and Mr. Neumeister) to the meeting.

All participating government entities were served all 150 exhibits to the Fourth Amended Complaint on September 7, 2021.

Thanks,
Alice Chang


From: Alice Chang JDMBA <alicechangjdmba@gmail.com>
Date: Thu, Dec 16, 2021 at 3:32 PM
Subject: Fwd: [UNDER SEAL] CV 18-08311-ODW(AS) – Email #5 of 13 (4AC Exhibits 43-48) **(re-forwarded for reference)**

To: Kortum, Frank (USACAC) <frank.kortum@usdoj.gov>, Marc Beaart <mbeaart@da.lacounty.gov>, Steven Frankland <sgfrankl@da.lacounty.gov>, John Fisher <John.Fisher@doj.ca.gov>, Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>

Cc: Eliot Rushovich <eliot@riselawfirm.com>

**AUSA Kortum,**

In response to your December 16, 2021 email, I am re-forwarding service copies of Exhibit 45 as part of this email.

Your response below notes that you expect the State of California and County of Los Angeles to weigh in on whether the United States' decision to disclose the above-referenced exhibit is appropriate.  However, I note for the record that the United States did not extend Dr. Cheongsiatmoy the same courtesy prior to the United States' disclosure of the Fourth Amended Complaint (without exhibits) to USC on October 27, 2021 at 5PM -- just 2 days after I requested

to meet and confer with each participating government entity and just hours after Mr. Rushovich and I called each participating government entity to follow-up and received no response.

**Bureau Director Beaart, Head Deputy Frankland, DAG Fisher, and Mr. Neumeister,**

If you have any objections to the United States' disclosure of the above-referenced exhibit to USC, please reply all with the basis for your objection by Friday, December 17, 2021 at 5PM.

Delaying disclosure of exhibits supporting Dr. Cheongsiatmoy's allegations in the Fourth Amended Complaint will delay resolution of the case.

Thanks,
Alice Chang


From: Alice Chang JDMBA <alicechangjdmba@gmail.com>
Date: Thu, Dec 16, 2021 at 3:33 PM
Subject: Fwd: [UNDER SEAL] CV 18-08311-ODW(AS) – Email #8 of 13 (4AC Exhibits 55-89) **(re-forwarded for reference)**
To: Kortum, Frank (USACAC) <frank.kortum@usdoj.gov>, Marc Beaart <mbeaart@da.lacounty.gov>, Steven Frankland <sgfrankl@da.lacounty.gov>, John Fisher <John.Fisher@doj.ca.gov>, Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>

Cc: Eliot Rushovich <eliot@riselawfirm.com>

**AUSA Kortum,**

In response to your December 16, 2021 email, I am re-forwarding service copies of Exhibits 63, 64, 65, 66, 67, 68, 69, 70, 71, 76, 77 as part of this email.

Your response below notes that you expect the State of California and County of Los Angeles to weigh in on whether the United States' decision to disclose the above-referenced exhibits is appropriate.  However, I note for the record that the United States did not extend Dr. Cheongsiatmoy the same courtesy prior to the United States' disclosure of the Fourth Amended Complaint (without exhibits) to USC on October 27, 2021 at 5PM -- just 2 days after I requested to meet and confer with each participating government entity and just hours after Mr. Rushovich and I called each participating government entity to follow-up and received no response.

**Bureau Director Beaart, Head Deputy Frankland, DAG Fisher, and Mr. Neumeister,**

If you have any objections to the United States' disclosure of the above-referenced exhibits to USC, please reply all with the basis for your objection by Friday, December 17, 2021 at 5PM.

Delaying disclosure of exhibits supporting Dr. Cheongsiatmoy's allegations in the Fourth Amended Complaint will delay resolution of the case.

Thanks,
Alice Chang

From: Alice Chang JDMBA <alicechangjdmba@gmail.com>
Date: Thu, Dec 16, 2021 at 3:34 PM
Subject: Fwd: [UNDER SEAL] CV 18-08311-ODW(AS) – Email #13 of 13 (4AC Exhibit 150);
Notice of Lodging of Non-Paper Exhibit (Audio-Video) **(re-forwarded for reference)**
To: Kortum, Frank (USACAC) <frank.kortum@usdoj.gov>, Marc Beaart
<mbeaart@da.lacounty.gov>, Steven Frankland <sgfrankl@da.lacounty.gov>, John Fisher
<John.Fisher@doj.ca.gov>, Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>

Cc: Eliot Rushovich <eliot@riselawfirm.com>

**AUSA Kortum,**

In response to your December 16, 2021 email, I am re-forwarding service copies of Exhibit
150 as part of this email.

Your response below notes that you expect the State of California and County of Los Angeles to
weigh in on whether the United States' decision to disclose the above-referenced exhibit is
appropriate.  However, I note for the record that the United States did not extend Dr.
Cheongsiatmoy the same courtesy prior to the United States' disclosure of the Fourth Amended
Complaint (without exhibits) to USC on October 27, 2021 at 5PM -- just 2 days after I requested
to meet and confer with each participating government entity and just hours after Mr. Rushovich
and I called each participating government entity to follow-up and received no response.

**Bureau Director Beaart, Head Deputy Frankland, DAG Fisher, and Mr. Neumeister,**

If you have any objections to the United States' disclosure of the above-referenced exhibit to
USC, please reply all with the basis for your objection by Friday, December 17, 2021 at 5PM.

Delaying disclosure of exhibits supporting Dr. Cheongsiatmoy's allegations in the Fourth
Amended Complaint will delay resolution of the case.

Thanks,
Alice Chang

On Thu, Dec 16, 2021 at 5:10 PM Kortum, Frank (USACAC) <Frank.Kortum@usdoj.gov> wrote:

Ms. Chang,

As of 5 p.m. today I had received 3 of the 13 e-mails you have apparently attempted to send to me (Nos.
5, 8 and 13).   It may be that the remaining e-mails are too large for our server to
accommodate.   However, if you have confirmation that the remaining e-mails (Nos. 1-4, 6-7 and 9-12)
went through, please send it to me and I'll ask our IT department to look into the problem.

Frank Kortum (cell 213.393.5512)

**From:** Kortum, Frank (USACAC)
**Sent:** Thursday, December 16, 2021 1:52 PM
**To:** Alice Chang JDMBA <alicechangjdmba@gmail.com>; John Fisher <John.Fisher@doj.ca.gov>; Steven Frankland <sgfrankl@da.lacounty.gov>; Marc Beaart <mbeaart@da.lacounty.gov>; Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>
**Cc:** Eliot Rushovich <eliot@riselawfirm.com>
**Subject:** Re: U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW (responding to 12/15 message)


Ms. Chang,


In response to your 12/15 request for disclosure to counsel for USC of exhibits to the complaint, we'll need to assemble and review those exhibits in order to make sure that disclosure is appropriate; I'd also expect that counsel for the State of California and the County of Los Angeles will need to weigh in at some point during the process.   Because of the upcoming holidays the time available for completing the tasks of assembly and review is limited; if you'd like to expedite the process please send the exhibits directly to me (with copies to counsel copied on this message) so that they can then be reviewed.  If you have any questions regarding this message please contact me by e-mail.


Frank Kortum (cell 213.393.5512)


**From:** Alice Chang JDMBA <alicechangjdmba@gmail.com>
**Sent:** Wednesday, December 15, 2021 2:35 PM
**To:** John Fisher <John.Fisher@doj.ca.gov>; Kortum, Frank (USACAC) <FKortum@usa.doj.gov>; Steven Frankland <sgfrankl@da.lacounty.gov>; Marc Beaart <mbeaart@da.lacounty.gov>; Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>
**Cc:** Eliot Rushovich <eliot@riselawfirm.com>
**Subject:**  Re: U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW


AUSA Kortum,


I am following up on our call last week when you informed me, for the first time, on December 6, 2021 that the United States disclosed to USC counsel, for the first time, the Fourth Amended Complaint at 5PM on October, 27, 2021.  You confirmed that the United States did not disclose

the Second Amended Complaint (SAC) or Third Amended Complaint (TAC) to USC counsel and you further confirmed that the United States has not disclosed to USC counsel any of the exhibits from the Fourth Amended Complaint (4AC).

Per the Court's Order Partially Lifting Seal, the United States is the only party permitted to disclose to Defendant USC "any of the allegations of the Complaint" which includes the exhibits.

I would like to have the opportunity to speak with USC counsel about Dr. Cheongsiatmoy's allegations and USC's written position on February 25, 2021 wherein USC counsel wrote: "As part of our audit and investigation, we have found no evidence that USC falsely certified to LA County on a claim using CPT Code 95940, or that USC submitted any claim to the county." See Exhibit A-268 reattached for reference.

To allow the opportunity to have substantive discussions with USC counsel regarding Dr. Cheongsiatmoy's allegations as it relates to false claims from services not rendered by USC surgeons and USC neurologists at Los Angeles County+USC Medical Center, please send an email to Mr. Hardiman disclosing Exhibits 45, 63, 64, 65, 66, 67, 68, 69, 70, 71, 76, 77 and 150.  When you email the above-referenced exhibits to Mr. Hardiman, please copy counsel for Los Angeles County (Bureau Director Beaart and Head Deputy Frankland), Mr. Rushovich, and me.

Thanks,

Alice Chang, JD/MBA

On Tue, Dec 7, 2021 at 4:01 PM Alice Chang JDMBA <alicechangjdmba@gmail.com> wrote:

Counsel,

Please review the attached correspondence with Dr. Cheongsiatmoy's position on extending the seal.

Thanks,

Alice

On Mon, Dec 6, 2021 at 4:56 PM Alice Chang JDMBA <alicechangjdmba@gmail.com> wrote:

Counsel,


Please review the attached correspondence in reference to our teleconference this morning.


Dr. Cheongsiatmoy is aware of the 12/7 deadline AUSA Kortum requested for an answer to the Government's request for a seal extension and I will send you Dr. Cheongsiatmoy's decision by close of business tomorrow.


Thanks,

Alice


On Wed, Dec 1, 2021 at 4:57 PM John Fisher <John.Fisher@doj.ca.gov> wrote:

That works for me as well.


John


**From:** Kortum, Frank (USACAC)
**Sent:** 12/1/21, 4:30 PM
**To:** Eliot Rushovich
**Cc:** Alice Chang JDMBA, John Fisher, Neumeister, Mitch, Marc Beaart, Steven Frankland
**Subject:** RE: U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW (responding to 11/28 message from Mr. Rushovich)

**EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.


Mr. Rushovich,

Thanks for your message.   Monday (12/6) at 10 a.m. works for me; it's my understanding that Mr. Frankland is available then as well.  In the meantime, I'll postpone the deadline for your clients to respond regarding the seal extension to the close of business on 12/7.


Frank Kortum (cell 213.393.5512)


**From:** Eliot Rushovich <eliot@riselawfirm.com>
**Sent:** Wednesday, December 1, 2021 11:23 AM
**To:** Kortum, Frank (USACAC) <FKortum@usa.doj.gov>
**Cc:** Alice Chang JDMBA <sgfrankl@da.lacounty.gov>
**Subject:** [EXTERNAL] RE: U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW (responding to 11/28 message from Mr. Rushovich)


Mr. Kortum,


Thank you for your response.  I am unfortunately (and fortunately) on the island of Kauai this week and am unavailable for a conference call over the next two days on these issues as I will have limited cell service and then will be traveling back, but I'm available on 10am Pacific Time on Monday, December 6 if that works for all government parties?  If that time works, I am happy to circulate a dial-in for the call.


Thank you for your patience and we look forward to discussing and meeting and conferring on all of these matters on the call.


Sincerely,


Eliot


**From:** Kortum, Frank (USACAC) <Frank.Kortum@usdoj.gov>
**Sent:** Monday, November 29, 2021 4:15 PM
**To:** Eliot Rushovich <eliot@riselawfirm.com>
**Cc:** Alice Chang JDMBA <alicechangjdmba@gmail.com>; John Fisher <John.Fisher@doj.ca.gov>; Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>; Marc Beaart <mbeaart@da.lacounty.gov>; Steven Frankland <sgfrankl@da.lacounty.gov>; Marlan Wilbanks <mbw@wilbanksgouinlock.com>

**Subject:** U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW (responding to 11/28 message from Mr. Rushovich)

Mr. Rushovich,

I'm writing in response to portions of your 11/28 message.

1.    The primary concern expressed in your message appears to be that the United States may "settle[] the *qui tam* claims without [your clients'] knowledge or input."  Please be assured that the negotiation and settlement process here need not be a cause for concern, because you and your clients will have ample opportunity for input throughout the process.  For example, DOJ personnel with the authority to approve settlements rarely (if ever) participate in settlement negotiations, so any settlement negotiations taking place here can only result in an agreement in principle that must receive internal review before approval.  Before approving (or rejecting) the settlement, the reviewers will expect to be informed whether or not relators have agreed to the settlement, so as a practical matter we would discuss any potential settlement with you before seeking internal approval.

2.    I can also reconfirm confirm what I told Ms. Chang during a telephone conference call several months ago:  that there have as yet been neither substantive negotiations with USC (as opposed to procedural communications regarding scheduling), nor any significant decisions affecting your clients.   Accordingly any communications that have occurred between the United States and USC have not been at the "potential expense of Dr. Cheongsiatmoy's individual employment claims."  In other words, the United States has not yet communicated with USC regarding the merits of the *qui tam*-related issues on which it might intervene—much less Dr. Cheongsiatmoy's employment-related claims.  The only "information . . . provided to [counsel for] USC" was a copy of the Fourth Amended Complaint (after we learned of your clients' intent to withdraw the Stark/AKS allegations), as well as an earlier version of the complaint that was sent to counsel to USC prior to the initial presentation that was scheduled earlier this year regarding the issues raised in its voluntary disclosure; furthermore, communications have been limited to the timing of a rescheduled initial presentation.  Nor, under the circumstances, do I expect that any substantive decisions exchanges of information will occur between now and when USC makes its initial presentation.  Finally, USC's voluntary disclosure mentioned Dr. Cheongsiatmoy by name so the disclosure of his identity as a *qui tam* plaintiff didn't result in any significant advantage to it in terms of information of which it was not already aware.  In fact, the disclosure of the complaints serves the interests of both the relators and the United States, because it will enable USC to focus on the relevant issues during its upcoming initial presentation.  Under the circumstances no useful purpose would be served providing you with the highly detailed

information you've requested about communications between the United States and USC.

3.    Based on Mr. Fisher's 11/24 message ("Document2" attached), it would appear that the issues of whether your clients have

A.      "the same right to engage USC regarding settlement as the Government"; and

B.      the right to demand that the United States provide you with highly detailed information about

the status of its investigation

will present more complications than you might have anticipated—and as such, they are particularly inappropriate for judicial resolution on an *ex parte* basis. *See, e.g.*, *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F.Supp. 488 (C.D. Cal. 1995) (cited at https://www.cacd.uscourts.gov/honorable-otis-d-wright-ii (Judge Wright's "Requirements Page" ¶VII.C (setting forth *ex parte* application requirements))).  We therefore renew our request that your clients agree to a six-month extension of the seal period; this will give us an opportunity to thoroughly attempt an informal resolution of these issues—without prejudicing your clients' right to seek judicial relief by noticed motion in the event some sort of compromise isn't possible.  In this regard I note that your 11/28 message refers to unidentified case law; providing citations to the specific cases you have in mind may well facilitate the informal resolution efforts that the Court would reasonably expect us to make.  In the meantime, we suggest that you review *In re Amgen, Inc.*, 2011 WL 2442047 at (E.D. N.Y April 6, 2011), where the court stated that the FCA's sealing provisions "stay the relator's litigation while the government discharges its independent investigative duty . . . ."  *Id.* at *4.  I'm also taking this opportunity to point out that if your clients oppose an extension of the current seal period and the Court as a result denies the extension, it's quite possible that I'll be instructed to file a "Statement of No Decision," which will have the practical effect of a declination, and which will probably encourage USC to adopt a settlement position that is significantly less generous than what might have been expected if the United States was remains involved in the case.  Finally, in my 11/22 message (below) I requested that your clients state their position regarding a seal extension by the close of business today.  As a courtesy I'm willing to postpone that deadline until 24 hours after our meeting takes place (provided that it takes place by Thursday of this week); if that is acceptable to you please let me know immediately.

I've attempted to identify the issues in your message where an expedited response would be productive; to the extent it becomes necessary to respond to any additional issues set forth in your message, I'll do so at another time.

Frank Kortum (cell 213.393.5512)

**From:** Eliot Rushovich <eliot@riselawfirm.com>
**Sent:** Sunday, November 28, 2021 4:44 PM
**To:** Kortum, Frank (USACAC) <FKortum@usa.doj.gov>
**Cc:** Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>; John Fisher <John.Fisher@doj.ca.gov>; Marc Beaart <mbeaart@da.lacounty.gov>; Steven Frankland <sgfrankl@da.lacounty.gov>; Alice Chang JDMBA <alicechangjdmba@gmail.com>
**Subject:**  RE: U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW  ((A) responding to your 11/17 message; and (B) request for agreement to seal extension (time sensitive))

Mr. Kortum,

I'm writing in response to your November 17, 2021 letter.  Most importantly, I understand based on your below email that the United States has shared the Fourth Amended Complaint (and possibly prior amendments thereto after the initial Complaint) and has been engaging USC (defendants USC and USC Care Medical Group, Inc) regarding potential settlement, in each case, without prior or contemporaneous notice to, or involvement of, Dr. Cheongsiatmoy or his counsel.

While we understand that in 2020, the Court granted the United States the right, in its discretion, to disclose copies of the Complaint (and amendments thereto) to USC to "help expedite the conclusion of the Government's investigation and the resolution of this qui tam action", our position is that the partial unseal Order was not granted, and the continuing FCA seal does not remain in place, for the purpose of giving the United States priority in communications with USC at the potential expense of Dr. Cheongsiatmoy's individual employment claims.

The purpose of the seal is to allow the government time to decide whether it wants to intervene – it is not to allow the government a "head start" potentially at the expense of Dr. Cheongsiatmoy's individual employment claims.  In fact, the seal provision in the FCA was specifically added to encourage individuals to blow the whistle more, not less.

However, in a situation like this where the individual plaintiff has his own employment claims based on the same operative facts as the Government, if the Government continues to take the position that only it can engage the Defendant in settlement communications due to the seal, such position is not only contrary to the purpose of the seal but also results in a serious risk that the plaintiff's individual claims

get the short shrift – thus discouraging whistleblowers like Dr. Cheongsiatmoy from coming forward in the first place.

It is for this reason that I respectfully reiterate my request that the United States provide Ms. Chang and me the items in writing as set forth below, as soon as possible, but in any event by this coming Tuesday, November 30, 2021:

1.   All true and correct communications with associated enclosures from the United States to any defendant disclosing to any defendant any allegations from any complaint(s) containing the individual claims of Dr. Cheongsiatmoy as a Plaintiff in this case -- Second Amended Complaint (SAC), Third Amended Complaint (TAC), Fourth Amended Complaint (4AC)

2.   All communications and disclosures from any party related to any of my client's allegations since the first time any defendant received any disclosures from the United States as to any allegations from any complaint(s) containing Dr. Cheongsiatmoy's individual claims (SAC, TAC, 4AC)

3.   All communications from any defendant regarding potential settlement

Importantly, understanding what information has been provided to USC and when, along with what information USC has communicated to the United States (or any of the other Government parties), in each case with regard to settlement, has significant bearing on prospects for resolution of Dr. Cheongsiatmoy's individual employment claims.

You note in your below email that it is the position of the United States that Dr. Cheongsiatmoy's individual employment claims should be subject to settlement negotiations that are "subsequent" to the Government's qui tam settlement negotiations.  But please understand that if Dr. Cheongsiatmoy's individual employment claims are negotiated after the Government has already effectively settled the qui tam claims without his knowledge and input (even if he is afforded an opportunity to review the settlement after it has been made) – that could severely prejudice Dr. Cheongsiatmoy (e.g., it is very common for a defendant to take a different settlement posture based on budgeting if it has already allocated significant settlement money to another claim).

Our position is that Dr. Cheongsiatmoy and his counsel have the same right to engage USC regarding settlement as the Government.  And we believe the FCA caselaw supports this position and Judge Wright if faced with this issue would agree.  This is the primary basis for us communicating our intent to go in *ex parte* because every day that goes by in which the Government is engaging USC while Dr. Cheongsiatmoy is being sidelined is potentially creating more and more prejudice to his and our ability to resolve Dr. Cheongsiatmoy's individual employment claims with USC (to the extent they will be resolved as opposed to litigated and tried, which is always a real possibility if not likelihood).

It is for the foregoing reasons that I write you this email in the hopes that we can get on the same page and coordinate in a way that is fair to all parties.  You had specifically advised me and Ms. Chang previously that we were not permitted to speak to USC at all, whether with regard to Dr. Cheongsiatmoy's qui tam or employment claims.  Now that the Government is engaging USC on settlement, Dr. Cheongsiatmoy must be entitled to engage USC in discussions regarding the allegations in the Complaint.

Dr. Cheongsiatmoy is the source of the *qui tam* allegations set forth in the Complaint and as such, his individual claims are factually intertwined with the government claims; hence, any discussion of the common set of operative facts will inevitably impact his individual interests.

I know that you sent an email on Friday proposing a conference call with all Government Parties, and we welcome that call to ensure we are on the same page as to the qui tam claims.  However, it's also important that we get the above-referenced documents so we can get a better sense of where things are with USC vis-à-vis settlement generally as that has a huge impact on Dr. Cheongsiatmoy's individual employment claims.

Ms. Chang and I are available for a call by phone early this week to discuss any of this.  Most importantly, besides getting copies of the communications referenced above, I am hopeful that we can come to an agreement and understanding on the parties respective rights regarding communications with USC without the need to file an *ex parte* application, but I must reserve the right to do so if we can't get on the same page.

We look forward to your favorable response.

Sincerely,

Eliot

**ELIOT RUSHOVICH** | MANAGING PARTNER

Direct Phone: 310.728.6003 | Main Phone: 310.728.6588

Fax: 310.728.6560 | Web: riselawfirm.com

**Address:** 8383 Wilshire Blvd., Suite 315, Beverly Hills, CA 90211

*This message and any attached documents contain information from Rise Law Firm, PC that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

**From:** Kortum, Frank (USACAC)
**Sent:** Friday, November 26, 2021 1:00 PM
**To:** Alice Chang JDMBA <alicechangjdmba@gmail.com>
**Cc:** Eliot Rushovich <eliot@riselawfirm.com>; Steven Frankland <sgfrankl@da.lacounty.gov>; Marc Beaart <mbeaart@da.lacounty.gov>; John Fisher <John.Fisher@doj.ca.gov>; Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>; Marlan Wilbanks <mbw@wilbanksgouinlock.com>
**Subject:** RE: [EXTERNAL] Re: Please review attached memo re: CV 18-08311-ODW [UNDER SEAL]; U.S. ex rel. IONM LLC and Justin Cheongsiatmoy, M.D., et al. v. USC

Ms. Chang,

The memorandum attached to your 10/26 message (see attached "Document1"), which as you may recall I sent to you on several previous occasions (including 10/29). I'm accordingly requesting that you and counsel for the respective government entities (copied on this message) respond as soon as conveniently possible regarding availability for the telephonic meeting that you requested, after which perhaps Mr. Rushovich's office can circulate a dial-in for those who wish to participate. (I'm generally available after 10 a.m. Monday (as well as the remainder of next week).)

Frank Kortum (cell 213.393.5512)

**From:** Kortum, Frank (USACAC) <Frank.Kortum@usdoj.gov>
**Sent:** Monday, November 22, 2021 9:02 AM
**To:** Alice Chang JDMBA <alicechangjdmba@gmail.com>
**Cc:** Eliot Rushovich <eliot@riselawfirm.com>; Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>; John Fisher <John.Fisher@doj.ca.gov>; Marc Beaart <mbeaart@da.lacounty.gov>; Steven Frankland <sgfrankl@da.lacounty.gov>; Marlan Wilbanks <mbw@wilbanksgouinlock.com>
**Subject:** U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW ((A) responding to your 11/17 message; and (B) request for agreement to seal extension (time sensitive))


Ms. Chang,


I'm writing in response to portions of the memorandum attached to your 11/17 Memorandum").

1. In a message sent to you on 11/2 message—and again raise in the 11/15 Memorandum acknowledges that the Court's partial unsealing order "allows the United States, 'in its discretion'" provide U.S.C. with a copy of any of the Complaints filed in this action.  As you may recall, the Court issued the partial unsealing order pursuant to a stipulation to which your client was (and is) a party.  Accordingly, to the extent the 11/15 Memorandum attempts to imply that your (or your clients') consent to disclosure was (or is) required prior to disclosure of any complaint (amended or otherwise) to U.S.C. (or that the order required prior notification of such disclosure), there's no basis for such an implication.  Furthermore, if the issue arises, I expect the Court to find that any decision to include employment-related claims in the amended complaints was made with knowledge that such claims could be disclosed to U.S.C. pursuant to the terms of the partial unsealing order.  Finally, the United States respectfully declines to respond to your detailed questions about the extent to which any of the complaints filed in this action were disclosed to U.S.C.  Nevertheless, please be advised (solely as a courtesy) that following the statement of your clients' intent to withdraw the Stark/AKS allegations in the Fourth Amended Complaint, the United States provided counsel for U.S.C. with a copy of that

complaint in the interests of reviving negotiations regarding the remaining allegations therein
(other than employment-related claims (which can be negotiated at the appropriate time
without the participation of the United States)).

2. Mr. Wilbanks hasn't yet received permission of the Court to withdraw as counsel of record. Until
the Court permits him to withdraw, we'll continue to include him on case-related
communications to ensure we're not excluding counsel of record.

3. It's the position of the United States that negotiations regarding employment-related claims
should take place separately from (and subsequent to) negotiations regarding allegations arising
under the False Claims Act.  As a courtesy, I'm taking this opportunity to point out that counsel
for U.S.C. has recently expressed an interest in resuming negotiations; if we're able to reach an
informal resolution with U.S.C. regarding the FCA-related allegations, your clients will have an
opportunity to review the terms of the settlement and to weigh in if you believe the settlement
is inadequate under the circumstances.  In any event, based on a preliminary review of the list of
the documents requested in the 11/17 Memorandum, it appears that with some possible minor
exceptions, they've either already been provided to you (or to your former co-counsel), or else
aren't in the possession of the United States.  I'm also taking this opportunity to point out that
based on U.S.C.'s voluntary disclosure, the United States has deferred issuing Civil Investigative
Demands or conducting witness interviews; if negotiations with U.S.C. are unsuccessful we'll
revisit the issue of the extent to which further investigative activity is appropriate.

We've attempted to identify the issues in both the 11/17 Memoranda where an expedited response
would be productive; to the extent it becomes necessary to respond to any additional issues that may
have been raised in either the 11/17 Memorandum, we'll do so at another time.   Also, please be
advised that because it's highly unlikely under the circumstances that we'll be able to conclude
negotiations with U.S.C. prior to the current seal period's expiration date, we'll need to request an
additional extension of the seal period in order to to have adequate time for negotiations (or to
undertake investigative activities if negotiations are unsuccessful).  Please let me know by the close of
business on 11/29/21 whether you'll consent to a six-month extension of the seal period (so that we can
prepare a formal stipulation in the event I'm authorized to request an extension).  If we haven't received
an e-mail setting forth your consent in principle to the extension by noon on 11/29/21, we'll conclude
that you intend to withhold consent and will evaluate our options going forward accordingly.

Frank Kortum (cell 213.393.5512)

**From:** Alice Chang JDMBA <alicechangjdmba@gmail.com>
**Sent:** Monday, November 15, 2021 4:24 PM
**To:** Kortum, Frank (USACAC) <FKortum@usa.doj.gov>; Steven Frankland <sgfrankl@da.lacounty.gov>;
Marc Beaart <mbeaart@da.lacounty.gov>; John Fisher <John.Fisher@doj.ca.gov>; Neumeister, Mitch
<mitch.neumeister@insurance.ca.gov>
**Cc:** Eliot Rushovich <eliot@riselawfirm.com>
**Subject:** [EXTERNAL] Please review attached memo re: CV 18-08311-ODW [UNDER SEAL]; U.S. ex rel.
IONM LLC and Justin Cheongsiatmoy, M.D., et al. v. USC

Counsel,

Please review the attached memo regarding the above referenced matter.

Thanks

Alice Chang, JD/MBA

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

# Exhibit I

**DATE:**    December 21, 2021 (*Delivered Via Electronic Mail*)

**FROM:**    Alice Chang, Esq.

**TO:**    Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal (frank.kortum@usdoj.gov)

Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Los Angeles County District Attorney's Office (mbeaart@da.lacounty.gov)

Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
Los Angeles County District Attorney's Office (sgfrankl@da.lacounty.gov)

John Fisher, Deputy Attorney General, California Department of Justice
Office of the Attorney General, Bureau of Medi-Cal Fraud (John.Fisher@doj.ca.gov)

Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
Fraud Liaison Bureau (mitch.neumeister@insurance.ca.gov)

**CC:**    Eliot Rushovich, Esq. (eliot@riselawfirm.com)

**RE:**    CV 18-08311-ODW [UNDER SEAL]; U.S. ex rel. IONM LLC and Justin Cheongsiatmoy, M.D., et al. v. USC

---

I write to follow-up on issues I raised in my December 20, 2021 memorandum which remain unresolved.

In response to AUSA Kortum's December 20, 2021 email, I disagree with the United States' position that disclosure of the exhibits to the Complaint to USC "wouldn't advice [sic] the progress of this case in any meaningful way."

As outlined in my communications since January 2021, USC's Non-Confidential Voluntary Self-Disclosure was made in bad faith in "an attempt to circumvent [an] ongoing inquiry" to avoid "integrity agreement obligations" at both USC Keck Hospital and Los Angeles County+USC Medical Center.

The exhibits to the Complaint demonstrate that USC's disclosures were made in bad faith; therefore, the United States' ongoing refusal to disclose the exhibits to the Complaint to USC is preventing discussions with USC regarding the fraudulent nature of its Non-Confidential Voluntary Self-Disclosure. The United States' use of the seal is therefore preventing resolution of the case and causing significant prejudice to Dr. Cheongsiatmoy's ability to resolve his claims.

Inclusion of USC's Non-Confidential Voluntary Self-Disclosure in the Complaint was also already addressed -- and any potential issues resolved -- when I met and conferred with AUSA Kortum via telephone in April 2021 prior to my filing of the Second Amended Complaint (SAC) wherein AUSA Kortum instructed to me to inform USC counsel of my intent to include USC's March 27, 2020 Non-Confidential Voluntary Self-Disclosure in the Complaint. I then informed USC counsel by telephone and in writing (Exhibit A-273 attached) and USC did not inform me that it had any objections.

I also reiterated in my April 22, 2021 email (Exhibit A-272 attached) that I received USC's Non-Confidential Voluntary Self-Disclosure from DAG Fisher who was not part of any common interest agreement with the United States or America and/or California Department of Insurance. None of the exhibits to the Complaint were obtained through any common interest agreement with the United States of America and/or California Department of Insurance.

All participating government entities subsequently stipulated to the Third Amended Complaint (TAC) and Fourth Amended Complaint (4AC) which incorporated by reference the exhibits including Exhibit 89 (USC's Non-Confidential Voluntary Self-Disclosure).

It is undisputed that USC did not identify any portion of its Non-Confidential Voluntary Self-Disclosure as confidential. Per OIG's Provider Self-Disclosure Protocol ¶H, "Disclosing parties should clearly identify any portion of their submissions they believe are trade secrets or are commercial, financial, privileged or confidential and therefore potentially exempt from disclosure under the Freedom of Information Act (FOIA), 5 U.S.C. §552." The non-confidential

Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal
Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
John Fisher, Deputy Attorney General, California Department of Justice
Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
December 21, 2021
Page 2 of 2

nature of USC's disclosure was also brought to the Court's attention as part of the motion practice wherein the Court granted leave to file the SAC which incorporated by reference USC's Non-Confidential Voluntary Self-Disclosure.

In the above-referenced April 22, 2021 email (Exhibit A-272 attached), I reiterated that Relator IONM LLC did not consent to the partial seal lift.  I reiterated in more recent communications that the United States did not obtain the consent of Relator IONM LLC to extend the seal.  I further reiterated that the United States also did not obtain the consent of Plaintiff-Relator Dr. Cheongsiatmoy to disclose his claims to USC.

In addition to reiterating my requests to the United States, State of California and Los Angeles County for which responses are due by 12PM today, I further reiterate my request that the United States email Mr. Rushovich and me by 12PM today with true and correct copies of all Memoranda of Points and Authorities in Support of Stipulation Extending Seal and Declaration of Frank D. Kortum in Support Thereof filed in this case to confirm the Court was truthfully informed throughout the 3 years this case has remained sealed to the public. Any resulting prejudice should be addressed with the Court prior to the end of the seal period which expires in 9 days.

All participating government entities ignored my multiple attempts since January 2021 to meet and confer. Instead, the United States only admitted to me on December 6, 2021 that the government had deemed its investigation complete and disclosed to USC an unredacted version of the Complaint without exhibits on October 27, 2021.  This admission was made outside the time period which would have allowed these issues to be heard as part of a regularly calendared motion within the seal period.

The irreparable harm caused by the failure of the United States, State of California and Los Angeles County to resolve the issues outlined in my December 20, 2021 memorandum is therefore appropriate for ex parte relief.

# Exhibit A-272

From: **Alice Chang JDMBA** <alicechangjdmba@gmail.com>
Date: Thu, Apr 22, 2021 at 6:38 PM
Subject: Re: Update on Dr. Cheongsiatmoy's whistleblower claims
To: Kortum, Frank (USACAC) <Frank.Kortum@usdoj.gov>
Cc: Steve Hasegawa <shasegawa@phillipsandcohen.com>, Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>, John Fisher <John.Fisher@doj.ca.gov>, Marc Beaart <MBeaart@da.lacounty.gov>, Marsh, Maria (USACAC) <Maria.R.Marsh@usdoj.gov>, Lam, Gabriel (USACAC) <Gabriel.Lam@usdoj.gov>


Frank, Marc, John and Mitch,

To clarify, USC's Self-Disclosure to HHS OIG I referenced in my April 15 email was sent to me by the California Attorney General's Office (DAG John Fisher).

As it relates to the above, since the Relator did not receive a Stipulation Request or Memorandum of Points and Authorities and Declaration before the partial seal lift following USC's Self-Disclosure to HHS OIG, can you please email me all the pleadings in this case at your earliest convenience?

To follow up on Dr. Cheongsiatmoy's related claims, his employment counsel contacted USC's employment counsel several times since my last communication with no acknowledgement at all from USC. As is apparent from USC's communications forwarded by Frank today, instead of responding to Dr. Cheongsiatmoy's employment counsel, USC would rather spend its time fishing for information to bring further retaliatory actions against him.

It appears USC is not only delaying resolution of the whistleblower claims but is also causing delays in resolving the qui tam claims by further retaliating against the whistleblower for providing files for the purpose of the government investigation into the fraud and significant patient harm.

USC's actions indicate it is not interested in working in good faith towards a successful settlement of the whistleblower claims which would relieve the government from getting involved in these collateral issues.

Attached, please find another memorandum and additional exhibits relevant to both the whistleblower and government claims for your investigation into the fraud causing patient deaths and injuries at both USC Keck and LAC+USC.

Since USC seems to be having trouble pulling its own records to investigate, I have added Location of Service to the FAC patient list previously sent to the government attorneys to identify the patient files Los Angeles County can pull directly from its own databases and LAC+USC Electronic Medical Record (EMR) system without involving USC. They are reattached here as Exhibit A-216 (USC and LAC+USC LA County Patient File Request by DOS & MRN for Government Investigation); Exhibit A-211 (2007 - 2008 LAC IOM Database); Exhibit A-8 (LAC IOM Database 2013-current). The password for the documents remains the same "uscquitam"

Thanks,
Alice Chang, JD/MBA

# Exhibit A-273

From: **Alice Chang JDMBA** <alicechangjdmba@gmail.com>
Date: Fri, Apr 30, 2021 at 7:37 AM
Subject: Re: Cheongsiatmoy v. USC: tolling agreement
To: David Lowe <dal@rezlaw.com>
Cc: Erika Iler <erika@cjattorneys.com>, Keith Carlson <Keith@cjattorneys.com>, Michelle G. Lee
<mgl@rezlaw.com>, Mark Hardiman <mhardiman@nelsonhardiman.com>


Mark, Keith and Erika,

I have confirmation from the United States of America that it has no objections to citing the existence
of USC's March 27 2020 Voluntary Self-Disclosure to OIG HHS in a Second Amended Complaint.

As you know, this information is available to the public including all patients who ever received IONM
services at USC and LAC+USC through FOIA because the disclosure itself and the contents
contained therein were not marked confidential. See OIG's Provider Self-Disclosure Protocol
¶H "Disclosing parties should clearly identify any portion of their submissions they believe are trade
secrets or are commercial, financial, privileged or confidential and therefore potentially exempt from
disclosure under the Freedom of Information Act (FOIA), 5 U.S.C. §552."

Thanks,
Alice Chang, JD/MBA


From: **David Lowe** <dal@rezlaw.com>
Date: Thu, Apr 29, 2021 at 6:51 PM
Subject: RE: Cheongsiatmoy v. USC: tolling agreement
To: Erika Iler <erika@cjattorneys.com>, Keith Carlson <Keith@cjattorneys.com>
Cc: alicechangjdmba@gmail.com <alicechangjdmba@gmail.com>, Michelle G. Lee
<mgl@rezlaw.com>, Mark Hardiman <mhardiman@nelsonhardiman.com>


Erika and Keith:

Thanks for your time on the phone yesterday.  Can we please fix a time for a follow-up call tomorrow
(Friday)?

Our objective is to get a deal in principle agreed to by the end of this week.  If that is not possible, we
plan to file by next Monday or Tuesday our motion to amend the *qui tam* action to add the
whistleblower/retaliation and related employment claims.

Regards,
David

David A. Lowe
**Rudy, Exelrod, Zieff & Lowe, L.L.P.**
351 California Street, Suite 700
San Francisco, California 94104
dal@rezlaw.com
Direct 415.394.6078 | Fax 415.434.0513 | www.rezlaw.com

# Exhibit J

From: **Kortum, Frank (USACAC)** <Frank.Kortum@usdoj.gov>
Date: Tue, Dec 21, 2021 at 9:15 AM
Subject: U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW (further response to your 12/20 message)
To: Alice Chang JDMBA <alicechangjdmba@gmail.com>
Cc: Eliot Rushovich <eliot@riselawfirm.com>, John Fisher <John.Fisher@doj.ca.gov>, Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>, Steven Frankland <sgfrankl@da.lacounty.gov>, Marc Beaart <mbeaart@da.lacounty.gov>


Ms. Chang,

In addition to the reasons set forth in my 12/20 message (below), the United States intends to oppose any *ex parte* application that you file on the ground that authorization has now been received to file a Notice of Non-Decision ("Notice") in this action, accompanied by a request that the Court order the unsealing of the Fourth Amended Complaint.\* Once that occurs, the issues raised in your 12/20 message—and any *ex parte* application based on those issues—will be moot because unsealing the complaint means that disclosure of the exhibits will automatically occur.  That said, I'm taking this opportunity to remind you that the complaint, once unsealed in response to the Notice, will become a public record—and relators may thereafter be called upon to justify the disclosure of any information in the complaint's exhibits that constitutes privileged and/or confidential information.  (As you know, some preliminary objections to disclosure were set forth in my 12/17 message, but you've thus far failed to address those objections.)  Pursuant to Local Rule 7-19, please attach a copy of this message to any *ex parte* application that you file as a further statement of our position regarding the application (in addition to the statements of our position set forth in my 12/17 message) so that the Court will (A) be made immediately aware of the mootness issue; and (B) have a preliminary understanding of the basis for our position in advance of our formal opposition to the application.

Frank Kortum (cell 213.393.5512)


\*  *See e.g.*, *Uchytil, on behalf of the United States v. Avande, Inc.*, 2018 WL 4150889 at *1 n.1 (W.D. Wash. Feb. 27, 2018).  The Notice will be based on relators' statement that they'd oppose any request for an extension of the seal period, which means that the United States won't have received enough evidence to make an informed decision regarding intervention.

# Exhibit K

STATE OF CALIFORNIA                                                          *Ricardo Lara, Insurance Commissioner*

## DEPARTMENT OF INSURANCE

**Legal Division, Fraud Liaison Bureau**
300 Capitol Mall, 16ᵗʰ fl
Sacramento, CA 95814



Mitch Neumeister
Attorney III
TEL: (916) 492-3133
E-Mail: Mitch.Neumeister@insurance.ca.gov
www.insurance.ca.gov

December 21, 2021

Re: United States ex rel. IONM LLC and Justin Cheongsiatmoy, M.D., et al. v. USC (Case No.: 18-cv-08311) [UNDER SEAL]

Dear Ms. Chang,

  I am writing in response to your letter data December 20, 2021 and your requests for "[a]ll true and correct copies of all subpoenas" and "detailed logs of all evidence produced by any defendant." Please consider this letter to reflect the State of California's, through the California Department of Insurance, opposition to your *ex parte* application that may be filed "as early as December 21, 2021." Please attach this letter to your *ex parte* application to the court as the judge's rules require that you include a "statement of opposing counsel's application."

  First, I share AUSA Frank Kortum's position that the requests you make in your December 16, 2021 and December 17, 2021 letter are not ripe for an *ex parte* request. Under the standards elucidated in *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F.Supp. 488 (C.D. Cal. 1995) and *Hoist Fitness Systems, Inc. v. TuffStuff Fitness International, Inc.* 2018 WL 8222261 at *3 (C.D. Cal. December 2018), there is no emergency that justifies *ex parte* relief. Additionally, as further described below, no emergency exists that would justify any *ex parte* request based on the issue raised in your December 16, 2021 and December 17, 2021 letters.

  Second, you request for "[a] all true and correct copies of all subpoenas" issued by the State of California has already been fulfilled as you already have a copy of the sole investigative subpoena issued by the State of California through the California Department of Insurance which is found in Exhibit 89 of the Fourth Amended Complaint. Further, you ask for documents regarding "documentation of any and all changes in parameters" as you claim those documents are "necessary to address the reason USC intentionally omitted any references to fraud committed by USC" in its self-disclosure letters. I am not sure what is meant by "parameters" and am unable to fully respond but I can state that USC made six productions of documents to the California Department of Insurance and the productions included additional relevant documents that went beyond the subpoena's scope.

  Third, your request for "detailed logs of all evidence produced by any defendant in this case which the State of California instructed deleted and/or replaced from any datasets." Your request for the "detailed logs" is in regards to your continued false assertion that the State of California, through the California Department of Insurance, caused the spoliation of evidence. This is simply untrue. All documents produced to the California Department of Insurance by

United States ex rel. IONM LLC and Justin Cheongsiatmoy, M.D., et al. v. USC (Case No.: 18-cv-08311) [UNDER SEAL]
Page 2

USC are in its possession and no spoliation has occurred. I have already addressed your repeated false assertions in my November 9, 2021 email which is attached as Attachment A. Given your continued repeated false assertion after my November 9, 2021 email, I want to provide you with more context as to how the documents at issue were stored so as to put this issue to rest. When CDI received documents from USC, the documents and data are downloaded to a CDI-internal shared drive. A *copy* of the documents and data is then uploaded to our eDiscovery vendor (either Elevate or Ernst & Young). Even though a copy of the documents and data is uploaded to an eDiscovery vendor, the documents and data continue to remain on the CDI-internal shared drive. Even if documents are deleted from an eDiscovery vendor, which was requested by me per a contractual and budgeting issue, they still remain on the CDI-internal shared drive. With my further explanation provided, I consider your false assertion that the California Department of Insurance caused the spoliation to be resolved. Since no evidence has been lost or spoiled, your contemplated *ex parte* application is not warranted as no emergency exists.

Fourth, I echo AUSA Frank Kortum's request found in his December 17, 2021 email that you identify documents that you request to be disclosed to USC that may have come from the California Department of Insurance's subpoena. I also want to make an additional request that you identify all documents either found in the body of the amended complaints or attached as exhibit in the Second, Third, and Fourth Amended Complaints that were produced as a result of the California Department of Insurance's subpoena. This request is being made pursuant to the terms of the Agreement Regarding Common Interest and Disclosure of Information ("Common Interest Agreement") entered into between the California Department of Insurance and Dr. Justin Cheongsiatmoy and yourself. A copy of the signed agreement is attached as Attachment B and C.

Finally, I note that in your letter dated December 7, 2021 that you attached as exhibits documents (see pages 118 through 124 of the letter) that were produced to the California Department of Insurance and shared with your former counsel, Dr. Justin Cheongsiatmoy, and yourself pursuant to the Common Interest Agreement. Per the Common Interest Agreement, these documents are not to be shared with "any other person or entity" unless you receive written consent from the California Department of Insurance. To be clear, you do not have the California Department of Insurance's written consent to share any document that was produced to the California Department of Insurance.

Regards,

Mitch Neumeister

# Attachment A

| | |
|---|---|
| **From:** | Neumeister, Mitch |
| **To:** | Alice Chang JDMBA |
| **Cc:** | Kortum, Frank (USACAC); John Fisher; Eliot Rushovich; Marlan Wilbanks |
| **Subject:** | Re: CONFIDENTIAL Memo for Government Investigation RE: U.S. ex rel. IONM LLC and Justin Cheongsiatmoy, M.D., et al. v. USC -[UNDER SEAL] CV 18-08311-ODW(AS) - attached |
| **Date:** | Monday, November 8, 2021 3:25:00 PM |

Ms. Chang,

This email is to address your November 2, 2021 letter to the government entities including the California Department of Insurance ("CDI"). In your letter, you state that there has been "irreparable spoliation of evidence as a result of the State of California's…written orders." Your characterization of the emails lacks context and your insinuations are incorrect. I understand you are not familiar with the internal machinations of CDI but I will provide some background for your understanding as your letter demonstrates a lack necessary context. CDI contracts with eDiscovery vendors who host and provide searching capabilities through Relativity. At the time, these services provided to CDI were provided through an entity called Elevate Services. Due to CDI's expiring contract with Elevate Services, CDI had to remove and transfer documents being held and serviced by Elevate Services. The emails contained within Exhibit A-265 reflect CDI's directive to its eDiscovery vendor, Elevate Services, to remove documents from the Elevate database because the Department was losing Elevate Services as a vendor and would not be able to pay for storing the documents without a valid contract. The emails reflect a contracting issue with CDI and Elevate Services, and nothing nefarious as your letter suggests.  The 217 documents at issue were deleted after the documents were downloaded by the California Department of Insurance.

Mitch Neumeister

# Attachment B

## AGREEMENT REGARDING COMMON INTEREST
## AND DISCLOSURE OF INFORMATION

The parties to this Agreement are the California Department of Insurance (the "Department"), IONM LLC ("Relator"), and Justin Cheongsiatmoy and Alice Chang (collectively, "IONM Members"). (The Department, Relator, and the IONM Members are collectively referred to as the "Parties to the Agreement" hereinafter.) This agreement sets forth the understanding between the Parties to the Agreement regarding the sharing of information.

A.    Common Interest

1.    It is understood that, with respect to their interests in pursuing the Department's recovery from the Defendants in *United States et al. ex rel. IONM LLC v. University of Southern California*, No. CV 18-08311-PA (the action), the Parties to the Agreement share a "common interest" as that term is used in *In re Grand Jury Subpoenas 89-3 and 89-4*, 902 F.2d 244, 249 (4th Cir. 1990). In furtherance of their common interest, the Parties to the Agreement may find it beneficial to disclose to each other information that is protected under the attorney-client privilege, work product doctrine, investigative privilege and/or other privileges. Accordingly, the Parties to the Agreement have agreed that sharing of such information between them will not, in itself, constitute a waiver of any privileges or work product.

2.    The common interest of the Parties to the Agreement predates this Agreement and this Agreement shall apply to any information that the Parties to the Agreement have shared before or will share after the date of this agreement.

B.    Disclosure of Information to the California Department of Insurance by the Relator and to the IONM Members

1.    Notwithstanding the provisions of section A herein, any report, document, or information disclosed to the Department by the Relator or by the IONM Members ("Relator/IONM Member Disclosed Information") pursuant to this Agreement or otherwise may be used and disclosed by the Department as it deems appropriate in the action and in any criminal, civil, administrative, or contractual proceeding.

2.    The Department reserves the right to disseminate Relator/IONM Member Disclosed Information to any other federal governmental entity or State of California government entity regarding any potential violation of law or regulation or regarding any matter within that entity's jurisdiction.

3.    The Department will use reasonable efforts promptly to notify the Relator and the IONM Members in writing of any Freedom of Information Act (FOIA) request, California Public Records Request (CPRA), subpoena, or, in a case in which the United States is a party, formal discovery request, served on the United States for disclosure of any Relator/IONM Member Disclosed Information.

C.    Disclosure of Information to the Relator or to IONM Members by the Department

1.    Any report, document or information disclosed to the Relator or to any IONM Member (hereinafter reference to the Relator and IONM Members includes counsel for the Relator and for the IONM Members and other agents of Relator and of IONM Members) by the Department, or any of its employees, agents, or contractors, shall be referred to as CDI Disclosed Information.

2.    CDI Disclosed Information is the property of the Department. Both Relator and IONM Members will return CDI Disclosed Information to the Department's counsel within five days after Department counsel requests that the Relator and/or the IONM Members return the CDI Disclosed Information, time being of the essence.

3.    Before either Relator or the IONM Members can give any other person or entity access to CDI Disclosed Information, (a) either the Relator or the IONM Members must obtain the written consent from Department counsel, which consent Department counsel can refuse or otherwise withhold for any reason in the sole discretion of Department counsel, and (b) such person or entity shall agree in writing to be bound by the terms of this Agreement by executing an acknowledgement in the form attached hereto as Exhibit A and counsel for the Relator or for the IONM Members shall deliver an executed copy of said acknowledgement to Department counsel.

4.    The Department expressly reserves the right to seek dismissal under California Insurance Code section 1871.7(f)(2)(A), or any other legally applicable ground, in the event Relator, an IONM Member, or any other person or entity, uses CDI Disclosed Information to add new claims or defendants to the action, pursue any other False Claims Act action, or assist anyone else to file or pursue a False Claims Act action.

5.    The Parties to the Agreement do not intend by this Agreement to confer on any IONM Member the status of a relator and/or the status of a party to the action.

The Parties to the Agreement may sign and date duplicates of this Agreement with each duplicate being an original of this Agreement. Each of the Parties to the Agreement has participated in the drafting of this Agreement and has entered into this Agreement with the

assistance of counsel. All parties jointly, and no one party individually, shall be deemed to be the drafter of this Agreement.

IN WITNESS WHEREOF, each party, through the party's counsel, signs hereafter this Agreement on the date shown across from the counsel's signature.

Dated:  November 4, 2019              COTCHETT, PITRE & McCARTHY, LLP

JUSTIN T. BERGER / SFF

Attorneys for Relator and IONM Members

IONM LLC

Alice Chang
(print name of corporate officer)              (signature of corporate officer)

Justin Cheongsiatmoy (IONM Member)

(signature)                                     November 6, 2019
                                                Date

Alice Chang (IONM Member)

(signature)                                     November 6, 2019
                                                Date

Dated:     November ____, 2019        RICARDO LARA
                                      California Insurance Commissioner

                                      MITCHELL NEUMEISTER
                                      False Claims Trial Attorney

                                      Attorney for the
                                      California Department of Insurance

Exhibit A

   I have read and understand the Agreement Regarding Common Interest and Disclosure of Information that has been entered into by IONM LLC, Justin Cheongsiatmoy, and Alice Chang and the United States in *United States et al. ex rel. IONM LLC v. University of Southern California*, No CV 18-08311-PA (C.D. Cal.) and I agree to be bound by all of its provisions and terms.


_____          _____
(print name)                                              (signature)


Dated: _____

**Attachment C**

## AGREEMENT REGARDING COMMON INTEREST
## AND DISCLOSURE OF INFORMATION

The parties to this Agreement are the California Department of Insurance (the "Department"), IONM LLC ("Relator"), and Justin Cheongsiatmoy and Alice Chang (collectively, "IONM Members"). (The Department, Relator, and the IONM Members are collectively referred to as the "Parties to the Agreement" hereinafter.) This agreement sets forth the understanding between the Parties to the Agreement regarding the sharing of information.

A.  Common Interest

1.  It is understood that, with respect to their interests in pursuing the Department's recovery from the Defendants in *United States et al. ex rel. IONM LLC v. University of Southern California*, No. CV 18-08311-PA (the action), the Parties to the Agreement share a "common interest" as that term is used in *In re Grand Jury Subpoenas 89-3 and 89-4*, 902 F.2d 244, 249 (4th Cir. 1990). In furtherance of their common interest, the Parties to the Agreement may find it beneficial to disclose to each other information that is protected under the attorney-client privilege, work product doctrine, investigative privilege and/or other privileges. Accordingly, the Parties to the Agreement have agreed that sharing of such information between them will not, in itself, constitute a waiver of any privileges or work product.

2.  The common interest of the Parties to the Agreement predates this Agreement and this Agreement shall apply to any information that the Parties to the Agreement have shared before or will share after the date of this agreement.

B.  Disclosure of Information to the California Department of Insurance by the Relator and to the IONM Members

1.  Notwithstanding the provisions of section A herein, any report, document, or information disclosed to the Department by the Relator or by the IONM Members ("Relator/IONM Member Disclosed Information") pursuant to this Agreement or otherwise may be used and disclosed by the Department as it deems appropriate in the action and in any criminal, civil, administrative, or contractual proceeding.

2.  The Department reserves the right to disseminate Relator/IONM Member Disclosed Information to any other federal governmental entity or State of California government entity regarding any potential violation of law or regulation or regarding any matter within that entity's jurisdiction.

3.  The Department will use reasonable efforts promptly to notify the Relator and the IONM Members in writing of any Freedom of Information Act (FOIA) request, California Public Records Request (CPRA), subpoena, or, in a case in which the United States is a party, formal discovery request, served on the United States for disclosure of any Relator/IONM Member Disclosed Information.

C.    Disclosure of Information to the Relator or to IONM Members by the Department

1.    Any report, document or information disclosed to the Relator or to any IONM
Member (hereinafter reference to the Relator and IONM Members includes counsel for the
Relator and for the IONM Members and other agents of Relator and of IONM Members) by the
Department, or any of its employees, agents, or contractors, shall be referred to as CDI Disclosed
Information.

2.    CDI Disclosed Information is the property of the Department.  Both Relator and
IONM Members will return CDI Disclosed Information to the Department's counsel within five
days after Department counsel requests that the Relator and/or the IONM Members return the
CDI Disclosed Information, time being of the essence.

3.    Before either Relator or the IONM Members can give any other person or entity
access to CDI Disclosed Information, (a) either the Relator or the IONM Members must obtain
the written consent from Department counsel, which consent Department counsel can refuse or
otherwise withhold for any reason in the sole discretion of Department counsel, and (b) such
person or entity shall agree in writing to be bound by the terms of this Agreement by executing
an acknowledgement in the form attached hereto as Exhibit A and counsel for the Relator or for
the IONM Members shall deliver an executed copy of said acknowledgement to Department
counsel.

4.    The Department expressly reserves the right to seek dismissal under California
Insurance Code section 1871.7(f)(2)(A), or any other legally applicable ground, in the event
Relator, an IONM Member, or any other person or entity, uses CDI Disclosed Information to add
new claims or defendants to the action, pursue any other False Claims Act action, or assist
anyone else to file or pursue a False Claims Act action.

5.    The Parties to the Agreement do not intend by this Agreement to confer on any
IONM Member the status of a relator and/or the status of a party to the action.

The Parties to the Agreement may sign and date duplicates of this Agreement with each
duplicate being an original of this Agreement.  Each of the Parties to the Agreement has
participated in the drafting of this Agreement and has entered into this Agreement with the

assistance of counsel.  All parties jointly, and no one party individually, shall be deemed to be the drafter of this Agreement.

IN WITNESS WHEREOF, each party, through the party's counsel, signs hereafter this Agreement on the date shown across from the counsel's signature.

Dated:   November _____, 2019          COTCHETT, PITRE & McCARTHY, LLP


_____
JUSTIN T. BERGER

Attorneys for Relator and IONM Members


IONM LLC

_____                    _____
(print name of corporate officer)                           (signature of corporate officer)


Justin Cheongsiatmoy (IONM Member)

_____                    _____
(signature)                                                             Date


Alice Chang (IONM Member)

_____                    _____
(signature)                                                             Date


Dated:      November 15 , 2019          RICARDO LARA
                                                          California Insurance Commissioner

                                                          _____
                                                          MITCHELL NEUMEISTER
                                                          False Claims Trial Attorney


                                                          Attorney for the
                                                          California Department of Insurance

Exhibit A

     I have read and understand the Agreement Regarding Common Interest and Disclosure of Information that has been entered into by IONM LLC, Justin Cheongsiatmoy, and Alice Chang and the United States in *United States et al. ex rel. IONM LLC v. University of Southern California*, No CV 18-08311-PA (C.D. Cal.) and I agree to be bound by all of its provisions and terms.


_____          _____

(print name)                                                                  (signature)


Dated: _____

# Exhibit L

**DATE:**    December 21, 2021 (*Delivered Via Electronic Mail*)

**FROM:**    Alice Chang, Esq.

**TO:**    Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal (frank.kortum@usdoj.gov)

        Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Los Angeles County District Attorney's Office (mbeaart@da.lacounty.gov)

        Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
Los Angeles County District Attorney's Office (sgfrankl@da.lacounty.gov)

        John Fisher, Deputy Attorney General, California Department of Justice
Office of the Attorney General, Bureau of Medi-Cal Fraud (John.Fisher@doj.ca.gov)

        Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
Fraud Liaison Bureau (mitch.neumeister@insurance.ca.gov)

**CC:**    Eliot Rushovich, Esq. (eliot@riselawfirm.com)

**RE:**    CV 18-08311-ODW [UNDER SEAL]; U.S. ex rel. IONM LLC and Justin Cheongsiatmoy, M.D., et al. v. USC

---

I write to inform you that earlier today, Mr. Rushovich and I had a teleconference with AUSA Kortum who is in the process of obtaining authorization to (1) disclose to Mr. Rushovich and me true and correct copies of all Memoranda of Points and Authorities in Support of Stipulation Extending Seal and Declaration of Frank D. Kortum in Support Thereof filed in this case; and (2) disclose to USC all 150 Exhibits to the Complaint.

Given the fact that the United States asked for a couple of days to fulfill its obligations, Dr. Cheongsiatmoy has agreed to wait until at least 12PM on Thursday, December 23, 2021 to have the issues raised in my previous correspondences and reiterated herein addressed by the Court on an ex parte basis.

Los Angeles County still has not responded to reach a resolution that would eliminate a hearing on such issues.

The State of California's explanations provided in Mr. Neumeister's November 8, 2021 email ("Due to CDI's expiring contract with Elevate Services, CDI had to remove and transfer documents being held and serviced by Elevate Services") and again in Mr. Neumeister's December 21, 2021 letter ("documents [were] deleted from an eDiscovery vendor, which was requested by me per a contractual and budgeting issue…") are not consistent with the written communications between the State of California and Elevate.  See Exhibit A-275 attached.

The State of California's written instruction to Elevate to delete "without backup" the 217 files from USC's document production with a completely different explanation for the deletion on the basis "that they have PHI on it" is not warranted in light of the fact thousands of the remaining files in the database "had PHI on it."  Yet, the State of California still "ask[ed] that Elevate transfer the remaining docs to another entity (non-government entity, former Relator's counsel Cotchett, Pitre & McCarthy), a transfer the State of California specifically ordered to occur only after the deletion of evidence.

This transfer of spoliated evidence by the State of California in an ongoing matter should never have occurred absent a Court-approved resolution and I intend to ask the Court to address irreparable prejudice caused by the State of California before this case is unsealed.

As I noted in my previous communications, the State of California instructed the deletion of evidence only 4 days prior to the United States' disclosure of the Complaint to USC with the intent of settling the Complaint on the basis of USC's Non-Confidential Voluntary Self-Disclosure.

Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal
Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
John Fisher, Deputy Attorney General, California Department of Justice
Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
December 21, 2021
Page 2 of 2

The State of California's December 21, 2021 response that it is "not sure what is meant by 'parameters' and [is] unable to fully respond" is not an acceptable answer to questions raised regarding the irreparable injury caused to current and future parties of interest.

I again ask for the State of California to provide documentation regarding the narrowing of the scope of the subpoena which allowed USC to produce only documents from the physician group, USC Care Medical Group, Inc when the original scope of the subpoena specifically included both hospitals, USC Keck Hospital and Los Angeles County+USC Medical Center. This issue of serious "holes in [USC's] document production" was raised by Relator over 2 years ago. See Exhibit A-276 attached.

I therefore respectfully request the State of California respond to the above-referenced requests and provide the documentation for any and all changes to the scope of "the sole investigative subpoena issued by the State of California" by end of day tomorrow, December 22, 2021. This is necessary to determine the State of California's role as it relates to the fraudulent nature of USC's Non-Confidential Voluntary Self-Disclosure (Exhibit 89).

# Exhibit A-275

From: Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>
Sent: Tuesday, November 10, 2020 10:20 AM
To: Giuseppe Benedetti <GBenedetti@cpmlegal.com>
Subject: FW: U.S. ex rel. IONM v. USC: Deficiencies in disclosure to CDI

Giuseppe,
Per the email from Nazy I want to see what would be needed to transfer the database from CDI's relativity to CPM's. Hopefully it is easy.

Thanks,
Mitch

From: Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>
Sent: Thursday, November 19, 2020 7:04 PM
To: Lindsay Chastain
Subject: California Department of Insurance - USC Matter

Lindsay,
As I prepare to move this matter to co-counsel, I need to make sure that every document that has the "Civil-Reviewer issue tagged with "MSN" is removed from the data set. I used "MSN" (my initials) to note docs that have PHI on it. Can you have those docs pulled from the database before I transfer them over to them?

Thanks,
Mitch

From: Lindsay Chastain <lindsay.chastain@elevateservices.com>
Sent: Thursday, November 19, 2020 4:09 PM
To: Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>; Relativity <relativity@elevateservices.com>
Subject: Re: California Department of Insurance - USC Matter
Hi Mitch,

I'm cc'ing our support team. They will reach out to you shortly to assist!

Thanks,
Lindsay

Lindsay Chastain
Director, Disputes and Investigations
+1 516 998 5642
Elevate | https://elevateservices.com
Sent from my mobile device

From: Pamela Ringer-Britz <pamela.ringer-britz@elevateservices.com>
Sent: Thursday, November 19, 2020 4:55:37 PM
To: Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>
Cc: Lindsay Chastain <lindsay.chastain@elevateservices.com>; Relativity <relativity@elevateservices.com>

Subject: RE: California Department of Insurance - USC Matter

Hi Mitch,
There are 217 items (including family members) that are tagged "MSN" in the "Civil - Reviewer" field. If I understand correctly, these should be removed entirely with no backup? Or should we have a backup made for these items?
Link to search: USC 2018-46 - 20201119 Remove - https://elevate us.relativity.one/Relativity/go?id=7910194-1384236

Thanks!

Pamela
Pamela Ringer-Britz
eDiscovery Project Manager
+1 4155780286
+1 4155780286
Elevate | elevateservices.com


From: Pamela Ringer-Britz <pamela.ringer-britz@elevateservices.com>
Sent: Thursday, November 19, 2020 4:58:08 PM
To: Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>
Cc: Relativity <relativity@elevateservices.com>
Subject: RE: California Department of Insurance - USC Matter

Hi Mitch,

A backup would be a full export of the document native, images, searchable text, and all coding related. Do let us know if this would be required or necessary?
Thanks!
Pamela


From: Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>
Sent: Friday, November 20, 2020 8:14 AM
To: Pamela Ringer-Britz <pamela.ringer-britz@elevateservices.com>
Cc: Relativity <relativity@elevateservices.com>
Subject: RE: California Department of Insurance - USC Matter
Pamela,
I also want to talk to you about this quote for work related to our Engler matter too. So let's find time to speak today.

Processing = 35GB @ $85/GB = approx. $2,975 one-time
Tech time = 2-4 hours @ $175 = $350 - $700 one-time
Hosting monthly = assuming expansion about 52GB @ $9/GB = approx. $468/mo

Thanks,
Mitch

From: Pamela Ringer-Britz <pamela.ringer-britz@elevateservices.com>
Sent: Friday, November 20, 2020 1:38 PM
To: Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>
Cc: Relativity <relativity@elevateservices.com>; Kunoor Chopra <kunoor.chopra@elevateservices.com>
Subject: RE: California Department of Insurance - USC Matter

Hi Mitch,
Thanks again for the call. Attached are the PI items marked MSN (and their families) – a cross-reference of fielded information (coding and metadata).
Saved search to these items below. Can you confirm we can proceed with deletion? Also, should we delete the MSN tag?
SEARCH: USC 2018-46\20201119 Remove https://elevate-us.relativity.one/Relativity/go?id=7910194-1384236
COUNT: 217 docs
Best,
Pamela
Pamela Ringer-Britz
eDiscovery Project Manager
+1 4155780286
+1 4155780286

From: Pamela Ringer-Britz <pamela.ringer-britz@elevateservices.com>
Sent: Tuesday, November 24, 2020 2:38 PM
To: Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>
Cc: Relativity <relativity@elevateservices.com>
Subject: RE: California Department of Insurance - USC Matter

Hi Mitch,
Quick follow up on this one.

Best,
Pamela
Pamela Ringer-Britz
eDiscovery Project Manager
+1 4155780286
+1 4155780286

From: Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>
Sent: Tuesday, November 24, 2020 2:48 PM
To: Pamela Ringer-Britz <pamela.ringer-britz@elevateservices.com>
Cc: Relativity <relativity@elevateservices.com>
Subject: RE: California Department of Insurance - USC Matter

Sorry. But yes, please proceed with deleting the 217 docs from the database. Please keep the MSN tag though for future use.

From: John Nguyen <john.nguyen@elevateservices.com>
Sent: Tuesday, November 24, 2020 2:56 PM
To: Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>; Pamela Ringer-Britz <pamela.ringerbritz@ elevateservices.com>
Cc: Relativity <relativity@elevateservices.com>
Subject: RE: California Department of Insurance - USC Matter

Hi Mitch,
We'll proceed with deleting the 217 documents tomorrow morning without a backup on our end (understanding you have PDF versions of the documents already). Please let us know if you would like Elevate to keep a copy of the documents on the network.

Thanks,
John
John Nguyen
Host Operations Manager
(971) 348-9579

From: Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>
Sent: Tuesday, November 24, 2020 3:00 PM
To: John Nguyen <john.nguyen@elevateservices.com>; Pamela Ringer-Britz <pamela.ringer-britz@elevateservices.com>
Cc: Relativity <relativity@elevateservices.com>
Subject: RE: California Department of Insurance - USC Matter

Thanks John. Well I did ask that Elevate transfer the remaining docs to another entity that should have emailed you already. The person would have been Valarie Barretto.

From: John Nguyen <john.nguyen@elevateservices.com>
Sent: Tuesday, November 24, 2020 3:08 PM
To: Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>; Pamela Ringer-Britz <pamela.ringerbritz@

elevateservices.com>
Cc: Relativity <relativity@elevateservices.com>
Subject: RE: California Department of Insurance - USC Matter

Thanks for confirming. We'll proceed with the deletion in the morning. I'll also double check internally regarding the transfer and will follow up with any questions.

Thanks,
John
John Nguyen
Host Operations Manager
(971) 348-9579

From: Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>
Sent: Wednesday, November 25, 2020 11:15 AM
To: Valerie Barretto <vbarretto@cpmlegal.com>
Subject: RE: California Department of Insurance - USC Matter

Just want to check in to make sure that this got handled.

From: Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>
Sent: Tuesday, December 1, 2020 12:15 PM
To: Valerie Barretto <vbarretto@cpmlegal.com>
Subject: RE: California Department of Insurance - USC Matter

Valerie,
I just want to check to make sure that Elevate transferred the USC docs to CPM.

Thanks,
Mitch

From: Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>
Sent: Tuesday, December 15, 2020 12:55 PM
To: Valerie Barretto <vbarretto@cpmlegal.com>
Subject: RE: California Department of Insurance - USC Matter

Valerie,
I have a new production from USC that I need uploaded to Relativity. How should I transfer that for upload?

Thanks,
Mitch

From: Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>
Sent: Monday, December 21, 2020 9:24 AM
To: Giuseppe Benedetti <GBenedetti@cpmlegal.com>
Subject: RE: California Department of Insurance - USC Matter
I just started reviewing this and I have an odd request. I need you to make the newest production that is in "Rev 002" to be only viewable by me at this point. I have some concerns about PHI being on the documents.

# Exhibit A-276

**From:** Justin Berger [mailto:JBerger@cpmlegal.com]
**Sent:** Monday, December 30, 2019 4:53 PM
**To:** Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>; Sarvenaz Fahimi <SFahimi@cpmlegal.com>; Kortum, Frank (USACAC) <Frank.Kortum@usdoj.gov>
**Subject:** RE: USC Doc Review

Hi Mitch,

I hope you are having a nice Holidays.  Did you get a chance to look back at your notes to confirm the parameters of what USC agreed to produce?  We continue to run into holes in the production.

Thanks, and Happy New Year!

Best,

Justin T. Berger
*Partner*
COTCHETT PITRE & McCARTHY LLP
A LITIGATION LAW FIRM – SAN FRANCISCO, LOS ANGELES, NEW YORK
840 Malcolm Road, Suite 200  |  Burlingame, CA 94010
Tel:  (650) 697-6000  |  Fax:  (650) 697-0577  |  Email:  jberger@cpmlegal.com

# Exhibit M

**DATE:**     December 22, 2021 (*Delivered Via Electronic Mail*)

**FROM:**    Alice Chang, Esq.

**TO:**       Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal (frank.kortum@usdoj.gov)

             Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
             Los Angeles County District Attorney's Office (mbeaart@da.lacounty.gov)

             Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
             Los Angeles County District Attorney's Office (sgfrankl@da.lacounty.gov)

             John Fisher, Deputy Attorney General, California Department of Justice
             Office of the Attorney General, Bureau of Medi-Cal Fraud (John.Fisher@doj.ca.gov)

             Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
             Fraud Liaison Bureau (mitch.neumeister@insurance.ca.gov)

**CC:**       Eliot Rushovich, Esq. (eliot@riselawfirm.com)

**RE:**      CV 18-08311-ODW [UNDER SEAL]; U.S. ex rel. IONM LLC and Justin Cheongsiatmoy, M.D., et al. v. USC

---

I write to respond to the State of California's request this morning to further delay the ex parte application to inform you that Dr. Cheongsiatmoy does not agree to any further extensions and continues to reserve his right file the ex parte application as early as tomorrow, December 23, 2021 at 12PM.

I also write to inform you that as I was finalizing exhibits to the ex parte application for which AUSA Kortum specifically requested I attach a copy of his December 20, 2021 email and further attach a copy of "Document2," I note that the "Document2" AUSA Kortum requested I submit to the Court contains misrepresentations for which I am providing an exemplar below. In particular, select portions of the true and correct conversations were changed/deleted; the Court will so be informed of the misrepresentations AUSA Kortum asked me to submit to the Court as part of the ex parte application. See "Document 2" (top excerpt) which AUSA Kortum requested I submit to the Court as compared to the true and correct copy (bottom excerpt) of the communications between counsel where misrepresentations are underlined.

**From:** Kortum, Frank (USACAC)
**Sent:** Friday, November 26, 2021 1:00 PM
**To:** Alice Chang JDMBA <alicechangjdmba@gmail.com>
**Cc:** Eliot Rushovich <eliot@riselawfirm.com>; Steven Frankland <sgfrankl@da.lacounty.gov>; Marc Beaart <mbeaart@da.lacounty.gov>; John Fisher <John.Fisher@doj.ca.gov>; Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>; Marian Wilbanks <mbw@wilbanksgouinlock.com>
**Subject:** RE: [EXTERNAL] Re: Please review attached memo re: CV 18-08311-ODW [UNDER SEAL]; U.S. ex rel. IONM LLC and Justin Cheongsiatmoy, M.D., et al. v. USC

Ms. Chang,

The memorandum attached to your 10/26 message (see attached "Document1"), which as you may recall I sent to you on several previous occasions (including 10/29). I'm accordingly requesting that you and counsel for the respective government entities (copied on this message) respond as soon as conveniently possible regarding availability for the telephonic meeting that you requested, after which perhaps Mr. Rushovich's office can circulate a dial-in for those who wish to participate. (I'm generally available after 10 a.m. Monday (as well as the remainder of next week).)

Frank Kortum (cell 213.393.5512)

Ms. Chang,

The memorandum attached to your 11/26 message appears to substantially comply with the conditions that Mr. Wilbanks set forth in his 10/26 message (see attached "Document1"), which as you may recall I sent to you on several previous occasions (including 10/29). I'm accordingly requesting that you and counsel for the respective government entities (copied on this message) respond as soon as conveniently possible regarding availability for the telephonic meeting that you requested, after which perhaps Mr. Rushovich's office can circulate a dial-in for those who wish to participate. (I'm generally available today and all of next week; it's my understanding that Mr. Neumeister's available today after 3:30 p.m. today and after 10 a.m. Monday (as well as the remainder of next week).)

Frank Kortum (cell 213.393.5512)

# Exhibit N

From: **Alice Chang JDMBA** <alicechangjdmba@gmail.com>

Date: Thu, Dec 23, 2021 at 11:14 AM

Subject: Re: U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW (responding to memo attached to your 12/21 message)

To: Kortum, Frank (USACAC) <Frank.Kortum@usdoj.gov>, Marc Beaart <mbeaart@da.lacounty.gov>, John Fisher <John.Fisher@doj.ca.gov>, Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>, Steven Frankland <sgfrankl@da.lacounty.gov>

Cc: Eliot Rushovich <eliot@riselawfirm.com>

AUSA Kortum,

My position is such that when the United States decided -- unilaterally and without any consent from any relator -- to disclose the Complaint to USC, the exhibits should have been disclosed at the same time since the exhibits were incorporated by reference and part of the Complaint.

It is still not clear why the United States did not authorize disclosure of the exhibits at the time the United States disclosed the Complaint nearly 2 months ago. It is also not clear why the United States did not seek consent from Dr. Cheongsiatmoy prior to disclosing his claims to USC.  The United States was aware that Relator IONM LLC did not consent to the partial seal lift and the United States was also aware Dr. Cheongsiatmoy became a Co-Relator in his personal capacity in May 2021 concurrent with the filing of the SAC.  It is still my position that Dr. Cheongsiatmoy should have been given the opportunity to weigh in before the United States disclosed a copy of the Complaint containing his claims. Nonetheless, now that the United States has finally authorized disclosure of the exhibits to USC, please immediately disclose all 150 exhibits to the Fourth Amended Complaint to Mark Hardiman (USC counsel) with copy to all counsel.

I have copied Los Angeles County Fraud & Corruption Prosecution Bureau Director Marc Beaart on this email since he represented Los Angeles County when the participating government entities agreed to disclose the allegations of the Complaint to USC in response to USC's Non-Confidential Voluntary Self-Disclosure (Exhibit 89) which omitted all references to the fraud USC committed at Los Angeles County+USC Medical Center.

Once the United States makes the disclosure of the 150 exhibits, I will plan to have a discussion with Mr. Hardiman since he was the one who certified USC's Non-Confidential Voluntary Self-Disclosure (Exhibit 89) with Thomas Jackiewicz on behalf of Keck Medicine of USC (defined in the CDI subpoena ¶G as including "Keck Medical Center" and "LAC+USC Medical Center".) Exhibit A to USC's Non-Confidential Voluntary Self-Disclosure.

I will, of course, include all counsel in those discussions -- but in particular, I expect Los Angeles County to participate in these discussions of the exhibits to the Complaint which prove the bad faith nature of USC's disclosure as there was significant fraud committed at Los Angeles County+USC Medical Center which needs to be addressed on the record with both USC counsel and Los Angeles County.

As you know, disclosure of exhibits is only one of the items which I am asking the Court to address on an ex parte basis.  Please therefore note that Dr. Cheongsiatmoy continues to reserve his right to file the ex parte application as early as 12PM today.  I have already included the other statements of opposition from you (including your version of "Document 2" you instructed I include) and from Mr. Neumeister in the ex parte application.  I will also include in the ex parte application a copy of this email as you instructed below.

Thanks,
Alice Chang

From: **Kortum, Frank (USACAC)** <Frank.Kortum@usdoj.gov>
Date: Thu, Dec 23, 2021 at 8:53 AM
Subject: Re: U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW (responding to memo attached to your 12/21 message)
To: Alice Chang JDMBA <alicechangjdmba@gmail.com>
Cc: Eliot Rushovich <eliot@riselawfirm.com>, John Fisher <John.Fisher@doj.ca.gov>, Neumeister, Mitch <Mitch.Neumeister@insurance.ca.gov>, Steven Frankland <sgfrankl@da.lacounty.gov>


Ms. Chang,

In response to the memo attached to your 12/21 message below, I've received authorization to inform you that the United States is prepared to disclose the exhibits to the complaint to counsel for USC.  Specifically, my plan is to e-mail to counsel for USC the exhibits that Mr. Rushovich e-mailed to me in September, with a copy to both you and him (as well as the other counsel copied on this message); please confirm in writing as soon as possible if this course of action is acceptable to you.

However, I haven't received authorization to disclose the Memoranda of Points and Authorities In Support of Stipulation Extending Seal (the "Memoranda").  My office views the Memoranda as work product and, as a matter of course, does not disclose such Memoranda to any other parties.

As matters now stand, we believe there's no basis for you to file an *ex parte* application, given that (A) we've agreed to your request for disclosure of the exhibits to counsel for USC; (B) you're not entitled to disclosure of the Memoranda (which are privileged); and (C) in any event, it's inappropriate to ask the Court to adjudicate the merits of the privilege issue on an *ex parte* basis (instead of by noticed motion), particularly where there's no apparent emergency.  Please confirm as soon as possible that you won't be filing an *ex parte* application.  (If you file an *ex parte* application in spite of the explanation set forth above, please attach a copy of this message to the application as a further statement of our position in opposition.)

Frank Kortum (cell 213.393.5512)

From: **Alice Chang JDMBA** <alicechangjdmba@gmail.com>
Date: Thu, Dec 23, 2021 at 1:12 PM
Subject: Fwd: FW: U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW(AS) [UNDER SEAL] – Email #13 of 13 (4AC Exhibit 150); Notice of Lodging of Non-Paper Exhibit (Audio-Video) (CONFORMED)
To: Mark Hardiman <mhardiman@nelsonhardiman.com>, Marc Beaart <mbeaart@da.lacounty.gov>, Steven Frankland <sgfrankl@da.lacounty.gov>
Cc: Kortum, Frank (USACAC) <frank.kortum@usdoj.gov>, John Fisher <John.Fisher@doj.ca.gov>, Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>, Eliot Rushovich <eliot@riselawfirm.com>


Mr. Hardiman, Bureau Director Beaart and Head Deputy Frankland,

I would like to schedule a meeting with all counsel (copied on this email) to discuss the exhibits to the Complaint (including but not limited to Exhibit 150 video attached).

In light of USC Counsel's February 25, 2021 email (also attached here for reference) stating that "As part of our audit and investigation, we have found no evidence that USC falsely certified to LA County on a claim using CPT Code 95940, or that USC submitted any claim to the county,"

USC counsel and Los Angeles County counsel must be in attendance for this discussion.  Can you each please reply all with your earliest availability?

Thanks,
Alice Chang

From: **Mark Hardiman** <mhardiman@nelsonhardiman.com>
Date: Thu, Dec 23, 2021 at 3:26 PM
Subject: RE: U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW(AS) [UNDER SEAL] – (request for confirmation of receipt of e-mailed exhibits)

To: Kortum, Frank (USACAC) Frank.Kortum@usdoj.gov

Cc: Jonathan Radke <jradke@nelsonhardiman.com>, alicechangjdmba@gmail.com <alicechangjdmba@gmail.com>, Mark Hardiman <mhardiman@nelsonhardiman.com>

Frank:

This will confirm that we received the 13 emails with exhibits that you emailed and acknowledge that the exhibits (along with the Fourth Amended Complaint itself) are subject to the provisions of the Court's order partially lifting the seal.

Please confirm that relator has authorization under a Court order to share these exhibits and the complaint with Los Angeles County or has provided a prefiling disclosure to the State and/or County, which I assume is the case.

We will get back to you shortly regarding the proposed meeting.

Happy holidays,

Mark

**Mark Hardiman** | Partner
t 310.203.2721 | f 310.203.2727

1100 Glendon Ave, 14th Floor | Los Angeles, CA 90024

# Exhibit O

From: **Alice Chang JDMBA** <alicechangjdmba@gmail.com>
Date: Fri, Dec 24, 2021 at 9:48 AM
Subject: Re: U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW(AS) [UNDER SEAL] - Meet and Confer Follow-up
To: Marc Beaart <mbeaart@da.lacounty.gov>, Steven Frankland <sgfrankl@da.lacounty.gov>
Cc: Kortum, Frank (USACAC) <frank.kortum@usdoj.gov>, John Fisher <John.Fisher@doj.ca.gov>, Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>, Eliot Rushovich <eliot@riselawfirm.com>

Bureau Director Beaart and Heady Deputy Frankland,

Upon further review of Los Angeles County's calendar, I note that some offices may be off on holiday today; therefore, I ask that you please respond to the below-referenced issues by 12PM on Monday, December 27, 2021 as these issues have been raised with Los Angeles County repeatedly with no resolution.

Thanks,
Alice Chang

From: **Alice Chang JDMBA** <alicechangjdmba@gmail.com>
Date: Fri, Dec 24, 2021 at 9:35 AM
Subject: U.S. ex rel. IONM LLC v. USC, No. CV 18-08311-ODW(AS) [UNDER SEAL] - Meet and Confer Follow-up
To: Marc Beaart <mbeaart@da.lacounty.gov>, Steven Frankland <sgfrankl@da.lacounty.gov>
Cc: Kortum, Frank (USACAC) <frank.kortum@usdoj.gov>, John Fisher <John.Fisher@doj.ca.gov>, Neumeister, Mitch <mitch.neumeister@insurance.ca.gov>, Eliot Rushovich <eliot@riselawfirm.com>


Bureau Director Beaart and Head Deputy Frankland,

I write to inform you that after confirming that today, December 24, 2021 is not a holiday according to the Los Angeles County calendar (https://lacounty.gov/government/about-la-county/county-holidays/), I called your office again twice this morning and left messages asking both of you to follow-up with me on the items set forth below:

(1) the meeting I proposed with USC counsel and Los Angeles County counsel regarding the fraudulent nature of USC's Non-Confidential Voluntary Self-Disclosure

(2) document preservation orders issued by Los Angeles County in connection with this case

(3) Los Angeles County's continued refusal to provide access to its records which was required to investigate the false claims and crimes committed at Los Angeles County+USC Medical Center

(4) Los Angeles County's continued refusal to provide the documentation Los Angeles County cited in its July 1, 2021 email that  "Our documentation shows that [Los Angeles County] already declined to intervene in this action."

Please note this is a final attempt to meet and confer with you on these issues and if Los Angeles County does not respond today, this will be noted in the ex parte application.

Thanks,
Alice Chang

# Exhibit P

**DATE:**     November 26, 2021 (*Delivered Via Electronic Mail*)

**FROM:**     Alice Chang, Esq.

**TO:**       Frank Kortum, Assistant United States Attorney, U.S. Attorney's Office C.D. Cal (frank.kortum@usdoj.gov)

Marc Beaart, Bureau Director, Los Angeles County Fraud & Corruption Prosecution
Los Angeles County District Attorney's Office (mbeaart@da.lacounty.gov)

Steve Frankland, Head Deputy of Los Angeles County Healthcare Fraud Division
Los Angeles County District Attorney's Office (sgfrankl@da.lacounty.gov)

John Fisher, Deputy Attorney General, California Department of Justice
Office of the Attorney General, Bureau of Medi-Cal Fraud (John.Fisher@doj.ca.gov)

Mitch Neumeister, False Claims Trial Attorney, Office of the California Department of Insurance
Fraud Liaison Bureau (mitch.neumeister@insurance.ca.gov)

**CC:**       Eliot Rushovich, Esq. (eliot@riselawfirm.com)

**RE:**       CV 18-08311-ODW [UNDER SEAL]; U.S. ex rel. IONM LLC and Justin Cheongsiatmoy, M.D., et al. v. USC

AUSA Kortum, Bureau Director Beaart, DDA Frankland, DAG Fisher, and Mr. Neumeister:

I write on behalf of Justin Cheongsiatmoy, M.D. to inform you that Wilbanks & Gouinlock (W&G) has been terminated as counsel in the above-referenced matter, effective immediately. A copy of the termination letter is enclosed herewith as Exhibit A-270; Mr. Wilbanks and Ms. Gouinlock have been directed by Dr. Cheongsiatmoy to immediately return their Request for Withdrawal as Counsel to be filed with the Court promptly.

Recall that on July 2, 2021, I advised all participating government entities that Dr. Cheongsiatmoy had directed that any communications purporting to be made to him regarding this matter must be made to my attention, and that on September 30, 2021, October 1, 2021, and October 25, 2021, Dr. Cheongsiatmoy reiterated this directive to AUSA Kortum asking him to remind all parties of the same.

To be clear, W&G has never had any authority to act in this matter outside my presence. To the extent that W&G has purported to represent any position by Dr. Cheongsiatmoy regarding any action in this case, you were on notice that such representation was made without authority. Further, you were also on notice that any communications to and from W&G should never have been construed as being made to or on behalf of Dr. Cheongsiatmoy unless such correspondence was verified directly with me; this was reiterated in my November 15, 2021 letter. If there is representation otherwise, you continue to be on notice that any such communications are ineffective and unreliable, and the Court will so be informed as necessary.

Each participating government entity has repeatedly declined and continues to decline my multiple attempts to meet and confer to address any contemplated action in this case. Dr. Cheongsiatmoy reiterates his request that you provide the items set forth in the letters from Mr. Rushovich and me. Such information and review of the government's investigation over the last 3 years and proposed investigative plan is, of course, necessary to assess whether there is good cause for a further extension of the seal under 31 U.S.C. § 3730(b)(3). Should you continue to decline to provide this necessary information, Dr. Cheongsiatmoy may have no recourse but to oppose the United States' request for an extension of the seal and to inform the Court of the reasons therefor.

# Exhibit A-270

Date: November 26, 2021 (Delivered Via Electronic Mail)

From: Justin Cheongsiatmoy, M.D. (iomneurologist@gmail.com)

To: Marlan Wilbanks (mbw@wilbanksgouinlock.com) and Susan Gouinlock (ssg@wilbanksgouinlock.com)

Cc: Alice Chang (alicechangjdmba@gmail.com) and Eliot Rushovich (eliot@riselawfirm.com)

Re: CV 18-08311-ODW [UNDER SEAL]; U.S. ex rel. IONM LLC and Justin Cheongsiatmoy, M.D.,et al. v. USC

Dear Mr. Wilbanks and Ms. Gouinlock (W&G):

I write to inform you that I am terminating my attorney-client relationship with you in this matter, effective immediately.

As you know, W&G was never authorized to take any action in this case outside the presence of Ms. Chang and now that your firm is terminated, you are reminded that you are not to act as my attorney or representative for any purpose. You are further instructed to refrain from making any communication with any party about me or my case. I have instructed Ms. Chang to provide notice of this termination of representation to the participating government entities under separate cover.

Alice Chang will continue in her role as lead counsel in this case. As Ms. Chang is also local counsel, you are immediately directed to complete, sign and return to Ms. Chang the attached Request for Withdrawal of Counsel for her to file with the Court forthwith.

Pursuant to rule 1.16(d) of the Georgia Rules of Professional Conduct and rule 1.16(e) of the California Rules of Professional Conduct, please promptly email me all material comprising my client file, including but not limited to all correspondence including all contemporaneous notes from telephonic correspondence, pleadings, work product, and other writings and evidence, whether in tangible, electronic or other form, and other items reasonably necessary to my representation by other counsel in this matter. This also includes the supporting documentation for the numerous representations from the government entities to which you referred in your emails. As you are aware, I have repeatedly requested that you provide me with these materials, but you have not complied with those requests.

Finally, W&G is deemed to have waived any rights to any reimbursement associated with this case since it has been over 30 days from the time I first I provided you written notice to "timely submit an accounting of all time, costs, and expenses for which [W&G] will seek reimbursement under [Statutory Fee and Expense Awards] so that such amounts may be included in Relator's application(s) or request(s) to have such amounts paid by Defendants."

Given the current procedural status of this matter with potential material events impending on a time-sensitive basis, your failure to promptly comply with this request will severely prejudice the case. Thus, any failure to promptly comply with this directive may cause me to seek redress from the Court and from state attorney disciplinary authorities, as appropriate.

Should you receive any further communication regarding this case, you are instructed to immediately notify and forward such correspondence to my counsel, Ms. Chang.

Sincerely,

Justin Cheongsiatmoy, M.D.
Justin Cheongsiatmoy, M.D. on behalf of IONM LLC

# Exhibit Q

**DATE:**     December 20, 2021 (*Delivered Via Electronic Mail*)

**FROM:**     Alice Chang, Esq.

**TO:**       Marlan Wilbanks (mbw@wilbanksgouinlock.com)
              Susan Gouinlock (ssg@wilbanksgouinlock.com)

**CC:**       Eliot Rushovich, Esq. (eliot@riselawfirm.com)

**RE:**       CV 18-08311-ODW [UNDER SEAL]; U.S. ex rel. IONM LLC and Justin Cheongsiatmoy, M.D., et al. v. USC

---

I write on behalf of Dr. Cheongsiatmoy reiterating his directive that you immediately produce to him his complete client file. Dr. Cheongsiatmoy has repeatedly requested that you produce his complete client file to him since July 2021, when you first stated that your firm intended to withdraw from the case. You did not comply with those requests or his repeated requests to include me in all communications your firm submitted or accepted in the above-referenced case.

This case is set to unseal in 10 days given Dr. Cheongsiatmoy's explicit objection to further extension of the seal on the basis of misrepresentation of Relators, inter alia. AUSA Kortum and DAG Fisher have informed all parties that both the United States and the State of California were aware that the Federal and California Stark and Kickback allegations your firm added to the case had safe harbor exceptions. Dr. Cheongsiatmoy therefore intends to ask the Court to address any prejudice caused by any misrepresentations made by your firm and Mr. Withrow's unauthorized practice of California law at the appropriate time.

On November 26, 2021, Dr. Cheongsiatmoy terminated you as his attorneys and again requested that you produce his client file pursuant Rule 1.16(d) of the Georgia Rules of Professional Conduct and Rule 1.16(e) of the California Rules of Professional Conduct. It has been nearly a month since Dr. Cheongsiatmoy put you on notice in writing that "Given the current procedural status of this matter with potential material events impending on a time-sensitive basis, your failure to promptly comply with this request will severely prejudice the case. Thus, any failure to promptly comply with this directive may cause me to seek redress from the Court."

On December 6, 2021, Ms. Gouinlock acknowledged termination of W&G's status as Dr. Cheongisatmoy's attorneys and stated: "We are doing what is necessary to respond to each of your requests for information and documentation in the November 26 email and will send them to you as soon as they are collected."

However, two weeks have now passed and you have produced no documents and appear to be improperly delaying release of Dr. Cheongsiatmoy's file. Given that most, if not all, of the documents in Dr. Cheongsiatmoy's file are in electronic form and are readily accessible to you, there is no justification for this excessive delay.[1] "An attorney is ethically obligated, upon termination of employment, promptly to release to a client, at the client's request: (1) an electronic version of e-mail correspondence, because such items come within a category subject to release; (2) an electronic version of the pleadings, because such items too come within a category subject to release; (3) an electronic version of discovery requests and responses, because such items are subject to release as reasonably necessary to the client's representation; (4) an electronic deposition and exhibit database, because such an item itself contains items that come within categories subject to release; and (5) an electronic version of transactional documents, because such items are subject to release as reasonably necessary to the client." Not only does your conduct violate the Georgia and California Rules of Professional Conduct, it also violates your duty of loyalty to Dr. Cheongsiatmoy as a former client.[2]

Dr. Cheongsiatmoy again directs you to produce to him the entirety of his client file no later than close of business on Tuesday, December 21, 2021. Should you continue to fail to comply with this directive, Dr. Cheongsiatmoy is prepared to report this matter to the State Bar of Georgia and the State Bar of California[3] and he further intends to seek the Court's intervention, including but not limited to seeking contempt sanctions and all other appropriate remedies.

---

[1] *See* Cal. State Bar Op. 2007-174, available at https://www.calbar.ca.gov/Portals/0/documents/ethics/Opinions/2007-174_05-0006-PAW.pdf

[2] *See, e.g., People ex rel. Deukmejian v. Brown* (1981) 29 Cal.3d 150, 155-156 [172 Cal.Rptr. 478]; *Wutchumna Water Co. v. Bailey* (1932) 216 Cal. 564, 573-574 [15 P.2d 505].

[3] *See* Rule 9.40 of the California Rules of Court ("A person permitted to appear as counsel pro hac vice under this rule is subject to the jurisdiction of the courts of this state with respect to the law of this state governing the conduct of attorneys to the same extent as a licensee of the State Bar of California . . . and **will be subject to the disciplinary jurisdiction of the State Bar [of California] with respect to any of his or her acts occurring in the course of such appearance**.")

# Exhibit R

From: **Alice Chang JDMBA** <alicechangjdmba@gmail.com>
Date: Wed, Dec 22, 2021 at 11:34 AM
Subject: Re: Withdrawal form and proposed order
To: Justin Cheongsiatmoy <iomneurologist@gmail.com>
Susan Gouinlock <ssg@wilbanksgouinlock.com>, Marlan Wilbanks <mbw@wilbanksgouinlock.com>, Eliot Rushovich <eliot@riselawfirm.com>


Marlan and Susan,

Your continued failure to provide a true and correct complete client file has delayed the resolution of the case and caused prejudice to your former client, Dr. Cheongsiatmoy.

I therefore write to inform you that this morning, I called both of you at your office reiterating again that a true and correct copy of the complete client file needs to be emailed to Dr. Cheongsiatmoy and me as he requested no later than end of day today.  Otherwise, I intend to ask the Court to address issues regarding your firm's representations/misrepresentations in this case via an ex parte application I intend to file <u>as early as tomorrow, December 23, 2021 at 12PM</u> as the case is set to unseal in 8 days.

Thanks,
Alice Chang

From: **Justin Cheongsiatmoy** <iomneurologist@gmail.com>
Date: Mon, Dec 20, 2021 at 12:05 PM
Subject: Re: Withdrawal form and proposed order
To: Susan Gouinlock <ssg@wilbanksgouinlock.com>, Marlan Wilbanks <mbw@wilbanksgouinlock.com>
Cc: Alice Chang JDMBA <alicechangjdmba@gmail.com>, Eliot Rushovich <eliot@riselawfirm.com>


Mr. Wilbanks and Ms. Gouinlock,

As you know, I made the request for my entire client file as part of my November 26, 2021 termination notice (reattached here for reference) which included my directive that your office "promptly <u>email</u> me all material comprising my client file, including but not limited to all correspondence including all contemporaneous notes from telephonic correspondence, pleadings, work product, and other writings and evidence, whether in tangible, electronic or other form, and other items reasonably necessary to my representation by other counsel in this matter. This also includes the supporting documentation [contemporaneous notes from telephonic correspondence] for the numerous representations from the government entities to which you referred in your emails."

Even if Mr. Wilbanks is out of the country today, my entire client file should have been provided to me promptly weeks ago; your firm has been aware that the case is set to unseal in 10 days.  I do not accept my client file to be delivered by flash drive or DropBox.  I reiterate my directive that your office email Ms. Chang and me the entirety of my client file no later than end of day tomorrow (December 21, 2021, 5PM ET) which your office can email in batches under 25MB and label Email #1 of X, Email #2 of X, etc.

Thanks,

Justin Cheongsiatmoy

Date: November 26, 2021 (Delivered Via Electronic Mail)

From: Justin Cheongsiatmoy, M.D. (iomneurologist@gmail.com)

To: Marlan Wilbanks (mbw@wilbanksgouinlock.com) and Susan Gouinlock (ssg@wilbanksgouinlock.com)

Cc: Alice Chang (alicechangjdmba@gmail.com) and Eliot Rushovich (eliot@riselawfirm.com)

Re: CV 18-08311-ODW [UNDER SEAL]; U.S. ex rel. IONM LLC and Justin Cheongsiatmoy, M.D.,et al. v. USC

Dear Mr. Wilbanks and Ms. Gouinlock (W&G):

I write to inform you that I am terminating my attorney-client relationship with you in this matter, effective immediately.

As you know, W&G was never authorized to take any action in this case outside the presence of Ms. Chang and now that your firm is terminated, you are reminded that you are not to act as my attorney or representative for any purpose. You are further instructed to refrain from making any communication with any party about me or my case. I have instructed Ms. Chang to provide notice of this termination of representation to the participating government entities under separate cover.

Alice Chang will continue in her role as lead counsel in this case. As Ms. Chang is also local counsel, you are immediately directed to complete, sign and return to Ms. Chang the attached Request for Withdrawal of Counsel for her to file with the Court forthwith.

Pursuant to rule 1.16(d) of the Georgia Rules of Professional Conduct and rule 1.16(e) of the California Rules of Professional Conduct, please promptly email me all material comprising my client file, including but not limited to all correspondence including all contemporaneous notes from telephonic correspondence, pleadings, work product, and other writings and evidence, whether in tangible, electronic or other form, and other items reasonably necessary to my representation by other counsel in this matter. This also includes the supporting documentation for the numerous representations from the government entities to which you referred in your emails. As you are aware, I have repeatedly requested that you provide me with these materials, but you have not complied with those requests.

Finally, W&G is deemed to have waived any rights to any reimbursement associated with this case since it has been over 30 days from the time I first I provided you written notice to "timely submit an accounting of all time, costs, and expenses for which [W&G] will seek reimbursement under [Statutory Fee and Expense Awards] so that such amounts may be included in Relator's application(s) or request(s) to have such amounts paid by Defendants."

Given the current procedural status of this matter with potential material events impending on a time-sensitive basis, your failure to promptly comply with this request will severely prejudice the case. Thus, any failure to promptly comply with this directive may cause me to seek redress from the Court and from state attorney disciplinary authorities, as appropriate.

Should you receive any further communication regarding this case, you are instructed to immediately notify and forward such correspondence to my counsel, Ms. Chang.

Sincerely,

Justin Cheongsiatmoy, M.D.
Justin Cheongsiatmoy, M.D. on behalf of IONM LLC

# Exhibit S

From: **Alice Chang JDMBA** <alicechangjdmba@gmail.com>
Date: Tue, Dec 28, 2021 at 11:54 AM
Subject: TIME SENSITIVE – Follow up on VM Left on Your Cell Today
To: Marlan Wilbanks <mbw@wilbanksgouinlock.com>
Cc: Eliot Rushovich <eliot@riselawfirm.com>


Mr. Wilbanks,

I just got off the phone with Mark Hardiman who informed me of disclosures made by USC around August 2021, specifically $75,949 to Medicare, Medi-Cal or other government programs and $297,778 to commercial plans for Shilian and Gonzalez CPT 95940 claims.

The government parties have told Mr. Rushovich and me on the record that the above-referenced disclosures the were not made through Government Parties and Mark Hardiman confirmed on the phone just now that the disclosures were not made through "Frank [Kortum], Mitch [Neumeister] or John [Fisher]."

Because the ex parte application is being filed today, it is extremely urgent that you email all written and contemporaneous notes of telephonic communications with all parties including USC counsel by 5PM ET today.

I just left you a detailed voicemail on your cell that I urgently need to speak with you directly about your role in the process before the Court is so informed via the ex parte application I am filing today.

Thanks,
Alice Chang