REBEKAH L. BAILEY (SBN 258551)
bailey@nka.com
MATTHEW H. MORGAN (MN 304657)*
morgan@nka.com
KATE A. FISHER (MN 0392180)*
kfisher@nka.com
NICHOLS KASTER, PLLP
4700 IDS Center; 80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 256-3200; Fax: (612) 215-6870
*Admitted pro hac vice

AASHISH Y. DESAI (SBN 187394)
aashish@desai-law.com
DESAI LAW FIRM, P.C.
3200 Bristol Street, Ste. 650
Costa Mesa, CA 92626
Tel: (949) 614-5830, Fax: (949) 271-4190

*Attorneys for Plaintiff-Relators*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rels.* IONM LLC and JUSTIN CHEONGSIATMOY, M.D.; STATE OF CALIFORNIA *ex rels.* IONM LLC and JUSTIN CHEONGSIATMOY, M.D.; LOS ANGELES COUNTY *ex rels.* IONM LLC and JUSTIN CHEONGSIATMOY, M.D.; and JUSTIN CHEONGSIATMOY, M.D., *in his individual capacity*,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA, and USC CARE MEDICAL GROUP, INC.,<br><br>Defendants. | Case No. 2:18-cv-08311-SSS (ASx)<br><br>Hon. Sunshine S. Sykes<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO WITHDRAW AS COUNSEL FOR PLAINTIFF-RELATORS**<br><br>Date: March 3, 2023<br>Time: 2:00 p.m.<br>Dept: Courtroom 2 (via Zoom) |

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I) INTRODUCTION

The breakdown of an attorney-client relationship is a rare and unfortunate circumstance that Nichols Kaster, PLLP ("NK" or "the Firm") finds itself faced with in these public-court filings. The decision to terminate a relationship is not one we take lightly. Upon careful consideration and after repeated attempts to remedy the issues, however, the Firm feels compelled to take action. It has provided proper notice to the Clients Dr. Justin Cheongsiatmoy and IONM, LLC ("the Clients" or "Plaintiff-Relators") and filed its Motion. NK continues to believe that good cause exists for the reasons previously referenced in its opening papers. (ECF No. 199).

Plaintiff-Relators' opposition underscores NK's position. As a threshold matter, NK learned for the first time that Plaintiff-Relators would be opposing their motion to withdraw from reading the opposition brief. (Morgan Decl. ¶ 7.) Further, the presentation of piecemeal emails, fragmented comments, and mischaracterizations of events in the underlying opposition brief demonstrates one such fundamental problem that is impeding counsel's representation in this case.[1]

It has become, and continues to be, unreasonably difficult for NK to carry out representation effectively, requiring NK to pursue the instant Motion. NK respectfully requests that this Court grant their Motion to Withdraw as counsel.

## II) GOOD CAUSE EXISTS TO PERMIT WITHDRAWAL.

Plaintiff-Relators suggest NK has not demonstrated good cause for withdrawal by advancing three primary arguments. The Firm responds briefly to each in kind.

---

[1] Co-Counsel Ms. Alice Chang also calls to question NK's commitment to its marketing slogan. If the Court deems it necessary, the Firm welcomes the opportunity to submit its resume, which supports its decades-long commitment to representing and achieving results for individuals and groups of individuals (most often employees) in litigation against large corporations and entities.

1

### A) The Court Should Accept Counsel's Representation that the Attorney-Client Relationship has become Unreasonably Difficult.

Plaintiff-Relators argue that NK's opening points and authorities do not provide sufficient good cause to satisfy Local Rule 83-2.3.2 and to ultimately permit their removal. They argue that it was improper for the Firm to "instead request[] an in-camera hearing to avoid detailing the reasons to support the good cause standard to withdraw." In so arguing, Plaintiff-Relators, through its remaining counsel, ignore the Firm's cited authority, which stands for the proposition that the Court should take counsel's word for it when they represent in a sworn statement that the relationship has become unduly difficult so to prevent effective representation. (NK's P.&A. 5, ECF No. 199 (collecting cases).) This authority further supports the Firm's offer to submit to the Court upon invitation materials that support its sworn statement *in camera* in an effort to protect Plaintiff-Relators and to preserve attorney/client privilege during active litigation. The suggestion that this is improper is unsupported and should be disregarded.

### B) The Issues Necessitating Withdrawal Have Not Since Been Resolved.

Additionally, Plaintiff-Relators argue that good cause does not exist because the issues causing the breakdown in the attorney-client relationship were resolved prior to the Firm's filing of its Motion because Ms. Chang represented that she would no longer be actively involved in litigation.[2] (Opp'n 4–5, ECF No. 205.) As the

---

[2] NK refutes the assertion that the Clients and Mr. Morgan reached a "mutual agreement" on their call as to Ms. Chang's involvement. (Opp'n 4.) NK also rejects the implication that NK did not confer with the Clients about the hearing date for the Firm's Motion. (*Id.*) In fact, NK selected the hearing date (later in time than it preferred) to accommodate Relator's stated preference, which is clear from the partial communication Plaintiff-Relators submit. (Morgan Decl. ¶ 8; *see also* Pl.-Rels.' Ex. F, ECF No. 205-1.)

2

Firm's opening Motion makes clear, however, representation has been rendered unreasonably difficult for two reasons: the Firm's breakdown in its relationship with the Clients, as well as with co-counsel Ms. Chang, his spouse. Ms. Chang's suggestion that she do less over a month after the Firm communicated its intent to withdraw does not remedy the entirety of the issues eroding the attorney-client relationship in this case and therefore does not defeat the Firm's showing of good cause.

### C) Local Rule 7-3 Does Not Address Counsel's Obligations to a Client When Seeking to Withdraw Under Local Rule 83-2.3.2.

Plaintiff-Relators also accuse NK of failing to comply with Local Rule 7-3 when it filed its Motion to Withdraw. They suggest this failure diminishes any good cause demonstrated. They do so by making two separate arguments, one as to conferencing with opposing counsel, (Opp'n 2), and the other as to conferencing with co-counsel and the Clients, (*id.* at 3).

As to opposing counsel, the Firm's Motion makes clear that NK notified the opposing parties of their intent in advance of filing. (NK's P.&A.'s 5; Bailey Decl. ¶ 12, ECF No. 199-1.) There was nothing further for NK to meet and confer about with defense counsel. The relief NK seeks cannot be provided by stipulation or agreement between the parties. Pursuant to Local Rule 83-2.3.2, withdraw is only permitted upon order from the Court. Additionally, the opposing parties in this case did not subsequently file any opposition to the Firm's request so there was nothing further that could have been achieved by a more robust discussion with them.

Next, Local Rule 7-3 does not obligate NK to meet and confer with co-counsel or the Clients. L.R. 7-3 ("[C]ounsel contemplating the filing of any motion must first contact **opposing counsel** to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." (emphasis added)). Rather Local Rule 83-2.3.2 governs these interactions, and the rule requires counsel first give "written notice given reasonably in advance to the client and all

3

other parties who have appeared in the action." The Firm informed Plaintiff-Relators and co-counsel that it was going to provide such notice to opposing counsel in one of the many email threads left off of their compilation of emails submitted with their opposition. (Morgan Decl. ¶ 9.)

The Firm is troubled by Ms. Chang's implication that the Clients were not given notice until January 20, 2023 of its intent to withdraw.[3] (Opp'n 3.) After attempting for several days to contact her and the Clients by phone, NK sent its termination notice via email on December 13, 2022. (Morgan Decl. ¶ 5.) Even this email was not new. It followed up on several, ongoing conversations about issues dating as far back as this past summer, including during an in-person conference convened in an effort to resolve issues between the Clients and counsel before they became irreparable. (*Id.*)

Notably, the Firm's December 13, 2022 email too is left off the chain provided by Plaintiff-Relators to this Court. So too is the follow-up email referencing concrete illustrations of the breakdown in the attorney/client and co-counsel relationships.[4] (*Id.* ¶ 6.) Further still, Attorney Morgan provided additional examples to the Clients via his January 19, 2023 phone call, which Ms. Chang neglects to acknowledge when instead referencing out-of-context Mr. Morgan's expression of a desire not to get into specifics at that time (despite the fact that he did).[5] (*Id.* ¶ 10.) In fact, Plaintiff-Relators' presentation of piecemeal emails and of fragmented comments from this phone call further demonstrates one such problem that is impeding representation in

---

[3] Plaintiff-Relators appear to suggest that this call was not a proper conference because the participants did not come to an agreement at its conclusion. But that is not how meet and confers work.

[4] Again, Counsel will provide any additional correspondence the Court needs to make its determination but hesitates to do so now for fear of needlessly harming the Clients.

[5] Ms. Chang implies Mr. Morgan did not get back to the Clients after this call. In fact, he responded by email the same day. (Morgan Decl. ¶ 10.)

4

this case.

More importantly, it is unclear what remedy Plaintiff-Relators seek for a supposed violation of Local Rule 7.3. There is no authority suggesting as Plaintiff-Relators do that a 7.3 violation diminishes good cause. Nor do they demonstrate why this Court should make such a finding here. Instead, good cause remains, and it justifies the relief NK seeks under the Local Rules.

### III) WITHDRAWAL WILL NEITHER PREJUDICE THE PARTIES NOR HARM THE ADMINISTRATION OF JUSTICE.

Next, Plaintiff-Relators ask the Court not to permit withdrawal unless and until the Firm "successfully revers[es] foreseeable prejudice it may have caused Plaintiff-Relators as Nichols Kaster is required to protect the client's interest in this and all other regards." (Opp'n 5.) Plaintiff-Relators provide only one example of harm they wish be reversed before withdrawal. They point to the stipulated protective order entered in this case and cite—again out of context and without complete correspondence—an exchange between NK and co-counsel.

Plaintiff-Relators accuse the undersigned of acting in direct conflict with their directives back in September. To do so, they omit the fact that NK sent its proposed redlines to Ms. Chang to review, and that she approved the draft with one minor edit not relevant here five days prior to the emails submitted in the opposition to the Court now. (Bailey Decl. ¶¶ 23–31.) In fact, the standard language Plaintiff-Relators now assert should have been included was not referenced in the negotiations until Ms. Chang mentioned it in this very email—after counsel had already given Defendants consent to file and after Defendants indeed filed it. (*See* ECF No. 176.) NK did not therefore "intentionally ignore[] the explicit instructions of its client" before consenting to the filing. And, neither Ms. Chang nor the Clients responded to the email Ms. Chang presents by objecting to Ms. Bailey's approach or her explained reasoning on this particular aspect of the protective order. (*Id.* ¶ 31.)

It is of course curious that this is the first time this issue has been raised since

5

the September correspondence Ms. Chang now cites. (*Id*.) If this was in fact a matter that caused Plaintiff-Relators prejudice, one would expect the issue to have been raised earlier. More importantly, this has nothing to do with the withdrawal of the undersigned. After NK's departure, there is nothing stopping Ms. Chang or some future counsel from moving (or seeking stipulation) to modify the standing protective order to include this language. Alternatively, Ms. Chang could challenge the confidentiality designations of any particular sets of documents produced thus far in this case under the procedures outlined in the existing protective order.[6] But, this issue should have no bearing on the underlying Motion now before this Court.

IV) **PLAINTIFF-RELATORS' PRE-WITHDRAWAL DEMANDS HAVE BEEN MET.**

Plaintiff-Relators conclude their opposition with a series of demands. The Firm responds to each in kind: As to item number 1, Plaintiff-Relators were aware from the Firm's multiple emails on the matter before the filing of Plaintiff-Relators' opposition, that the Firm was arranging to provide documents, communications, and case files to Plaintiff-Relators last week. (Bailey Decl. ¶ 32.) The first exchange of these documents was made last Friday February 10, 2023; the second was sent this Tuesday February 14, 2023. The load files in these productions should further satisfy the spirit of the demand for a "certified log" (item number 2). (*Id*. ¶¶ 33–35.) Counsel also responded directly to these demands and others in private correspondence with the Clients earlier this week. Item numbers 1 and 2 therefore have been sufficiently satisfied. Accordingly, this reply should serve as a "status report" expressing compliance with Plaintiff-Relators' request (item number 3).

With these demands now satisfied, and good cause met, the Court should enter

---

[6] A substantial number of these documents contain protective health information governed by HIPAA, which will further impede the open and public disclosure of these documents as a matter of law.

6

and order withdrawing Nichols Kaster and its attorneys from representing Plaintiff-Relators and from this case.

DATED: February 17, 2023          Respectfully Submitted,

NICHOLS KASTER, PLLP

By: /s/Rebekah L. Bailey
    Rebekah L. Bailey
    Matthew H. Morgan
    Kate A. Fisher

DESAI LAW FIRM, P.C.
    Aashish Desai

7