ALICE CHANG (SBN 239761)
alicechangjdmba@gmail.com
13048 Del Monte Dr, Apt 42F
Seal Beach, CA 90740
Telephone: (714) 507-6161

Attorneys for Plaintiffs-Relators

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **IONM LLC**, a Delaware corporation and *ex rel.* **JUSTIN CHEONGSIATMOY, M.D.**; **STATE OF CALIFORNIA** *ex rel.* **IONM LLC**, a Delaware corporation and *ex rel.* **JUSTIN CHEONGSIATMOY, M.D.**; **LOS ANGELES COUNTY** *ex rel.* **IONM LLC**, a Delaware corporation and *ex rel.* **JUSTIN CHEONGSIATMOY, M.D.**; and **JUSTIN CHEONGSIATMOY, M.D.**, in his individual capacity,<br><br>Plaintiffs,<br><br>v.<br><br>**UNIVERSITY OF SOUTHERN CALIFORNIA**, a California corporation,<br><br>and<br><br>**USC CARE MEDICAL GROUP, INC.**, a California corporation,<br><br>Defendants. | Case No. 2:18-cv-08311-WLH (AS)<br><br>**NOTICE OF RELATOR'S REQUEST FOR DEFENDANTS TO PROVIDE A DEADLINE CERTAIN FOR DEFENDANTS' FORMAL SETTLEMENT OFFER** |

PLEASE TAKE NOTICE that Relator hereby requests that Defendants email Attorney Chang (the only Relator's counsel who has not disavowed the role of counsel in the case) and the Governments by end of day on January 31, 2024, to provide a deadline certain by which Defendants will make their formal settlement offer. See also Dkt. 264 at Page 53 wherein Nichols Kaster attorney wrote the Court, counsel

for the Governments, Defendants, and Attorney Chang on June 26, 2023 that "attorneys of Nichols Kaster are no longer counsel of record on this case," and Dkt. 280 at Page 16 wherein Managing Partner Aashish Desai wrote the United States, Defendants, and Attorney Chang on March 21, 2023 that "[Desai law firm] do[es] not wish any further contact about this case…particularly given that [Nichols Kaster Attorneys] are no longer counsel for plaintiffs."

Given that ASUA Kortum has assured Attorney Chang that the United States will work with Relator to ensure progress is being made by Defendants to settle the case, should Defendants not email Attorney Chang and counsel for the Governments by end of day on January 31, 2024 with a deadline certain by which Defendants will make the formal settlement offer, Defendants' intentions or lack thereof will be clear.

The Governments, who are the real parties in interest in this case, should hereby be on notice that the Governments should take timely and appropriate action to protect their claims in this case once Defendants make their intentions known.

On May 1, 2023, Attorney Chang emailed the Nelson Hardiman law firm documenting Attorney Chang's written record of the notes from Attorney Chang's telephonic conferences with Mark Hardiman.

On May 5, 2023, the Nelson Hardiman law firm responded to Attorney Chang's May 1, 2023 email wherein Mark Hardiman confirmed via email: **"Alice…Thank you for the below email which accurately summarizes our discussions…"** See Dkt. 278 at Page 17.

On November 21, 2023, 67 days ago, Mark Hardiman, Founder and Partner of law firm Nelson Hardiman LLP and "the only attorney who has been provided authority by USC to negotiate and resolve this case through settlement" (see Declaration of Mark Hardiman filed at Dkt. 258 at 10) informed the Governments and Relator in writing that Defendants are "working...on making a formal settlement offer that addresses the various issues [Relator] raised." See Dkt. 276 at Page 6.

On January 10, 2024, Defendants provided written notice that Defendants

"should be getting a settlement offer out shortly as [Defendants] are finalizing and revising some of the loss numbers, including Medi-Cal." See Dkt. 278 at Page 8.

Following Defendants' November 21, 2023 written notice that Defendants are "working...on making a formal settlement offer that addresses the various issues [Relator] raised," Attorney Chang warned the Governments that Defendants did not provide a date by which Defendants will make any formal settlement offer.

On November 26, 2023, Attorney Chang further warned the Governments (which are the real parties in interest on the Government claims) to be on notice as to the implications of Defendants' discovery requests which would impact the resolution of the Government claims.

On November 29, 2023, Attorney Chang again urged the Governments to take timely action and cooperate with Attorney Chang with regard to discovery responses and timelines in order to protect the Governments' claims in this case or otherwise take timely action to intervene on the Governments' claims (based on Defendants' admissions and based on the Governments' investigations).

On November 29, 2023, Attorney Chang referenced the history of the case and the Governments' written commitment to continued investigation (Dkt. 222) when Attorney Chang sought consent from each of the counsel for the Governments to disclose to Defendants information responsive to Defendants' discovery requests, yet **none of the counsel for the Governments provided Attorney Chang with consent to disclose information responsive to Defendants' discovery requests.**

Should Defendants insist on continued litigation **before** Defendants follow through on Defendants' written commitment to "mak[e] a formal settlement offer that addresses the various issues [Relator] raised," the Governments have been on notice that, given the history of this case, including but not limited to the role of the Nelson Hardiman law firm in this case (as reflected in the records filed on the public docket and in the attached **Exhibits A and B**), Attorney Chang will **only** be able to adequately represent the Governments' interests in a settlement and/or intervention

3

posture.

The attached **Exhibits A and B** contain the written records of the conversations between Alice Chang and Lee Arian of the Nelson Hardiman law firm in July 2018 before this qui tam case was filed. After her conversation with the Nelson Hardiman law firm in July 2018 (see attached **Exhibits and B**), Alice Chang assisted in the filing of this qui tam action. However, Alice Chang was no longer part of IONM LLC prior to filing an appearance as counsel of record in this case.

In the attached **Exhibit B**, (1) the bold text represents commentary to the Nichols Kaster law firm; (2) USC VSD refers to Defendant USC Care's March 27, 2020 Voluntary Self Disclosure to Susan Gillin of the United States OIG HHS which is Exhibit 89 to the Complaint and (3) the Dooley case refers to *United States of America ex rel Justin Dooley*, Case No. 2:13-cv-07039 SJO (JEMx) in which the Nelson Hardiman law firm represented Defendant USC, and Relators Justin Dooley and James Schellenberg were represented by Justin Berger of Cotchett, Pitre & McCarthy law firm. Justin Berger of Cotchett, Pitre & McCarthy law firm is the same attorney who filed the initiating documents outlining the "kickback scheme" in this qui tam case. See Dkt. 1 for the original complaint in this qui tam case which was filed by Justin Berger of Cotchett, Pitre & McCarthy law firm on September 26, 2018.

Relator remains committed to assisting the Governments to reach a resolution which accounts for the full extent of Defendants' fraud, either through a Government intervention or through a fair, adequate and reasonable settlement offer from Defendants. Relator, through the only remaining Relator's counsel, Attorney Chang, has performed "the investigation [which], *inter alia*, **require** the review of the medical records of thousands of surgical patients in order to determine whether Keck provided the monitoring services for which it claimed reimbursement from the government," See Dkt. 21 at Page 10, Declaration of AUSA Frank D. Kortum, Paragraph 4.

///

**Statutory Attorney Fees and Costs Claimed: Attorney Chang's Attorney Hours Claimed are Reasonable:** Attorney Chang served the Governments on November 26, 2023 the document "Relators Attorney Fees and Costs to date (November 26, 2023)" and this document contains Relator's **finalized** Statutory Attorney Fees and Costs claimed by Relator in this case. See Dkt. 280. Through "Relators Attorney Fees and Costs to date (November 26, 2023)," the Governments are aware that (1) Attorney Chang is the ONLY Relator's counsel who performed the required review of the thousands of medical records of surgical patients in this case, and (2) Attorney Chang's hours are not duplicative; no other Relator's counsel is has claimed attorney hours for the review of these thousands of medical records.

Attorney Chang's attorney hours claimed in this case are reasonable and justified by the United States' position via AUSA Kortum's attestation to the Court on June 22, 2020 that "if settlement negotiations are unsuccessful [in 2020]...the Governments will be required to continue with their ongoing investigation of the allegations in the qui tam complaint. As stated in a previous seal extension request, the investigation will, *inter alia*, **require** the review of the medical records of thousands of surgical patients in order to determine whether Keck provided the monitoring services for which it claimed reimbursement from the government." See Dkt. 21 at Page 10, Declaration of AUSA Frank D. Kortum, Paragraph 4.

**Statutory Attorney Fees and Costs Claimed: Attorney Chang's Attorney Billing Rate is Reasonable:** Attorney Chang was the only attorney who detailed most of the substantive allegations in this case, including but limited to all the amended complaints. Attorney Chang's law experience spans 11 years, including nearly 3 years as a prosecutor during which time Attorney Chang prosecuted thousands of cases, in addition to the 3 years Attorney Chang has been Relator's counsel in this case. Instead of choosing to bill her Attorney Hours in this Federal case at the rate specified by the Laffey Matrix (http://www.laffeymatrix.com/see.html), Attorney Chang reduced her hourly rate by nearly 50% of the published Laffey Matrix rate;

5

Attorney Chang's billing rate and the billing rates of all others who claimed fees and costs in this case was filed at Dkt. 254 at Pages 6-7 and is provided again below.

**Attorneys (Billing Rates per hour)**
1. Steve Hasegawa: $925
2. Justin Berger: $850
3. Sam Buffone: $800
4. John Black: $800
5. Eliot Rushovich: $750
6. Matthew Helland: $725
7. Sarvenaz Fahimi: $675
8. Matthew Morgan: $675
9. Anna Parkash: $600
10. Rebekah Bailey: $550
11. Lisa Watanabe-Peagler: $550
**12. Alice Chang: $545**
13. Kate Fisher: $450
14. Michelle Kornblit: $425
15. Matthew Frank: $400
16. Chloe Raimey: $375
17. Elissa Waizman: (Croce): $350
18. Melanie Johnson: $350

**Paralegals / eDiscovery Managers / Class Action Clerks (Billing Rates per hour)**
1. Valerie Barretto: $325
2. Daniel Curtis: $275
3. Caitlin McDonough: $275
4. Giuseppe Benedetti: $275
5. Morgan Botelle: $225
6. Kristine Nelson: $195
7. Cameron Pylka: $195
8. Heather O'Neil: $195
9. Elizabeth Luebesmier: $195
10. Chris Rued: $195
11. Alex Smith: $195
12. Angi Kittelson: $195
13. Haley Thompson: $195

Dated: January 27, 2024

                                                                                        /s/ Alice Chang
                                      Alice Chang, Attorney for Plaintiff-Relators

# Exhibit A




# Exhibit B

From: **Alice Chang JDMBA** <alicechangjdmba@gmail.com>
Date: Wed, Oct 12, 2022 at 8:57 AM
Subject: Re: Information for Wednesday Meeting
To: Fisher, Kate <kfisher@nka.com>
Cc: Bailey, Rebekah <bailey@nka.com>, Kornblit, Michelle <mkornblit@nka.com>, Alice Chang JDMBA <alicechangjdmba@gmail.com>


Kate, Rebekah and Michelle,

See below for my notes w/ further information related to my approaching the Nelson Hardiman firm as a potential client in July 2018.

Regarding Rebekah's other emails, those require a move involved discussion and are not as time-sensitive so let's plan to set up another call (separate from our co-counsel call today) on those topics.

Thanks,
Alice

Friday July 20, 2018:  Email from Alice Chang to Nelson Hardiman, LLP (Lee Arian, Partner in NH Qui Tam Practice Group)
Regarding physician facing retaliation for reporting fraud (protect physician from fraud hospital committed which he is already facing retaliation for reporting)

Friday July 20, 2018 – Monday, July 23, 2018:  Phone Call Notes

Alice told Nelson Hardiman (Lee Arian) that she has a "highly confidential" matter and asked to run a conflict check before sharing the confidential information since she was considering helping her husband file a case under seal to protect him against the fraud – because her husband was scared that others had approaching him about "whistleblowing" and he was thinking he should file 1st

NH asked the name of the target so he could let her know if NH had a conflict?
Alice disclosed that the target was USC and that the fraud was being committed at 2 hospitals – USC Keck and LAC+USC
Lee said that his firm (NH) had no conflicts with USC and that Alice could speak freely about the case with him.

NH asked name of Alice's husband, which department of the hospital he worked, who he reported to?
Live in So.Cal,  Dr. Justin Cheongsiatmoy,,USC Neurology in Intraoperative Montioring (IONM) Program, reported to Dr. Helena Chui, USC Neurology Chair
Told NH that Dr. Cheongsiatmoy already reported Dean (Mosqueda's) Office – but USC was continued to bill that he was performing in-room IONM, inside the Operating Room at LAC+USC when he was not, that he was especially concerned because he saw USC submitting bills for IONM that USC technologists were performing at LAC+USC and he didn't want liability b/c a lot of patient injuries at LAC+USC b/c that is where residents practice without being supervised by attendings.

NH asked for more details of the fraud and what evidence husband had to prove the fraud?
Alice said most clear fraud is ENT which doesn't have remote connection yet USC still billed for remote monitoring – that her husband joined the faculty incentive plan as of July 1, 2018 and sent an email to Dr. Chui's assistant, Angelique Matthews in June 2018 telling her that he would no longer bill ENT and that he did this because he felt it was wrong to get a bonus from the fraud.

NH advised that husband could have liability for billing ENTs in the past and gave legal advice that Dr. Cheongsiatmoy "might want to consider" deleting the email if he was concerned about the liability from the time he was forced to bill ENTs under his faculty guarantee plan – that even if Dr. Cheongsiatmoy didn't personally benefit, there could still be liability so consider deleting email.

**[client concerned NH used this info to not produce June email to Angelique about ENT fraud instead telling OIG that "USC Care first learned that the ENT surgery monitors had no real time data connection when Dr. Gonzalez candidly brought up the issue during its investigation" (USC VSD at 23)…in August 2018 USC Care opened the**

investigation (USC VSD at 14)…yet USC was already returning money to the government under the guise of routine audit just hours after client reported to Dean Mosqueda's Office on July 18, 2018]

Alice then described group billing fraud telling NH it extends to all cases, every day of thee week at both USC Keck and LAC+USC  - b/c technologists are performing work in capacity of physicians - but the clearest example is "Academic Days"

For Dr. Gonzalez – on his Monday "Academic Day" he performs other clinical work and his billing will show he was seeing patients at another clinic outside of USC on Mondays even though USC billed a bunch of IONM cases under his name on Mondays.

For Dr. Shilian – described how USC even billed for case under Shilian when she was out of the country in Italy

And that USC did something similar to Dr. Cheongsiatmoy– where USC submitted a "Provider Time Study (PTS)" attesting that he was on-premises at LAC+USC hospital in May even though he was in Hawaii and he had the plane tickets to prove it.

That the PTS was the "worst kept secret" at USC – where most USC doctors are contractors are County, made double what other doctors in academic settings make because they get "double salary" – its padded by this PTS money coming from LAC+USC where the admins of the various departments commit "systemic fraud"  process done by pull up patient records retroactively and fill out attestations of physician time spent there but it's not supported by the actual patient records – i.e. the OR Attendance Log – and we had proof at least as to IONM Program b/c it proves that the USC Neurologists and USC Surgeons are not really on-premises at LAC+USC – and this is contradictory to PTS.

That Dr. Cheongsiatmoy had proof that b/c surgeons were not supervising resident surgeons was causing serious patient harm.

NH advises that in his experience, the government will prioritize and take more seriously a case with patient harm.  NH asks how would husband be able to prove the patient harm?

Alice answers that  .SMD file proves the patient harm – it's actual data from the patients' surgery capturing the time of injury

Alice then explains how USC will attempt to pass off Event Log as Chat Log – explaining that the Chat Log proves no monitoring by physician and that USC had explicit orders to delete Chat Logs and existing chat logs show no monitoring proving the fraud

Alice tells NH that Dr. Cheongsiatmoy trained under the IONM Expert that CMS (Government) consults to create the Medicare rules for billing IONM so Marc Nuwer at UCLA would be a key government witness – speaks publicly about Chat Log documentation in the context of billing and litigation **[client concerned NH used this info to cite Nuwer as USC witness in the VSD to OIG HHS]**


NH asked who else was considering filing a qui tam and what information did they have that would prove the fraud? Alice disclosed that the Dr. Chui's assistant, Angelique Matthews had a mom, Diane Matthews, who was a USC Billing Manager and the two of them lived together and were watching the "whistleblower" show on TV.

One day Angelique asked Dr. Cheongsiatmoy to go outside (because they were scared the work room was bugged given the fact that Dr. Cheongsiatmoy had already reported the fraud) and said that she (Angelique) and her mom (Diane) were thinking this case could be worth a lot of money, possibly bigger than the OB GYN scandal, if USC even had any money left after paying off that scandal.

Angelique said her mom Diane had access to the electronic billing records as a USC billing manager and that she scanned the physical billing sheets to her personal cloud because they prove the process used to commit the fraud.

New IONM John Parker contacting the manufacturer of the NIMs machine who confirmed no remote connection.

Alice shares with NH that Dr. Cheongsiatmoy is very scared b/c USC has a reputation for retaliating against those who speak out, that hospital privileging is such he cannot have a bad record so he wanted to make sure he landed another job

USC b/c he knew USC was trying to create a negative record against him in retaliation…that he was in the process of trying to land an academic IONM position at UC Davis and could not afford to have this dossier that USC was creating on him be used to cite disciplinary actions against him b/c academic jobs are the most prestigious and peer reviews play a huge role – concerned that Dr. Gonzalez was going to submit a negative peer review in process of Dr. Cheongsiatmoy trying to re-credential at LAC+USC.

**[client concerned NH used this information to harm him – took information from potential client for the advantage of current client –just months after gave NH highly confidential info in July 2018 and months after qui tam filed under seal in September 2018 -  NH introduces themselves to the Gov't in November 2018 as the attorneys representing USC in defending against the qui tam]**

**See VSD at 14 FN13 where Hardiman states "Nelson Hardiman, LLP was retained to assist the investigation after Keck Medicine receive the CDI Subpoena (described above) in November 2018." b/c the CDI subpoena was officially served on November 1, 2018 (even though the parties agreed that the formal date of acceptance of service could be later)…that the NH firm was the one who advised USC to create the false pretext to put Dr. Cheongsiatmoy on involuntary leave on November 9, 2018 knowing it was Dr. Cheongsiatmoy's worst fear of having a negative record that would prevent him from being able to work in the academic setting again.]**

That husband has a very unique last name and was also scared that if his name was publicly associated w/ USC's fraud, it would ruin his reputation in a very small IONM community and if he filed a qui tam, he was considering creating an LLC to shield his identify if moving forward with a qui tam – talked about potential name for LLC as IONM LLC.

**[client concerned NH used confidential info about his fear of disclosing his name to harm/embarrass him – NH knew client was scared of his name being associated w/ the fraud, yet USC was the one who filed a public VSD to OIG HHS in March 2020 putting his name out there – Lee Arian was still a Partner at NH at the time of VSD to OIG HHS in March 2020]**

NH advises on the "first to file" law, advised that the qui tam world is very small, only a handful of attorneys around the nation practice this very specialized area of law, it's very "clubby" and all about having the "right connections".  That he and the named partner at his firm [Hardiman] both used to prosecute healthcare fraud at the local DOJ office and had "lots of connections" there that would be very helpful to the USC case.

That he would talk to his qui tam practice group, that initially he's inclined to say that NH wants to take on the case b/c it's "very compelling" and "in their wheelhouse", to gather as much evidence as I could to prove the fraud to send to his firm, that NH would want both the qui tam and retaliation claims to keep "everything in-house" – and after sharing my information the the NH qui tam practice group (which he said included the named partner Hardiman and another more junior attorney, Radke), if NH was still interested, he pass on the information confidentially to the employment group at NH to ensure everything was taken care of by the same firm.

Monday, July 23, 2018:  Text Message from NH to Alice

presumably sent after Lee vetted the case w/ Hardiman b/c gives contact info employment law and peer review attorneys at NH firm and stating he would "let Sara and Zach know [I] would call"…to "ensure [I was] taken care of"

**Note to NK – while the NH was very interested in taking the case, after I did further research I saw that NH had represented USC as a defendant in a recent qui tam, USC ex. rel Dooley, and felt it very unethical and dishonest that it was not disclosed to me.  There was no formal close-out or end of the relationship – it was left with NH interested in taking the case but I did not pursue b/c I felt the firm was not ethical.**